**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SONOS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. |
| v. | ) |
| | ) |
| D&M HOLDINGS INC. d/b/a THE | ) JURY TRIAL DEMANDED |
| D+M GROUP, D&M HOLDINGS U.S. | ) |
| INC., and DENON ELECTRONICS | ) |
| (USA), LLC, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Sonos, Inc. ("Sonos"), by its undersigned attorneys, for its Complaint for Patent Infringement and Jury Demand against Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC (collectively, "Defendants"), states as follows:

**THE PARTIES**

1. Plaintiff Sonos, Inc. is a Delaware corporation with its principal place of business at 223 E. De La Guerra Street, Santa Barbara, California 93101.

2. On information and belief, Defendant D&M Holdings Inc. d/b/a The D+M Group is a Japanese corporation with its principal place of business at 2-1 Nisshin-cho, Kawasaki-ku, Kawasaki-shi, Kanagawa 210-8569, Japan.  D&M Holdings Inc. d/b/a The D+M Group is a Bain Capital portfolio company.

3. On information and belief, Defendant D&M Holdings U.S. Inc. is a Delaware corporation with its principal place of business at 100 Corporate Drive, Mahwah, NJ 07430. D&M Holdings U.S. Inc. is a wholly-owned subsidiary of D&M Holdings Inc.

4. On information and belief, Defendant Denon Electronics (USA), LLC is a Delaware limited liability company with its principal place of business at 100 Corporate Drive, Mahwah, NJ 07430. Denon Electronics (USA), LLC is a wholly-owned subsidiary of D&M Holdings U.S. Inc.

## JURISDICTION AND VENUE

5. This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code. This Court has jurisdiction under 35 U.S.C. §§ 271, *et seq.*, and 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over Defendants.

7. D&M Holdings U.S. Inc. is incorporated in Delaware and is therefore subject to the jurisdiction of this Court. As a domestic corporation, D&M Holdings U.S. Inc. is registered to do business with the State of Delaware Division of Corporations.

8. Denon Electronics (USA), LLC is incorporated in Delaware and is therefore subject to the jurisdiction of this Court. As a domestic corporation, Denon Electronics (USA), LLC is registered to do business with the State of Delaware Division of Corporations.

9. To the extent that Defendants are not subject to the jurisdiction of this Court as residents of Delaware, Defendants are subject to the jurisdiction of the Court pursuant to 10 *Del. C.* § 3104. Specifically, on information and belief, Defendants cause tortious injury in Delaware, namely from the tort of patent infringement. Defendants also conduct or solicit business and engage in a persistent course of conduct in Delaware, and Defendants derive substantial revenue from things used and/or sold in Delaware.

10. On information and belief, Defendants have (1) transacted business in this district (directly and/or through intermediaries) by engaging in activities such as shipping, distributing,

offering for sale, selling, and/or advertising their products in the State of Delaware, and (2) delivered their products into the stream of commerce with the expectation that they will be purchased by consumers in Delaware. Thus, on information and belief, Defendants are doing business in this District, and have committed acts of patent infringement in this District.

11. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND

12. Sonos is an innovator and industry leader in the field of wireless audio technology. As acknowledged by the media, Sonos reinvented home audio for the digital age. *See, e.g.*, Ex. A (from www.nbcnews.com) ("If you're not familiar with Sonos, this company revolutionized the home audio world a decade ago. . . ."); Ex. B (from www.consumerreports.org) ("Sonos not only helped to invent the wireless speaker category, the company also set the bar for performance, ease of use, and flexibility."); Ex. C (from www.mensjournal.com) ("Sonos almost singlehandedly established the stand-alone wireless home speaker system category . . . .").

13. Sonos has been making, distributing, and selling a line of wireless home audio products for nearly 10 years. Sonos's current line of products includes the "PLAY:5" speaker, the "PLAY:3" speaker, the "PLAY:1" speaker, the "CONNECT" pre-amplifier, and the "CONNECT:AMP" amplifier, all of which are controlled by the Sonos app (for iOS, Android, PC, or Mac). *See*, *e.g.*, Ex. D (from www.sonos.com). Sonos also offers a "PLAYBAR" speaker and a "SUB" speaker for wireless home theater. *Id.*

14. Sonos is the owner of nearly 40 U.S. Patents related to modern audio technology, as well as nearly 250 pending U.S. patent applications. Sonos provides a link to its U.S. Patents

and published U.S. Patent Applications, as well as a table that correlates Sonos's patents to its products, on Sonos's website at www.sonos.com/legal/terms#patents.  *See* Ex. E.  In addition, Sonos encloses notices of its patents with its product inserts and manuals for its products, which provide that "[o]ur patent-to-product information can be found here: ***sonos.com/legal/patents***."  *See*, *e.g.*, Ex. F.

15. On information and belief, Defendants had actual and/or constructive knowledge of Sonos's patents prior to the filing of this action.  For instance, at a minimum, Defendants have been aware (or should have been aware) of Sonos's patents in view of Sonos's position in the industry (including its direct competition with Defendants), Sonos's prominent display of its patents on Sonos's website, and Sonos's inclusion of a notice of its patents in Sonos's product inserts and manuals.

16. In June 2014, Defendants launched their own wireless audio system, which is called "HEOS by Denon" (or "the HEOS system").  This HEOS system is made up of a line of HEOS wireless audio products, including the "HEOS 7" speaker, the "HEOS 5" speaker, the "HEOS 3" speaker, the "HEOS LINK" pre-amplifier, and the "HEOS AMP" amplifier, all of which are controlled by the HEOS app (for iOS or Android).  *See, e.g.,* Exs. G-H (from usa.denon.com and http://heosbydenon.denon.com).

17. Defendants are trying to market the HEOS system as a direct competitor to Sonos's wireless audio system.  *See*, *e.g.*, Ex. G (Denon is "[o]ne of the most well-equipped contenders to take on Sonos at the game it knows so well.").  However, on information and belief, instead of innovating, Defendants are merely copying Sonos's system.  As Digital Trends noted:

> For those unfamiliar, about 10 years ago Sonos created a line of extremely succinct wireless speakers that operate in tandem, allowing users to stream music

       over Wi-Fi from a single source to multiple rooms without latency, or send a different source to each speaker, all from an extremely intuitive and powerful app on a computer or mobile device. Since then, the genre has exploded, spawning copycats from the likes of Samsung, Bose, and others.  With HEOS, Denon appears to be making little effort to hide its mimicry of the popular system.  Like Sonos, Denon's gorgeous new speakers come in three sizes and price points, and offer minimalist designs.

Ex. I (from www.digitaltrends.com).

    18. On information and belief, Defendants have even copied various aspects of Sonos's marketing and branding for its wireless audio system.  For example, Defendants' use of the "HEOS" name for its wireless audio system is similar enough to "Sonos" that it led one industry publication to remark that "we can't help but feel the similarity was deliberate." *See* Ex. J (from www.avhub.com.au).

    19. As another example, Defendants' naming convention for their line of HEOS speakers closely resembles Sonos's naming convention for its line of wireless speakers (*e.g.*, Denon's HEOS 3, HEOS 5, HEOS 7 vs. Sonos's PLAY:1, PLAY:3, PLAY:5).  *Compare* Ex. D *with* Ex. G.

    20. Defendants' website for the HEOS products also has a layout that is similar to Sonos's website, as shown below.

# **SONOS**



www.sonos.com/shop/products/play5

# **DENON**



usa.denon.com/us/heos-5-medium-sized-speakers

21. Further, Defendants' marketing materials for the HEOS system use graphics that closely resemble graphics used in Sonos's marketing materials, as shown below.

6

| **SONOS** | **DENON** |
|---|---|
|  |  |
| www.sonos.com/system | usa.denon.com/us/heos-multi-room-sound |

22. Further yet, Defendants are using taglines in connection with the HEOS system that closely resemble taglines used by Sonos. For instance, Defendants' tagline of "Fill every room with music" (*see* Ex. G) closely resembles Sonos's tagline of "Fill your home with music."

23. On information and belief, Defendants have also incorporated Sonos's patented innovations into the HEOS system, as explained below.

**COUNT I:**
**INFRINGEMENT OF U.S. PATENT NO. 8,788,080**

24. Sonos incorporates paragraphs 1-23 above as if fully set forth herein.

25. Sonos is the owner U.S. Patent No. 8,788,080 ("the '080 patent"), entitled "Multi-Channel Pairing in a Media System," which was duly and legally issued by the United

7

States Patent and Trademark Office ("the USPTO") on July 22, 2014. A copy of the '080 Patent is attached hereto as Exhibit K.

26. Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '080 Patent.

27. The '080 patent is directed to devices and methods for "providing audio in a multi-channel listening environment."

28. Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more of the claims of the '080 patent. For example, at a minimum, Defendants' HEOS 3 speaker product—which is configured to operate either in a "no pairing" mode or in a "stereo pairing" mode—embodies one or more of the devices, methods, and/or computer-readable media claimed in the '080 patent. *See*, *e.g.*, Ex. L (from usa.denon.com); Ex. M (from denon.custhelp.com).

29. Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '080 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

30. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '080 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '080 patent. In particular, on information and belief, (a) Defendants have actual or constructive knowledge of the '080 Patent, (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '080 patent by promoting, advertising, and instructing customers and potential customers about the HEOS

system and uses of the system, including infringing uses (*see* Exs. L-M, touting the configuration and use of two HEOS 3 speakers as a stereo pair), (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '080 patent, and (d) users of the HEOS system directly infringe one or more claims of the '080 patent. For instance, at a minimum, Defendants have supplied and continue to supply HEOS products (*e.g.*, HEOS 3 speakers) to customers while knowing that use of these products will infringe one or more claims of the '080 patent, and that Defendants' customers then directly infringe one or more claims of the '080 patent by using these HEOS products in accordance with Defendants' product literature.

31. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '080 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '080 patent by users of the HEOS system. In particular, on information and belief, (a) Defendants have actual or constructive knowledge of the '080 Patent, (b) Defendants offer for sale, sell, and/or import HEOS products that comprise one or more material components of the invention of the '080 patent and are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) are especially made or especially adapted for use in an infringement of the '080 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '080 patent. For instance, at a minimum, Defendants offer for sale, sell, and/or import HEOS products (*e.g.*, the HEOS 3 speakers) that comprise software and/or hardware components adapted for use in one or more devices, methods, and/or computer-readable media claimed in the

9

'080 patent, and Defendants' customers then directly infringe one or more claims of the '080 patent by using the HEOS products that comprise these components.

33. Defendants' infringement of the '080 patent is also willful because, on information and belief, Defendants (a) had knowledge of the '080 patent (*see* ¶¶ 14-15 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '080 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

33. Defendants' infringement of the '080 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT II:
## INFRINGEMENT OF U.S. PATENT NO. 7,571,014

34. Sonos incorporates paragraphs 1-33 above as if fully set forth herein.

35. Sonos is the owner U.S. Patent No. 7,571,014 ("the '014 patent"), entitled "Method and Apparatus for Controlling Multimedia Players in a Multi-Zone system," which was duly and legally issued by the USPTO on August 4, 2009. A copy of the '014 Patent is attached hereto as Exhibit N.

36. Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '014 Patent.

37. The '014 patent is directed to methods and devices for "controlling a plurality of players."

38. Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more of the claims of the '014 patent. For instance, at a minimum, Defendants' HEOS controller app—which is configured to group HEOS speakers, synchronize

grouped HEOS speakers, and adjust a "Master" volume for grouped HEOS speakers—embodies one or more of the methods and/or devices claimed in the '014 patent. *See*, *e.g.*, Exs. O-P (from usa.denon.com). An example of this "Master" volume adjustment in the HEOS system is shown below:



39. Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '014 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

40. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '014 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '014 patent. In particular, on information and belief, (a) Defendants have actual or constructive knowledge of the '014 Patent, (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '014 patent

by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses (*see* Exs. O-P), (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '014 patent, and (d) users of the HEOS system directly infringe one or more claims of the '014 patent. For instance, at a minimum, Defendants have supplied and continue to supply the HEOS controller app to customers while knowing that installation and use of the HEOS controller app will infringe one or more claims of the '014 patent, and that Defendants' customers then directly infringe one or more claims of the '014 patent by installing and using the HEOS controller app in accordance with Defendants' product literature.

   41. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '014 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '014 patent by users of the HEOS system. In particular, on information and belief, (a) Defendants have actual or constructive knowledge of the '014 patent, (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '014 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) are especially made or especially adapted for use in an infringement of the '014 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '014 patent. For instance, at a minimum, Defendants offer for sale, sell, and/or import HEOS products (*e.g.*, the HEOS controller app) that comprise software components adapted for use in one or more of the methods and/or devices claimed in the '014

patent, and Defendants' customers then directly infringe one or more claims of the '014 patent by using the HEOS products that comprise these components.

42. Defendants' infringement of the '014 patent is also willful because, on information and belief, Defendants (a) had knowledge of the '014 patent (*see* ¶¶ 14-15 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '014 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

43. Defendants' infringement of the '014 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT III:
## INFRINGEMENT OF U.S. PATENT NO. 8,588,949

44. Sonos incorporates paragraphs 1-43 above as if fully set forth herein.

45. Sonos is the owner U.S. Patent No. 8,588,949 ("the '949 patent"), entitled "Method and Apparatus for Adjusting Volume Levels in a Multi-Zone System," which was duly and legally issued by the USPTO on November 19, 2013. A copy of the '949 Patent is attached hereto as Exhibit Q.

46. Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '949 Patent.

47. The '949 patent is directed to devices and methods for controlling a plurality of players in a local area network.

48. Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more of the claims of the '949 patent. For instance, at a minimum, Defendants' HEOS controller app—which is configured to group HEOS speakers and adjust

both individual volumes and a "Master" volume for grouped HEOS speakers—embodies one or more of the devices, methods, and/or computer-readable media claimed in the '949 patent. *See*, *e.g.*, Exs. O-P. An example of this individual and "Master" volume adjustment in the HEOS system is shown below:



49.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '949 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

50.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '949 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '949 patent. In particular, on information and belief, (a) Defendants have actual or constructive knowledge of the '949 Patent, (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '949 patent

by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* Exs. O-P) and (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '949 patent, and (d) users of the HEOS system directly infringe one or more claims of the '949 patent. For instance, at a minimum, Defendants have supplied and continue to supply the HEOS controller app to customers while knowing that installation and use of the HEOS controller app will infringe one or more claims of the '949 patent, and that Defendants' customers then directly infringe one or more claims of the '949 patent by installing and using the HEOS controller app in accordance with Defendants' product literature.

51. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '949 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '949 patent by users of the HEOS system. In particular, on information and belief, (a) Defendants have actual or constructive knowledge of the '949 patent, (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '949 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '949 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '949 patent. For instance, at a minimum, Defendants offer for sale, sell, and/or import HEOS products (*e.g.*, the HEOS controller app) that comprise software components adapted for use in one or more of the methods and/or devices claimed in the '949

15

patent, and Defendants' customers then directly infringe one or more claims of the '949 patent by using the HEOS products that comprise these components.

52. Defendants' infringement of the '949 patent is also willful because, on information and belief, Defendants (a) had knowledge of the '949 patent (*see* ¶¶ 14-15 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '949 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

53. Defendants' infringement of the '949 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT IV:
## INFRINGEMENT OF U.S. PATENT NO. D559,197

54. Sonos incorporates paragraphs 1-53 above as if fully set forth herein.

55. Sonos is the owner U.S. Patent No. D559,197 ("the '197 design patent"), entitled "Control Strip for Electronic Appliances," which was duly and legally issued by the USPTO on January 8, 2008. A copy of the '197 design patent is attached hereto as Exhibit R.

56. Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '197 design patent.

57. The '197 design patent is directed to an "ornamental design for a control strip for electronic appliances."



Fig. 1

58. Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by the '197 design patent. For instance, at a minimum, Defendants' HEOS speakers, HEOS amplifiers, and HEOS pre-amplifiers all include a "control strip" as shown and described in the '197 design patent. As one representative example, the picture below illustrates the "control strip" on the HEOS 3 Speaker product (from usa.denon.com):



59. Thus, Defendants have directly infringed and continue to directly infringe the '197 design patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling HEOS speakers, HEOS amplifiers, and HEOS pre-amplifiers within the United States and/or importing HEOS speakers, HEOS amplifiers, and HEOS pre-amplifiers into the United States.

60. On information and belief, Defendants have actual or constructive knowledge of the '197 design patent. Nonetheless, on information and belief, Defendants have supplied and continue to supply HEOS speakers, HEOS amplifiers, and HEOS pre-amplifiers to customers while knowing that use of these products will infringe the '197 design patent.

61. Defendants' infringement of the '197 design patent is also willful because, on information and belief, Defendants (a) had knowledge of the '197 design patent (*see* ¶ 15 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '197 design patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

62. Defendants' infringement of the '197 design patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## REQUEST FOR JURY TRIAL

Pursuant to FED. R. CIV. P. 38, Sonos demands a trial by jury of any issue triable of right by a jury.

## PRAYER FOR RELIEF

THEREFORE, Sonos prays for relief against Defendants as follows:

A. A judgment that Defendants have infringed and continue to infringe one or more claims of the asserted patents in violation of 35 U.S.C. § 271(a), (b), and (c), and that such infringement is willful;

B. A preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees and attorneys, and other persons in active concert or participation with Defendants, and their parents, subsidiaries, divisions, successors and assigns, from further infringement of the asserted patents;

C. A judgment awarding Sonos all damages adequate to compensate for Defendants' infringement of Sonos's asserted patents, and in no event less than a reasonable royalty for Defendants' acts of infringement, including all pre-judgment and post-judgment interest at the maximum rate permitted by law;

D. A judgment awarding Sonos all damages, including treble damages based on any infringement found to be willful, pursuant to 35 U.S.C. §§ 284 and/or 289, together with prejudgment interest;

  E. An assessment of costs, including reasonable attorney fees pursuant to 35 U.S.C. § 285, and prejudgment interest against Defendants; and

  F. Such other and further relief as this Court may deem just and proper.

             POTTER ANDERSON & CORROON LLP

OF COUNSEL:

Paul H. Berghoff
Sean M. Sullivan
Rory P. Shea
Ann C. Palma
McDonnell Boehnen Hulbert & Berghoff LLP
300 South Wacker Drive, Suite 3100
Chicago, Illinois 60606
(312) 913-0001

Dated: October 21, 2014
1169676

By: */s/ Philip A. Rovner*
  Philip A. Rovner (#3215)
  Jonathan A. Choa (#5319)
  Hercules Plaza
  P.O. Box 951
  Wilmington, DE 19899
  (302) 984-6000
  provner@potteranderson.com
  jchoa@potteranderson.com

*Attorneys for Plaintiff Sonos, Inc.*