# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SONOS, INC.,

        Plaintiff;

    v.

D&M HOLDINGS INC. d/b/a THE D+M
GROUP, D&M HOLDINGS U.S. INC., and
DENON ELECTRONICS (USA), LLC,

        Defendants.

Civil Action No. 14-1330-RGA

## MEMORANDUM OPINION

Philip A. Rovner, Esq. (argued), Jonathan A. Choa, Esq., POTTER ANDERSON & CORROON
LLP, Wilmington, DE; George I. Lee, Esq., Sean M. Sullivan, Esq., Rory P. Shea, Esq., J. Dan
Smith, Esq., LEE SULLIVAN SHEA & SMITH LLP, Chicago, IL.

Attorneys for Plaintiff.

Jack B. Blumenfeld, Esq., Michael J. Flynn, Esq., MORRIS, NICHOLS, ARSHT &TUNNELL
LLP, Wilmington, DE; John M. Jackson, Esq., Nathaniel (Nate) St. Clair II, Esq., Kurt A.
Schwarz, Esq. (argued), Matthew C. Acosta, Esq., JACKSON WALKER L.L.P, Dallas, TX;
David Folsom, Esq., JACKSON WALKER L.L.P., Texarkana, TX.

Attorneys for Defendants.

September _9_ , 2015

ANDREWS, U.S. DISTRICT JUDGE:

Before the Court is Defendants' motion to disqualify the law firm of Lee, Sullivan, Shea & Smith ("Lee Sullivan"). (D.I. 19). The matter has been fully briefed. (D.I. 20, 28, 45). The Court held oral argument on June 19, 2015. (D.I. 50). For the reasons set forth below, Defendants' motion is denied.

## I.    BACKGROUND

Plaintiff filed the present action for patent infringement against Defendants on October 21, 2014, alleging infringement of multiple patents relating to wireless audio technology. (D.I. 1). Plaintiff accuses Defendants' home entertainment operating system (HEOS) of infringement. (*Id.*). At the time of the complaint, Plaintiff was represented by the law firm McDonnell, Boehnen, Hulbert & Berghoff LLP ("McDonnell Boehnen"). McDonnell Boehnen has since withdrawn as Plaintiff's counsel. (D.I. 5). Plaintiff is now represented by Lee Sullivan. (D.I. 15).

McDonnell Boehnen began representing Defendants in patent related matters in 2002. (D.I. 33 ¶ 6). Mr. George Lee began working on patent litigation matters for Defendants in 2002 but stopped in March 2009. (*Id.* ¶ 8). Mr. Sean Sullivan worked on patent matters for Defendants between 2003 and mid-2007. (D.I. 36 ¶ 8). Mr. Rory Shea only worked on two assignments for Defendants, one as a summer associate in 2005 and another as an associate in September 2006. (D.I. 34 ¶ 8). Mr. Dan Smith never performed any work for Defendants. (D.I. 35 ¶ 8).

In early 2012, Mr. Lee began representing Plaintiff while he was still working at McDonnell Boehnen. (D.I. 33 ¶ 20). Defendants acquired the technology behind the accused HEOS product in the latter part of 2012. (D.I. 38-1 at 16 [Exh. C]). In June 2014, Defendants

1

launched the accused product. (D.I. 21 ¶ 11). Defendants issued a press release to this effect on June 2, 2014. (D.I. 38-1 at 2 [Exh. A]). On June 5, 2014, McDonnell Boehnen ended its attorney-client relationship with Defendants. (D.I. 23 ¶ 4; D.I. 33 ¶ 25). There is no allegation that any of the Lee Sullivan lawyers learned anything about HEOS from Defendants while at McDonnell Boehnen. (*See generally* D.I. 21).

Plaintiff asked McDonnell Boehnen to analyze Defendants' HEOS products for possible infringement in September 2014. (D.I. 33 ¶ 29). McDonnell Boehnen filed the complaint in the present case on behalf of Plaintiff in October 2014 (with Mr. Sullivan and Mr. Shea on the complaint (D.I. 1 at 20)). McDonnell Boehnen withdrew as Plaintiff's counsel on November 19, 2014. (D.I. 5). In December 2014, Mr. Lee, Mr. Sullivan, Mr. Shea, and Mr. Smith left McDonnell Boehnen. (D.I. 33, 34, 35 & 36). They formed Lee Sullivan on January 1, 2015. (D.I. 33 ¶ 4). Lee Sullivan entered an appearance in the present case on behalf of Plaintiff on January 26, 2015. (D.I. 15).

## II.    LEGAL STANDARD

This Court has summarized the relevant legal principles for determining a motion to disqualify:

> The Court has the inherent authority to supervise the professional conduct of attorneys appearing before it, including the power to disqualify an attorney from a representation. *See United States v. Miller*, 624 F.2d 1198, 1201 (3d Cir. 1980). Motions to disqualify are "generally disfavored" and, therefore, require the moving party to show clearly that "continued representation would be impermissible." *Talecris Biotherapeutics, Inc. v. Baxter Int'l Inc.*, 491 F. Supp. 2d 510, 513 (D. Del. 2007) (internal quotation marks and citations omitted); *see also Conley v. Chaffinch*, 431 F. Supp. 2d 494, 496 (D. Del. 2006) (same). Because "[t]he maintenance of public confidence in the propriety of the conduct of those associated with the administration of justice is so important," however, a court may disqualify an attorney "for failing to avoid

2

even the appearance of impropriety." *Kabi Pharmacia AB v. Alcon Surgical, Inc.*, 803 F. Supp. 957, 960 (D. Del. 1992).

Attorney conduct is governed by the ethical standards of the court before which the attorney appears. *See In re Corn Derivatives Antitrust Litig.*, 748 F.2d 157, 160 (3d Cir. 1984). The District of Delaware has adopted the Model Rules of Professional Conduct ("M.R.P.C."). *See* D. Del. LR 83.6(d)(2). M.R.P.C. Rule 1.9(a) provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing.

To establish that a representation violates Rule 1.9, four elements must be shown: "(1) the lawyer must have had an attorney-client relationship with the former client; (2) the present client's matter must either be the same as the matter the lawyer worked on for the first client, or a 'substantially related' matter; (3) the interests of the second client must be materially adverse to the interests of the former client; and (4) the former client must not have consented to the representation after consultation." *Apeldyn Corp. v. Samsung Elecs. Co., Ltd.*, 660 F. Supp. 2d 557, 561 (D. Del. 2009).

To determine whether a current matter is "substantially related" to a matter involved in a former representation, and, thus, whether disqualification under Rule 1.9 is appropriate, the Court must answer the following three questions: "(1) What is the nature and scope of the prior representation at issue? (2) What is the nature of the present lawsuit against the former client? (3) In the course of the prior representation, might the client have disclosed to his attorney confidences which could be relevant to the present action? In particular, could any such confidences be detrimental to the former client in the current litigation?" *Satellite Fin. Planning Corp. v. First Nat'l Bank of Wilmington*, 652 F. Supp. 1281, 1283 (D. Del. 1987) (internal quotation marks and citations omitted); *see also Talecris*, 491 F. Supp. 2d at 514.

As the Third Circuit has explained, M.R.P.C. 1.9 exists for the purpose of preventing "even the potential that a former client's confidences and secrets may be used against him," to maintain "public confidence in the integrity of the bar," and to fulfill a client's rightful expectation of "the loyalty of his attorney in the matter for which he is retained." *Corn Derivatives*, 748 F.2d at 162. Therefore, in attempting to determine whether a "substantial

relationship" exists, "disqualification is proper when the similarity in the two representations is enough to raise a common-sense inference that what the lawyer learned from his former client will prove useful in his representation of another client whose interests are adverse to those of the former client." *Cardona v. General Motors Corp.*, 942 F. Supp. 968, 973 (D.N.J. 1996) (internal quotation marks and citations omitted). While the party seeking disqualification bears the burden of establishing the existence of a substantial relationship, any doubts about whether disqualification is appropriate should be resolved in favor of the moving party, in order to ensure protection of client confidences. *See INA Underwriters v. Nalibotsky*, 594 F. Supp. 1199, 1207 (E.D. Pa. 1984); *see also Buschmeier v. G & G Invs., Inc.*, 2007 WL 4150408, at \*7 (E.D. Pa. Nov. 19, 2007).

To the extent that a motion to disqualify involves imputing an individual lawyer's representation to an entire firm, M.R.P.C. 1.10(a) is also relevant. Rule 1.10(a)(1) provides:

> While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7 or 1.9, unless the prohibition is based on a personal interest of the prohibited lawyer and does not present a significant risk of materially limiting the representation of the client by the remaining lawyers in the firm.

Rule 1.10(a)(2) applies in circumstances in which a firm is conflicted due to a prior representation undertaken by an attorney while the attorney was at a different law firm. Rule 1.10 "imputes one attorney's conflicts to all other attorneys in his firm." *United States v. McDade*, 404 Fed. App'x 681, 683 (3d Cir. Dec. 22, 2010); *see also Exterior Sys. v. Noble Composites, Inc.*, 210 F. Supp. 2d 1062, 1068 (N.D. Ind. 2002) ("Rule 1.10 addresses situations where a conflict of interest may be imputed to other lawyers associated in the same firm with the tainted lawyer.").

Resolving the question of whether to disqualify counsel requires the Court to "carefully sift all the facts and circumstances." *Nemours Found. v. Gilbane, Aetna, Fed. Ins. Co.*, 632 F. Supp. 418, 428 (D. Del. 1986) (internal citations and quotation marks omitted). Indeed, "whether disqualification is appropriate depends on the facts of the case and is never automatic." *Boston Scientific Corp. v. Johnson & Johnson, Inc.*, 647 F. Supp. 2d 369, 374 n.7 (D. Del. 2009). The required inquiry necessarily involves "a painstaking analysis of the facts." *Satellite Fin. Planning*, 652 F. Supp. at 1283

(internal quotation marks omitted); *see also Carlyle Towers Condo. Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) ("Disqualification questions are intensely fact-specific, and it is essential to approach such problems with a keen sense of practicality as well as a precise picture of the underlying facts."). Furthermore, the Court approaches motions to disqualify counsel with "cautious scrutiny," mindful of a litigant's right to the counsel of its choice. *Laker Airways, Ltd. v. Pan American World Airways*, 103 F.R.D. 22, 27–28 (D.D.C. 1984).

*Intellectual Ventures I LLC v. Checkpoint Software Techs. Ltd*, 2011 WL 2692968, \*4–6 (D. Del. June 22, 2011).

## III.   DISCUSSION

Defendants argue that Lee Sullivan should be disqualified under Rule 1.7, which pertains to concurrent conflicts of interest.   (D.I. 20 at 12).   Rule 1.7 states:

> (a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest.   A concurrent conflict of interest exists if:
> (1) the representation of one client will be directly adverse to another client; or
> (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

None of the Lee Sullivan lawyers has had an actual concurrent conflict of interest in the present case.   Mr. Lee, who was the last of the Lee Sullivan lawyers to do any work for Defendants, stopped working on matters for Defendants in March 2009 and began representing Plaintiff in early 2012.   (D.I. 33).   Defendants, however, were still clients of McDonnell Boehnen in 2012. I declined to take any *ex parte* submissions from Defendants (*see* D.I. 50 at 53), and thus it is possible that some of the patent applications that McDonnell Boehnen lawyers were pursuing on behalf of Plaintiff were "directly adverse" to the Defendants' interests.   There is no evidence, however, that any of the Lee Sullivan lawyers, as prohibited by Rule 1.10(a)(1), "knowingly"

5

represented Plaintiff at a time when they had any reason to believe (let alone knowledge) that there was a conflict with another client's interests. Plaintiff operates in the field of wireless audio technology, and Defendants did not publicly enter this field until they released their HEOS product in June 2014. Thus, when Mr. Lee began representing Plaintiff in litigation in 2012, he had no concurrent conflict, and during the entire time McDonnell Boehnen represented Defendants in 2012 to 2014, he had no actual concurrent conflict and did not violate any disciplinary rules. Therefore, Rule 1.7 does not apply.[1]

Since I have not reviewed the proffered *ex parte* materials, I will assume without deciding that Rule 1.7(a) applied to the Lee Sullivan lawyers while at McDonnell Boehnen as imputed grounds for disqualification. *See* Rule 1.10(a)(1). I do not think this matters. When the Lee Sullivan lawyers left McDonnell Boehnen, they left any imputed disqualifications behind them. The rule of imputed disqualification applies "[w]hile lawyers are associated in a firm." *Id.* When lawyers are no longer associated in a firm, they are not subject to the imputed disqualifications they had while in the firm. Plaintiff raised this argument in its brief, citing multiple cases. (D.I. 32, pp. 13-17). Defendants did not respond to it in their reply brief. (D.I. 45). Plaintiff raised this argument again at oral argument. (D.I. 50 at 30-35). Defendants responded, but without disagreeing with Plaintiff that imputed disqualification would not follow the Lee Sullivan lawyers to their new firm. Rather, Defendants' position was that the Lee Sullivan lawyers had an actual conflict because two of them had signed the complaint in this

---

1 Defendants also rely on the so-called "hot potato" doctrine for their Rule 1.7 argument. The Third Circuit, however, has not had occasion to adopt the hot potato doctrine. The evidence in the record is the decision to terminate the attorney-client relationship with Defendants was not made by any of the Lee Sullivan lawyers. Therefore, assuming the existence of the "hot potato" doctrine, I do not find that it applies here to the Lee Sullivan lawyers.

case. (D.I. 50 at 48). Thus, Defendants do not contest Plaintiff's argument that imputed disqualification does not follow them to their new firm.

As for Defendants' position at oral argument, I disagree. When the two Lee Sullivan lawyers signed the complaint, Defendants had not been McDonnell Boehnen's client for about 4½ months. An imputed conflict does not become an actual conflict just because it is not noticed.

Defendants also argue that Lee Sullivan should be disqualified under Rule 1.9, which pertains to conflicts of interest arising out of an attorney-client relationship with a former client. (D.I. 20 at 15). It is undisputed that Defendants are former clients of the Lee Sullivan attorneys and that Plaintiff's and Defendants' interests are materially adverse in the present case. The only issue is whether Lee Sullivan's current representation of Plaintiff is the "same" or "substantially related" to its attorneys' prior representation of Defendants while at McDonnell Boehnen. I find it is not.

Although the Lee Sullivan attorneys' prior representation of Defendants involved matters relating to patent litigation, it involved different patents and different products. Defendants were not operating in the field of wireless audio technology until Defendants launched their HEOS product in June 2014. At the time this occurred, McDonnell Boehnen ended its attorney-client relationship with Defendants. Thus, anything the Lee Sullivan attorneys worked on for Defendants prior to March 2009 (as they did no work for Defendants after then) is not substantially related to their representation of Plaintiff. The present litigation is solely related to the asserted patents and the accused HEOS technology. Any confidences that Defendants disclosed to the Lee Sullivan attorneys during their prior representation occurred before March 2009 and involved unrelated patents and technology. Thus, no confidential information

7

disclosed in prior cases would be relevant to the patents or technology in suit. At most, Defendants disclosed their general strategy for handling patent litigation, which is not enough to warrant disqualification. Thus, I do not believe there is any evidence that the Lee Sullivan attorneys' representation of Plaintiff in this case is substantially related to any of the work previously performed for Defendants. Therefore, the Lee Sullivan attorneys have no actual or imputed conflicts of interest, and I will not disqualify them.

## IV.    CONCLUSION

For the reasons set forth herein, Defendants' motion is denied. A separate order will be entered.