

1313 North Market Street
P.O. Box 951
Wilmington, DE  19899-0951
302 984 6000
www.potteranderson.com

**Philip A. Rovner**
Partner
provner@potteranderson.com
(302) 984-6140  Direct Phone
(302) 658-1192  Fax

December 22, 2016

**BY CM/ECF**

The Honorable Richard G. Andrews
United States District Court for the District of Delaware
844 N. King Street
Wilmington, DE  19801

    Re: <u>Sonos, Inc. v. D&M Holdings Inc., et al.</u>, C.A. No. 14-1330-RGA (D. Del.)

  Pursuant to the Court's request at the *Markman* hearing on December 14, 2016, Sonos provides the following supplemental information for claim construction in the above-identified case.

I.   **INTRINSIC EVIDENCE**

  a. **Legal Scope of Intrinsic Evidence**

  First, the intrinsic evidence for an asserted patent includes, *inter alia*, any other patent (as well as its file history) to which the asserted patent claims priority or otherwise shares a formal familial relationship.  *See, e.g.*, *E.I. du Pont de Nemours and Co. v. Unifrax I LLC*, C.A. No. 14-1250-RGA, 2016 WL 158031 at *8 (D. Del. Jan. 13, 2016) (finding that "the statement in the '027 patent is intrinsic evidence because the '027 patent bears a formal familial relationship to the '926 patent" (citing *Goldenberg v. Cytogen, Inc.*, 373 F.3d 1158, 1167–68 (Fed. Cir. 2004); *Wang Labs., Inc. v. Am. Online, Inc.*, 197 F.3d 1377, 1384 (Fed. Cir. 1999); *U.S. Water Servs., Inc. v. Novozymes A/S*, C.A. No. 13-864-JDP, 2015 WL 4634352, at *6 (W.D. Wis. July 29, 2015))); *see also Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 980 (Fed. Cir. 1999) ("When multiple patents derive from the same initial application, the prosecution history regarding a claim limitation in any patent that has issued applies with equal force to subsequently issued patents that contain the same claim limitation.").  For instance, if the asserted patent claims priority to a "parent" patent,[1] either as a straight continuation or a continuation-in-part, the parent

---

[1] For purposes of this letter, the term "parent" patent refers to any patent up the chain from an asserted patent, including a true parent patent, a grandparent patent, a great-grandparent patent, and so on.

The Honorable Richard G. Andrews
December 22, 2016
Page 2

patent and its file history are intrinsic evidence to the asserted child patent.[2]  Likewise, if a "child" patent claims priority to the asserted patent, either as a straight continuation or a continuation-in-part, the child patent and its file history are intrinsic evidence to the asserted parent patent.[3]  Lastly, if the asserted patent and another "sibling" patent both claim priority to the same "parent" patent, either as straight continuations or continuations-in-part, the sibling patent and its file history are intrinsic evidence to the asserted patent.[4]

In addition, the intrinsic evidence for an asserted patent also includes any patent or other material incorporated by reference therein, as well as any prior art cited in the asserted patent or its file history.  *Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231 (Fed. Cir. 2011) ("Our cases establish that 'prior art cited in a patent or cited in the prosecution history of the patent constitutes intrinsic evidence.'" (quoting *Kumar v. Ovonic Battery Co., Inc.*, 351 F.3d 1364, 1368 (Fed. Cir. 2003))); *Cook Biotech Inc. v. Acell, Inc.*, 460 F.3d 1365, 1378 n.7 (Fed. Cir. 2006) (finding that the patentee's definition of a term contained in a patent incorporated by reference was intrinsic evidence to the asserted patent); *Sys. Div., Inc. v. Teknek LLC*, 59 F. App'x. 333, 340 (Fed. Cir. 2003) ("The ['714] patent was incorporated by reference in its entirety into the '073 patent, thus rendering the '714 patent intrinsic evidence with respect to the patents-in-suit."); *E.I. du Pont*, 2016 WL 158031 at *8; *see also Advanced Display Sys. Inc. v. Kent State Univ.*, 212 F.3d 1272, 1282 (Fed. Cir. 2000) ("Incorporation by reference provides a

---

[2] *See, e.g.*, *E.I. du Pont*, 2016 WL 158031 at *8 (finding statement in a parent patent to be intrinsic evidence to a continuation-in-part patent that did not contain the statement); *see also Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1333-34 (Fed. Cir. 2003) ("Despite Omega's assertions to the contrary, prosecution disclaimer may arise from disavowals made during the prosecution of ancestor patent applications. . . . Consequently, that the '678 patent is a continuation-in-part of the '880 patent does not shield it from narrowing disclaimers made during the prosecution of a parent application." (citing, *e.g.*, *Wang Labs.*, 197 F.3d at 1384)); *Jonsson v. Stanley Works*, 903 F.2d 812, 818 (Fed. Cir. 1990) ("The '912 patent is the result of a continuation-in-part application from the original '008 application, which led to the '251 patent. Hence, the prosecution history of the '251 patent and the construction of the term 'diffuse light' contained in that patent, is relevant to an understanding of 'diffuse light' as that term is used in the '912 patent.").

[3] *See, e.g.*, *Datamize, LLC v. Plumtree Software, Inc.*, 417 F.3d 1342, 1348 (Fed. Cir. 2005) (finding prosecution history of child continuation patent to be intrinsic evidence to parent patent), *abrogated on other grounds by Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120 (2014); *Contech Stormwater Sols., Inc. v. Baysaver Techs., Inc.*, 310 F. App'x 404, 407 (Fed. Cir. 2009) ("The disclosure in the '639 patent is relevant for claim construction of the earlier '527 patent claim because the '639 patent was issued to the same inventors from a continuation-in-part of the '527 patent.").

[4] *See, e.g.*, *Microsoft Corp. v. Multi-Tech Systems, Inc.*, 357 F.3d 1340, 1349-50 (Fed. Cir. 2004) (finding prosecution history of one sibling patent to be intrinsic evidence to two other sibling patents and stating that "we have held that the prosecution history of one patent is relevant to an understanding of the scope of a common term in a second patent stemming from the same parent application."); *Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1460 n.2 (Fed. Cir. 1998) (applying the prosecution histories of two sibling patents to one another).

The Honorable Richard G. Andrews
December 22, 2016
Page 3

method for integrating material from various documents into a host document . . . by citing such material in a manner that makes clear that the material is effectively part of the host document as if it were explicitly contained therein.").

### b. Intrinsic Evidence of the Asserted Patents

To illustrate the familial relationships between all of the asserted patents, as well as the relevant incorporations by reference, Sonos has prepared the attached patent tree. *See* Exhibit A. As shown in the patent tree and explained by Mr. Shea at the *Markman* hearing, Sonos filed its first non-provisional utility patent application in April 2004, which issued as U.S. Pat. No. 8,234,395 (the "'395 Patent"), and this the '395 Patent serves as intrinsic evidence for eight (8) of the eleven (11) asserted patents here. In particular, the '395 Patent is (1) a "parent" patent of the '258, '357, '637, '014, and '949 Patents and (2) is incorporated by reference into the '509, '959, and '312 Patents. The table attached as Exhibit B summarizes which Sonos patents are intrinsic evidence for each asserted patent.[5]

During the *Markman* hearing, D&M mistakenly represented that the '258 Patent could not be used as intrinsic evidence because it was a continuation-in-part application, rather than a straight continuation application from the '395 Patent. After conferring on this issue, D&M now acknowledges that its statement at the hearing was in error, and that the '258 Patent is a straight continuation application from—and shares a common specification with—the '395 Patent. The parties further agree that the '395 Patent is intrinsic evidence to the '014 Patent.

The only remaining dispute on this issue appears to be whether the '258 Patent is intrinsic evidence to the '014 Patent. For the reasons set forth herein, however, it clearly is. The '258 and '014 Patents share a formal familial relationship as "sibling" patents that both claim priority to the '395 Patent, and therefore are intrinsic evidence to each other. This sibling relationship is illustrated below:

---

[5] For the sake of brevity, however, Sonos has not identified all the children and siblings that constitute non-asserted intrinsic patents.

The Honorable Richard G. Andrews
December 22, 2016
Page 4



However, even if the '258 Patent was not technically intrinsic evidence to the '014 Patent, this has no bearing on the claim construction issues presented to the Court, because as noted above, the '258 Patent shares a common specification with the '395 Patent that is indisputably intrinsic evidence to the '014 Patent. Thus, Sonos's citations to the specification of the '258 Patent can be found verbatim in the common specification of the '395 Patent. In fact, not only does the '258 Patent share a common specification with the '395 Patent, but it also incorporates the entire '395 Patent by reference. Exhibit C (attached hereto) provides a table showing the correlation between Sonos's '258 Patent citations and the corresponding citations in the '395 Patent. Given this fact, even D&M's counsel has acknowledged that its argument regarding the relationship between the '258 Patent and the '014 Patent is "form over substance."

## II.    "AUDIO" TERMS

Sonos maintains its position that no construction of the "audio" terms is necessary, because each is an ordinary term that a juror will have no trouble understanding–especially given the context of how these terms are used in their respective claims. In particular, Sonos's position is that the "audio" terms cover audio that may take various forms, such as an electrical representation of audio (*e.g.*, an analog or digital representation), sound waves, or both, depending on how those terms are used in their respective claims. Notably, D&M agrees with Sonos that the "audio" terms cover "encoded sound" (*i.e.*, electrical representations of audio) that may take different forms, including digital or analog representations. However, D&M argues that these five (5) different "audio" terms should all be assigned a single, uniform construction that is limited to encoded sound (in its various forms) and excludes the sound itself (*i.e.*, sound waves), regardless of context. Sonos disagrees with this construction for the reasons set forth in the Joint Claim Construction Brief ("Joint Brief") and at the *Markman* hearing.

Pursuant to the Court's request, Sonos provides the following table that explains whether use of the "audio" terms in their respective claims of each patent covers sound waves. For those

The Honorable Richard G. Andrews
December 22, 2016
Page 5

uses of the "audio" terms that do cover sound waves, Sonos has also provided a brief, exemplary explanation as to how the surrounding claim context provides support for this scope.

| Asserted Patent | "Audio" Term | Does Scope Cover Sound Waves? | Support for Sound Waves |
|---|---|---|---|
| 9,195,258 | "Audio content" | No | N/A |
| 9,213,357 | "Audio information" | Yes | The claims recite "play back the audio information" and "playback of the audio information." *See, e.g.*, Claim 1.<br><br>In the context of the claims and the other intrinsic evidence, "play back" / "playback" of "audio information" covers the output of "audio information" either as an electrical representation or as sound waves (*i.e.*, out loud), and thus shows that the term "audio information" covers sound waves in the context of these claims. |
| 8,938,637 | "Audio information" | Yes | Some of the claims recite "outputting audio information . . . via the playback device." *See, e.g.*, Claim 9.<br><br>In the context of the claims and the other intrinsic evidence, "output[]" of "audio information" covers the output of "audio information" either as an electrical representation or as sound waves (*i.e.*, out loud), and thus shows that the term "audio information" covers sound waves in the context of these claims. |
| 9,202,509 | "Audio data stream" | No | N/A |
| 9,219,959 | "Audio data" | No | N/A |

The Honorable Richard G. Andrews
December 22, 2016
Page 6

| Asserted Patent | "Audio" Term | Does Scope Cover Sound Waves? | Support for Sound Waves |
|---|---|---|---|
| 9,042,556 | "Audio data stream" | Yes | Some of the claims recite that "the speaker transducer is to . . . output the audio data stream." *See, e.g.*, Claim 28.<br><br>In the context of the claims and the other intrinsic evidence, "output" of "an audio data stream" via a "speaker transducer" clearly covers the output of sound waves out loud, and thus shows that the term "audio data stream" covers sound waves in the context of these claims. |
| 8,938,312 | "Audio signal" | Yes | The claims recite "playback of a second audio signal being played by the playback device" and a "playback device to play the first audio signal." *See, e.g.*, Claim 1. Some of the claims also recite "to modify a volume level of the playback device to a predetermined volume when the playback device plays the first audio signal". *See, e.g.*, Claim 7.<br><br>In the context of the claims and the other intrinsic evidence, "playback," "play," "played," and "plays" an "audio signal" covers the output of an "audio signal" either as an electrical representation or as sound waves (*i.e.*, out loud), and thus shows that the term "audio signal" covers sound waves in the context of these claim |
| | "Audio data" | No | N/A |

The Honorable Richard G. Andrews
December 22, 2016
Page 7

| Asserted Patent | "Audio" Term | Does Scope Cover Sound Waves? | Support for Sound Waves |
|---|---|---|---|
| 8,843,224 | "Audio signal" | Yes | Some of the claims recite "amplifying the audio signal to drive playback of the audio signal through one or more speakers." *See, e.g.*, Claim 8.<br><br>In the context of the claims and the other intrinsic evidence, "playback of the audio signal" covers the output of the "audio signal" either as an electrical representation or as sound waves (*i.e.*, out loud), and thus shows that the term "audio signal" covers sound waves in the context of these claims. |
| | "Audio data" | No | N/A |

      Thus, as shown above, the use of these "audio" terms in the claims of some patents does cover both electrical representations of audio and sound waves, while the use of these "audio" terms in the claims of other patents refers specifically to electrical representations of audio and not sound waves.

Respectfully,

*/s/ Philip A. Rovner*

Philip A. Rovner (#3215)

cc:  All Counsel of Record –  by CM/ECF
1240983