**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SONOS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 14-1330-RGA |
| | ) |
| D&M HOLDINGS INC. d/b/a THE | ) |
| D+M GROUP, D&M HOLDINGS U.S. | ) |
| INC., and DENON ELECTRONICS | ) |
| (USA), LLC, | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF SONOS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION FOR
SUMMARY JUDGMENT ON FOUR OF DEFENDANTS' AFFIRMATIVE DEFENSES**

OF COUNSEL:
George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 N Desplaines St, Suite 250
Chicago, IL 60661
(312) 754-0002

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Alan R. Silverstein (#5066)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
asilverstein@potteranderson.com

Dated: June 2, 2017

*Attorneys for Plaintiff
Sonos, Inc.*

**TABLE OF CONTENTS**

INTRODUCTION………………………………………………………………………………...1

NATURE AND STAGE OF THE PROCEEDINGS……………………………………………..1

STATEMENT OF FACTS………………………………………………………………………..3

ARGUMENT……………………………………………………………………………………...6

    I.       D&M CANNOT CARRY ITS BURDEN ON ITS PATENT MISUSE
            AFFIRMATIVE DEFENSE……………………………………………………………7

          A.      Legal Standard for Patent Misuse…………………………………………7

          B.      D&M Has No Factual Basis for its Patent Misuse Affirmative Defense…8

    II.      D&M CANNOT CARRY ITS BURDEN ON ITS PROSECUTION
            LACHES AFFIRMATIVE DEFENSE……………………………………………10

          A.      Legal Standard for Prosecution Laches……………………………….10

          B.      D&M Has No Factual Basis for its Prosecution Laches Affirmative
                Defense……………………………………………………………………..11

    III.    D&M CANNOT CARRY ITS BURDEN ON ITS INTERVENING
            RIGHTS AFFIRMATIVE DEFENSE…………………………………………...13

    IV.    D&M CANNOT CARRY ITS BURDEN ON ITS PATENT
            EXHAUSTION/ FIRST SALE DOCTRINE AFFIRMATIVE DEFENSE……..14

    V.     CONCLUSION…………………………………………………………………..15

# TABLE OF AUTHORITIES

**CASES**

Page(s)

*C.R. Bard, Inc. v. M3 Sys., Inc.*,
 157 F.3d 1340 (Fed. Cir. 1998).................................................................................................8

*Cancer Research Tech. Ltd. v. Barr Labs., Inc.*,
 625 F.3d 724 (Fed. Cir. 2010)............................................................................................10, 11

*Cordance Corp. v. Amazon.com, Inc.*,
 631 F. Supp. 2d 484 (D. Del. 2009).................................................................................10, 11

*CPC Int'l Inc. v. Archer Daniels Midland Co.*,
 831 F. Supp. 1091 (D. Del. 1993), aff'd, 31 F.3d 1176 (Fed. Cir. 1994) .................................7

*Delaware Display Group LLC v. VIZIO, Inc.*,
 C.A. No. 13-2112-RGA, 2017 WL 784988 (D. Del. Mar. 1, 2017).........................................6

*E.I. Dupont De Nemours and Company, v. Unifrax I LLC*,
 C.A. No. 14-1250-RGA, 2017 WL 1822279 (D. Del. May 5, 2017) ......................................6

*Impression Products, Inc. v. Lexmark International, Inc.*,
 No. 15-1189, 2017 WL 2322830, 581 U.S. __ (May 30, 2017) ............................................14

*Keurig, Inc. v. Sturm Foods, Inc.*,
 732 F.3d 1370 (Fed. Cir. 2013)...............................................................................................14

*Marine Polymer Techs., Inc. v. HemCon, Inc.*,
 672 F.3d 1350 (Fed. Cir. 2012)...............................................................................................13

*Medtronic, Inc. v. Boston Sci. Corp.*,
 777 F. Supp. 2d 750 (D. Del. 2011)........................................................................................12

*Princo Corp. v. Int'l Trade Comm'n*,
 616 F.3d 1318 (Fed. Cir. 2010)......................................................................................8, 9, 10

*Samsung Elecs. Co., Ltd. V. Panasonic Corp.*,
 C.A. No. 10-3098 (JSW), 2011 WL 9529403 (N.D. Cal. Aug. 25, 2011) .............................10

*Senju Pharmaceutical Co., Ltd. v. Lupin Limited and Lupin Pharmaceuticals, Inc.*,
 C.A. No. 11-271-SLR, 2013 WL 4101820 (D. Del. Aug. 9, 2013)........................................13

*United States v. Noe*,
 821 F.2d 604 (11th Cir. 1987) ..................................................................................................7

*Va. Panel Corp. v. MAC Panel Co.*,
 133 F.3d 860 (Fed. Cir. 1997) ................................................................................................ 7-8

*Windsurfing Intern. Inc. v. AMF, Inc.*,
 782 F.2d 995 (Fed. Cir. 1986) ................................................................................................... 13

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
 395 U.S. 100 (1969) .................................................................................................................. 10


**STATUTES**

**Page(s)**

35 U.S.C. § 271(d) ........................................................................................................................ 8, 9

Sonos, Inc. ("Sonos") respectfully submits this opening brief in support of its motion for summary judgment on Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC's (collectively, "D&M") affirmative defenses of patent misuse, prosecution laches, intervening rights, and patent exhaustion/first sale doctrine.

## INTRODUCTION

Despite having the full benefit of fact discovery and expert reports, D&M has not supported its affirmative defenses of patent misuse, prosecution laches, intervening rights, and patent exhaustion/first sale doctrine with any facts.  Indeed, D&M's only explanation of these affirmative defenses has come in its unverified answers and its motion papers.

Of course, pleadings are not evidence, but even if they were, D&M's affirmative defenses are legally deficient.  Therefore, there is no issue of material fact and D&M cannot sustain its burden of proof.  Summary judgment should be awarded to Sonos on these four affirmative defenses.

## NATURE AND STAGE OF THE PROCEEDINGS

On October 21, 2014, Sonos filed its original complaint for patent infringement against D&M.  D.I. 1.  Sonos filed a First Amended Complaint on December 17, 2014 and D&M moved to dismiss that complaint on February 9, 2015.  D.I. 16.  In response, Sonos filed a Second Amended Complaint on March 9, 2015.  D.I. 31.

On April 30, 2015, D&M filed its first Answer in this case in response to Sonos's Second Amended Complaint.  D.I. 48.  On November 30, 2015, D&M then moved for leave to amend its Answer to Sonos's Second Amended Complaint to add counterclaims accusing Sonos of infringing D&M's patents.  D.I. 81.  While D&M's motion for leave was pending, Sonos filed its

own motion for leave on January 29, 2016, seeking permission to file a Third Amended Complaint. D.I. 93; D.I. 94.

On March 7, 2016, the Court granted D&M's motion for leave to amend its Answer to Sonos's Second Amended Complaint, and D&M's amended answer was entered on the docket. D.I. 101. The Court then immediately severed D&M's infringement counterclaims into a new case (C.A. No. 16-141-RGA). In turn, the Court granted Sonos's motion for leave to file its Third Amended Complaint, which was also entered on the docket. D.I. 102.

On March 28, 2016, D&M filed its Answer to Sonos's Third Amended Complaint, which included eleven affirmative defenses. D.I. 106. On April 21, 2016, Sonos moved under Federal Rule of Civil Procedure 12(f) to strike six of D&M's affirmative defenses, including patent misuse, prosecution laches and patent exhaustion/first sale doctrine. D.I. 111. While Sonos's motion to strike was pending, on August 1, 2016, D&M filed a motion for leave to add the affirmative defense of inequitable conduct. D.I. 141.

On August 10, 2016, Chief Magistrate Judge Thynge issued her Report and Recommendation striking, *inter alia*, D&M's patent misuse and prosecution laches affirmative defenses, but granted D&M leave to replead. D.I. 143 at 14-16. As to D&M's patent exhaustion defense, Judge Thynge credited D&M's claim that they did not have sufficient information regarding "any licensing agreements [that] authorized D&M to produce the accused products." *Id.* at 15. She then held that "[d]iscovery for both sides, rather than a motion to strike, is the more appropriate route to learn further information." *Id*. On September 1, 2016, the Court adopted Judge Thynge's Report and Recommendation. D.I. 157. Six days later, D&M filed its First Amended Answer to Plaintiff's Third Amended Complaint. D.I. 158.

On February 6, 2017, the Court denied D&M leave to amend their answer to add the affirmative defense of inequitable estoppel. D.I. 227. On April 21, 2017, with the Court's permission, Sonos filed its Supplemental Third Amended Complaint (D.I. 263), the operative complaint in this case ("Operative Complaint"). Two weeks later, D&M filed its Answer to Third Amended Complaint (D.I. 266), the operative answer in this case (the "Operative Answer").

In its Operative Answer, D&M largely repeated its affirmative defenses, despite having more than two years of discovery. For example, in the first answer D&M filed, it alleged that "[b]ased on information and belief, Sonos's claims for relief are limited and/or barred by intervening rights." D.I. 48 at 17. Two years later, in the Operative Answer, D&M still just alleges that "[b]ased on information and belief, Sonos's claims for relief are limited and/or barred by intervening rights." D.I. 266 at 21. The same is true for D&M's patent exhaustion/first sale doctrine defense. In April 2015, D&M alleged that "[u]pon information and belief, Sonos is barred in whole or in part by the doctrines of patent exhaustion, patent misuse, and/or the first sale doctrine from enforcing the Patents-in-Suit against Defendants." D.I. 48 at 17. In May 2016, the allegation was still just "[u]pon information and belief, Sonos is barred in whole or in part by the doctrines of patent exhaustion and/or the first sale doctrine from enforcing the Patents-in-Suit against Defendants." D.I. 266 at 20. Similarly, D&M's allegations regarding patent misuse and prosecution laches have not changed since D&M replead them in September 2016 in response to Judge Thynge's ruling.

## STATEMENT OF FACTS

Sonos began in 2002 as an American start-up consumer electronics company with a goal of reinventing home audio for the digital age. To achieve this goal, Sonos worked to create a

networked home audio system based on new audio players called "Zone Players," which are "smart" network audio devices that connect to a home data network and can be placed in any room throughout a user's home. *See* D.I. 201, Ex. 1. Once connected to the home data network, each Zone Player has the ability to access any audio source that is available on either the home data network or the Internet. *Id.* As a result, each Zone Player in the user's home can play different audio, or Zone Players in different rooms can be grouped together to play the same audio throughout the user's home in synchrony. *Id.* Each Zone Player can also be controlled from anywhere in the user's home via a "Controller" device that is also connected to the home data network. *Id.*

In June 2014, Defendants launched their own wireless audio system, which is called "HEOS by Denon" ("the HEOS system"). Operative Complaint at ¶ 15. The HEOS system is made up of a line of HEOS wireless audio products, including the "HEOS 7" speaker, the "HEOS 5" speaker, the "HEOS 3" speaker, "HEOS 1" speaker, the "HEOS LINK" pre-amplifier, the "HEOS AMP" amplifier, the "HEOS Drive" multi-room amplifier, and the "HEOS HomeCinema" TV sound system, all of which are controlled by the HEOS app (for iOS, Android, or Kindle). *Id.* at ¶ 15.

Sonos's Supplemental Third Amended Complaint asserts claims against D&M for infringement of U.S. Pat. Nos. 9,219,959 ("'959 Patent); 7,571,014 ("'014 Patent"); 8,588,949 ("'949 Patent"); D559,197 ("'197 Patent");[1] 9,042,556 ("'556 Patent"); 9,202,509 ("'509 Patent"); 8,938,312 ("'312 Patent"); 8,843,224 ("'224 Patent"); 9,130,771 ("'771 Patent"); 9,213,357 ("'357 Patent"); 9,195,258 ("'258 Patent"); and the 8,938,637 ("'637 Patent")

---

[1] Claims involving the '197 Patent are stayed pursuant to an agreement of the parties and the Court's order on February 7, 2017. D.I. 229.

4

(collectively, the "Asserted Patents"). *Id.* at ¶¶ 25-167. The Asserted Patents are directed to various aspects of Sonos's networked audio system. *See id.* at ¶ 14.

On May 3, 2016, Sonos served its Second Set of Interrogatories to Defendants. Interrogatory Number 14 asked D&M to:

> Describe in detail the complete legal and factual basis for each defense plead in D&M's Answer to Sonos's Third Amended Complaint. D&M's response should include an identification of all facts supporting or refuting D&M's defenses, all persons knowledgeable of these facts (including every person whose knowledge or opinion is relied upon as a basis for D&M's defenses, the opinion or substance of his/her knowledge, and the entire basis of that knowledge or opinion), and all documents and things, including the Bates number(s) of such documents and things, concerning D&M's defenses.

Exhibit 1 to the Declaration of Philip A. Rovner, dated June 2, 2017 ("Rovner Dec.").

In its original and amended response, D&M provided only boilerplate objections, cited to its production of alleged prior art and incorporated various unverified pleadings and future expert reports. D&M failed to cite a single probative fact in the various permutations of its response. In its Amended Objections and Responses to Plaintiff Sonos, Inc.'s Second Set of Interrogatories, served on November 18, 2016, the day fact discovery closed, D&M still failed to cite a single fact in support of it affirmative defenses. Exhibit 2 to Rovner Dec.

D&M's expert reports are also silent on its allegations regarding patent misuse, prosecution laches, intervening rights, and patent exhaustion/first sale doctrine. Moreover, the parties agreed that they could "supplement [their] interrogatory responses to incorporate material timely disclosed in an expert report within ten days after service of the replies to expert reports." D.I. 210. However, D&M never supplemented its Amended Objections and Responses to Plaintiff Sonos, Inc.'s Second Set of Interrogatories.

5

# ARGUMENT

This Court is well familiar with the standard for summary judgment:

The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."

The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. A non-moving party asserting that a fact is genuinely disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence ... of a genuine dispute ...."

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.

*E.I. Dupont De Nemours and Company, v. Unifrax I LLC*, C.A. No. 14-1250-RGA, 2017 WL 1822279, at *1 (D. Del. May 5, 2017) (internal citations omitted); *see also Delaware Display Group LLC v. VIZIO, Inc.*, C.A. No. 13-2112-RGA, 2017 WL 784988, at *1 (D. Del. Mar. 1, 2017) (same).

Alternatively, the Court should strike D&M's affirmative defenses for failure to adequately respond to Interrogatory No. 14. Despite serving amended interrogatory responses, and having the opportunity to supplement again after the exchange of expert reply reports, D&M

has never notified Sonos of either the legal theory or the facts that allegedly support D&M's affirmative defenses at issue in this motion.

The Federal Rules of Civil Procedure "were designed to prevent" a "trial by ambush." *See, e.g., United States v. Noe*, 821 F.2d 604, 608 (11th Cir. 1987). Yet, that is exactly what D&M attempts here. When asked, after the exchange of expert reports, whether D&M intended to go forward for with its patent misuse, prosecution laches, intervening rights, and patent exhaustion/first sale doctrine defenses, D&M's counsel said, "we do not have plans to drop those defenses, but are happy to have a conversation about those defenses as part of a larger conversation about case narrowing that includes the reduction in asserted claims (among other things) required by the Stipulation that the parties filed last November/December." Ex. 3 to Rovner Dec.

All Sonos has to rely on to prepare for trial is a vague and ambiguous pleading (the Operative Answer) and motion papers submitted at the outset of the case (the response to Sonos's motion to strike) that provide only general statements of the law without any applicable facts. Because D&M failed to provide a substantive answer to Sonos's discovery requests, D&M's affirmative defenses of patent misuse, prosecution laches, intervening rights, and patent exhaustion/first sale doctrine should be struck. *See, e.g., CPC Int'l Inc. v. Archer Daniels Midland Co.*, 831 F. Supp. 1091, 1102-03 (D. Del. 1993) (defendant waived its right to certain infringement defenses because it failed to raise those defenses in response to plaintiff's interrogatories during discovery), *aff'd*, 31 F.3d 1176 (Fed. Cir. 1994).

## I.   D&M CANNOT CARRY ITS BURDEN ON ITS PATENT MISUSE AFFIRMATIVE DEFENSE

### A.   Legal Standard for Patent Misuse

"Patent misuse is an affirmative defense to an accusation of patent infringement, the

7

successful assertion of which requires that the alleged infringer show that the patentee has impermissibly broadened the physical or temporal scope of the patent grant with anticompetitive effect." *Va. Panel Corp. v. MAC Panel Co.*, 133 F.3d 860, 868 (Fed. Cir. 1997) (internal quotation marks omitted). "The key inquiry is whether, by imposing conditions that derive their force from the patent, the patentee has impermissibly broadened the scope of the patent grant with anticompetitive effect." *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d 1340, 1372 (Fed. Cir. 1998). "[T]ying arrangements in which a patentee conditions a license under the patent on the purchase of a separable, staple good and arrangements in which a patentee effectively extends the term of its patent by requiring post-expiration royalties" are examples of *per se* patent misuse so long as such practices are undertaken when the patentee has market power in the relevant market. *Va. Panel Corp.*, 133 F.3d at 869; 35 U.S.C. § 271(d). When a practice is not per se patent misuse, the practice may still constitute patent misuse if it "has the effect of extending the patentee's statutory rights and does so with an anti-competitive effect." *Va. Panel Corp.*, 133 F.3d at 869. "What patent misuse is about, in short, is 'patent leverage,' i.e., the use of the patent power to impose overbroad conditions on the use of the patent in suit that are 'not within the reach of the monopoly granted by the Government.'" *Princo Corp. v. Int'l Trade Comm'n*, 616 F.3d 1318, 1331 (Fed. Cir. 2010).

### B. D&M Has No Factual Basis for its Patent Misuse Affirmative Defense

The entire substance of D&M's patent misuse allegations is found in paragraphs 11-19 of its Operative Answer:

> Given that each of the named patents is directed to only a very narrow portion of functionality performed by the Control (CR 200) and controller applications, it appears that Sonos is improperly attempting to tie the narrow patented features of its products to unpatented staple technology. This is directly prohibited by the doctrine of patent misuse…. Sonos's tying of its speaker products and control

8

        application improperly conditions the licensing of the patentable features of Sonos's products upon the purchase of non-patentable features.

D.I. 266 at ¶¶ 15-16. In other words, D&M alleges that because Sonos's patents do not cover the entire product, Sonos is guilty of tying.

        These unverified allegations are D&M's only explanation of its patent misuse defense. As explained above, Interrogatory No. 14 requested the complete legal and factual basis for D&M's patent misuse affirmative defense. D&M's response, to the extent relevant, refers only to D&M's Operative Answer and its response to Sonos's Motion to Strike Affirmative Defenses (D.I. 119) ("Response to the Motion to Strike"). However, D&M's Response to the Motion to Strike, like its Operative Answer, does not cite any facts and does not provide any further explanation of D&M's basis for this defense. Simply put, after the close of fact discovery and the exchange of expert reports, D&M's affirmative defense of patent misuse consists entirely of unsubstantiated allegations contained in pleadings and motion papers with no supporting facts.

        D&M cannot point to a single license agreement that ties the patents at issue to an unpatented product. D&M's example in its affirmative defenses relating to the Control—the only example provided[2]—requires D&M to point to at least some license agreement that allegedly shows tying. Yet, D&M has never identified any such license agreement, nor could it because Sonos has never licensed the manufacture and sale of any products that embody the asserted patents.

        Further, for any patent misuse defense, D&M must show anticompetitive effect, or, in the case of the *per se* forms of patent misuse, market power. *Princo Corp.*, 616 F.3d at 1334; 35 U.S.C. § 271(d). D&M has proffered no expert to testify about any anticompetitive effect from

---

[2] D&M repeats the same example in its Response to the Motion to Strike on page 9.

9

Sonos's alleged patent misuse.³ Indeed, none of D&M's expert reports even mentions patent misuse.

Even if D&M could point to facts in support of its patent misuse claim, the Court should still grant Sonos summary judgment because D&M's claim fails as a matter of law. Courts have previously rejected D&M's theory that tying is found where patents are directed to only part of a product. *See Samsung Elecs. Co., Ltd. V. Panasonic Corp.*, C.A. No. 10-3098 (JSW), 2011 WL 9529403, at *6 (N.D. Cal. Aug. 25, 2011) (citing cases from the Tenth, Fourth and Federal Circuit Courts of Appeal). Moreover, Sonos did not base royalties on a licensee's total sales of products regardless of whether the products practiced the licensed patents and no such allegation appears in D&M's pleadings. *See id.* at *5; compare *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 139-140 (1969).

Because D&M failed to provide any factual or legal basis for its patent misuse affirmative defense, Sonos should be awarded summary judgment.

## II.     D&M CANNOT CARRY ITS BURDEN ON ITS PROSECUTION LACHES AFFIRMATIVE DEFENSE

### A.     Legal Standard for Prosecution Laches

The doctrine of prosecution laches "'may render a patent unenforceable when it has issued only after an unreasonable and unexplained delay in prosecution' that constitutes an egregious misuse of the statutory patent system under the totality of the circumstances." *Cancer Research Tech. Ltd. v. Barr Labs., Inc.*, 625 F.3d 724, 728 (Fed. Cir. 2010), quoting *Symbol Techs., Inc. v. Lemelson Med.*, 277 F.3d 1361, 1366 (Fed. Cir. 2002). A lengthy prosecution

---

³ Showing anticompetitive effect requires showing that the overall effect of the license tends to restrain competition unlawfully in an appropriately defined relevant market. *Princo Corp.*, 616 F.3d at 1334.

10

does not automatically implicate prosecution laches. "There are legitimate grounds for refiling a patent application which should not normally be grounds for a holding of laches, and *the doctrine should be used sparingly* lest statutory provisions be unjustifiably vitiated. The doctrine should be applied *only in egregious cases of misuse of the statutory patent system.*" *Cordance Corp. v. Amazon.com, Inc.*, 631 F. Supp. 2d 484, 489 (D. Del. 2009) (emphasis original) (quoting *Symbol Techs. Inc. v. Lemelson Med.*, 422 F.3d 1378, 1385 (Fed. Cir. 2005)).

The Federal Circuit has called into question the applicability of prosecution laches for patents filed after June 8, 1995, when the term of the patent began to be calculated from the date of filing. *Cancer Research Tech. Ltd.*, 625 F.3d at 732 ("Finally, we note that the facts of this case are not likely to be frequently repeated, as patent terms are now measured from effective filing date, *id.* § 154(c)(1), subject to only limited extensions provided by statute, not by delaying issuance by refiling."); *see also Cordance Corp.*, 631 F. Supp. 2d at 492 ("Moreover, the court notes that Cordance's patents were all filed after June 1995, and, therefore, was not extending its patents' term by delaying to file the claims of the '710 patent."). All of the Asserted Patents were filed after June 8, 1995.

**B.    D&M Has No Factual Basis for its Prosecution Laches Affirmative Defense**

Even if the doctrine of prosecution laches has some vitality as applied to this case, D&M failed to provide sufficient facts to support its defense. To prove prosecution laches, D&M must show (1) unreasonable and unexplained delay and (2) prejudice. *Cancer Research Tech. Ltd.*, 625 F.3d at 729. To meet that burden, D&M must also show evidence of intervening rights. *Id.* at 732. ("evidence of intervening rights is required to establish an unreasonable and unexplained delay in prosecution." (quotation marks omitted)).

Here, D&M provided no evidence of unreasonable and unexplained delay or intervening rights related to the Asserted Patents. Indeed, although D&M provides a partial summary of the prosecution history of Sonos's patents, D&M never says which claims and which purported delays combine to give D&M intervening rights—let alone which of D&M's product features are implicated. *See* Operative Answer at ¶¶ 22-31. That information was called for in Sonos's Interrogatory 14. However, instead of substantively responding to that interrogatory, all D&M provided is an unspecific allegation that Sonos's more recently issued patents should be held unenforceable for never explained reasons.

Further, D&M's theory of prosecution laches is undercut by judicial precedent. D&M alleges that Sonos used its pending patent prosecution to file applications based on D&M's products. Even if that were true, that practice is not improper:

> An applicant may attempt to obtain new claims directed to inventions that he or she believes are fully disclosed and supported in an earlier application. This is distinguished from an applicant failing to further the prosecution of his or her application toward the issuance of any claims. The Federal Circuit has made clear that "there is nothing improper, illegal or inequitable in filing a patent application for the purpose of obtaining a right to exclude a known competitor's product from the market; nor is it in any manner improper to amend or insert claims intended to cover a competitor's product the applicant's attorney has learned about during the prosecution of a patent application."

*Medtronic, Inc. v. Boston Sci. Corp.*, 777 F. Supp. 2d 750, 781 (D. Del. 2011) (quoting *Kingsdown Med. Consultants, Ltd. v. Hollister, Inc.*, 863 F.2d 867, 874 (Fed.Cir.1988)) (citations omitted), *vacated on other grounds*, 558 Fed. Appx. 998 (Fed. Cir. 2014).

D&M points to a purported gap in Sonos's prosecution efforts between 2003 and 2011. Operative Answer at ¶ 23 ("between July 28, 2003 and August 5, 2011, Sonos filed only three applications which claim priority to the 60/490,768 provisional patent application.").[4] However,

---

[4] Confusingly, D&M asserts that "[Sonos] has at least 55 issued patent or pending-patent

12

Sonos's U.S. Patent No. 8,234,395, for which the application was filed on April 1, 2004, claims priority to that provisional application, and also incorporates that provisional application by reference. Sonos filed over 40 patent applications between 2003 and 2011, several of which claim priority to U.S. Patent No. 8,234,395. D&M's allegation of inexcusable delay (Operative Answer at ¶ 26) should be given no countenance where Sonos actively prosecuted a multitude of patent applications all seeking to protect the inventions created to support its product line.

Because D&M failed to provide any factual or legal basis for its prosecution laches affirmative defense, Sonos should be awarded summary judgment.

### III. D&M CANNOT CARRY ITS BURDEN ON ITS INTERVENING RIGHTS AFFIRMATIVE DEFENSE

Intervening rights only apply to "'amended or new' claims in the reexamined patent." *Marine Polymer Techs., Inc. v. HemCon, Inc.*, 672 F.3d 1350, 1362 (Fed. Cir. 2012). The key predicate to proving intervening rights is to show that the reexamined claims are not "without substantive change" compared to the original claims. *See Senju Pharmaceutical Co., Ltd. v. Lupin Limited and Lupin Pharmaceuticals, Inc.*, C.A. No. 11-271-SLR, 2013 WL 4101820, at *13 (D. Del. Aug. 9, 2013). Intervening rights is an affirmative defense on which D&M bears the burden of proof. *See Windsurfing Intern. Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 (Fed. Cir. 1986).

Here, only two patents at issue went through reexamination: (1) the '959 patent, originally issued on December 22, 2015, with a reexamination certificate issued on April 5, 2017; and (2) the '949 patent, originally issued on November 19, 2013, with a reexamination certificate issued on November 5, 2015.

---

applications that claim priority to [the 60/490,768 provisional patent application]" (Operative Answer at ¶ 23), but never lists or identifies those 55 patents/applications. Instead, D&M includes a list of only 25 patents in a footnote. *Id*. at 22 n.1.

13

D&M has never articulated what substantive changes it contends were made between the original and amended claims. D&M's pleadings, interrogatory responses and expert reports are entirely silent on this issue. Tellingly, in its Operative Answer, which was filed after the close of fact discovery and service of opening expert reports, D&M could only plead that "[b]ased on information and belief, Sonos's claims for relief are limited and/or barred by intervening rights."

Because D&M failed to show any factual or legal basis for its intervening rights affirmative defense, Sonos should be awarded summary judgment.

## IV. D&M CANNOT CARRY ITS BURDEN ON ITS PATENT EXHAUSTION/ FIRST SALE DOCTRINE AFFIRMATIVE DEFENSE

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Keurig, Inc. v. Sturm Foods, Inc.*, 732 F.3d 1370, 1373 (Fed. Cir. 2013) (quoting *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 625, 128 S.Ct. 2109, 170 L.Ed.2d 996 (2008)). "When a patentee sells one of its products . . . the patentee can no longer control that item through the patent laws—its patent rights are said to 'exhaust.'" *Impression Products, Inc. v. Lexmark International, Inc.*, No. 15-1189, 2017 WL 2322830, at *5, 581 U.S. __ (May 30, 2017). "Patent exhaustion reflects the principle that, when an item passes into commerce, it should not be shaded by a legal cloud on title as it moves through the marketplace." *Id.* at *11. Finally, "[p]atent exhaustion is an affirmative defense to a claim of patent infringement" for which D&M bears the burden of proof. *See Keurig,* 732 F.3d at 1373.

D&M's assertion of patent exhaustion is particularly strange because Sonos is accusing D&M's products of infringement, not Sonos products that D&M acquired in the marketplace. *See Impression Products, Inc.*, 2017 WL 2322830 at *12 (holding that a sale by a licensee "exhausts all patent rights ***in the item sold***.") (emphasis added). Nor has D&M illuminated the

14

basis for its defense, only alleging "[u]pon information and belief, Sonos is barred in whole or in part by the doctrines of patent exhaustion and/or the first sale doctrine from enforcing the Patents-in-Suit against Defendants." Operative Answer at ¶ 10.

Despite being given the benefit of the doubt by Judge Thynge, D&M has never provided evidence to support its patent exhaustion/first sale doctrine defense. In its Response to the Motion to Strike, D&M alleged that Sonos licensed the manufacture and sale of products embodying the asserted patents. D.I. 119 at 10-11. D&M, however, did not point to any such licensing agreement or any license agreement authorizing D&M to produce or sell the accused products. Nor could it, because Sonos has never licensed the manufacture and sale of any products that embody the asserted patents. D&M, therefore, cannot carry its burden to show that its infringing products were originally sold by Sonos or Sonos's licensee.

Because D&M failed to show any factual or legal basis for its patent exhaustion affirmative defense, Sonos should be awarded summary judgment.

## CONCLUSION

D&M cannot carry is burden of proof on its affirmative defenses of patent misuse, prosecution laches, intervening rights and patent exhaustion/first sale doctrine. Indeed, despite having the benefit of full fact discovery and expert reports, D&M failed to present a single fact in support of these defenses, instead relying only on unsubstantiated allegations that, in some instances, do not even state a legally cognizable claim. The Court, therefore, should award Sonos summary judgment on these four affirmative defenses.

|  | POTTER ANDERSON & CORROON LLP |
|---|---|
| OF COUNSEL: | |
| | By: */s/ Philip A. Rovner* |
| George I. Lee | Philip A. Rovner (#3215) |
| Sean M. Sullivan | Jonathan A. Choa (#5319) |
| Rory P. Shea | Alan R. Silverstein (#5066) |
| J. Dan Smith | Hercules Plaza |
| Michael P. Boyea | P.O. Box 951 |
| LEE SULLIVAN SHEA & SMITH LLP | Wilmington, DE 19899 |
| 224 North Desplaines St., Suite 250 | (302) 984-6000 |
| Chicago, IL 60661 | provner@potteranderson.com |
| (312) 754-9602 | jchoa@potteranderson.com |
| | asilverstein@potteranderson.com |
| Dated: June 2, 2017 | |
| 5221364 | *Attorneys for Plaintiff* |
| | *Sonos, Inc.* |