IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-1330 (RGA) |
| | ) | |
| D&M HOLDINGS INC. d/b/a THE D+M | ) | REDACTED - PUBLIC VERSION |
| GROUP, D&M HOLDINGS U.S. INC., and | ) | |
| DENON ELECTRONICS (USA), LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' DAUBERT MOTION TO STRIKE**
**THE EXPERT OPINIONS OF MR. MICHAEL TATE**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
OF COUNSEL:                              Michael J. Flynn (#5333)
                                        1201 N. Market Street
John M. Jackson                         P.O. Box 1347
Matthew C. Acosta                       Wilmington, DE  19899-1347
Blake T. Dietrich                       (302) 658-9200
Christopher J. Rourk                    jblumenfeld@mnat.com
JACKSON WALKER L.L.P.                   mflynn@mnat.com
2323 Ross Avenue, Suite 600
Dallas, TX 75201                        *Attorneys for D&M Holdings Inc. d/b/a The D+M*
(214) 953-6000                          *Group, D&M Holdings U.S. Inc. and Denon*
                                        *Electronics (USA), LLC*
David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, Texas 77010
(713) 752-4521
wqureshi@jw.com

Originally Filed:  June 2, 2017
Redacted Version Filed:  June 9, 2017

TABLE OF CONTENTS

Page

I.      BACKGROUND ...................................................................................................1

II.     LEGAL STANDARDS ........................................................................................2

III.    ARGUMENT ......................................................................................................3

        A.      MR. TATE'S OPINIONS FAIL TO APPLY ESTABLISHED LAW ....................................3

        B.      MR. TATE'S REASONABLE ROYALTY OPINION IS UNRELIABLE BECAUSE IT FAILS
                TO APPLY SOUND LEGAL PRINCIPLES ....................................................................6

                i)      Mr. Tate's Reasonable Royalty Opinion Fails to Apportion Damages to the
                        Accused Feature............................................................................................6

                ii)     Mr. Tate's Reasonable Royalty Opinion Violates the Entire Market Value
                        Rule ...............................................................................................................9

        C.      MR. TATE'S LOST PROFITS OPINION IS UNRELIABLE BECAUSE IT FAILS TO APPLY
                ESTABLISHED LEGAL PRINCIPLES .......................................................................13

                i)      Mr. Tate Has Failed to Demonstrate the Absence of Acceptable Non-
                        Infringing  Alternatives ..........................................................................15

                ii)     Mr. Tate Has Failed to Perform a Non-Infringing Alternative Analysis on a
                        Customer-by-Customer Basis ..................................................................19

IV.     CONCLUSION ................................................................................................20

TABLE OF AUTHORITIES

Page(s)

**Cases**

*AVM Techs., LLC v. Intel Corp.,*
No. CIV.A. 10-610-RGA, 2013 WL 126233 (D. Del. Jan. 4, 2013) ....................................12

*Bourjaily v. United States,*
483 U.S. 171 (1987) .........................................................................................................2

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993) .....................................................................................................1, 3

*DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.,*
567 F.3d 1314 (Fed. Cir. 2009)........................................................................................14

*Ericsson, Inc. v. D-Link Sys., Inc.,*
773 F.3d 1201 (Fed. Cir. 2014)........................................................................................10

*Grain Processing Corp. v. Am. Maize-Prod. Co.,*
185 F.3d 1341 (Fed. Cir. 1999)...................................................................................14, 16

*Helios Software, LLC v. SpectorSoft Corp.,*
No. CV 12-081-LPS, 2014 WL 4796111 (D. Del. Sept. 18, 2014)................................6, 7, 9

*Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH,*
408 F.3d 1374 (Fed. Cir. 2005)..........................................................................................9

*LaserDynamics, Inc. v. Quanta Comp., Inc.,*
694 F.3d 51 (Fed. Cir. 2012) .................................................................................6, 8, 9, 10

*Mentor Graphics Corp. v. EVE-USA, Inc.,*
851 F.3d 1275 (Fed. Cir. 2017)...................................................................................*passim*

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.,*
575 F.2d 1152 (6th Cir. 1978) ....................................................................................13, 14

*In re Paoli R.R. Yard PCB Litig.,*
35 F (3d Cir. 1994).............................................................................................................3

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.,*
702 F.3d 1351 (Fed. Cir. 2012)........................................................................................14

*Rite-Hite Corp., Inc., v. Kelley Co.,*
56 F.3d 1538 (Fed. Cir. 1995) (en banc) ...........................................................................13

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)..........................................................................................6

*Virnetx, Inc. v. Cisco Sys., Inc.*,
    767 F.3d 1308, 1329 (Fed. Cir. 2014) ..............................................................................7, 9

**Other Authorities**

Federal Rule of Evidence 702...................................................................................................1, 3

Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC ("D&M" or "Defendants") move to strike the opinions of Sonos's damages expert Mr. Michael Tate because they fail to adhere to the principles mandated under *Daubert v. Merrell Dow Pharms., Inc.*, Federal Rule of Evidence 702, and related law.

Both of Mr. Tate's lost profits and reasonable royalty opinions are fundamentally flawed and contrary to law.  Mr. Tate's reasonable royalty calculation fails to apportion royalties to the smallest salable unit of the Accused Products.  Worse yet, Mr. Tate has used D&M's total revenue from the accused products as his royalty base, independently for each asserted patent, in violation of the "Entire Market Value" rule.

Similarly, Mr. Tate's lost profits opinion fails to analyze "non-infringing uses on a 'customer-by-customer basis'" as required by law.  Moreover, Mr. Tate recognizes that there are, in fact, non-infringing uses for all of the Accused Products.  Mr. Tate offers no analysis as to why these uses have been ignored in his analysis.

## I.    BACKGROUND

Sonos alleges that D&M's line of HEOS products (the "Accused HEOS Products") infringe U.S. Patent Nos. 9,213,357 ("the '357 Patent"), 9,195,258 ("the '258 Patent"), 9,042,556 ("the '556 Patent"), 9,219,959 ("the '959 Patent"), 9,202,509 ("the '509 Patent"), 8,938,312 ("the '312 Patent"), 7,571,014 ("the '014 patent"), 8,588,949 ("the '949 patent"), and 8,938,637 ("the '637 Patent) (collectively the "Asserted Patents").

Mr. Tate served his opening damages report ("Tate Opening Report") on February 20, 2017.  *See* Jackson Dec. at Ex. E-1 (Tate Opening Report).  For the majority of the Asserted Patents, Mr. Tate does not calculate damages for each patent individually, but rather, groups the patents into five groups:  the "Sync Patents" ( the '637, '258, and '357 Patents), the "Group

1

Volume Patents" (the '014 and 949 Patents),  the "Pairing Patents" (the '509 and '959 Patents),

the "Orientation Patent" (the '556 Patent) and the "Auto-Play Patent" (the '312 Patent).[1]

Mr. Tate served his reply damages report on May 9, 2017 ("Tate Reply Report") Ex. E-2.



. Ex. E-1 at p. 4 (Tate Opening Report).

Ex. E-1 at pp. 4-5 (Tate

Opening Report).

. Ex. E-1 at p. 5 (Tate

Opening Report).

. Ex. E-1 at p. 5 (Tate Opening

Report).[2]

## II.   LEGAL STANDARDS

Sonos bears the burden of establishing that its expert's testimony is admissible by a

preponderance of the evidence. *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987). To be

---

[1] Mr. Tate makes no effort to examine the particular inventions claimed by each patent or justify this grouping.                " *See, e.g.*, Ex. E-1 at p. 12(Tate Opening Report).

[2] Mr. Tate also makes alternative calculations under various scenarios where more products are included in his reasonable royalty base and less are included in his lost profits calculation. Mr. Tate also calculates damages under scenarios where only certain patents are found to be infringed or using alternative market share information.  These variations suffer from the same failings discussed in this motion.  Thus, at least for purposes of this motion, the flaws in Mr. Tate's primary damages calculation are applicable to his alternative calculations.

admissible under Federal Rule of Evidence 702, an expert's testimony must: (i) be based on specialized knowledge, training, or experience that will assist the trier of fact; (ii) be based on sufficient facts or data; (iii) be the product of reliable principles and methods; and (iv) reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702 & advisory committee notes; *see Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589–97 (1993). "[A]ny step that renders the [expert's] analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F,3d 717, 745 (3d Cir. 1994).

## III.   ARGUMENT

### A.   MR. TATE'S OPINIONS FAIL TO APPLY ESTABLISHED LAW

Both of Mr. Tate's reasonable royalty and lost profits opinions are unreliable because they violate established principles of law. These fatal shortcomings are based in part on assumptions and conclusions made by Mr. Tate that are simply impossible. These impossibilities can be seen in the following example:

In March of 2016, Tammy purchases a HEOS: 3 speaker for the list price of $299. It is her first and only HEOS product. She then downloads the accused HEOS Controller Application and begins using the application in conjunction with the HEOS 3 to listen to music. Sonos has accused this particular sale, and Tammy's subsequent use of the HEOS 3 in conjunction with the HEOS Controller Application, of infringing 8 of the 9 Patents, including: (a) all of the "Sync Patents;" (b) all of the "Group Volume Patents;" (c) all of the "Pairing Patents;" and (d) the '556 "Orientation Patent."

Mr. Tate opines that Sonos is entitled to its lost profits from the sale of this single HEOS 3 device arguing that, but for D&M's alleged infringement of any of these patents (separately or

together), Tammy would have purchased a Sonos product, the PLAY: 3.



." *See, e.g.*, Tate Report pp. 15, 22-23, 30-31, 39, and 41.

. *Id.*

However, it is impossible for Tammy to use any "group volume," "synchronization," or "pairing" feature, regardless of whether they are covered by the accused patents, because all of those features require at least two speakers.

. *See, e.g.*, Ex. E-3 (Almeroth Report) at ¶ 148, 463[3], 654. Additionally, while it is possible that Tammy purchased her HEOS:3 for "sound quality," the "sound quality" that she hears cannot possibly relate to either synchronization, group volume, or pairing because those features are not obtainable with only one device. Tellingly, Mr. Tate never analyzes statistics regarding consumers who purchase two or more HEOS speakers. In cases such as this, where features allegedly covered by the

---

[3]

asserted patents can only be used by a subset of customer, some type of market analysis is crucial to assess claimed damages. Yet, Mr. Tate's damages calculations ignore the realities of the market entirely, even though the claimed features of seven of the nine patents[4] can only be used with two or more accused devices. ████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████. *See* Ex. D (Bone Rebuttal Report) at ¶ 67, n. 140; E-4 (D+M_0308511); E-14 (Brendon Stead deposition, October 14, 2016, p. 469); Ex. E-7 (D+M_0402492-D+M_0402513 at D+M_0402504); E-23 (D+M_0402895). Thus, the majority of HEOS users could not use the alleged features covered by the asserted Synch Patents, Group Volume Patents, or Pairing Patents.

Simply put, Mr. Tate assumes without reliable evidence that the basis of Tammy's consumer demand for her HEOS 3 was the Synchronization feature. At the same time, Mr. Tate assumes that the basis of Tammy's consumer demand for her HEOS 3 was the Group Volume feature. Mr. Tate further assumes that the basis of Tammy's consumer demand for her HEOS 3 was the Pairing feature. These cannot all be true, even setting aside for the moment the fact that it is impossible for Tammy to employ these features with only one device. Thus Mr. Tate's use of the entire purchase price as his royalty base cannot stand and his related opinions should be struck.

Moreover, Mr. Tate then assumes, as part of his evidence-free lost profits analysis, that had none of these features been present in the HEOS device, Tammy would have purchased a PLAY:3 from Sonos, where again, it would have been impossible for her to use the allegedly patented features. Tammy's use of her HEOS 3 device is thus in fact, a non-infringing use for

---

[4] The alleged infringement of the '556 Orientation Patent could theoretically be accomplished with one speaker.

the purpose of the Synch Patents, Pairing Patents, and Group Volume Patents.  Furthermore, Mr. Tate assumes that Tammy, who purchased only one HEOS 3, purchased that product **because** she wanted a wireless multi-room speaker, rather than any other reason Tammy may have purchased, such as, simply to own a speaker that provided good sound quality.  Mr. Tate calculates lost profits for this unit anyway.

As further discussed below, Mr. Tate's damages methodology is contrary to established law regarding reasonable royalty and lost profits.

### B.  MR. TATE'S REASONABLE ROYALTY OPINION IS UNRELIABLE BECAUSE IT FAILS TO APPLY SOUND LEGAL PRINCIPLES

#### i)  *Mr. Tate's Reasonable Royalty Opinion Fails to Apportion Damages to the Accused Feature*

Under *Uniloc USA, Inc. v. Microsoft Corp.*, "the patentee . . . must in every case give evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented features and the unpatented features . . . or show that 'the entire  value of the whole machine, as a marketable article, is properly and legally attributable to the patented feature'." 632 F.3d 1292, 1318 (Fed. Cir. 2011); *see also Helios Software, LLC v. SpectorSoft Corp.*, No. CV 12-081-LPS, 2014 WL 4796111, at *5 (D. Del. Sept. 18, 2014), *modified in part on other grounds*, No. CV 12-081-LPS, 2015 WL 3622399, (D. Del. June 5, 2015).  "Where small elements of multi-component products are accused of infringement, calculating a royalty on the entire product carries a considerable risk that the patentee will be improperly compensated for non-infringing components of that product." *LaserDynamics, Inc. v. Quanta Comp., Inc.*, 694 F.3d 51, 67 (Fed. Cir. 2012).  Generally, royalties must be based upon the "smallest salable unit."  As courts have held in this district, "[t]he only exception to the apportionment requirement is evidence demonstrating that the entire market value of the accused product is properly and legally attributable to the patented feature." *Helios Software,* 2014 WL 4796111, at

*6 (citing *Uniloc*, 632 F.3d at 1318).  In other words, "[t]he law requires patentees to apportion the royalty down to a reasonable estimate of the value of its claimed technology, or else establish that its patented technology drove demand for the entire product."  *Virnetx, Inc. v. Cisco Sys., Inc.,* 767 F.3d 1308, 1329 (Fed. Cir. 2014).

Despite the law and routine "apportionment" analysis by damages experts in patent cases, the word "apportion" never appears in Mr. Tate's opening damages report.  The word is only used in Mr. Tate's reply report in reference to D&M damage expert Mr. Bone's apportionment analysis.  Mr. Tate never mentions the "smallest salable unit" or "smallest salable patent-practicing unit" in either of his reports.  All of Mr. Tate's calculations use D&M's entire revenue for each accused product.  In reaching this conclusion, Mr. Tate assumes, without reliable supporting evidence, that each of Sonos's nine asserted patents are independently and seperately the sole or predominant driver of sales for both Sonos's own products and the accused products.  That on its face cannot be true.  For instance, a Group Volume feature cannot predominately and independently drive demand, when at the same time Orientation, Synchronization, and Pairing features also predominately and independently drive demand for the same product.



*See* Ex. E-1 at pp. 66-67, 101-102, 110-111 (Tate Opening Report); Ex. E-5 (D+M_0308578-610) at D+M_0308579.

███████████████. Ex. E-1 at pp. 101-102 (Tate Opening Report).

This case is analogous to the Federal Circuits decision in *LaserDynamics*. In that case, the technology at issue related to optical disc discrimination methods. *See* 694 F.3d at 56-57. The Plaintiff's damages expert relied upon two licensing programs between third parties involving DVDs and a comprehensive licensing survey to determine his royalty rate based on a percentage of sales applied to total accused revenue. *Id.* at 64-65. As is the case for Mr. Tate's royalty opinion, none of the license agreements relied upon by LaserDynamics' expert were for licenses between the parties-in-suit and none related to the asserted patents or technology at issue. *Id.* at 79-80. The Court held that, "[w]hen relying on licenses to prove a reasonable royalty, alleging a loose or vague comparability between different technologies or licenses does not suffice…[t]he DVD-related patent licensing programs did not involve the [patent-in-suit], and no evidence shows that it even involves a disc discrimination method." *Id.* at 79.



████████████████████ Ex. E-5 (D+M_0308578-610) at D+M_0308588, D+M_0308608.

Mr. Tate was required to, yet he did not event attempt to, identify the smallest salable unit of D&M's accused products with close relation to the claimed invention in his reasonable royalty opinion. *Virnetx, Inc.*, 767 F.3d at 1327 (Fed. Cir. 2014) (the requirement that a patentee identify damages associated with the smallest salable patent-practicing unit is simply a step toward meeting the requirement of apportionment.). Moreover, even had Mr. Tate identified the smallest salable unit of the accused products (which he did not), this is only the first step of a multistep analysis. *See id.* ("Where the smallest salable unit is, in fact, a multi-component product containing several non-infringing features with no relation to the patented feature . . . the patentee must do more to estimate what portion of the value of that product is attributable to the patented technology."). The second step, where the accused product is a multi-component product with features with no relation to the patented feature, as it is here, Mr. Tate was required to estimate the portion of value attributable to the patented technology. He did not. Mr. Tate's reasonable royalty opinion should be struck for failing to perform either of these required analyses.

### ii)  *Mr. Tate's Reasonable Royalty Opinion Violates the Entire Market Value Rule*

The entire market value rule allows calculation of damages based on the value of an entire apparatus containing several features, when the patent-related feature is the basis for customer demand. *Imonex Servs., Inc. v. W.H. Munzprufer Dietmar Trenner GMBH*, 408 F.3d 1374, 1380 (Fed. Cir. 2005). To satisfy the "entire market value" rule, an expert must provide "a higher degree of proof" that "the presence of the patented functionality is what motivates consumers to buy the accused product in the first place." *Helios Software*, 2014 WL 4796111, at *6 (citing *LaserDynamics*, 694 F.3d at 68). "It is not enough to merely show that the [patented feature] is viewed as valuable, important, or even essential . . . [P]roof that consumers would not

9

want [the accused product as a whole] without [its many] features is not tantamount to proof that any one of those features alone drives the market for [the accused product]." *LaserDynamics*, 694 F.3d at 68.   But Mr. Tate fails to provide any evidence or proof that the accused functionalities are the basis for consumer demand. In other words, Mr. Tate's reliance on the entire purchase price as his royalty base is wholly unsupported both legally and factually.

A summary of Mr. Tate's reasonable royalty calculations are provided in his Exhibit 4. Ex. E-1 at Exhibit 4 (Tate Opening Report).  ████████████████████████████████████ ████████████████████████████████████████.  *Id.* at Exhibit 4. ███████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████   *Id.* at Exhibit 4.  ███████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████s.  *Id.* at Exhibit 4.

While Mr. Tate carefully does not use the phrase "entire market value" in his opening report, Mr. Tate transparently uses the entire market value of the accused products as his royalty base without any analysis of whether each claimed feature is the basis of market demand.  It is improper and unreliable opinion for an expert to simply identify a general concept to support application of entire market value across a number of patents encompassing different features of a multi-feature product.   *See Ericsson, Inc. v. D-Link Sys., Inc.*, 773 F.3d 1201, 1226 (Fed. Cir. 2014) ("where a multi-component product is at issue and the patented feature is not the item which imbues the combination of the other features with value, care must be taken to avoid misleading the jury by placing undue emphasis on the value of the entire product.").

Mr. Tate's analysis commits this very error.  ████████████████████████████████ ████████████████████████████████████████████████████████████████████████████

███████         *See, e.g.*, Ex. E-1 (Tate Opening Report) at pp. 13, n.41; 18, n.62; 22, n.77; 27, n.100; 30, n.117; 40 at n.153; 49, n.205; 52, n.221; 83, n.339; 87, n.360; 90 n. 374 (Tate Opening Report). ████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████   ████, *e.g.* Ex. E-1 (Tate Opening Report) at p 15 & n.51 (citing documents).

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*Id.* at p. 15. ██████████████████████████████████████. *Id.*; Ex. E-6 (SONDM121339) at SONDM121375; Ex. E-7 (D&M_402492) at D+M_402497. █████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████      *See, e.g.*, Ex. E-1 (Tate Opening Report) pp. 15, 22-23, 30-31, 39, and 41.

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████      *See id.*

This case is analogous to this Court's decision in *AVM Techs., LLC v. Intel Corp.*, No. CIV.A. 10-610-RGA, 2013 WL 126233, at *2 (D. Del. Jan. 4, 2013). In that case, the accused feature was "a dynamic logic circuit" that was part of a larger accused microprocessor. *Id.* at *3. Referencing the accused "Outlook" product in *Uniloc*, the Court noted that

> The use of a saleable unit that is greater than the patented feature is going to introduce *Uniloc* error when the patented feature is a "date picker" whether the saleable unit is a computer loaded with "Outlook" or simply "Outlook." The *Uniloc* error will be greater with the computer loaded with "Outlook" than with "Outlook" alone, but the difference in error is one of degree, not of kind. Further, as *Laser Dynamics* holds, the difficulty in determining a royalty base in a situation such as this one with dynamic logic circuits is not a reason to accept an unreliable method.

*Id.* In striking the damages opinion, the court concluded that "[a]ssuming for the sake of argument that dynamic logic circuits are the single most important part of Intel's microprocessors, it is still a long haul to conclude that they "drive demand" for the entire microprocessor." *Id.*

As in *AVM Techs*, Mr. Tate's damages base, which is the entire value of D&M's accused sales, assumes that an accused HEOS product, in its entirety, is the "smallest salable unit" with close relation to the claimed invention for each of his Patent Groups. This assumption by itself is internally inconsistent and illogical, as discussed above. In addition, although Mr. Tate cites evidence leading him to opinions that every one of these features is "important" or "necessary" to the product, he has no evidence or analysis that each of these features independently, or collectively, drive demand for every accused product. In fact, each of these features, independently or collectively, cannot possibly drive demand for the accused products because, among other things:

█████████████████████████████████████████████

███████████████████████████████████████████████████████.  *See supra* pp. 4-5; Ex. D (Bone Rebuttal Report) at ¶ 67, n. 140; E-4 (D+M_0308511).

(2)     Beginning in November 2009, Sonos sold the first generation of its PLAY:5 product without the "orientation feature" allegedly claimed by the '556 Patent.  Ex. E-8 (Sonos's Fourth Amended Reponses to D&M's Interrogatory No. 2)████████████████ █████████████████████████████████████ Ex. E-9 (Millington Tr. 215:3-13); Ex. E-1, (Tate Opening Report) at p. 35, Fig. 5, n. 128.█████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████████████ ██████████████████████████████████████.  See Ex. E-1, Tate Ex. 11.1.

(3)     The "autoplay" feature allegedly claimed by the '312 Patent is an optional feature Ex. E-10 (SONDM000038324 at 38338).  It can be turned on and off by the user.  *Id.* The feature does not drive demand for those consumers that turn the feature "off."  Mr. Tate never inquires as to the number of consumer that turn the allegedly patented feature "off."

In sum, Mr. Tate's reasonable royalty opinion violates the entire market value rule because Mr. Tate has failed to conduct any analysis that his alleged groups of asserted patents "drive demand" for the accused products.  As a partial result of this failure, Mr. Tate's opinion also ignores the fact that demand for accused products could not possibly be driven by the claimed features of the Synch Patents, Pairing Patents, or Group Volume Patents for the majority of customers.  Mr. Tate's opinion is also internally inconsistent because he assumes that every one of the accused features drives demand for the product.  Mr. Tate's reasonable royalty opinion should be struck for these reasons alone.

## C.     MR. TATE'S LOST PROFITS OPINION IS UNRELIABLE BECAUSE IT FAILS TO APPLY ESTABLISHED LEGAL PRINCIPLES

The generally accepted method for assessing lost profits is the *Panduit* test first articulated by the Sixth Circuit.  *Rite-Hite Corp., Inc., v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)).  To prove lost profits under the *Panduit* test, a patentee must show

(1) demand for the patented product; (2) absence of acceptable non-infringing alternatives; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit it would have made. *Panduit*, 575 F.2d at 1156.

The first factor—demand for the patented product—considers demand for the product as a whole. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1330–31 (Fed. Cir. 2009).   The second factor—the absence of non-infringing alternatives—considers demand for particular limitations or features of the claimed invention. *Id.* at 1331. Together, these two factors requiring patentees to prove (a) demand for the product as a whole and (b) the absence of non-infringing alternatives, ties lost profit damages to specific claim limitations and ensures that damages are commensurate with the value of the patented features. *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1361 (Fed. Cir. 2012) ("[P]roducts lacking the advantages of the patented invention can hardly be termed a substitute acceptable to the customer who wants those advantages." (quotations omitted)); *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1354 (Fed. Cir. 1999), (holding that customers would have found a particular claim limitation "irrelevant," so the patentee could not rely on that limitation for the second *Panduit* factor). The Federal Circuit recently explained that:

> The second factor, absence of acceptable non-infringing alternatives, often proves the most difficult obstacle for patent holders. Under this factor, if there is a noninfringing alternative which any given purchaser would have found acceptable and bought, then the patentee cannot obtain lost profits for that particular sale. For example, **if the customer would have bought the infringing product without the patented feature** or with a different, non-infringing alternative to the patented feature, **then the patentee cannot establish entitlement to lost profits for that particular sale**. And **this determination is made on a customer-by-customer basis**.

*Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1286 (Fed. Cir. 2017) (emphasis added).  "With such multi-component products, it may often be the case that no one patentee can obtain lost profits on the overall product—the *Panduit* test is a demanding one. A patentee

cannot obtain lost profits unless it and only it could have made the sale—there are no non-infringing alternatives or, put differently, the customer would not have purchased the product without the infringing feature." *Id.* at 1289.  As further discussed below, Mr. Tate's lost profits analysis fails to comply with these principles.

> **i)** ***Mr. Tate Has Failed to Demonstrate the Absence of Acceptable Non-Infringing Alternatives***



Ex. E-1 (Tate Opening Report) pp. 54-55.

Ex. E-12 (Almeroth Reply Report) at ¶ 435.

*See* Ex. C at ¶ 924 (Bims Rebuttal Report) & Ex. E-11 (D+M_0307015-0307054).

. *Id.*

. ."  Ex. E-12 (Almeroth Reply Report) at ¶ 436.  This is an incorrect statement of the law.

Dr. Almeroth's opinion casting aside removal of allegedly infringed features as a potential non-infringing alternative is directly contrary to *Mentor Graphics*.  As discussed above, a patentee is only entitled to lost profits if a customer would not have purchased the accused product without the infringing feature.  *Mentor Graphics*, 851 F.3d at 1290.  Thus, a product

without the infringing feature, if still purchased by a customer, is a non-infringing alternative. *See Grain Processing Corp.*, 185 F.3d at1354. (collecting cases and holding that removal of allegedly patented features from an accused product that customers deemed "irrelevant" could be considered non-infringing alternatives).

*Mentor Graphics* provides a specific example of this principle:

> Consider the laptop example. If the only patented component is the extended life battery and a customer will only buy a laptop with this battery (meaning a laptop with a lower quality battery is not an acceptable noninfringing alternative to the customer), then when an infringer who appropriates the patented extended life battery sells a laptop, the infringer has deprived the patentee of the lost profits on the laptop sale which only it could have made. If a laptop with a lower-quality battery would be an acceptable non-infringing alternative to certain customers, the patentee would not be entitled to lost profits for these laptop sales. For those customers, the patented battery was not a factor in their purchasing decision; it was not necessary for the sale. The only sales for which the patentee can obtain lost profits are the customers who would refuse to purchase laptops without the patented extended-life battery. For these lost customers, the extended-life battery drives their purchasing decisions.

*851 F.3d* at 1290.

As discussed above, customers who have purchased only one accused HEOS product clearly do not demand the features described in the Synch Patents, Group Volume Patents, or Pairing Patents. *See supra* pp. 4-5. But Mr. Tate simply ignores this despite various evidence, including evidence cited by Mr. Tate, showing that the majority of consumers do not purchase products because of the allegedly patented features. That can be no more clearly shown than by the fact that most consumers only purchase one device. ████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Ex. E-26

(SONDM000124142) at 124159.

Moreover, Mr. Tate has not performed any analysis that consumers who purchased HEOS products for "sound quality" or other general features—not specifically and particularly tied to the asserted patents—would not have purchased those products if the allegedly patented functionality was removed.   For example, a customer may have found an accused HEOS product's sound quality acceptable, even though all allegedly infringing features were removed.[5] Since Mr. Tate effectively ignores this possibility, his analysis of non-infringing alternatives is fundamentally flawed.   Even assuming that all of the asserted patents relate to a demanded "sound quality" feature, which they do not, Mr. Tate must account for other features that affect better "sound quality" and determine that those features alone would not result in acceptable sound quality for a consumer.   *Mentor Graphics*, 851 at 1290.   This analysis must be done on a consumer-by-consumer basis. *Id.*; *see also infra* Section C(ii).   Mr. Tate does not perform this analysis and simply assumes that acceptable "sound quality" cannot be achieved without each of the asserted patents.



." Ex. E-1 (Tate Opening Report) pp. 55.

---

[5] See Ex. E-13 (Cullen Deposition) at 209:5-12; see also Ex. E-14 (Stead Deposition) at 381:23-382:14 .



. Ex. E-1 (Tate Opening Report) pp. 55, 58-60.

. *See, e.g.*, Ex. E-1 (Tate Opening Report) pp. 15 (citing SONDM121339-379 at 375).

. *See* ; Ex. D (Bone Rebuttal Report at ¶ 67, n. 140); E-4 (D+M_0308511).   Mr. Tate assumes that all customers that purchased one HEOS product for its sound quality were in the "multi-room audio" market, and not just the speaker market, or wireless speaker market, or blue-tooth speaker market, etc. Simply, Mr. Tate assumes that all customers, even those who purchased one product for sound quality reasons, were shopping for a wireless multi-room sound system that included Synch Features, Pairing Features, Orientation Features, and/or Auto-play features.   Mr. Tate has no evidence to support this central assumption.

See Ex. D (Bone Opening Report) at ¶¶ 294-297; https://play-fi.com/technology/ (comparing Play-Fi features to Sonos Features, including those allegedly provided by the

asserted patents) Ex. E-27.  See

Ex. D (Bone Opening Report) at ¶ 294; Ex. 28 (Bone_000002-Bone_000006).

. *See generally* Ex. E-2 (Tate Reply

Report) (no mention of Play-Fi).

In sum, Mr. Tate's lost profits analysis is contrary to *Mentor Graphics*, which explicitly

holds that "if there is a noninfringing alternative which any given purchaser would have found

acceptable and bought, then the patentee cannot obtain lost profits for that particular sale."

*Mentor Graphics*, 851 F.3d 1286.  Because Mr. Tate fails to provide a supportable basis, let

alone reliable and proper expert opinion, demonstrating the absence of non-infringing

alternatives for every single D&M customer, his lost profits opinion should be stricken.

> **ii)** ***Mr. Tate Has Failed to Perform a Non-Infringing Alternative Analysis on a Customer-by-Customer Basis***



. *See*

Ex. E-1 (Tate Opening Report) pp. 37-61.

*See* Ex. E-1 (Tate Opening Report) pp.

41, 44, 47, 50, 53

*See* Ex. E-1 (Tate Opening Report) pp. 42 (

47



Because Mr. Tate does not analyze lost profits on a customer-by-customer basis, he cannot conclude, as required by *Mentor Graphics*, that individual customers would not have purchased an Accused Product without the accused feature.



. Ex. E-1 (Tate Opening Report) pp. 40      43      46      49      ");  53      As reaffirmed by *Mentor Graphics*, Sonos cannot claim lost profits from a sale of the accused feature, when a customer would still have purchased the accused product without the allegedly claimed feature. *Mentor Graphics*, 851 F.3d at 1289.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant this motion and strike the expert opinions of Mr. Michael Tate regarding Sonos's lost profits and reasonable royalty damages.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

OF COUNSEL:

John M. Jackson
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, Texas 77010
(713) 752-4521
wqureshi@jw.com

June 2, 2017

*Attorneys for D&M Holdings Inc. d/b/a The D+M
Group, D&M Holdings U.S. Inc. and Denon
Electronics (USA), LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 9, 2017, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                    *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
Wilmington, DE  19801
*Attorneys for Plaintiff*

George I. Lee, Esquire                                       *VIA ELECTRONIC MAIL*
Sean M. Sullivan, Esquire
Rory P. Shea, Esquire
John Dan Smith III, Esquire
Michael P. Boyea, Esquire
LEE SULLIVAN SHEA & SMITH LLP
224 North Desplaines Street, Suite 250
Chicago, IL  60661
*Attorneys for Plaintiff*

                                        */s/ Michael J. Flynn*

                                        _____
                                        Michael J. Flynn (#5333)