IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SONOS, INC.,                                )
                                            )
            Plaintiff,                      )
                                            )
      v.                                    )   C.A. No. 14-1330 (RGA)
                                            )
D&M HOLDINGS INC. d/b/a THE D+M             )   REDACTED - PUBLIC VERSION
GROUP, D&M HOLDINGS U.S. INC., and          )
DENON ELECTRONICS (USA), LLC,               )
                                            )
            Defendants.                     )

## DEFENDANTS' *DAUBERT* MOTION
## TO PARTIALLY STRIKE SONOS'S EXPERT OPINIONS

OF COUNSEL:

John M. Jackson
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, Texas 77010
(713) 752-4521
wqureshi@jw.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for D&M Holdings Inc. d/b/a The D+M
Group, D&M Holdings U.S. Inc. and Denon
Electronics (USA), LLC*

Originally Filed:  June 2, 2017
Redacted Version Filed:  June 9, 2017

## TABLE OF CONTENTS

Page

I.   BACKGROUND ...................................................................................................1

II.  LEGAL STANDARDS.........................................................................................1

III. DR. ALMEROTH AND MR. TATE'S RELIANCE ON UNDISCLOSED FACT
     WITNESSES SHOULD BE STRUCK...................................................................2

     A.   BACKGROUND ...........................................................................................2

     B.   ARGUMENT.................................................................................................5

          i)    Surprise and Prejudice to D&M and Importance of the Undisclosed
                Evidence...........................................................................................7

          ii)   The Likelihood of Disruption of the Trial and Possibility of Curing the
                Prejudice ..........................................................................................8

          iii)  Sonos's Willfulness and Bad Faith ..................................................8

IV.  DR. WOLFE'S OPINIONS ON THE "PLAYER" TERMS SHOULD BE STRUCK...........9

     A.   BACKGROUND ...........................................................................................9

     B.   APPLICABLE LAW ...................................................................................10

     C.   ARGUMENT...............................................................................................10

V.   Sonos's Experts' Opinions On "Copying" Should Be Struck...............................11

     A.   BACKGROUND .........................................................................................12

     B.   APPLICABLE LAW ...................................................................................14

     C.   ARGUMENT...............................................................................................15

          i)    Absence of Specialized Knowledge or Expertise ..........................15

          ii)   The Allegation of "Copying" Would Be Prejudicial and Confuse the Jury
                ......................................................................................................16

          iii)  Sonos's Expert Opinion on Copying Violates 35 U.S.C. § 298 ..............17

VI.  DR. WOLFE'S OPINIONS BASED ON A NEWLY-ASSERTED CONCEPTION DATE
     OF THE '556 PATENT SHOULD BE STRUCK...........................................18

A.     BACKGROUND ..................................................................................18

B.     ARGUMENT........................................................................................19

      i)     Importance of the Undisclosed Theory ....................................................19

      ii)    Surprise and Prejudice to D&M................................................................19

      iii)   The Likelihood of Disrupting the Trial and Curing the Prejudice ............20

      iv)    Sonos's Lack of Explanation and Bad Faith............................................20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*165 Park Row, Inc. v. JHR Dev.*,
  LLC, No. 2:12-CV-106-NT, 2013 WL 633403 (D. Me. Feb. 20, 2013)................................6

*Aponte v. City of Chicago*,
  No. 09-cv-8082, 2011 WL 1838773 (N.D. Ill. May 12, 2011).............................................17

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*,
  444 F. Supp. 2d 278 (D. Del. 2006) ...................................................................................16

*Bourjaily v.. United States*,
  483 U.S. 171 ........................................................................................................................1

*Communities Actively Living Indep. & Free v. City of Los Angeles*,
  No. CV 09-0287-CBM, 2011 WL 4595993 (C.D. Cal. Feb. 10, 2011)..................................6

*Cordis Corp. v. Boston Sci. Corp.*,
  658 F.3d 1347 (Fed. Cir. 2011)...........................................................................................10

*Cordis Corp. v. Boston Scientific Corp.*,
  561 F.3d 1319 (Fed. Cir. 2009)...........................................................................................10

*Daubert v. Merrell Dow Pharms., Inc.*,
  509 U.S. 579 (1993) .........................................................................................................1, 2

*Enova Tech. Corp. v. Initio Corp.*,
  No. CV 10-04-LPS, 2013 WL 12155767 (D. Del. Jan. 31, 2013)......................................7, 8

*Finch v. Hercules Inc., No. CIV. A. 92-251 MMS*,
  1995 WL 785100 (D. Del. Dec. 22, 1995) ...........................................................................7

*In re Maxim Integrated Prods., Inc.*,
  No. 12-244, 2015 WL 5311264 (W.D. Pa. Sept. 11, 2015) .................................................10

*In re Paoli R.R. Yard PCB Litig.*,
  35 F.3d 717 (3d Cir. 1994) ..................................................................................................2

*Meyers v. Pennypack Woods Home Ownership Ass'n*,
  559 F.2d 894 (3d Cir.1977) .................................................................................................2

*Oxford Gene Tech. Ltd. v. Mergen Ltd.*,
  345 F. Supp. 2d 431 (D. Del. 2004) ...................................................................................16

*RSI Corp. v. Int'l Bus. Machines Corp.*,
  No. C-08-03414 RMW, 2013 WL 1087468 (N.D. Cal. Mar. 13, 2013) ............................... 15

*Schneider ex rel. Estate of Schneider v. Fried*,
  320 F.3d 396 (3d Cir. 2003) ............................................................................................. 14

*Ultratec, Inc. v. Sorenson Commc'ns, Inc.*,
  No. 13-CV-346, 2014 WL 4976596 (W.D. Wis. Oct. 3, 2014) ............................................. 17

*Union Carbide Chems & Plastics Tech . Corp. v. Shell Oil Co.*,.
  270 F. Supp. 2d 519 (D. Del. 2000) ............................................................................... 8, 20

*United States v. Hall*,
  93 F.3d 1337 (7th Cir. 1996), *aff'd*, 165 F.3d 1095 (7th Cir. 1999) ..................................... 17

*Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*,
  683 F.3d 1356 (Fed. Cir. 2012) ......................................................................................... 16

**Statutes**

35 U.S.C. § 298 ..................................................................................................... 12, 17, 18

**Other Authorities**

Fed. R. Civ. P. Rule 26(a) ........................................................................................................ 2

Fed. R. Civ. P. 26(a)(1) ............................................................................................................ 6

Rule 26(a)(1)(B) ....................................................................................................................... 6

Rule 26(a)(2)(B) ....................................................................................................................... 2

Fed. R. Civ. P. 26(e)(2) ............................................................................................................ 2

Fed. R. Civ. P. 34 ..................................................................................................................... 7

Fed. R. Civ. P. 37(c) ................................................................................................................ 2

Fed. R. Evid. 702 ................................................................................................................. 2, 14

FRCP 26(a)(1)(A)(1) ............................................................................................................. 5, 6

FRE 702(a) ............................................................................................................................. 12

Defendants move to partially strike the opinions of Sonos's experts on the following four grounds: (1) Dr. Almeroth and Mr. Tate's opinions are based on purported evidence obtained via discussions with Sonos employees who Sonos did not previously disclose as individuals with relevant knowledge, whose documents were not produced, and who Defendants did not get an opportunity to depose; (2) Dr. Wolfe's opinions rest on a construction of "zone player" rejected by the Court and contrary to Sonos's own claim construction position; (3) each of Sonos's expert sets forth opinions that Defendants copied Sonos technology without, among other things, showing a nexus between the purported evidence of copying and the specific claimed features and accused functionalities at issue in this case; and (4) Dr. Wolfe relies on earlier conception / reduction to practice dates for the '556 Patent that those provided by Sonos in discovery.

## I.      BACKGROUND

Sonos alleges that D&M's line of HEOS products (the "Accused HEOS Products") infringe nine Asserted Patents[1]. Discovery in this case is closed and the Parties have exchanged expert reports detailing the various allegations in this litigation. The case is now in the dispositive and *Daubert* motions stage.

## II.     LEGAL STANDARDS

Sonos bears the burden of establishing that its expert testimony is admissible by a preponderance of the evidence. *See Bourjaily v.. United States*, 483 U.S. 171, 175(1987). To be admissible, an expert's testimony must: (i) be based on specialized knowledge, training, or experience that will assist the trier of fact; (ii) be based on sufficient facts or data; (iii) be the product of reliable principles and methods; and (iv) reliably apply the principles and methods to the facts of the case. Fed. R. Evid. 702 & advisory committee notes; *see Daubert v. Merrell Dow*

---

[1] U.S. Patent Nos. 9,213,357 ("the '357 Patent"), 9,195,258 ("the '258 Patent"), 9,042,556 ("the '556 Patent"), 9,219,959 ("the '959 Patent"), 9,202,509 ("the '509 Patent"), 8,938,312 ("the '312 Patent"), 7,571,014 ("the '014 patent"), 8,588,949 ("the '949 patent"), and 8,938,637 ("the '637 Patent").

*Pharms., Inc.*, 509 U.S. 579, 589–97 (1993). "[A]ny step that renders the [expert's] analysis unreliable under the *Daubert* factors renders the expert's testimony inadmissible." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 745 (3d Cir. 1994).

Further, as will be relevant in the discussion of the *Daubert* grounds below, Sonos has failed to timely disclose and/or supplement information which its experts now rely on for their opinions. Fed. R. Civ. P. 37(c) provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or harmless."

Courts within the Third Circuit evaluate harmlessness and substantial justification based on the following factors: (1) the importance of the information withheld; (2) the prejudice or surprise to the party against whom the evidence is offered; (3) the likelihood of disruption of the trial; (4) the possibility of curing the prejudice; (5) the explanation for the failure to disclose; and (6) the presence of bad faith or willfulness in not disclosing the evidence. *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–905 (3d Cir.1977).

Moreover, the Federal Rules require the timely supplementation of information. Specifically, Fed. R. Civ. P. 26(e)(2) provides that "[f]or an expert whose report must be disclosed under Rule 26(a)(2)(B), the party's duty to supplement extends both to information included in the report . . . ."

## III.  DR. ALMEROTH AND MR. TATE'S RELIANCE ON UNDISCLOSED FACT WITNESSES SHOULD BE STRUCK

### A. BACKGROUND

Instead of relying on the testimony of fact and corporate representative witnesses that Sonos disclosed and offered for deposition, both Dr. Almeroth and Mr. Tate instead rely on discussions with previously undisclosed witnesses for whom D&M had no opportunity to depose

and for whom Sonos failed to produce relevant documents.  Sonos's strategy works considerable predjudice on D&M and is prohibited by the Federal Rules of Civil Procedure.

In Dr. Almeroth's infringement report, he repeatedly relies on discussions with a person he identifies as "Sonos's principle audio systems engineer, Tim Sheen." Jackson Dec. at Ex. E-3 (Almeroth Report), at ¶¶ 67, 157, 167, 169, 189, 192, 196, 215, 223, 652. But Mr. Sheen was never identified by Sonos in its disclosure of individuals likely to have discoverable information nor was he offered for deposition. *See* Ex. E-29 (Sonos Oct. 20, 2016 Amended Initial Disclosures to D&M). Despite the fact that Mr. Sheen was never disclosed to D&M, Dr. Almeroth repeatedly points to Mr. Sheen in his expert report. Specifically, Dr. Almeroth relies on Mr. Sheen for at least the following:



These understandings gained by Mr. Almeroth purportedly support his opinion that Sonos's products are "commercial embodiments" of the Asserted Patents. Yet Sonos and Dr. Almeroth hid the ball, and D&M did not find out about the existence of Mr. Sheen as an important fact witness until Sonos served Dr. Almeroth's Opening Report. ***D&M did not get an opportunity to depose Mr. Sheen.*** Acosta Decl. at ¶ 3. Moreover, Sonos did not identify Mr. Sheen as a custodian or make any effort to produce relevant documents from or relating to Mr. Sheen. Sonos's failure came even though D&M's counsel requested supplemental document production concerning Mr. Sheen following his belated, indirect disclosure in Dr. Almeroth's expert report. *Id.* at ¶ 6, Ex. 1. Out of Sonos's entire document production of more than 180,000 pages, only

about 72 documents mention Mr. Sheen at all. *Id.* at ¶ 4. Of those, 53 are bare organization charts, 15-17 are emails that simply copy "Tim Sheen" among others, and only approximately 3-4 of the documents actually involve conversations to or from Mr. Sheen. *Id.* at ¶ 4. It appears that only one non-email document was produced that indicates that it was written by Mr. Sheen. *Id.* at ¶ 4. D&M had no reason to believe that Mr. Sheen possessed relevant information and would be relied on by Sonos for its case-in-chief.

In addition, Sonos's damages expert, Mr. Michael Tate, relies on several individuals who were never disclosed as persons with knowledge of relevant facts, including: (a) Mr. Gang Song, Senior Supply Operations Manager; (b) Constantine Reissis, Director Sales, US, AV and Specialty (to the extent this individual is not the same as Kostas Reissis); (c) Steve Hambling, Senior Finance Manager; (d) Michael Papish, Director Platform Strategies; (e) Cullen Harwood, Account Manager Custom Integration Channel; and (f) Benjamin Rappaport, Hardware Product Manager. *See* Ex. E-1 (Tate Opening Report) at p. 3. As with Mr. Sheen, none of these individuals were identified as custodians, potential fact witnesses, or presented as corporate representatives. *See* Ex. E-29 (Sonos Oct. 20, 2016 Amended Initial Disclosures to D&M); Acosta Decl. at ¶ 3. Throughout his opening report, Mr. Tate cites to his conversations with these individuals as "discussions with Sonos Personnel." *See, e.g.*, Ex. E-1 (Tate Opening Report) at n. 12, 41, 62, 77, 100, 117, 136, 148, 153, 172, 184, 205, 221, 242, 257. These discussions form the basis of many of Mr. Tate's key assumptions in his report. For example:

These statements relate to numerous conclusions reached by Mr. Tate in his damages report, including as to consumer demand of Sonos products, composition of the market for Sonos products, and the relationship between Sonos's claimed technology and desired features. *See, e.g.*, Ex. E-1 (Tate Opening Report) at pp. 22 (consumer demand), 59 (market composition), 39 (relationship between technology features).

D&M was unaware that these individuals were important fact witnesses until Sonos served Mr Tate's Opening Report, and therefore, D&M did not get an opportunity to depose them. Acosta Decl. at ¶ 3. Moreover, Sonos failed to produce relevant documents relating to these individuals. Sonos appears to have produced less than 30 documents/person containing their names, and for some, less than 10 documents. *Id.* at ¶ 5.

Sonos was required to disclose Mr. Sheen, Mr. Song, Mr. Reissis, Mr. Hambling, Mr. Papish, Mr. Harwood, and Mr. Rappaport under both the rules of this Court and the Federal Rules of Civil Procedure. *See* FRCP 26(a)(1)(A)(1); Sections 3(a) of the D. Del. Default Discovery Standard. Sonos did not. And it has no excuse to absolve itself of its duty to disclose the aforementioned Sonos employees, or to produce potentially relevant documents as to these individuals. Accordingly, Dr. Almeroth's and Mr. Tate's opinions relying on discussions with previously undisclosed Sonos personnel should be struck.

### B. ARGUMENT

D&M has repeatedly requested Sonos to explain why these individuals were not identified as relevant fact witnesses. Acosta Decl. at Exhibit 1. On May 2, 2017, D&M received Sonos's only substantive response to these inquiries. *Id.* at Exhibit 1. In that response, Sonos argued that the Court's Default Standard for Discover only requires Sonos to disclose 10 individuals, and therefore these seven individuals did not need to be disclosed. *Id.* Sonos further responded that Mr. Sheen and Mr. Papish were not disclosed because other witnesses who D&M

did depose were unavailable when Dr. Almeroth's and Mr. Tate's reports were being prepared. *Id.* Finally, Sonos contended that the other five individuals reported to individuals who were deposed. Sonos then refused to present the five individuals for deposition unless it decided that they would testify at trial and only consider producing documents related to the witnesses if D&M specifically identified documents of which D&M has no knowledge or information. *Id.*

Sonos's failure to disclose these individuals was not substantially justified or harmless. First, Sonos's argument that it did not have a duty to disclose under the Court's Default Standard because it disclosed other individuals is simply incorrect. Fed. R. Civ. P. 26(a)(1)(A)(i) provides that "[e]xcept as exempted by Rule 26(a)(1)(B) or as otherwise stipulated or ordered by the court, a party must, without awaiting a discovery request, provide to the other parties . . .the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses . . . ." The Court's Scheduling Order in this case, specifically provides that the parties were under a duty to comply with Fed. R. Civ. P. 26(a)(1). *See* D.I. 65 at ¶ 1; *see also 165 Park Row, Inc. v. JHR Dev.*, LLC, No. 2:12-CV-106-NT, 2013 WL 633403, at *2 (D. Me. Feb. 20, 2013) (rejecting argument that party had no duty to disclose declarants before summary judgment motions were filed).

Moreover, in striking reliance on previously undisclosed witnesses, Courts have rejected the argument that other individuals, who were disclosed, were unavailable at the time that the testimony was provided. *See Communities Actively Living Indep. & Free v. City of Los Angeles*, No. CV 09-0287-CBM (RZx), 2011 WL 4595993, at *6–7 (C.D. Cal. Feb. 10, 2011).

Further, Sonos was required to identify these individuals under the Court's Default Standard. Paragraph 3(a) of the standard requires Sonos to disclose the "10 custodians most likely to have discoverable information." These seven individuals are within the only 10 Sonos employees that Dr. Almeroth and Mr. Tate relied upon in their respective reports. Clearly, Sonos

determined that these individuals possessed the knowledge and information that was most relevant to the infringement and damages opinions of its experts. Failing to disclose these individuals within the 10 required by the Court's Default Standard is simply disingenuous.

Sonos was also required to search for, and produce, relevant documents from each of these individuals pursuant to Fed. R. Civ. P. 34 and numerous of D&M's Requests for production. *See, e.g.*, Ex. E- 21 (Defendant's First Requests for Production to Sonos Nos. 13, 48, 68, 74, 75, 76). Based on review of Sonos's production in this case, Sonos does not appear to have searched for, or produced, documents pertaining to the individuals relied on by Sonos's experts. See Acosta Decl. at ¶¶ 4-5.

### i) *Surprise and Prejudice to D&M and Importance of the Undisclosed Evidence*

Defendants are prejudiced by Plaintiff's failure to disclose. The first time that Defendants were notified that these individuals were relevant witnesses was months after the close of discovery, after D&M had served its opening invalidity expert report. Sonos's failure to disclose has deprived Defendants of an ability to, for example, (a) determine these individuals' scope of knowledge; (b) determine whether the information provided to Sonos's experts by these individuals is true; (c) examine the individuals to determine the context of their relevant information; (d) review documents and information relating to these individuals to determine the extent of their relevant information; (e) in the event other witnesses testify at trial, to test that information with the information provided to Sonos's experts. *See Finch v. Hercules Inc., No. CIV. A. 92-251 MMS*, 1995 WL 785100, at *17 (D. Del. Dec. 22, 1995) ("Defendant has been surprised and prejudiced in not being able to depose these witnesses and prepare accordingly for trial. . . . It would be unfair to penalize defendant and in effect reward plaintiff's noncompliance."); *see also Enova Tech. Corp. v. Initio Corp.*, No. CV 10-04-LPS, 2013 WL 12155767, at *1 (D. Del. Jan. 31, 2013) ("Defendants' untimely disclosure of these three witnesses prevented and/or discouraged Enova from deposing them.").

As discussed above, information from the previously undisclosed Sonos employees forms the basis of numerous key opinions of Sonos's experts. Without being able to independently assess and test those individuals and their information, D&M is not able to effectively evaluate the factual bases and assumptions relied on by Dr. Almeroth and Mr. Tate for their opinions. D&M cannot effectively challenge or rebut the information provided by undisclosed witnesses nor can it discover the basis for the witnesses' statements. Without that information, D&M can do little more than take the expert's assumption based on the discussions with those individuals as true without recourse. These factors favor striking the experts' opinions.

### ii) *The Likelihood of Disruption of the Trial and Possibility of Curing the Prejudice*

There are seven undisclosed individuals. Should D&M be provided the opportunity to depose these individuals and receive potentially relevant documents as to these individuals, the process will likely take months, require that Sonos's experts be re-deposed, and D&M's experts be given the opportunity to submit supplemental reports in light of the new information discovered. Thus practically, the trial could not proceed as planned.

Further, at this late stage of the litigation, it is unlikely that Sonos can cure this failure (including all the implications of its production of a substantial amount of new evidences). *Union Carbide Chems & Plastics Tech . Corp. v. Shell Oil Co.*,. 270 F. Supp. 2d 519, 524 (D. Del. 2000) (agreeing with Plaintiff's contention that it would "be severely prejudiced" if parties were allowed to introduce voluminous new discovery). These factors favor striking Dr. Almeroth's and Mr. Tate's opinions based on discussions with unidentified but relevant Sonos employees.

### iii) *Sonos's Willfulness and Bad Faith*

This factor is at least neutral in light of Sonos's continued equivocation in fully proffering the witnesses for deposition and producing relevant documents relating to these witnesses.   For the reasons discussed above, Dr. Almeroth and Mr. Tate should be precluded from offering at trial, or by motion, testimony relating to the portions of their expert reports that

rely on the testimony of Mr. Sheen, Mr. Song, Mr. Reissis, Mr. Hambling, Mr. Papish, Mr. Harwood, and Mr. Rappaport, including the opinions and conclusions based on that testimony.

## IV.   DR. WOLFE'S OPINIONS ON THE "PLAYER" TERMS SHOULD BE STRUCK

D&M moves to strike Dr. Wolfe's expert opinions on the various "player" terms because they are directly contrary to the Court's claim construction. D.I. 219 at 8-12.

### A.   BACKGROUND

The Court previously adopted Sonos's proposed construction of a number of "player" terms ("player" / "zone player" / "playback device") to mean a "data network device configured to process and output audio." D.I. 219 at 8. In reaching that construction, the Court rejected Defendants argument that the "player" terms must "output 'sound waves'" as opposed to merely "audio" because "Defendants' construction would require that the zone player, in all embodiments, have an integrated speaker." *Id.* at 10. The Court held that "[w]hile an integrated speaker is not excluded based on the claims and specifications of the various patents, it seems clear to me that one is not required and the claims of the patents clearly indicate when an integrated speaker is necessarily included as part of the zone player." *Id.* at 11. Sonos advocated that the Court adopt this construction.

However, in his invalidity rebuttal expert report, Dr. Wolfe makes numerous arguments that contradict both the Court's construction of the "player" terms and Sonos's own representations. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. These conclusions are based on a requirement that in order to invalidate, prior art must disclose that the "playback devices"

actually (i) "render" (*i.e.*, play) audio content in the form of sound waves and (ii) include an integrated speaker(s) to "render" the audio content. But this is precisely what the Court rejected during claim construction. Thus Dr. Wolfe's opinions on disclosure of the "player" terms in the prior art must be struck.

### B.  APPLICABLE LAW

The Court may properly preclude an expert from presenting claim construction arguments to the jury. *See Cordis Corp. v. Boston Scientific Corp.*, 561 F.3d 1319, 1337 (Fed. Cir. 2009). In a patent case, when the Court has construed patent terms, "[i]t is well-settled that an expert can offer an opinion on how a court's claim construction should be applied to the facts of a case, but cannot offer an opinion that contradicts or disregards a court's claim construction rulings." *In re Maxim Integrated Prods., Inc.*, No. 12-244, 2015 WL 5311264, at *4 (W.D. Pa. Sept. 11, 2015). In other words, when an expert's testimony is based on an "incorrect understanding of the claim construction," the Court "must disregard the testimony." *Cordis Corp. v. Boston Sci. Corp.*, 658 F.3d 1347, 1357 (Fed. Cir. 2011).

### C.  ARGUMENT

Dr. Wolfe directly contradicts the Court's construction of the "player" terms throughout his invalidity rebuttal expert report. ███████████████████████████████
███████████████████████████████████████████████████████████ *See* Ex. E-15 (Wolfe Rebuttal Report) at ¶¶ 215, 218; *see also* Ex. E-20 (Wolfe Rough Depo Tr taken May 31, 2017.), at 93:21 to 94:7 ████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
██████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████   *See* Ex. E-15 (Wolfe Rebuttal Report) at ¶ 218. However, the Court has

explicitly stated that integrated speakers are "***not required***" within the "player" terms and that

"the claims of the patents clearly indicate when an integrated speaker is necessarily included as

part of the zone player." D.I. 219 at 11 (emphasis added).

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████   *See* Ex. E-15 (Wolfe Rebuttal Report) at ¶ 218.

The Court clearly stated that "I have already determined that in construing the term 'playback

device' that the device may output audio *either in the form of an audio signal to an external

speaker* <u>or</u> *as sound waves from an integrated speaker*." D.I. 219 at 15-16 (emphasis added).

Thus, the Court distinguished between outputting electrical audio signals and actually outputting

physical sound waves, but held that either form of communication constituted "output[ing]

audio." This was precisely the what Sonos previously advocated. *See* D.I. 201 at 6 ("Sonos's

construction covers a 'zone player' ***that outputs audio in any form*** (e.g., sound waves ***or***

electrical signals), while D&M requires the 'zone player' to output ***sound waves*** specifically. As

such, D&M's construction requires a zone player with a built-in speaker that plays audio out

loud. This is contrary to the intrinsic evidence."). Now, however, Dr. Wolfe opines that

"transmitting audio data packets over a network" does not constitute "outputting audio." This

directly contradicts the Court's construction and Sonos's prior positions.

For the reasons discussed above, Dr. Wolfe's opinions pertaining to the "player" terms

should be struck as violating the Court's *Markman* order.

## V.   SONOS'S EXPERTS' OPINIONS ON "COPYING" SHOULD BE STRUCK

Sonos's experts' opinions regarding "copying" should be struck those opinions: (1) are not based upon "scientific, technical, or other specialized knowledge"; (2) "will not help the trier of fact to understand evidence or determine a fact issue" as required by FRE 702(a); and (3) violate the prohibition against relying on the absence of opinions of counsel mandated by 35 U.S.C. § 298.

## A. BACKGROUND

Section VIII of Dr. Almeroth's expert report on the alleged infringement is titled "Copying of Sonos Technology by D&M." *See* Ex. E-3 (Almeroth Report) at ¶¶ 601-651. In summarizing the information he relied upon to formulate these opinions, Dr. Almeroth states:



*Id.* at ¶ 601.

Dr. Almeroth's "copying" opinions are divided into two sections. First, he discusses alleged "Evidence of D&M's Extensive Evaluation of Sonos's Technology." *Id.* at Section VIII(A), p. 200. Dr. Almeroth opines that:



Dr. Almeroth's next section opinions recounts alleged "Evidence Suggesting that D&M Copied Sonos's Patented Technology." *Id.* at Section VIII(B), p. 205.



*Id.* at ¶¶ 610-13 (Sonos "Synch Patents"), 614-17 (Sonos "Group Volume Patents"), 618-622 (Sonos "Pairing Patents"), 623-25 (Sonos "Orientation Patent"), 626-30 (Sonos "Auto-play Patent").

*Id.* at ¶¶ 617, 622, 630.

Dr. Almeroth also includes a subsection where he lists "evidence suggesting that D&M copied other aspects of Sonos, such as Sonos's branding, marketing, and user experience, among other aspects of Sonos." *Id.* at ¶ 631. In summarizing his opinion, Dr. Almeroth states that "[D&M's evaluation of the Sonos products], as well as all of the below further serves as circumstantial evidence that D&M copied Sonos's patented technology." *Id.* In reaching this conclusion, Dr. Almeroth states:



. *Id.* at ¶ 631.

Further, in his Reply Expert Report, Dr. Almeroth expounds on his copying opinions in

13

response to the rebuttal opinions that D&M's expert was forced to render. *See, e.g.*, Ex. E-12 (Almeroth Reply Report) at ¶¶ 416-428.

Additionally, Sonos's damages expert, Mr. Michael Tate renders his own copying opinions and its invalidity expert, Dr. Andrew Wolfe, relies in part on Dr. Almeroth's copying opinions:



## B. <u>APPLICABLE LAW</u>

Federal Rule of Evidence 702 "embodies a trilogy of restrictions on expert testimony: qualification, reliability and fit." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). Qualification refers to the requirement that an expert witness possess specialized expertise. *Id.* This requirement has generally been interpreted liberally to encompass a broad range of knowledge, skills, and training to qualify as an expert. *Id.* In addition, an expert's opinion must be based on "methods and procedures of science" rather than subjective belief or unsupported speculation." *Id.* Finally, the expert testimony must assist the trier fact. *Id.* The "helpfulness" standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility. *Id.* In determining whether anticipated expert testimony meets these thresholds, the district court serves as a gatekeeper. *Id.*

### C. ARGUMENT

#### i) *Absence of Specialized Knowledge or Expertise*

None of Sonos's experts have specialized knowledge or expertise in "copying." Dr. Almeroth's copying opinions discussed above are no more than his summaries of documents and testimony. These summaries do not amount to expert opinion, especially where like here Dr. Almeroth's "opinions" are not based on and do not relate to his technological expertise. Simply narrating evidence as Dr. Almeroth sees it, without articulating how his knowledge or expertise ties that evidence to his ultimate opinions, is insufficient to sustain those opinions. *See RSI Corp. v. Int'l Bus. Machines Corp.*, No. C-08-03414 RMW, 2013 WL 1087468, at *4 (N.D. Cal. Mar. 13, 2013) (striking expert "willfulness" opinion because it amounted to no more than "an unhelpful restatement of the facts as he sees them").

Neither Dr. Almeroth, Dr. Wolfe, or Mr. Tate discuss or demonstrate what expertise they are relying upon when they conclude that there is evidence of copying – none has been held out to be an expert on copying. Ex. E-3 (Almeroth Report) at ¶¶ 617, 622, 625, 630. Dr. Almeroth also concedes in regard to his opinion on "additional evidence of copying" that such opinion is based on "branding, marketing, [and] user experience" over which he does not claim to have, nor does he have, any expertise. *Id.* at ¶ 631.

Further, "copying" is an issue of D&M's subjective intent, which none of Sonos's experts provide evidence on, let alone demonstrating specialized knowledge or expertise on discerning D&M's intent (to the extent that is even possible). *See, e.g.*, *id.* at ¶ 601 ██████████████ ████████████████████████ Ex. E-1 (Tate Opening Report) at pp. 54-55 ████████████████████████ Expert witnesses are not permitted to testify over a defendant's intent, motive, state of mind, or evidence by which such state of mind may be inferred." *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278, 293 (D. Del. 2006); *Oxford Gene Tech. Ltd. v. Mergen Ltd.*, 345 F. Supp. 2d 431, 443, n.9 (D. Del. 2004).

Sonos's expert opinions on copying are no more than self-serving conclusions about

whether various documents constitute evidence of copying, in most instances without establishing any tie between the purported copying and specific accused functionalities nd without any specialized expertise or knowledge. These opinions on copying should be struck.

### ii)   *The Allegation of "Copying" Would Be Prejudicial and Confuse the Jury*

Dr. Almeroth's copying conclusion regarding general marketing and branding have no nexus whatsoever to the claimed inventions, which is otherwise required for alleged evidence of copying to be relevant, let alone  support for expert opinion. *See Wm. Wrigley Jr. Co. v. Cadbury Adams USA LLC*, 683 F.3d 1356, 1364 (Fed. Cir. 2012) ("a nexus between the copying and the novel aspects of the claimed invention *must exist* for evidence of copying to be given significant weight in an obviousness analysis") (emphasis added). ███████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████. Ex. E-3 (Almeroth Report) at ¶¶ 631-643. Yet the alleged evidence and opinions of copying are admittedly not directed to the accused functionalities covered by the claims of the Asserted Patents. *Id.* at ¶ 631. █████████

████████████████████████████████████████████████████████████████

███████ *Id.* at ¶¶ 632-651. But again, none of this purported evidence of "copying" is related to the alleged patent infringement at issue in this case. *See Wm. Wrigley Jr.,* 683 F.3d at 1364.5

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████ Ex. E-3 (Almeroth Report) at ¶¶ 618, 623, 626. But this is mere speculation. "Unless the expertise adds something, the expert is at best is offering a gratuitous opinion, and at worst is exerting undue influence on the jury . . . ." *United States v. Hall*, 93 F.3d 1337, 1343 (7th Cir. 1996), *aff'd*, 165 F.3d 1095 (7th Cir. 1999); *see also Aponte v. City of Chicago*, No. 09-cv-8082, 2011 WL 1838773, at *2 (N.D. Ill. May 12, 2011) ("expert testimony does not assist the trier of fact when the jury is able to evaluate the same evidence and is capable of drawing its own conclusions

without the introduction of a proffered expert's testimony"). Thus, Dr. Almeroth's opinions on copying that are not linked to the specific functionalities claimed in the Asserted Patents would only serve to confuse the jury. On this basis as well, his opinions should be struck.

### iii) Sonos's Expert Opinion on Copying Violates 35 U.S.C. § 298

Dr. Almeroth devotes much of his report to allege that D&M knew about and analyzed several of the Asserted Patents, and concluding that D&M's analysis of those patents supports his opinion of copying, which he says is relevant to Sonos's willfulness allegations. *See, e.g.*, Ex. E-3 (Almeroth Report) at ¶¶ 60, 605, 610-611, 615, 620. But his conclusions of "copying" based on such purported evidence rely on the absence or non-disclosure of opinions of D&M's counsel on whether the Asserted Patents were invalid or not infringed. D&M cannot effectively refute this opinion without waiving privilege. *See, e.g., Ultratec, Inc. v. Sorenson Commc'ns, Inc.*, No. 13-CV-346, 2014 WL 4976596, at *2 (W.D. Wis. Oct. 3, 2014) (*amended on other grounds by* 2014 WL 5023098) ("protection granted by 35 U.S.C. § 298 dissolves in the event defendants 'open the door' by attempting to refute a claim of willful infringement by implying that they relied on the advice of counsel.").

For example, Dr. Almeroth relies on the testimony of D&M employee Satoshi Fukuzuka. *See, e.g.*, Ex. E-3 (Almeroth Report) at ¶ 605. ███████████████████████████████

████████████████████████████████████████████████

███████████████ *Id.* (relying on Fukuzuka Dep. Tr. at 171:4-172:9.). ██████████████

████████████████████████████████████████████████

███████████████████████████. Ex. E- 22 (Fukuzuka Dep. Tr.) at 181:13-183:3. While D&M can generally use this portion of Mr. Fukuzuka's testimony in attempt to rebut Dr. Almeroth's copying opinion, it cannot reveal the actual opinions or conclusions of its counsel. 35 U.S.C. § 298 guards against inferences of willfulness that apparently Sonos expects to present to the jury through expert opinion.

Specifically, 35 U.S.C. § 298 states that "[t]he failure of an infringer to obtain the advice of counsel with respect to any allegedly infringed patent, or the failure of the infringer to present such advice to the court or jury, may not be used to prove that the accused infringer willfully infringed the patent or that the infringer intended to induce infringement of the patent." ███

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Accordingly, Dr. Almeroth's copying opinions, as well as Mr. Tate's and Dr. Wolfe's opinions relying on Dr. Almeroth's opinions, should be struck under 35 U.S.C. § 298 for improperly relying on the absence of an opinion of counsel.

For the reasons discussed above, Sonos's expert opinions as to alleged D&M "copying" of Sonos products should be struck.

## VI.   DR. WOLFE'S OPINIONS BASED ON A NEWLY-ASSERTED CONCEPTION DATE OF THE '556 PATENT SHOULD BE STRUCK

D&M moves to strike Dr. Wolfe's expert opinions regarding the conception date of the '556 Patent as they are untimely and contrary to Sonos's earlier sworn discovery responses.

### A. BACKGROUND

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████ *See* Ex. E-15 (Wolfe Rebuttal Report) at ¶¶ 140-167. Dr. Wolfe states that ████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

*See id.* at p. 43, n 3.

But prior to Dr. Wolfe's report, Sonos repeatedly represented that the '556 Patent was entitled to a priority date of July 19, 2011 – the date the '556 Patent was filed. *See* Ex. E-17 (Sonos October 10, 2016 First Amended Responses to Defendants' First Set of Interrogatories (No. 1) ("the subject matter claimed in the '556 Patent was conceived and reduced to practice at least as early as July 19, 2011"); E-18 (Sonos November 18, 2016 Second Amended Responses (No. 1)). ███████████████████████████████████████████████████

████████████████████████ *See* Ex. E-30 (Defendants' Responses to Sonos First Requests for Admissions (No. 45)).  But interestingly, on May 19, 2017, a month after Dr. Wolfe served his report, Sonos filed its Third Amended Responses to Defendants' Interrogatories, changing the alleged "conception date" of the '556 Patent to August 31, 2010. Ex. E-19.

**B.  ARGUMENT**

**i)  *Importance of the Undisclosed Theory***

Sonos cannot genuinely dispute the importance of the alleged priority date of the '556 Patent to D&M's invalidity contentions and expert reports. In fact, Sonos and Dr. Wolfe have only provided this newly revised conception date in a strained attempt to overcome certain prior art materials included in D&M's Final Invalidity Contentions and its invalidity expert report. *See, e.g.*, Ex. E-15 (Wolfe Rebuttal Report) at ¶ 1283 (attempting to overcome Castor-Perry reference based on newly disclosed August 31, 2010 priority date).

**ii)  *Surprise and Prejudice to D&M***

Defendants are prejudiced by Plaintiff's failure to disclose. Beginning in October 2016, Sonos represented under oath that the '556 Patent was conceived of by "July 19, 2011." Over the next six months, D&M conducted fact discovery (ending November 18, 2016), prepared and served Final Invalidity Contentions (January 18, 2017), deposed inventors (ending February 16, 2017), and prepared and served its invalidity expert report (February 20, 2017). Had Sonos properly identified this "August 31, 2010" conception date theory, D&M could have investigated these claims during depositions and sought additional prior art materials. However, by waiting

until April 17, 2017, Sonos deprived D&M of these opportunities. Further, Sonos waited another full month to update its Interrogatory Responses regarding the conception date of the '556 Patent. *See* Amended Responses on May 19, 2017. This delay is neither justifiable nor harmless.

### iii)  The Likelihood of Disrupting the Trial and Curing the Prejudice

The Parties have exchanged all Final Contentions and expert reports in this case. If given the opportunity to search for additional relevant documents (including contradictory documents or additional prior art) under the newly-disclosed conception theory, the process will likely take months and require that D&M's experts be offered the opportunity to supplement their reports in light of the information discovered. In all practicality, the trial could not proceed as planned.

Further, at this late stage of the litigation, it is unlikely that Sonos can cure this failure (including all the implications of its production of a substantial amount of new evidences). *Union Carbide Chems*,., 270 F. Supp. 2d at 524 (agreeing with Plaintiff's contention that it would "be severely prejudiced" if parties were allowed to introduce voluminous new discovery). These factors favor striking the experts' opinions.

### iv)  Sonos's Lack of Explanation and Bad Faith

Sonos has yet to provide any explanation for its withholding of a new conception date. Defendants are not convinced that any credible explanation exists, especially considering that Sonos waited another full month to amend its discovery responses to conveniently antedate prior art relied on in Defendants' invalidity expert report. Given this questionable strategy, this factor is, at best, neutral. While this strategy is certainly questionable, and its repeated statements under oath and six-month delay in disclosing this new conception date strikes Defendants as constituting litigation misconduct.

For the reasons discussed above, Dr. Wolfe should be precluded from offering any testimony relying on an August 31, 2010 conception date for the '556 Patent.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for D&M Holdings Inc. d/b/a The D+M*
*Group, D&M Holdings U.S. Inc. and Denon*
*Electronics (USA), LLC*

OF COUNSEL:

John M. Jackson
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, Texas 77010
(713) 752-4521
wqureshi@jw.com

June 2, 2017

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 9, 2017, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                   *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
Wilmington, DE  19801
*Attorneys for Plaintiff*

George I. Lee, Esquire                                      *VIA ELECTRONIC MAIL*
Sean M. Sullivan, Esquire
Rory P. Shea, Esquire
John Dan Smith III, Esquire
Michael P. Boyea, Esquire
LEE SULLIVAN SHEA & SMITH LLP
224 North Desplaines Street, Suite 250
Chicago, IL  60661
*Attorneys for Plaintiff*


                                           */s/ Michael J. Flynn*
                                           _____
                                           Michael J. Flynn (#5333)