IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-1330 (RGA) |
| | ) | |
| D&M HOLDINGS INC. d/b/a THE D+M | ) | REDACTED - PUBLIC VERSION |
| GROUP, D&M HOLDINGS U.S. INC., and | ) | |
| DENON ELECTRONICS (USA), LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY
## JUDGMENT OF NO INDIRECT INFRINGEMENT

OF COUNSEL:

John M. Jackson
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, Texas 77010
(713) 752-4521
wqureshi@jw.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for D&M Holdings Inc. d/b/a The D+M
Group, D&M Holdings U.S. Inc. and Denon
Electronics (USA), LLC*

Originally Filed:  June 2, 2017
Redacted Version Filed:  June 9, 2017

## TABLE OF CONTENTS

Page

1.  Nature & Stage of Proceedings .................................................................1

2.  Summary of the Argument .......................................................................1

3.  Statement of Facts ...................................................................................2

      i.     Procedural History of Asserted Patents ....................................2

      ii.    Technology of Asserted Patents.................................................2

      iii.   Defendants' Accused Devices.....................................................4

      iv.   Indirect Infringement Theories ..................................................5

4.  Statement of Law .....................................................................................6

5.  Argument ..................................................................................................6

      a.    Defendants Have Not Induced Infringement of Any Asserted Patent ...................6

      i.     Sonos Has Failed to Demonstrate Any Third-Party Direct Infringement ...6

      ii.    Defendants Did Not Take Any "Affirmative Acts to Encourage Infringement" Upon Learning of the Seven Newly-Issued and Newly-Asserted Patents ......................................................................8

      b.   Defendants Have Not Contributorily Infringed Any Asserted Patent .................12

6.  Conclusion ..............................................................................................16

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*,
  501 F.3d 1307 (Fed. Cir. 2007) ................................................................................7, 10

*Commil USA, LLC v. Cisco Sys., Inc.*,
  135 S. Ct. 1920 (2015), *cert denied*, 137 S. Ct. 93 (2016) .....................................6

*Deepsouth Packing Co. v. Laitram Corp.*,
  406 U.S. 518 (1972) ................................................................................................12

*DSU Med. Corp. v. JMS Co. Ltd.*,
  471 F.3d 1293 (Fed. Cir. 2006)..................................................................................8

*Dynacore Holdings Corp. v. U.S. Philips Corp.*,
  363 F.3d 1263 (Fed. Cir. 2004)..................................................................................7

*E–Pass Technologies, Inc. v. 3Com Corp.*,
  473 F.3d 1213 (Fed. Cir. 2007)................................................................................10

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir. 2010)................................................................................13

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
  438 F.3d 1354 (Fed. Cir. 2006)................................................................................12

*Global-Tech Appliances, Inc. v. SEB S.A.*,
  563 U.S. 754, 765, 131 S. Ct. 2060, 2068, 179 L. Ed. 2d 1167 (2011) .................12

*i4i Ltd. P'ship v. Microsoft Corp.*,
  598 F.3d 831 (Fed. Cir. 2010)..................................................................................13

*IP Commc'n Sols., LLC v. Viber Media (USA) Inc.*,
  No. CV 16-134-GMS, 2017 WL 1312942 (D. Del. Apr. 5, 2017) ..........................11

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009), *cert denied*, 130 S. Ct. 3324 (2010) .................8, 9

*MONEC Holding AG v. Motorola Mobility, Inc.*,
  897 F. Supp. 2d 225 (D. Del. 2012) .......................................................................9, 10

*Tegal Corp. v. Tokyo Electron Co.*,
  248 F.3d 1376 (Fed. Cir. 2001)..................................................................................6

*Telemac Cellular Corp. v. Topp Telecom, Inc.*,
    247 F.3d 1316 (Fed. Cir. 2001).........................................................................6

*Toshiba Corp. v. Imation Corp.*,
    681 F.3d 1358 (Fed. Cir. 2012)...................................................................6, 15

*Vita–Mix Corp. v. Basic Holding, Inc.*,
    581 F.3d 1317 (Fed. Cir. 2009)......................................................................12

**Statutes**

35 U.S.C. § 271(a) ...............................................................................................5

35 U.S.C. § 271(b) ...........................................................................................6, 8

**Other Authorities**

Fed. R. Civ. P. 56(a)...........................................................................................6

## 1.      Nature & Stage of Proceedings

On October 21, 2014, Plaintiff Sonos, Inc. ("Sonos") sued Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC (collectively, "Defendants") for allegedly infringing four patents, including U.S. Patent Nos. 7,571,014 ("the '014 Patent") and 8,588,949 ("the '949 Patent") (collectively, "the Volume Patents."). Sonos subsequently filed three Amended Complaints adding and removing various different patents to this litigation. In particular, on March 9, 2015, Sonos filed a Second Amended Complaint adding a number of patents including U.S. Patent No. 8,938,637 ("the '637 Patent").[1] Finally, on March 7, 2016, Sonos filed a Third Amended Complaint substituting seven newly-issued patents. Having dismissed three of these patents from this litigation, Sonos currently asserts nine patents against Defendants: the Volume Patents, the '637 Patent, and U.S. Patent Nos. 9,219,959 ("the '959 Patent"), 8,938,312 ("the '312 Patent"), 9,213,357 ("the '357 Patent"), 9,195,258 ("the '258 Patent"), 9,202,509 ("the '509 Patent"), and 9,042,556 ("the '556 Patent") (collectively, "the Asserted Patents"). The Parties recently exchanged expert reports detailing the various allegations in this litigation. Discovery in this case is now closed and the Parties are in the dispositive and *Daubert* motion stage.

## 2.      Summary of the Argument

Like Sonos's direct infringement allegations[2], Sonos's allegations of indirect infringement are fatally flawed for a number of reasons. First, Sonos has failed to identify any actual instances of direct infringement by third-party users of the "HEOS System," which includes at least (i) a HEOS Controller Application ("HEOS Controller App") operating on a

---

[1] Sonos's Second Amended Complaint brought the total number of Asserted Patents to twelve.

[2] Deficient for at least the reasons set forth in Defendants' concurrently filed Motion for Summary Judgment of No Direct Infringement.

third-party device such as a smart phone and (ii) at least one HEOS speaker device ("HEOS Player") connected to a wireless network. Additionally, Sonos's allegations of induced infringement regarding the seven newly-issued and newly-asserted patents are not supported by any "affirmative acts" linked to both "knowledge of the patents" and a "specific intent to induce infringement." Finally, Sonos's allegations of contributory infringement are predicated on a legally improper – and factually inconsistent – analysis of "substantial non-infringing uses."

**3. Statement of Facts**

**i. Procedural History of Asserted Patents**

Sonos currently asserts 29 different claims from the nine Asserted Patents. These Asserted Patents were added to this litigation at different stages over the course of nearly 17 months. The following table lists the issue date for each Asserted Patent alongside the date each was added to this litigation:

| Asserted Sonos Patent | Issue Date | Date Patent Added to Litigation |
|---|---|---|
| 7,571,014 | August 4, 2009 | October 21, 2014 |
| 8,588,949 | November 19, 2013 | October 21, 2014 |
| 8,938,637 | January 20, 2015* | March 9, 2015 |
| 8,938,312 | January 20, 2015* | March 7, 2016 |
| 9,042,556 | May 26, 2015* | March 7, 2016 |
| 9,195,258 | November 24, 2015* | March 7, 2016 |
| 9,202,509 | December 1, 2015* | March 7, 2016 |
| 9,213,357 | December 15, 2015* | March 7, 2016 |
| 9,219,959 | December 22, 2015* | March 7, 2016 |

*Patent was issued after filing of Original Complaint

**ii. Technology of Asserted Patents**

Sonos admits in its Third Amended Complaint that the Asserted Patents all involve the same general technology relating to wireless audio systems. *See* D.I. 93 at 5. For example, as described in the specification of the '949 Patent, the Asserted Patents are directed to "the area of

consumer electronics and human-computer interaction." *See* '949 Patent at Col. 1, ll. 26-27. More particularly, the Asserted Patents state that although multi-zone audio systems including a number of audio players were "conventional" around 2003, there was a demand for "dynamic control of the audio players as a group [with] minimal manipulation." *See id.* at Col. 1, ll. 41-43 and Col. 2, ll. 12-13.  To address this purported need, the Asserted Patents describe methods of controlling and managing the various operations of the networked audio environment, including the following general activities:

> A.   Synchronizing playback of various playback devices in a networked environment – '258, '357 and '637 Patents (the "Synchronization Patents");
>
> B.   Adjusting volume and other audio settings of various playback devices from a centralized control device – '014 and '949 Patent (the aforementioned "Volume Patents");
>
> C.   Establishing various configurations including pairings of audio playback devices in the networked environment – '509 Patent;
>
> D.   Adjusting the equalization settings of audio playback devices in the networked environment based on the established configurations or pairings – '959 Patent;
>
> E.   Adjusting audio settings based on orientation of audio playback devices in the networked environment – '556 Patent; and
>
> F.   Automatically adjusting playback of audio streams based on the detection of a new audio signal – '312 Patent.

In short, the Asserted Patents are directed to human-computer interaction and centrally controlling networked audio components.  This is supported by the specifications of the Asserted Patents as well as Sonos's allegations in its Third Amended Complaint.  *See id.* at Col. 1, ll. 26-27; *see also, e.g.*, D.I. 102, ¶ 54 ("The '949 patent is directed to devices and methods for controlling a plurality of players in a local area network.").

### iii.    Defendants' Accused Devices

Defendants manufacture and sell a number of wireless audio products as part of the accused HEOS System.  *See* D.I. 102 at ¶ 15 ("This HEOS system is made up of a line of HEOS wireless audio products, including the 'HEOS 7' speaker, the 'HEOS 5' speaker, the 'HEOS 3' speaker, 'HEOS 1' speaker, the 'HEOS LINK' pre-amplifier, the 'HEOS AMP' amplifier, the 'HEOS Drive' multi-room amplifier, and the 'HEOS HomeCinema' TV sound system (collectively, 'HEOS players'), all of which can be configured and controlled by the HEOS Controller App (for iOS, Android, or Kindle).").

But Defendants do not manufacture – and have never manufactured – any physical "controller" device for the identified HEOS Players.  Further, Defendants do not offer any networking equipment for enabling communication between the various HEOS Players and/or the HEOS Controller App.  Importantly, the HEOS Players have a number of features and functionalities that support and enable audio playback locally or via a Bluetooth link without need for any wireless network configuration or additional programming by the user via the HEOS Controller App.

Nevertheless, Sonos's infringement allegations are targeted to particular and narrow operating configurations.  They allege that in order to operate in the particularly accused manner – *i.e.*, to allow the various claimed functionalities listed above – the HEOS Players **must** be operated in conjunction with the HEOS Controller App.  *See, e.g.*, D.I. 102 at ¶43 ("Defendants' HEOS controller app—which is configured to group HEOS speakers, synchronize grouped HEOS speakers, and adjust a "Master" volume for grouped HEOS speakers—embodies one or more of the methods and/or devices claimed in the '014 patent").  On this point, Sonos's infringement expert Dr. Almeroth could not be clearer:



*See* Jackson Dec. at Ex. E-3, Expert Report of Dr. Kevin C. Almeroth served on February 20,

2017 ("Almeroth Opening Report") at ¶ 267 (emphasis added).

### iv.   Indirect Infringement Theories

Sonos and Dr. Almeroth argue that "dealers and end-users" directly infringe the Asserted

Patents by "using" the HEOS Players <u>or</u> HEOS Controller App.  *See, e.g.*, Ex. E-12, Reply

Expert Report of Dr. Kevin C. Almeroth dated May 9, 2017 ("Almeroth Reply Report") at ¶¶

386-387, 392.  Dr. Almeroth makes it clear that "any use [of the accused HEOS Players or

HEOS Controller App] for any purpose, is a 'use[ ]' of the 'patented invention,' which is also

direct infringement under 35 U.S.C. § 271(a)."  *See, e.g.*, *id.* at ¶ 387 ████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

███████; ¶¶ 391-92 ████████████████████

████████████████████████████████████

████████████████████████████████████

█████████████████████.

Sonos alleges that Defendants induce infringement of the accused products by

████████████████████████████████████

███████████  *Id.* at ¶¶ 398-99. ██████████████████████

██████████████████████.  *Id.* at ¶¶ 409-14.  But as discussed below, Sonos's

allegations are unsupported and there is no genuine issue of material fact on the issue of Defendants' indirect infringement of the Asserted Patents.  Accordingly summary judgment of no indirect infringement should be granted.

**4.     Statement of Law**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Broad conclusory statements offered by [ ] experts are not evidence and are not sufficient to establish a genuine issue of material fact." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1329 (Fed. Cir. 2001) (citations omitted).

**5.     Argument**

**a.     Defendants Have Not Induced Infringement of Any Asserted Patent**

"To prove induced infringement [under 35 U.S.C. § 271(b)], the patentee must show direct infringement, and that the alleged [indirect] infringer 'knowingly induced infringement and possessed specific intent to encourage another's infringement.'" *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (quoting *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 851 (Fed. Cir. 2010)).  Thus, liability under an inducement theory requires affirmative acts inducing direct infringement and "proof the defendant knew the acts were infringing." *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1928 (2015), *cert denied*, 137 S. Ct. 93 (2016); *Tegal Corp. v. Tokyo Electron Co.*, 248 F.3d 1376, 1378-79 (Fed. Cir. 2001).

**i.     Sonos Has Failed to Demonstrate Any Third-Party Direct Infringement**

Sonos's allegations of third-party direct infringement are legally and factually insufficient. ████████████████████████████████████

███████████████████████████████████████████████████████████

6

██████████.  *See, e.g.*, Ex. E-12, Almeroth Reply Report at ¶¶ 398-99.  The HEOS Players have a number of functionalities and may still play music locally or via a Bluetooth link without any wireless network configuration or additional programming by the user with the HEOS Controller App.  *See, e.g.*, Ex. C, Rebuttal Expert Report of Dr. Harry Bims  ("Bims Report") on April 17, 2017 at ¶ 330.  Dr. Almeroth's opinions either demonstrate his failure to consider the vast number of non-infringing functions performed by the HEOS Products and HEOS Controller App or his belief that such non-infringing uses are irrelevant to his analysis of whether Defendants knowingly induced infringement.  Neither of these positions is correct.  *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007) (noting that plaintiffs "must prove specific instances of direct infringement or that the accused device necessarily infringes the patent in suit, in order to sustain the jury verdict of induced infringement. Hypothetical instances of direct infringement are insufficient to establish vicarious liability or indirect infringement"); *see also Dynacore Holdings Corp. v. U.S. Philips Corp.*, 363 F.3d 1263, 1275 (Fed. Cir. 2004) ("The mere sale of a product capable of substantial non-infringing uses does not constitute indirect infringement of a patent.").

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

*See* Almeroth Reply Report at ¶¶ 398-99.  This is insufficient on its face for at least the reasons set forth in Defendants' Motion for Summary Judgment of No Direct Infringement.  Because Sonos has failed to demonstrate any actual instances of third-party direct infringement, Defendants are entitled to judgment as a matter of law.

        ii.     **Defendants Did Not Take Any "Affirmative Acts to Encourage Infringement" Upon Learning of the Seven Newly-Issued and Newly-Asserted Patents**

At least for the '637, '556, '258, '509, '357, '959, and '312 Patents, Sonos has insufficient evidence to create a genuine issue of material fact that Defendants encouraged, through affirmative acts, infringement of these newly-issued patents. ██████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████. *See* Ex. B, Kesan Reply Report at ¶ 838.  Moreover, all seven of this newly-added Asserted Patents were first issued after this litigation began.  Under these circumstances, Sonos's "evidence" of encouragement merely demonstrates that Defendants consistently marketed its products before and after Sonos was drafting its asserted patent claims and before these patents were issued.

A party who "actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b).  Under this provision, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts and that he knew or should have known his actions would induce actual infringements." *DSU Med. Corp. v. JMS Co. Ltd.*, 471 F.3d 1293, 1306 (Fed. Cir. 2006) (en banc in relevant part).  "[I]nducement requires evidence of culpable conduct, directed to encouraging another's infringement, not merely that the inducer had knowledge of the direct infringer's activities."  *Id.*

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████. *See, e.g.*, E-12, Reply Report at ¶¶ 398-402.  Although the Federal Circuit has recognized that certain types of directed advertisements, technical materials, and customer training may be circumstantial evidence of induced infringement, *see Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1322 (Fed. Cir. 2009), *cert denied*, 130 S. Ct. 3324 (2010),

Dr. Almeroth has failed to provide the requisite evidentiary support for his allegations against Defendants regarding the newly-issued Asserted Patents.

Nearly all of Sonos's offered "evidence" of induced infringement pre-dates the suit and thus cannot possibly provide evidence of specific intent to infringe the seven Asserted Patents issued after the lawsuit. ███████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

*See* E-12, Almeroth Reply Report at ¶ 403. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Sonos's allegations do not raise a genuine issue of material fact to inform induced infringement and thus are insufficient as a matter of law to prevent summary judgment.

All relevant case law states that evidence of affirmative actions taken to induce infringement, such as advertising, must be linked to intentionally inducing *the allegedly infringing use*. *Lucent Techs., Inc.*, 580 F.3d at 1322; *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012). Sonos has not and cannot establish any link between any of Defendants' post-suit advertising activities and Defendants' knowledge of the seven newly-asserted patents, let alone any specific intent to induce infringement. Instead, Sonos concludes that because at least one of the HEOS Products allegedly infringes one of Sonos's seven asserted patents, that any and all advertising of those HEOS Products is necessarily linked to the accused functionalities implicated by all seven asserted patents. Such

analysis is clearly flawed and wholly inadequate.  Moreover, Sonos has presented no evidence that Defendants' post-suit advertising activities affirmatively changed in light of the newly-added patents or were specifically intended to induce infringement.  *See id.* (assuming defendant had actual knowledge of patents-in-suit, "[a]llegations of marketing activities . . . do not, on their own, demonstrate that Defendants knew such activities were infringing or that Defendants possessed the specific intent to encourage another's infringement").

The fact that Defendants may generally advertise the HEOS Players or the HEOS Controller App does not support Dr. Almeroth's conclusion that Defendants are somehow intentionally inducing users to purchase and use these separate components in a combined manner, let alone to perform the specific accused functionalities recited in the seven newly-issued Asserted Patents.  In short, Dr. Almeroth has no evidence that Defendants are advertising the use of the accused products "in an infringing manner."  Furthermore, Dr. Almeroth has no evidence that Defendants have affirmatively changed any aspect of their marketing materials in light of the specific functionalities recited in the seven newly-issued Asserted Patents.  Courts have recognized that when certain functionalities are recited in the asserted claims, general advertising materials are insufficient to demonstrate more than speculation that the infringing activity has occurred or that defendants intended to induce infringement.  *See, e.g.*, *ACCO Brands, Inc. v. ABA Locks Manufacturer Co.*, 501 F.3d 1307, 1312-14 (Fed. Cir. 2007); *see also E–Pass Technologies, Inc. v. 3Com Corp.*, 473 F.3d 1213, 1222-23 (Fed. Cir. 2007); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 234 (D. Del. 2012).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████   *See, e.g.*, E-12, Almeroth

Reply Report at ¶¶ 237, 267, 322.  This argument is necessitated by the fact that the Asserted

Patents are directed to "devices and methods for controlling a plurality of players in a local area

network."  *See, e.g.*, '949 Patent at Col. 1, ll. 28-29.  In other words, none of the functionalities

described in the Asserted Patents – namely establishing groups of playback devices,

synchronizing playback between these devices, and controlling audio settings within the groups

– could be accomplished without a *plurality* of players.

Importantly, Defendants advertise and market the various HEOS Players as separate

devices.  Customers and end-users are not required to purchase more than one HEOS Player and

in fact the evidence shows that the majority of users purchase and use single HEOS Players.  Ex.

Ex. D (Bone Rebuttal Report) at ¶ 67, n. 140; E-4 (D+M_0308511); E-14 (Brendon Stead

deposition, October 14, 2016, p. 469); Ex. E-7 (D+M_0402492-D+M_0402513 at

D+M_0402504); E-23 (D+M_0402895) ████████████████████████████████

████████████████████████ Ex. E-23, D+M_0402895 ██████████████████████

████████████████████████████.  As a result of this marketing strategy, Defendants

are clearly not taking "affirmative acts" with "specific intent to induce infringement" of the

Asserted Patents which necessarily *require* multiple playback devices the claimed

functionalities.  At best, Defendants are offering and marketing individual products or

components which, when combined and configured in a very specific manner by an end user not

under control or direction of Defendants, allegedly infringe under Sonos's allegations.  This is

plainly insufficient to support Sonos's allegations of induced infringement.  *IP Commc'n Sols.,*

*LLC v. Viber Media (USA) Inc.*, No. CV 16-134-GMS, 2017 WL 1312942, at *4 (D. Del. Apr. 5,

2017) ("[T]he main issue here is not the use of support or marketing webpages to evidence

specific intent to induce infringement. Instead, IPCS failed to adequately allege how Viber

provided technical support services or detailed instructions promoting the use of the VoIP application *and* the server system in an infringing manner.").

>    **b.**     **Defendants Have Not Contributorily Infringed Any Asserted Patent**

"Contributory infringement imposes liability on one who embodies in a non-staple device the heart of a patented process and supplies the device to others to complete the process and appropriate the benefit of the patented invention." *Vita–Mix Corp. v. Basic Holding, Inc.,* 581 F.3d 1317, 1327 (Fed. Cir. 2009).  As with induced infringement, contributory infringement requires that the defendant have knowledge of the existence of the patent that is infringed. *See Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 765, 131 S. Ct. 2060, 2068, 179 L. Ed. 2d 1167 (2011).  In addition, the patentee bears the burden of proving that the accused products have no substantial non-infringing uses. *See Golden Blount, Inc. v. Robert H. Peterson Co.,* 438 F.3d 1354, 1363 (Fed. Cir. 2006).

For the reasons set forth in Section 5.a.i. above, Sonos has failed to properly establish that end-users actually directly infringe any claims of the Asserted Patents.  Thus, Sonos's allegations of contributory infringement should also be dismissed, as contributory infringement requires a showing of third-party direct infringement. *Deepsouth Packing Co. v. Laitram Corp.*, 406 U.S. 518, 526 (1972) ("In a word, if there is no (direct) infringement of a patent there can be no contributory infringer.") (citation omitted).

In addition to these deficiencies, Sonos has similarly failed to prove that the accused products – namely the HEOS Players and HEOS Controller App – have "no substantial non-infringing uses." ███████████████████████████████████████████████

███████████████████████████████████████████████████  *See* E-12,

Almeroth Reply Report at ¶¶ 410-11.  Although courts generally examine whether a particular "allegedly infringing component" has substantial non-infringing uses, Sonos has failed to

properly identify any such component in its allegations.  *See, e.g.*, *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1330 (Fed. Cir. 2010); *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 849 (Fed. Cir. 2010).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████  *See* E-12, Reply Report at ¶¶ 398-99 (emphasis added).

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████.  But Sonos has not identified any type of "allegedly infringing component" or "functionality" of the accused products and instead focuses its infringement analysis on any "use" whatsoever of those products.

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████  *See* E-12, Reply Report at ¶¶ 410-11.  In other words, Sonos attempts to apply a holistic, product-based analysis for its infringement theories, and a much narrower, functionality-based analysis for any determination of substantial non-infringing uses.  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████  *Compare* E-12, Almeroth Reply Report at ¶¶ 410-11 (████████

████████████████████████████████████████████████████, *with id.* at ¶ 387 ████████████████████████████████████████████████████████

13

██████████████████████████████████████████████████████████

████████████████ *and* ¶¶ 391-92 ██████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████.  Based on these direct

infringement allegations, the proper analysis for contributory infringement is whether use of the

accused products – namely the HEOS Players or HEOS Controller App – are generally capable

of "substantial non-infringing uses."  As detailed further below, they most certainly are.

Sonos and its damages expert, Mr. Michael Tate, have based their damages in this case

on the "entire market value" of the accused products as opposed to any accused "component"

constituting the "smallest salable patent-practicing unit."  Although Defendants take issue with

Mr. Tate's analysis for at least the reasons set forth in Defendants' concurrently filed Motion To

Strike the Expert Opinions of Mr. Michael Tate, Defendants note that Sonos once again takes

inconsistent positions.  In particular, Sonos and its experts suggest that infringement and

damages require a product-based analysis.  In other words, any "use" of an accused product

constitutes direct infringement of the Asserted Patents regardless of how the product is used or

needs to be configured to perform an accused functionality.  Thus, Sonos argues that it is entitled

to a reasonable royalty based on the entire market value of the accused products.  However,

when considering "substantial non-infringing uses," Sonos suggests that it has identified some

smaller accused component(s) within the firmware and software.  Setting aside the fact that

Sonos has failed to adequately identify which "components" of the firmware and software it is

actually accusing, Sonos's argument contradicts its own infringement positions (based on any

"use") and its damages calculations (based on the "entire market value" as opposed to any

"apportionment.")  This is further evidence that Sonos's analysis regarding any "substantial non-infringing uses" is legally flawed and inconsistent.

Applying a proper analysis, the accused products are unquestionably capable of performing substantial non-infringing uses.  For example, the HEOS Players have a number of features and functionalities that support and enable audio playback locally or via a Bluetooth link without any wireless network configuration or additional programming by a user via the HEOS Controller App.  Ex. C, Bims Report at ¶ 330.  Even when a HEOS Player is connected to a wireless networking using the HEOS Controller App, the HEOS Player or Players are nevertheless capable of numerous non-infringing uses.  For example, as discussed above, the majority of HEOS consumers own only one HEOS Player.  Ex. D (Bone Rebuttal Report at ¶ 67, n. 140); E-4 (D+M_0308511); Ex. E-23 D+M_0402895.  ████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████  *See* E-12, Almeroth Reply Report at ¶¶ 410-11.  Even when HEOS consumers own multiple HEOS Players, there is no requirement or expectation that the consumer will eventually configure the HEOS Players in the manner required by the Asserted Patents.  Further, because Sonos has failed to put forth evidence that these various non-infringing uses are not "substantial," Sonos's allegations of contributory infringement should be dismissed.  *See, e.g.*, *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1362-63 (Fed. Cir. 2012) ("We agree with Appellees that Toshiba failed to proffer evidence that creates a genuine issue of material fact. Because Toshiba had the burden to prove the lack of substantial non-infringing uses, Toshiba was required to put forth evidence showing that the use of unfinalized DVDs was not substantial.").

6.     **Conclusion**

Accordingly, Defendants respectfully request that the Court grant summary judgment of

no indirect infringement of the Asserted Patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

OF COUNSEL:

John M. Jackson
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER LLP
1401 McKinney, Ste. 1900
Houston, Texas 77010
(713) 752-4521
wqureshi@jw.com

June 2, 2017

*Attorneys for D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc. and Denon Electronics (USA), LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2017, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 9, 2017, upon the following in the manner indicated:

Philip A. Rovner, Esquire                                          *VIA ELECTRONIC MAIL*
Jonathan A. Choa, Esquire
POTTER ANDERSON & CORROON LLP
Hercules Plaza
Wilmington, DE  19801
*Attorneys for Plaintiff*

George I. Lee, Esquire                                            *VIA ELECTRONIC MAIL*
Sean M. Sullivan, Esquire
Rory P. Shea, Esquire
John Dan Smith III, Esquire
Michael P. Boyea, Esquire
LEE SULLIVAN SHEA & SMITH LLP
224 North Desplaines Street, Suite 250
Chicago, IL  60661
*Attorneys for Plaintiff*

*/s/ Michael J. Flynn*
_____
Michael J. Flynn (#5333)