IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-1330-RGA |
| | ) | |
| D&M HOLDINGS INC. d/b/a THE | ) | **PUBLIC VERSION** |
| D+M GROUP, D&M HOLDINGS U.S. | ) | |
| INC., and DENON ELECTRONICS | ) | |
| (USA), LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**SONOS, INC.'S OPENING BRIEF IN SUPPORT OF ITS MOTION
TO EXCLUDE THE EXPERT TESTIMONY OF ATTORNEY DR. KESAN**

OF COUNSEL:
George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 N Desplaines St, Suite 250
Chicago, IL 60661
(312) 754-0002

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Alan R. Silverstein (#5066)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
asilverstein@potteranderson.com

*Attorneys for Plaintiff
Sonos, Inc.*

Dated: June 2, 2017
Public Version Dated:  June 9, 2017

## **TABLE OF CONTENTS**

I. NATURE & STAGE OF THE PROCEEDINGS & STATEMENT OF FACTS ..............1

II. STATEMENT OF FACTS ...................................................................................................1

    A. Dr. Kesan's Qualifications..........................................................................................1

    B. Overview of the Kesan Report...................................................................................3

III. LEGAL STANDARDS ........................................................................................................4

IV. ARGUMENT........................................................................................................................5

    A. Dr. Kesan Has No Technical Work Experience in the Pertinent Art.......................5

    B. Dr. Kesan Has No Technical Work Experience at the Time of the Inventions.......7

    C. The Kesan Report Contains Improper Legal Opinions............................................9

V. CONCLUSION....................................................................................................................11

## TABLE OF AUTHORITIES

**CASES**

*AstraZeneca UK Ltd. v. Watson Laboratories, Inc. (NV)*,
   C.A. No. 10–915–LPS, 2012 WL 6043266 (D. Del. Nov. 14, 2012)..........................9, 11

*Brigham and Women's Hosp. Inc. v. Teva Pharmaceuticals USA, Inc.*,
   C.A. No. 08–464, 2010 WL 3907490 (D. Del. Sept. 21, 2010) ........................................9

*Corning Inc. v. SRU Biosystems*,
   C.A. No. No. 03–633 JJF, 2004 WL 5523178, at *1 (D. Del. Nov. 5, 2004).....................9

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)...........................................................................................................5

*Extreme Networks, Inc. v. Enterasys Networks, Inc.*,
   395 F. App'x 709 (Fed. Cir. 2010) ....................................................................................8

*Flex-Rest, LLC v. Steelcase, Inc.*,
   455 F.3d 1351 (Fed. Cir. 2006).....................................................................................4, 7

*Proversis Scientific Corp. v. Innovasystems, Inc.*,
   536 F.3d 1256 (Fed. Cir. 2008).........................................................................................8

*Radio Sys. Corp. v. Lalor*,
   No. C10-828RSL, 2014 WL 4626298 (W.D. Wash. Sept. 12, 2014)................................8

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
   550 F.3d 1356, 1364 (Fed. Cir. 2008)..................................................................... *passim*

**RULES**

Fed. R. Evid. 702 .........................................................................................................................4

Sonos, Inc. ("Sonos") respectfully submits this opening brief in support of its motion to exclude the proposed trial testimony of Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC's (collectively, "D&M") expert witness Attorney Jay P. Kesan.

## I. NATURE & STAGE OF THE PROCEEDINGS

On October 21, 2014, Sonos filed the present case against D&M. D.I. 1. The operative complaint is Sonos's Supplemental Third Amended Complaint, April 21, 2017. D.I. 262, 263. In its Supplemental Third Amended Complaint, Sonos asserted infringement of 12 Sonos patents. D.I. 263.

On February 20, 2017, D&M served Dr. Kesan's Opening Invalidity Report ("Kesan Report"). Ex. A.[1] Sonos served Dr. Wolfe's Rebuttal Expert Report on April 17, 2017. Ex. B. D&M then served Dr. Kesan's Reply Invalidity Report ("Reply Report") on May 9, 2017. Ex. C. Dr. Kesan's deposition is scheduled for June 16, 2017.

## II. STATEMENT OF FACTS

### A. Dr. Kesan's Qualifications

The Kesan Report identifies Dr. Kesan as a Law Professor with the College of Law at the University of Illinois Urbana-Champaign. Ex. A at ¶ 4. Dr. Kesan also includes a copy of his CV, which lists his scientific, legal, and academic work experience, education, publications, and patents. *See* Ex. D. According to his CV, he has technical degrees from the National Institute of Technology, Karnataka, Surathkal, India (B.S.E.E.) in 1984, University of Texas at Austin (M.S. and Ph.D. in Electrical and Computer Engineering) in 1986 and 1989 respectively. *Id.* at 3. The Kesan Report does not appear to indicate the subject of his Ph.D. work.

---

[1] Referenced exhibits are attached to the Declaration of Philip A. Rovner in Support of Sonos, Inc.'s Motion to Exclude The Expert Testimony Of Attorney Dr. Kesan, dated June 2, 2017.

After graduation in 1989, he began working for technical organizations such as MIT, Columbia University, and IBM, where he characterizes his position as a "researcher." *Id.* at 1. The Kesan Report does not detail the technology he was working on during his four-year technical career at the Thomas J. Watson Research Center, IBM's famed semiconductor research center.[2]

According to his CV, Dr. Kesan's non-legal, technical work experience appears to have concluded in 1993. In 1993, he became a registered patent attorney at the law firm of Pennie and Edmonds' Washington DC office. *Id.* at 5. After graduating from Georgetown Law School in 1996, Dr. Kesan became a practicing attorney with extensive legal experience practicing at law firms, clerking for a federal judge, working with the Patent Office. Ultimately, he became a law professor at several universities. *Id.* at 1-3.

Since 1998, Dr. Kesan has been a Professor of Law at the College of Law of the University of Illinois and primarily practices in the legal field. His CV, however, does not appear to list other non-legal, technical work experience since 1993. *See* Ex. D. Dr. Kesan has published numerous scientific papers, and obtained several patents, but none appear to be in the field of consumer networked audio technology. *See id.* at 8-18. Indeed, Dr. Kesan lists 14 patents in his CV that generally involve mechanical devices, semiconductors, and different types of tags, such as radio frequency identification device (RFID) tags.[3] His recent work focuses on

---

[2] *See* Ex. F ("The IBM Thomas J. Watson Research Center has been home to numerous physicists who have produced seminal advances in many disciplines and fields of study. Innovations discovered and developed here include dynamic random access memory (DRAM), field effect transistor scaling laws, semiconductor superlattice structures, specialized lasers and thin-film magnetic recording heads, as well as advances in optical communications and electron microscopy.").

[3] *See, e.g.,* U.S. Patent No. 5,034604 at 1:60-63 ("The device of the present invention for generating a reproducible and uniform beam of elemental molecules largely solves the problems associated with a large thermal gradient along the long axis of the crucible."); U.S. Patent No.

2

patent law and policy, cybersecurity and privacy, and biofuel regulation. Ex. E at 1; *see also* Ex. D. Dr. Kesan is also a regular radio commentator for "Legal Issues in the News" broadcast by a local radio station. Ex. E at 1.

Notwithstanding his experience as a technical and legal expert in patent cases, the Kesan Report does not indicate that he has actual work experience in the fields of consumer networked audio systems (i.e., the subject of the asserted Sonos patents). *See* Ex. D.

**B.     Overview of the Kesan Report**

The Kesan Report,[4] over the course of 750 total pages, addresses procedural and substantive aspects of patent law with regard to consumer networked audio technology, which is the subject of the asserted Sonos patents. For example, the Kesan report includes sections on the "Technology Background," "Priority Dates and Prior Art." and alleged invalidity of the asserted patents due to "Anticipation and Obviousness" over numerous applied prior art references. *See generally* Ex. A. In addition, the Kesan Report includes sections on "Secondary Considerations," such as "Commercial Success," "Licensing of the Asserted Patents," "Praise by Others," "Copying of the Asserted Patents," "Unsuccessful Attempts by Others," "Long-Felt Need," "Unexpected or Superior Results," "Independent Invention by Others." *Id.* Furthermore,

---

5,268,324 (entitled "Modified silicon CMOS process having selectively deposited Si/SiGe FETs"); U.S. Patent No. 5,458,756 (entitled "Apparatus for producing porous silicon on a substrate"); U.S. Patent No. 5,501,787 (entitled "Immersion scanning system for fabricating porous silicon films"); U.S. Patent No. 5,525,828 (entitled "High speed silicon-based lateral junction photodetectors having recessed electrodes and thick oxide to reduce fringing fields"); U.S. Patent No. 7,388,488 (entitled "method and system for storing, retrieving and managing data for tags.").

[4] The Kesan Report is divided into several appendices including, *inter alia*, (1) Appendix C, which provides an overview of the alleged prior art, (2) Appendices D through M, which provide Dr. Kesan's opinions on anticipation and obviousness, (3) Appendix M, which provides Dr. Kesan's opinions on enablement, and (4) Appendix N, which provides Dr. Kesan's opinions on indefiniteness. *See* Ex. A at ¶¶7-21.

3

the Kesan Report includes sections on "Indefiniteness," "Enablement," "Improper Broadening," "Improper Inventorship," "USPTO Practice and Procedures Concerning Reexamination," "Acquiescence During Prosecution," and "Improper Broadening During Reexamination." *See, e.g.,* Ex. A ¶¶ 79-82, 121-151.

After Sonos filed a rebuttal report, Dr. Kesan filed a further Reply Report. The Reply report addresses each of the issues in the Kesan Report again, and is over 500 pages.

## III.   LEGAL STANDARDS

Under Federal Rule of Evidence 702, a witness may give opinion testimony at trial only if its knowledge will assist the jury and the "witness is qualified as an expert by knowledge, skill, experience, training, or education . . . ." Fed. R. Evid. 702. A qualified expert may testify in the form of opinions "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* The Court, as a gatekeeper, must prevent expert testimony that is not reliable, not specialized, or invades the Court's duty to make ultimate legal conclusions. *Sundance, Inc. v. DeMonte Fabricating Ltd.,* 550 F.3d 1356, 1364 (Fed. Cir. 2008.

To testify as a technical expert on issues of patent infringement and/or invalidity, the witness must be qualified as an expert in the pertinent art, in other words, at least one of ordinary skill in the art at the time of the invention. *See Sundance, Inc.,* 550 F.3d at 1363; *see also Flex-Rest, LLC v. Steelcase, Inc.,* 455 F.3d 1351, 1360-61 (Fed. Cir. 2006) (affirming exclusion of expert testimony on issues of anticipation and obviousness where patent holder's expert was not one of ordinary skill in the art at the time of the invention).

In particular, a patent law expert is not qualified to testify as a technical expert unless such a qualification is derived from the patent law expert's technical qualifications in the

4

pertinent art at the time of the invention. *See Sundance, Inc.*, 550 F.3d at 1363. Allowing a patent law expert without any technical expertise in the pertinent art to testify on the issues of patent infringement and invalidity is "contradictory to Rule 702" and "amounts to nothing more than advocacy from the witness stand." *Sundance*, 550 F.3d at 1363-65.

The proponent of expert testimony bears the burden of proving, by a preponderance of the evidence, that an expert is qualified under Rule 702. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 593 n. 10 (1993).

IV.   **ARGUMENT**

Simply put, Dr. Kesan is not a person of ordinary skill in the art of the time of the patents-in-suit. He is not even a person of ordinary skill in the art as it existed at any time. Instead, he is an attorney who is not qualified to testify as an expert witness to render opinions concerning the consumer network audio technology at issue in this case. His technical working career, working mostly on semiconductors and integrated circuits, ended nearly 25 years ago and he has been working solely as an attorney and law professor ever since.

Because his technical working career ended a decade before the technology of Sonos's asserted patents even existed, he is not a person of ordinary skill in the art at the time of the invention. Moreover, while Dr. Kesan may qualify as a legal expert, this District has a long history excluding legal opinions given by expert witnesses. Thus, Dr. Kesan should not be permitted to testify as a technical expert witness in this case.

A.   **Dr. Kesan Has No Technical Work Experience in the Pertinent Art**

Given that his technical working career ended almost 25 years ago, Dr, Kesan is not a technical expert ***in the pertinent art*** (consumer networked audio technology) at the time of the invention in this case.

5

Based on the claims of the asserted Sonos patents, the pertinent art relates to the fields of networking and consumer electronics audio systems of the Sonos patents and HEOS network audio products at issue. Ex. B ¶¶29-31; *see also Sundance, Inc.*, 550 F.3d at 1362 (describing the pertinent art based on the subject of the patent claims). Indeed, Dr. Kesan acknowledges that the asserted patents are generally "characterized as networked audio technology." Ex. A at ¶92.

Moreover, Dr. Kesan is neither a technical expert nor a person of ordinary skill in the art under his own proposed definition. The Kesan Report states:

> 106. In my opinion, a person of ordinary skill in the art for the purposes of the Asserted Patents over the period from April 1, 2004 to July 19, 2011 would be *familiar with digital and analog circuits, wireless communication, and the client-server environment*. Such a person would have a Bachelor's degree in Electrical Engineering with *at least two years of relevant work experience* or equivalent.

Ex. A at ¶106 (emphasis added). Contrary to his own proposed definition of a person of ordinary skill in the art, Dr. Kesan's CV does not indicate that he has at least two years of relevant work experience in the fields of digital and analog circuits, wireless communication, and client-server environment. *See* Ex. D at 1. While Dr. Kesan claims he worked as a research scientist at the IBM T.J. Watson Research Center from 1989 to 1993, he never claims to have worked in consumer networked audio technology.

At best, Dr. Kesan is an inventor of several patents that generally relate to a "method and system for storing, retrieving and managing data for tags." *See, e.g.,* U.S Patent No. 8,314,705 at 1:35-42 ("A tag is any device that sends, receives and/or stores data about whatever it is monitoring or is associated with; it includes many different types such as radio frequency identification device (RFID) tags, laser tags, cellular phones, devices that receive and transmit signals from television networks, any type of satellite communication network such as a Global Positioning System (GPS), etc."). None of the patents listed in his CV, however, is in the fields

6

of networking and consumer audio systems. *See* Ex. D at 14-15; *see also supra* Section II. In addition, his own CV lists him as holding several professor appointments[5] in departments outside the College of Law, but does not indicate he worked in any technical areas having relevance to this case.

### B. Dr. Kesan Has No Technical Work Experience at the Time of the Inventions

To testify as a technical expert witness in this case, Dr. Kesan must also be at least a person of ordinary skill in the art ***at the time of the invention***. *See Flex-Rest, LLC* at 455 F.3d at 1360-61. According to Dr. Kesan's own definition, a person of ordinary skill in the art must have work experience in the pertinent art over the period from April 1, 2004 to July 19, 2011. Ex. A at ¶106. Dr. Kesan's technical work experience, however, was years before the relevant technology even existed. *See* Ex. D.

In fact, according to his CV, Dr. Kesan's technical work experience ended in 1993, when he began working in the legal field as a registered patent agent at a law firm. *Id.* In 1996, Dr. Kesan earned his law degree and embarked on a legal career that now spans more than 20 years. *Id.* After working as an associate at a law firm and a law clerk for a federal judge, Dr. Kesan has been a law professor at the University of Illinois College of Law for nearly 20 years.

By the relevant time periods of the early 2000's when consumer networked audio products were only first emerging, and April 2003 in particular, Dr. Kesan was already 10 years removed from his last technical job at IBM—which in any event did not involve the pertinent art in this case. In fact, by 2003, Dr. Kesan was a decade removed from his IBM experience and

---

[5] Dr. Kesan's CV simply lists: Research Professor, Coordinated Science Laboratory; Affiliate Professor, Department of Electrical & Computer Engineering; Professor, College of Business; Professor, Agricultural & Consumer Economics.

had already been elevated to an Associate Professor of Law in the College of Law, having completed four years as an Assistant Professor. Ex. D at 1-2.

Thus, any technical work experience Dr. Kesan had was many years before consumer networked audio technology even existed. Nevertheless, Dr. Kesan offers opinions on "networked audio technology" that he admits are from the "early 2000's." *See* Ex. A at ¶92 ("By the early 2000's, the move towards networked audio technology was being driven by, among other things, the emergence of MP3 . . . In fact, by early 2000, free software . . .").

Dr. Kesan goes on to describe another "evolution in networked audio technology" that involved the development of "Universal Plug and Play ("UPnP")," which he opines is reflected by "UPnP Design by Example, A Software Developers Guide to Universal Plug and Play" an April 2003 book. *Id.* at ¶93. Dr. Kesan then concludes that "the networked audio field of technology was highly developed well before Sonos was founded." *Id.* at ¶97.

The Kesan Report, however, does not indicate that he has any relevant technical experience with "network audio technology" in the "early 2000s," when he was already a law professor and almost a decade out of IBM. Thus, without any relevant technical work experience at the time of the inventions, Dr. Kesan is not qualified to testify as a technical expert in the present case. *See Extreme Networks, Inc. v. Enterasys Networks, Inc.*, 395 F. App'x 709, 715 (Fed. Cir. 2010) (finding that the expert did not qualify as a person of ordinary skill in the pertinent art even under the expert's own proposed definition). *Proversis Scientific Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1258 (Fed. Cir. 2008) (affirming exclusion of technical expert whose work expertise was limited to a different field than the patented technology); *see also Radio Sys. Corp. v. Lalor*, No. C10-828RSL, 2014 WL 4626298, at *3 (W.D. Wash. Sept. 12, 2014) (excluding testimony of a proposed expert who had two masters of engineering

degrees in computer science and digital systems because the proposed expert had no experience in the relevant art in the case).

### C. The Kesan Report Contains Improper Legal Opinions

In addition to not being a person of ordinary skill in the art, Dr. Kesan improperly opines on numerous legal topics. "[J]udges in this District have routinely excluded the testimony of legal experts absent extraordinary circumstances." *AstraZeneca UK Ltd. v. Watson Laboratories, Inc. (NV)*, C.A. No. 10–915–LPS, 2012 WL 6043266, at *1 (D. Del. Nov. 14, 2012); *see also Brigham and Women's Hosp. Inc. v. Teva Pharmaceuticals USA, Inc.*, C.A. No. 08–464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) ("As a general rule, expert witnesses may not testify as to the law governing a dispute or offer conclusions concerning a party's compliance with legal duties."); *Corning Inc. v. SRU Biosystems*, C.A. No. No. 03–633 JJF, 2004 WL 5523178, at *1 (D. Del. Nov. 5, 2004) (excluding expert "report and proposed testimony [that] deal[t] primarily with internal patent office procedures.").

Here, the numerous, varied legal topics addressed in the Kesan Report make clear that Dr. Kesan, who is not a person of ordinary skill in the art in this case, is simply making attorney arguments clothed as expert testimony that go beyond the practices and procedures at the Patent Office. In fact, Dr. Kesan's improper legal opinions are scattered throughout various sections and appendices of the Kesan Report.

For instance, a section of the Kesan Report is directed to how Sonos improperly broadened its claims during reexamination. Specifically, Dr. Kesan opines that "Sonos elected to amend those claims, instead of allowing the Patent Office to simply issue a reexamination certificate" and "when they did so, they either intentionally or inadvertently broadened claims 5,

9

9 and 10" of the '959 Patent. Ex. A at ¶ 146. Dr. Kesan also opines on how "Sonos acquiesced" to certain priority dates based on Sonos's responses to office actions. *See* Ex. A at ¶102.

Moreover, Dr. Kesan opines on several secondary considerations that go beyond his knowledge and expertise. For example, regarding commercial success, Dr. Kesan speculates that "[w]ithout [UPnP-compatible] controllers, Sonos would have to sell a dedicated controller for its devices, which would have made the Sonos product line no different from that of the many other manufacturers of home audio equipment." Ex. A at ¶123. With respect to copying, Dr. Kesan simply concludes that "[i]t is more likely that Sonos 'copied' the accused products or prior art in forming its patent claims" and that "it is impossible for [prior] systems to have copied what was not yet even filed or likely contemplated by the inventors of the Asserted Patents." *Id.* at ¶126. With respect to unsuccessful attempts by others, Dr. Kesan concludes that "[t]he development of UPnP and the implementation of software and hardware in the products of Microsoft, Intel, D&M and others before the filing date of the Asserted Patents demonstrates the successful attempts by others at implementing the claimed inventions, which Sonos merely copied." *Id.* at ¶128. Except for these bare ultimate conclusions, the Kesan Report is absent any further supporting facts.

Furthermore, Dr. Kesan, in his capacity as a legal expert and not a technical expert in the pertinent art, argues that every asserted claim is invalid as both not enabled and indefinite, with multiple reasons for each claim. These types of speculative and conclusory opinions are scattered throughout the Kesan Report. *See generally* Exs. A, G. The scope of Dr. Kesan's

opinions make clear that he is not a credible expert witness on invalidity, and is offering little more than hundreds of attorney arguments, many frivolous, clothed in expert testimony.[6]

Dr. Kesan's overbroad opinions are inadmissible as they are either beyond his expertise and knowledge or not properly the subject of expert testimony, such as simply testimony that touches on Sonos's state of mind. Such unsupported conclusions are simply not testimony that can be helpful to a finder of fact. *See AstraZeneca UK Ltd.*, 2012 WL 6043266 at *2 (excluding expert testimony related to the inventor's subjective state of mind). In *AstraZeneca UK,* Judge Stark excluded the testimony of a purported expert who was "an attorney and former PTO examiner and Special Program Examiner as well as a former Administrative Patent Judge on the Board of Patent Appeals and Interferences." *Id.* at *1. Judge Stark found the expert was not "a person of ordinary skill in the art of the patent-in-suit" and that his proposed testimony, including on procedures at the PTO, would "not be helpful to the Court." *Id.* at *1-2.

For the same reasons, Dr. Kesan should not be allowed to give legal opinions, or opinions regarding the application of his view of the law to the facts of this case.

V. **CONCLUSION**

For the foregoing reasons, Sonos respectfully requests the Court to exclude Dr. Kesan's Opening Report and Reply Report concerning issues of patent invalidity.

---

[6] *See, e.g.,* Ex. G at 34 ("[T]his claim term is indefinite because it does not state whether the averaged value of the audio volumes of players is 1) measured at a point where a listener is or 2) measured at each player . . . The volume of a player that is far away from a listener will change after the sound waves have travelled extra distance, so the change will not be synchronous."); 50 ("the point at which a plurality of audio signals are synchronized depends on the location of the speakers, the location of walls, ceilings, large objects and other factors that the claim does not address, which creates greater indefiniteness.").

OF COUNSEL:

George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 North Desplaines St., Suite 250
Chicago, IL 60661
(312) 754-9602

Dated: June 2, 2017
Public Version Dated: June 9, 2017
5222575

POTTER ANDERSON & CORROON LLP

By: /s/ Philip A. Rovner
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Alan R. Silverstein (#5066)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com
    asilverstein@potteranderson.com

*Attorneys for Plaintiff*
*Sonos, Inc.*