## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

SONos, INC.,                                    )
                                                )
               Plaintiff,                       )
                                                )
        v.                                      )   Civil Action No. 14-1330-RGA
                                                )
D&M HOLDINGS INC. d/b/a THE                     )   **PUBLIC VERSION**
D+M GROUP, D&M HOLDINGS U.S.                     )
INC., and DENON ELECTRONICS                     )
(USA), LLC,                                      )
                                                )
               Defendants.                      )

---

## SONOS, INC.'S OPENING BRIEF IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY

OF COUNSEL:
George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 N Desplaines St, Suite 250
Chicago, IL 60661
(312) 754-0002

Dated: June 2, 2017
Public Version Dated: June 9, 2017

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Alan R. Silverstein (#5066)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com
asilverstein@potteranderson.com

*Attorneys for Plaintiff*
*Sonos, Inc.*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS .......................................................1

STATEMENT OF FACTS ............................................................................................3

ARGUMENT .............................................................................................................4

    I.      D&M Cannot Prove by Clear and Convincing Evidence That the Rietschel
           Patent Invalidates Sonos's '258 and '357 Patents .........................................5

        A.     The Rietschel Patent Is Not Prior Art Under §§ 102(a), (b), or (e) ........5

        B.     The Rietschel Patent Is Not Prior Art Under § 102(g)...........................8

    II.     D&M Has Not Proved by Clear and Convincing Evidence That Sonos's
           Products Invalidate Sonos's '509 and '959 Patents....................................10

CONCLUSION.........................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*,
  691 F. Supp. 2d 577 (D. Del. 2010) ........................................................5

*Amkor Tech., Inc. v. Int'l Trade Comm'n*,
  692 F.3d 1250 (Fed. Cir. 2012) ........................................................5, 9, 15

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
  960 F.2d 1020 (Fed. Cir. 1992) ........................................................8

*Delaware Display Group LLC v. VIZIO, Inc.*,
  C.A. No. 13-2112-RGA, 2017 WL 784988 (D. Del. Mar. 1, 2017) ........................5

*E.I. Dupont De Nemours and Company, v. Unifrax I LLC*,
  C.A. No. 14-1250-RGA, 2017 WL 1822279 (D. Del. May 5, 2017) ........................5

*In re Zletz*,
  893 F.2d 319, 323 (Fed. Cir. 1989) ........................................................8

*L-3 Commc'ns Corp. v. Sony Corp.*,
  C.A. No. 10-734-RGA, 2013 WL 5942521 (D. Del. Oct. 16, 2013) ........................9

*Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*,
  872 F.2d 978 (Fed. Cir. 1989) ........................................................8, 10

**STATUTES**

35 U.S.C. § 102 ........................................................*passim*

35 U.S.C. § 103 ........................................................2

Sonos, Inc. ("Sonos") respectfully submits this opening brief in support of its motion for partial summary judgment on Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC's (collectively, "D&M") affirmative defense of invalidity.

## INTRODUCTION

D&M contends that Sonos's U.S. Patent Nos. 9,195,258 ("'258 Patent"; Ex. A)[1] and 9,213,357 ("'357 Patent"; Ex. B) are invalid based on U.S. Patent No. 7,710,941 ("the Rietschel Patent"; Ex. C).  However, D&M cannot prove by clear and convincing evidence that the Rietschel Patent invalidates the '258 and '357 Patents, because the Rietschel Patent does not qualify as prior art to Sonos's '258 and '357 Patents under §§ 102(a), (b), (e), or (g) (or any other subsection of § 102).  Thus, no reasonable jury could return a verdict of invalidity of the '258 and '357 Patents based on the Rietschel Patent, and summary judgment of no invalidity should be granted.

D&M also contends that Sonos's U.S. Patent Nos. 9,202,509 ("'509 Patent"; Ex. D) and 9,219,959 ("'959 Patent"; Ex. E) are invalid under § 102(b) based on the public use and/or sale of Sonos's CR 200 and PLAY:5 (gen 1) products.  However, D&M has not proved by clear and convincing evidence that either the CR 200 or the PLAY:5 (gen 1) invalidates the '509 and '959 Patents, because the evidence presented in this case shows that these products are not § 102(b) prior art to these patents.

## NATURE AND STAGE OF THE PROCEEDINGS

On October 21, 2014, Sonos filed its original complaint for patent infringement against D&M.  D.I. 1.  Sonos filed a First Amended Complaint on December 17, 2014 and D&M moved

---

[1] Referenced exhibits are attached to the Declaration of Philip A. Rovner in Support of Sonos, Inc.'s Motion for Partial Summary Judgment of No Invalidity, dated June 2, 2017.

to dismiss that complaint on February 9, 2015. D.I. 16. In response, Sonos filed a Second

Amended Complaint on March 9, 2015. D.I. 31.

On April 30, 2015, D&M filed its first Answer in this case in response to Sonos's Second

Amended Complaint, which included an affirmative defense of invalidity based on, *inter alia*, §§

102 and 103. D.I. 48. On November 30, 2015, D&M then moved for leave to amend its Answer

to Sonos's Second Amended Complaint to add counterclaims accusing Sonos of infringing

D&M's patents. D.I. 81. While D&M's motion for leave was pending, Sonos filed its own

motion for leave on January 29, 2016, seeking permission to file a Third Amended Complaint.

D.I. 93; D.I. 94.

On March 7, 2016, the Court granted D&M's motion for leave to amend its Answer to

Sonos's Second Amended Complaint, and D&M's amended answer was entered on the docket.

D.I. 101. The Court then immediately severed D&M's infringement counterclaims into a new

case (C.A. No. 16-141-RGA). In turn, the Court granted Sonos's motion for leave to file its

Third Amended Complaint, which was also entered on the docket. D.I. 102.

On March 28, 2016, D&M filed its Answer to Sonos's Third Amended Complaint. D.I.

106. On April 21, 2016, Sonos moved under Federal Rule of Civil Procedure 12(f) to strike

certain of D&M's affirmative defenses. D.I. 111. While Sonos's motion to strike was pending,

on August 1, 2016, D&M filed a motion for leave to add the affirmative defense of inequitable

conduct. D.I. 141.

On August 10, 2016, Chief Magistrate Judge Thynge issued her Report and

Recommendation striking certain of D&M's affirmative defenses, but granted D&M leave to

replead. D.I. 143 at 14-16. On September 1, 2016, the Court adopted Judge Thynge's Report

and Recommendation. D.I. 157. Six days later, D&M filed its First Amended Answer to

Plaintiff's Third Amended Complaint.  D.I. 158.

On February 6, 2017, the Court denied D&M leave to amend their answer to add the

affirmative defense of inequitable estoppel.  D.I. 227.  On April 21, 2017, with the Court's

permission, Sonos filed its Supplemental Third Amended Complaint (D.I. 263), the operative

complaint in this case.  Two weeks later, D&M filed its Answer to Third Amended Complaint

(D.I. 266), the operative answer in this case.

On February 20, 2017, D&M served the Expert Report of Jay P. Kesan Regarding

Invalidity ("Kesan Report"), which included, *inter alia*, allegations regarding invalidity under §§

102 and 103.  Ex. F.  On April 17, 2017, Sonos served the Opening Rebuttal Expert Report of

Andrew Wolfe ("Wolfe Rebuttal Report").  Ex. G.  On May 9, 2017, D&M then served the

Expert Reply Report of Jay P. Kesan Regarding Invalidity ("Kesan Reply Report").  Ex. H.

## STATEMENT OF FACTS

On February 20, 2017, Dr. Kesan (D&M's invalidity expert) stated that "Rietschel . . . is

prior art to the '357 and '258 Patents under at least 35 U.S.C. 102(A) and 102(B)."  Ex. F at

App'x C, p. 74.  Sonos's '258 and '357 Patents each have an effective filing date no later than

April 1, 2004.[2]  Exs. A, B; Ex. F at p. 32.  In contrast, the Rietschel Patent was not filed in the

U.S. until May 4, 2005, and issued as a patent on May 4, 2010.  Ex. C.

On May 9, 2017, in response to Dr. Wolfe's (Sonos's invalidity expert) assertion that the

Rietschel Patent does not qualify as prior art under §§ 102(a), (b), or (e), Dr. Kesan asserted for

the first time that "Rietschel is prior art under 35 U.S.C. 102(g)(2)."  *See* Ex. H at ¶ 618.

In his reports, Dr. Kesan also asserts that (1) Sonos's CR 200 product invalidates the '509

Patent under § 102(b) (Ex. F at App'x H, pp. 19-20; Ex. H at ¶¶ 560-66), and (2) Sonos's

---

[2] For purposes of this Motion only, Sonos is assuming an invention date equivalent to the
effective filing date of the '258 and '357 Patents.

PLAY:5 first generation ("gen 1")[3] product invalidates the '959 Patent under § 102(b) (Ex. F at App'x D, pp. 18-19; Ex. H at ¶¶ 577-85).

Sonos's '509 Patent has an effective filing date of January 25, 2011 and an issue date of December 1, 2015. Ex. D; Ex. F at pp. 31-32. In comparison, the CR 200 was first released in July 2009. *See* Ex. H at ¶ 560]). However, the CR 200 did not have the stereo pair feature embodied in the '509 Patent until Sonos's software version v3.2 was released on May 18, 2010—less than one year before the effective filing date of the '509 Patent. *See, e.g.,* Ex. I at SONDM000147953; Ex. H at ¶¶ 561, 578.

Sonos's '959 Patent has an effective filing date of April 8, 2011 and an issue date of December 22, 2015. Ex. E; Ex. F at pp. 31-32. In comparison, the PLAY:5 (gen 1) was first released in November 2009. *See* Ex. H at ¶ 577. However, the PLAY:5 (gen 1) did not have the stereo pair feature embodied in the '959 Patent until Sonos's software version v3.2 was released on May 18, 2010—less than one year before the effective filing date of the '959 Patent. *See, e.g.,* Ex. I at SONDM000147953; Ex. H at ¶¶ 561, 578.

## ARGUMENT

This Court is well familiar with the standard for summary judgment:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party."

> The burden on the moving party may be discharged by pointing out to the district court that there is an absence of evidence supporting the non-moving party's case. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. A non-moving party asserting that a fact is genuinely

---

[3] Sonos's PLAY:5 product formally went by the name "ZP S5."

disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . . ."

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law.

*E.I. Dupont De Nemours and Company, v. Unifrax I LLC*, 2017 WL 1822279, at *1 (D. Del. May 5, 2017) (internal citations omitted); *see also Delaware Display Group LLC v. VIZIO, Inc.*, 2017 WL 784988, at *1 (D. Del. Mar. 1, 2017) (same); *see also Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*, 691 F. Supp. 2d 577, 582 (D. Del. 2010) ("The mere existence of some evidence in support of the non-moving party . . . will not be sufficient for denial of a motion for summary judgment.").

Moreover, the party challenging validity of issued patent must prove invalidity by clear and convincing evidence. *See, e.g., Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250, 1258 (Fed. Cir. 2012).

## I.      D&M Cannot Prove by Clear and Convincing Evidence That the Rietschel Patent Invalidates Sonos's '258 and '357 Patents

As set forth below, the Rietschel Patent does not qualify as prior art to Sonos's '258 and '357 Patents. Thus, no reasonable jury could return a verdict of invalidity of the '258 and '357 Patents based on the Rietschel Patent, and summary judgment of no invalidity should be granted.

### A.      The Rietschel Patent Is Not Prior Art Under §§ 102(a), (b), or (e)

D&M alleges that the Rietschel Patent is prior art to Sonos's '258 and '357 Patents under pre-AIA §§ 102(a) and (b). Specifically, in the Kesan Report, Dr. Kesan (D&M's invalidity

expert) states that "Rietschel . . . is prior art to the '357 and '258 Patents under at least 35 U.S.C. 102(A) and 102(B)." Ex. F at App'x C, p. 74. This is incorrect.

To qualify as prior art under pre-AIA 35 U.S.C. § 102(a), a party must prove that "the invention was known or used by others in this country, or *patented* or described in a printed publication in this or a foreign country, *before* the invention thereof by the applicant for patent." *See* 35 U.S.C. § 102(a) (emphasis added).

To qualify as prior art under pre-AIA 35 U.S.C. § 102(b), a party must prove that "the invention was *patented* or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year *prior* to the date of the application for patent in the United States." *See* 35 U.S.C. § 102(b) (emphasis added).

Sonos's '258 and '357 Patents each have a priority date (*i.e.*, effective filing date) no later than April 1, 2004. D&M agrees. *See* Ex. F at p. 32. The Rietschel Patent, however, did not issue (*i.e.*, was not "patented") until May 4, 2010 (*see* Ex. C), more than 6 years *after* the invention date/effective filing date of the '357 and '258 Patents.

Accordingly, the Rietschel Patent does not qualify as prior art to Sonos's '357 and '258 Patents under §§ 102(a) or (b), because the Rietschel Patent did not issue (1) *before* the invention date of the '357 and '258 Patents, which is a requirement of § 102(a), or (2) *prior* to the effective filing date of the '357 and '258 Patents, which is a requirement of § 102(b).

Although Dr. Kesan did not allege otherwise, the Rietschel Patent also does not qualify as prior art under pre-AIA § 102(e)(2). To qualify as prior art under § 102(e)(2)[4], a party must prove that "the invention was described in — . . . (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that

_____

[4] Pre-AIA § 102(e)(1) does not apply here because the Rietschel Patent is not "an application for patent, published under section 122(b)." *See* 35 U.S.C. § 102(e)(1).

an international application filed under the treaty defined in section 351(a) shall have the effects

for the purposes of this subsection of an application filed in the United States only if the

international application designated the United States and was published under Article 21(2) of

such treaty in the ***English*** language." *See* 35 U.S.C. § 102(e) (emphasis added).

The Rietschel Patent issued from U.S. Patent Application No. 10/533,795 ("the Rietschel

U.S. Application"), which was filed on May 4, 2005 as the U.S. national stage application for

International Application No. PCT/CH03/00720 ("the Rietschel International Application"). *See*

Ex. C. The Rietschel International Application was filed on November 4, 2003 and claims

priority to Switzerland Patent Application No. CH 1861/02, which was filed on November 6,

2002. *Id.* The Rietschel International Publication published on May 21, 2004 as International

Publication No. WO2004/043032 ("the Rietschel International Publication"). Ex. J. However,

the Rietschel International Publication published in the ***German*** language. *Id.*

Accordingly, the Rietschel Patent also does not qualify as prior art to Sonos's '357 and

'258 Patents under § 102(e)(2), because the Rietschel International Application did not publish in

the ***English*** language, which is a requirement of § 102(e)(2).

Notably, D&M appears to have conceded that the Rietschel Patent does not qualify as

prior art under pre-AIA §§ 102(a), (b), and (e). Specifically, in the Kesan Reply Report, Dr.

Kesan does not dispute the analysis of Sonos's invalidity expert, Dr. Wolfe, showing that the

Rietschel Patent does not qualify as prior art under these sections. *See* Ex. H at ¶ 618; Ex. G at

pp. 359-362]. Instead, Dr. Kesan merely acknowledged Dr. Wolfe's analysis, and then asserted

for the first time that the Rietschel Patent qualifies as prior art under pre-AIA § 102(g)(2). *See*

Ex. H at ¶ 618. As explained below, however, the Rietschel Patent also does not qualify as prior

art under § 102(g)(2).

### B.      The Rietschel Patent Is Not Prior Art Under § 102(g)[5]

In the Kesan Reply Report, Dr. Kesan states, with respect to the '357 and '258 Patents,

that "*Rietschel is prior art under 35 U.S.C. 102(g)(2)* by virtue of at least the public disclosure

of the Barix Instreamer and Extreamer products in Orlando, Florida in early 2003, at the

Electronic House Expo (EXH)." *See* Ex. H at ¶ 618.  This is incorrect.

The Federal Circuit has clearly stated that "a reference United States patent," such as the

Rietschel Patent, "is *not* prior art under § 102(g), but under § 102(e)," and that the effective date

of the alleged prior art patent reference is the "filing date in the United States, as stated in §

102(e), not the date of conception or actual reduction to practice of the invention claimed or the

subject matter disclosed in the reference patent":

> When patents are not in interference, the effective date of a reference United
> States patent as prior art is its filing date in the United States, as stated in §
> 102(e), *not* the date of conception or actual reduction to practice of the invention
> claimed or the subject matter disclosed in the reference patent. . . .  Both sides
> appear to have confused interference practice under § 102(g) with prior art status
> under § 102(e). . . .  The Mouat [U.S. Patent] reference, as the district court held,
> does not describe or claim the identical invention to Mason.  It is *not* prior art
> under § 102(g), but under § 102(e). . . .  Under 35 U.S.C. § 102(e) the entire
> disclosure of Mouat's specification is effective as a reference, but only as of
> Mouat's filing date.

*Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 983-984 (Fed. Cir. 1989),

*overruled on other grounds by A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d

1020 (Fed. Cir. 1992) (emphasis added); *In re Zletz*, 893 F.2d 319, 323 (Fed. Cir. 1989)

(concluding that "the disclosure in a reference United States patent does *not* fall under 35 U.S.C.

§ 102(g) but under 35 U.S.C. § 102(e) . . . .") (emphasis added).

Accordingly, the Rietschel Patent does not qualify as prior art to Sonos's '357 and '258

---

[5] Pre-AIA 35 U.S.C. § 102(g)(1) does not apply here because this is not "during the course of an interference conducted under section 135 or section 291."

Patents under § 102(g)(2), because the Rietschel Patent is a U.S. patent reference, which the Federal Circuit has confirmed cannot be prior art under § 102(g).

Moreover, even if § 102(g)(2) was applicable to the Rietschel Patent, the Rietschel Patent would not meet the requirements under this statute.  To qualify as prior art under pre-AIA 35 U.S.C. § 102(g)(2), a party must prove that "***before*** such person's invention thereof, the invention was made ***in this country*** by another inventor who had not abandoned, suppressed, or concealed it." 35 U.S.C. § 102(g)(2) (emphasis added).  To establish that the invention was "made in this country by another," the party must show that another inventor either (i) reduced the invention to practice in the U.S. before the date of invention of the challenged patent, or (ii) conceived of the invention in the U.S. before the date of invention of the challenged patent and exercised reasonable diligence in reducing the invention to practice after the date of invention of the challenged patent. *See Amkor Tech.*, 692 F.3d at 1258; *L-3 Commc'ns Corp. v. Sony Corp.*, C.A. No. 10-734-RGA, 2013 WL 5942521, at *1 (D. Del. Oct. 16, 2013).

The Rietschel Patent does not fall under either of these alternative theories of § 102(g)(2).  At best, the Rietschel Patent evidences a constructive reduction to practice and/or conception in the U.S. as of May 4, 2005, *i.e.*, the date that the Rietschel Patent was filed in the U.S.  However, this filing date is ***after*** (not before) the invention date of Sonos's '258 and '357 Patents, which is at least as early as April 1, 2004.  Thus, for this additional reason, the Rietschel Patent is not § 102(g)(2) prior art.

Finally, Dr. Kesan's reference to "the Barix Instreamer and Extreamer products" in connection with his allegation that "Rietschel is prior art under 35 U.S.C. 102(g)(2)" is misplaced.  Indeed, even if "the Barix Instreamer and Extreamer products" were disclosed publicly in Florida in 2003, this fact is irrelevant to whether the Rietschel Patent itself is prior art

under § 102(g)(2).  As set forth by the Federal Circuit in *Sun Studs*, these alleged products
cannot be used to evidence a conception or reduction to practice of the invention claimed and/or
disclosed in the Rietschel Patent.  872 F.2d at 983.  In addition, to the extent that "the Barix
Instreamer and Extreamer products" were themselves prior art, these ***products*** would constitute
an entirely different – and unelected – prior art reference than the Rietschel Patent.[6]

## II.  D&M Has Not Proved by Clear and Convincing Evidence That Sonos's Products Invalidate Sonos's '509 and '959 Patents

In the Kesan Report and the Kesan Reply Report, Dr. Kesan asserts that (1) Sonos's CR
200 product invalidates the '509 Patent under § 102(b) (Ex. F at App'x H, pp. 19-20; Ex. H at ¶¶
560-66), and (2) Sonos's PLAY:5 first generation ("gen 1") product invalidates the '959 Patent
under § 102(b) (Ex. F at App'x D, pp. 18-19; Ex. H at ¶¶ 577-85).  These invalidity positions are
based on the premise that, because Sonos is ***currently*** marking its CR 200 product with the '509
Patent and its PLAY:5 (gen 1) product with the '959 Patent, Sonos has admitted that all ***previous***
versions of the CR 200 and PLAY:5 (gen 1) products dating back to 2009 practiced the
inventions of the '509 and '959 Patents.  This invalidity theory, however, is belied by the
evidence presented in this case.[7]  Thus, no reasonable jury could return a verdict of invalidity of

---

[6] To the extent that D&M is now arguing that "the Barix Instreamer and Extreamer products" are
invalidating prior art under § 102(g)(2) (or any other subsection of § 102), this invalidity theory
is untimely and in violation of the Court's Scheduling Order.  *See* D.I. 65 at ¶ 2(e)(iii)
("Defendants['] . . . invalidity contentions shall include . . . [a] chart identifying where
specifically in each alleged item of prior art each element of each asserted claim is found . . . .").
Indeed, D&M's final invalidity contentions for the '258 and '357 Patents do not even mention
"Barix," "Instreamer," or "Exstreamer," let alone identify where specifically in these alleged
Barix products each element of each asserted claim of the '258 and '357 Patents can be found.
Even setting that aside, D&M has failed to prove by clear and convincing evidence that the
alleged Barix products are prior art to the '258 or '357 Patents under the strict requirements of
§ 102(g)(2).  Similarly, D&M also has failed to prove by clear and convincing evidence that the
alleged Barix products actually contain the specific features disclosed in the Rietschel Patent.
[7] Not only do these invalidity theories lack legal merit, they are also untimely and in violation of
the Court's Scheduling Order.

the '509 and '959 Patents based on Sonos's CR 200 and PLAY:5 (gen 1) products, and summary judgment of no invalidity should be granted.

As an initial matter, Sonos's '509 and '959 Patents did not issue until December 2015, and Sonos's marking of products with these patents did not (and could not) occur before this date. Thus, at most, Sonos's marking is only evidence that its products practiced the '509 and '959 Patents as of December 2015.

D&M's invalidity theory is further undercut by the following undisputed facts:

- The '509 Patent has an effective filing date of January 25, 2011 and an issue date of December 1, 2015, and the '959 Patent has an effective filing date of April 8, 2011 and an issue date of December 22, 2015 (*see* Exs. D, E;  Ex. F at pp. 31-32);

- The CR 200 was first released in July 2009, and the PLAY:5 (gen 1) was first released in November 2009 (*see* Ex. H at ¶¶ 560, 577);

- Sonos's products – including the CR 200 and PLAY:5 (gen 1) – are configured such that they can receive software updates when Sonos develops and releases new features (*see* Ex. H at ¶¶ 561, 578 (Dr. Kesan not disputing that Sonos's products are so configured); Ex. K at SONDM000035656 (Sonos CR 200 specification sheet explaining "[w]ith free automatic software updates you'll always have the newest features and music services to enjoy.  Which means your system will keep getting better even after you buy."); Ex. L SONDM000036566 (same regarding Sonos PLAY:5 (gen 1)));

- Sonos's software version v3.2 was released on May 18, 2010 (*see* Ex. H at ¶¶ 561, 578);

- Sonos's internal "changelog" document, which chronicles when Sonos releases software updates for its products and summarizes the new features contained in those software updates, indicates that Sonos's stereo pair feature that embodies the '509 and '959

Patents was not released until software version v3.2 on May 18, 2010 (*see* Ex. I at

SONDM000147953; Ex. H at ¶¶ 560-566, 577-585 (Dr. Kesan not disputing Sonos's

characterization of Ex. I); and

- Sonos's software release notes, which are publically available on Sonos's website

  (http://www.sonos.com/software/release/), indicate that Sonos's stereo pair feature that

  embodies the '509 and '959 Patents was not released until software version v3.2. *See* Ex.

  M (noting that software release 3.2 includes "New audio features . . . S5 Stereo Pair

  setting . . . allows you to group two S5s in the same room so one S5 serves as the left

  channel and the other as the right channel.").

As these undisputed facts illustrate, Sonos's products did not have the stereo pair feature

that embodies the '509 and '959 Patents until May 18, 2010.  In particular, Sonos's internal

"changelog" document and software release notes on Sonos's website confirm that Sonos's CR

200 and PLAY:5 (gen 1) did not have stereo pairing until software version v3.2, which was

released on May 18, 2010.  *See* Ex. I at SONDM000147953; Ex. M; *see also, e.g.*, Ex. N at

SONDM000121326 █████████████████████████████████████████

█████████████████████████████████████████████████████████

█████ ; Ex. O at SONDM000121337 ████████████████████████

███████████████████████████████████████ ; Ex. P at p. 29; Ex. Q at ¶ 46;

Ex. R (Sonos website captures from May 17, 2010 indicating that the software version at that

time was v3.1 and May 20, 2010 indicating that the software version at that time was v3.2).

Moreover, D&M's non-infringement expert, Dr. Harry Bims, quoted and relied on other

documents that also confirm that Sonos's stereo pair feature was added to Sonos's products via a

software update in May 2010.  *See* Ex. S at ¶ 157 *quoting and citing* Ex. T at

SONDM000132910 (May 2010 article explaining that "Sonos has announced that has added a new mode to the S5 called stereo pair. The new mode is being added in a new software update . . . [and] will be offered in the 3.2 software release set for this month.") *and citing* Ex. U at SONDM000132905 (May 2010 article explaining that the "Sonos 3.2 update delivers . . . the ability to join any two S5 speaker systems to create a stereo pair -- one S5 serving the left channel and the other serving the right.").

Since Sonos's products did not have the stereo pair feature that embodies the '509 and '959 Patents until software version v3.2 was released on May 18, 2010, Sonos's CR 200 and PLAY:5 (gen 1) cannot be prior art under § 102(b), which requires such products to be "in public use or on sale in this country, ***more than one year prior*** to the date of the application for patent in the United States." *See* 35 U.S.C. § 102(b) (emphasis added). Indeed, the May 18, 2010 software version v3.2 release date is less than a year before the January 25, 2011 and April 8, 2011 effective filing dates of the '509 and '959 Patents, respectively.

Nevertheless, D&M contends that there is an admission by Sonos that all CR 200 and PLAY:5 (gen 1) products – regardless of what software version is installed – practice the claimed inventions of the '509 and '959 Patents, respectively. To support this contention, D&M selectively points to only a subset of the evidence in this case, namely, Sonos's response to D&M's second interrogatory request, the deposition testimony of Mr. Jonathan Lang (the Innovation Director of Sonos), and Sonos's patent-to-product information document (the "Sonos marking document"; Ex. V). *See* Ex. H at ¶¶ 560-566, 577-585. The fragmented evidence relied on by D&M, however, does not meet the clear and convincing standard required to prove invalidity.

Sonos's response to D&M's second interrogatory request does not support D&M's

position.  To the contrary, Sonos's response cites to its internal "changelog" document "[p]ursuant to Fed. R. Civ. P. Rule 33(d)" and "incorporates by reference Sonos software release notes" (*see* Ex. W at pp. 13-15[8]), both of which support Sonos's position, as described above.

Likewise, Mr. Lang's deposition testimony does not support D&M's position.  In fact, during Mr. Lang's deposition testimony, D&M never asked if there are any versions of the CR 200 that do not fall within the scope of the '509 Patent or any versions of the PLAY:5 (gen 1) that do not fall within the scope of '959 Patent.  Instead, D&M merely elicited testimony from Mr. Lang



. Ex. X at 65:20-67:25.

D&M's argument about the software versions identified in the Sonos marking document is also without merit.  Specifically, Dr. Kesan argues that the marking document amounts to an admission by Sonos that all CR 200 and PLAY:5 (gen 1) products – regardless of what software version is installed – practice the claimed invention of the '509 and '959 Patents because the marking document does not qualify what versions of the CR 200 and PLAY:5 (gen 1) products are covered by these patents.

The mere fact that the Sonos marking document identifies certain software versions that practice U.S. Patents 8,086,752 and 7,805,682 (*see* Ex. V), but does not identify certain software versions that practice the '509 and '959 Patents, is hardly clear and convincing evidence that all

---

[8] Sonos cites to its Second Amended Responses and Objections to Defendants' First Set of Interrogatories because these are the responses that Dr. Kesan relies on. *See* Ex. H at ¶¶ 564, 582.  Sonos's subsequent responses contain the same relevant information.

versions of the CR 200 and PLAY:5 practice the '509 and '959 Patents. Moreover, such an

inference is contracted by the above evidence, which establishes that the CR 200 and PLAY:5

products did not have the stereo pair feature that embodies the '509 and '959 Patents until

software version v3.2 was released on May 18, 2010.

Accordingly, there is no "genuine" dispute of material fact because no reasonable jury,

when faced with the evidence in this case, could find in D&M's favor. D&M has not offered any

clear and convincing evidence that (i) a version of the CR 200 product that embodied the claimed

inventions of the '509 Patent was publically used or on sale in this country more than one year

before the '509 Patent's effective filing date, and/or (ii) a version of the PLAY:5 (gen 1) product

that embodied the claimed inventions of the '959 Patent was publically used or on sale in this

country more than one year before the '959 Patent's effective filing date. *See, e.g., Amkor Tech.*,

692 F.3d at 1258 (finding that evidence that "might have" established invalidity "is not sufficient

to meet the clear and convincing burden needed to invalidate a patent.").

## CONCLUSION

For the foregoing reasons, the Court should grant Sonos's Motion for Partial Summary

Judgment of:

(1) No invalidity of the '258 and '357 Patents based on the Rietschel Patent;

(2) No invalidity of the '509 Patent based on Sonos's CR 200 product; and

(3) No invalidity of the '959 Patent based on Sonos's PLAY:5 (gen 1) product.

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 North Desplaines St., Suite 250
Chicago, IL 60661
(312) 754-9602

By:  */s/ Philip A. Rovner*
   Philip A. Rovner (#3215)
   Jonathan A. Choa (#5319)
   Alan R. Silverstein (#5066)
   Hercules Plaza
   P.O. Box 951
   Wilmington, DE 19899
   (302) 984-6000
   provner@potteranderson.com
   jchoa@potteranderson.com
   asilverstein@potteranderson.com

Dated: June 2, 2017
Public Version Dated: June 9, 2017
5222575

*Attorneys for Plaintiff*
*Sonos, Inc.*