IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 14-1330 (RGA) |
| | ) | |
| D&M HOLDINGS INC. d/b/a THE D+M | ) | REDACTED - |
| GROUP, D&M HOLDINGS U.S. INC., and | ) | PUBLIC VERSION |
| DENON ELECTRONICS (USA), LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S OPENING BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY**

OF COUNSEL:

John M. Jackson
Kurt A. Schwarz
Nathaniel (Nate) St. Clair II
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX 75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX 75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, TX 77010
(713) 752-4521

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for D&M Holdings Inc. d/b/a The D+M
Group, D&M Holdings U.S. Inc. and Denon
Electronics (USA), LLC*

Original Filing Date: June 16, 2017
Redacted Filing Date: June 22, 2017

## TABLE OF CONTENTS

Page

I.    Introduction ........................................................................................................1

II.   Summary of the Argument .................................................................................1

III.  Statement of Facts .............................................................................................2

IV.   Statement of Law...............................................................................................3

V.    Argument ...........................................................................................................4

   A.    Rietschel Qualifies As Prior Art Under 35 U.S.C. § 102(g)(2) ..................4

      i.    Sonos's Mischaracterization of Relevant Facts .......................................5

      ii.   Rietschel Was Made in This Country By Another Inventor Before
            The Priority Dates of the '258 and '357 Patents.......................................7

      iii.  Rietschel Was Continuously Used and Not Abandoned,
            Suppressed, or Concealed.........................................................................10

   B.    The Sonos Products Are Prior Art Under At Least 35 U.S.C. § 102(b)..................12

VI.   Conclusion .......................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amkor Tech., Inc. v. Int'l Trade Comm'n*,
  692 F.3d 1250 (Fed. Cir. 2012)...................................................................................10, 18

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242 (1986) .................................................................................................................3

*AVM Technologies, LLC v. Intel Corporation*,
  C.A. No. 15-33-RGA, D.I. 666 (D. Del. Apr. 28, 2017).......................................................15

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .................................................................................................................3

*Flex–Rest, LLC v. Steelcase, Inc.*,
  455 F.3d 1351 (Fed. Cir. 2006).............................................................................................11

*Fox Grp., Inc. v. Cree, Inc.*,
  700 F.3d 1300 (Fed. Cir. 2012).......................................................................................10, 11

*Fujikawa v. Wattanasin*,
  93 F.3d 1559 (Fed. Cir. 1996)...............................................................................................11

*Hybritech, Inc. v. Monoclonal Antibodies, Inc.*,
  802 F.2d 1367 (Fed. Cir. 1986)................................................................................................8

*Intellectual Ventures I LLC v. Toshiba Corp.*,
  C.A. No. 13-453-SLR, 2016 WL 7341713 (D. Del. Dec. 19, 2016) .....................................10

*Mortsell v. Laurila*,
  49 CCPA 1028, 301 F.2d 947 (1962)......................................................................................6

*Mycogen Plant Sci., Inc. v. Monsanto Co.*,
  243 F.3d 1316 (Fed. Cir. 2001)...........................................................................................7, 8

*Scott v. Harris*,
  550 U.S. 372 (2007) .................................................................................................................3

*Streck, Inc. v. Research & Diagnostic Sys., Inc.*,
  659 F.3d 1186 (Fed. Cir. 2011)...........................................................................................7, 9

ii

*Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*,
  872 F.2d 978 (Fed. Cir. 1989)...............................................................................................4

*Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP & IPR Pharms., Inc.*,
  661 F.3d 1378 (Fed. Cir. 2011)..........................................................................................7, 9

*Wishkin v. Potter*,
  476 F.3d 180 (3d Cir. 2007) .................................................................................................3

**Statutes**

35 U.S.C. 112(6) ......................................................................................................................3

35 U.S.C. § 102(a) ...........................................................................................................4, 5, 6

35 U.S.C. § 102(b) .........................................................................................................*passim*

35 U.S. C § 102(e) ...........................................................................................................3, 4, 5

35 U.S.C. § 102(g) ...............................................................................................................4, 5

35 U.S.C. § 102(g)(1)...............................................................................................................4

35 U.S.C. § 102(g)(2)......................................................................................................*passim*

35 U.S.C. § 103(a) ...................................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 56(c).................................................................................................................3

Giles S. Rich, Speech to the New York Patent Law Association (Nov. 6, 1951) .........................4

## I.     Introduction

On October 21, 2014, Plaintiff Sonos, Inc. ("Sonos") sued Defendants D&M Holdings

Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC

(collectively, "Defendants") for patent infringement.  Sonos currently asserts nine patents against

Defendants.[1]   In particular, in its Supplemental Third Amended Complaint, Sonos asserted

infringement of 12 patents, including three patents that have previously been stayed or

dismissed.  D.I. 263.  With at least one narrowing of its claims remaining to be implemented

before trial (D.I. 210), Sonos presently asserts infringement of 29 claims from 9 Asserted

Patents.[2]

The Parties recently exchanged expert reports detailing the various allegations in this

litigation.  Discovery in this case is now closed and the Parties are in the dispositive and *Daubert*

motion stage.  In particular, Sonos filed a number of motions including a Motion for Partial

Summary Judgment of No Invalidity.  D.I. 296.  Sonos's Motion should be denied for the

reasons set forth below.

## II.    Summary of the Argument

Defendants have presented clear and compelling evidence that the subject matter recited

in U.S. Patent No. 7,710,941 ("the Rietschel Patent") was conceived and reduced to practice

prior to the invention of a number of Sonos's Asserted Patents.  As such, the Rietschel Patent

qualifies as prior art to the '258 and '357 Patents for at least purposes of 35 U.S.C. § 102(g)(2).

---

[1] Sonos currently asserts U.S. Patent Nos. 7,571,014 ("the '014 Patent"), 8,588,949 ("the '949 Patent"), 8,938,637 ("the '637 Patent"), 9,219,959 ("the '959 Patent"), 8,938,312 ("the '312 Patent"), 9,213,357 ("the '357 Patent"), 9,195,258 ("the '258 Patent"), 9,202,509 ("the '509 Patent"), and 9,042,556 ("the '556 Patent") (collectively, "the Asserted Patents").

[2] On August 25, 2016, Sonos dismissed with prejudice the claims arising out of U.S. Patent No. 9,130,771.  D.I. 151.  On February 7, 2017, Sonos agreed to stay pending reexamination the claims arising out of its design patent.  D.I. 229.  During its final election of asserted claims, Sonos did not assert any claims from U.S. Patent No. 8,843,224.

In an effort to rebut this evidence, Sonos cites to a number of outdated and inapposite cases. Under a proper analysis, the Rietschel Patent is certainly prior art under § 102(g)(2).

Sonos also seeks to discredit clear evidence that a number of Sonos's Products – which Sonos itself admits embodies certain Asserted Patents – qualify as prior art to those same Asserted Patents under 35 U.S.C. § 102(b). However, there is at least a material question of fact as Defendants have provided substantial evidence in the form of Sonos's publicly-available statements, Sonos's sworn discovery responses and inventor testimony. For at least these reasons, the Court should deny Sonos's Motion.

## III.    Statement of Facts

Barix AG was founded in 2001 in Zürich, Switzerland by Mr. Johannes Rietschel. Under Mr. Rietschel's vision and direction, Barix began developing technology to create network devices that can process and output audio, such as for audio streaming and with audio control functionalities. Some of Barix's earliest available products – namely the Instreamer and Exstreamer products – were announced and publicly displayed at the Electronic House Expo ("EXH") in Orlando, Florida in 2003. *See* Jackson Dec. at Ex. 31, 32 (D+M_0400284-306; D+M_0400169-172). ███████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███. *See id.* at Ex. 33, 34 (SONDM000134592-594; SONDM000138982-983). Around this same time period, Mr. Rietschel began pursuing patent protection for the technology he was developing at Barix. As part of these prosecution efforts, Mr. Rietschel eventually acquired a number of issued foreign and domestic patents including U.S. Patent No. 7,710,941 ("the Rietschel Patent") which is assigned to Barix.

Many years later, during Sonos's development of the technology described in the '509 and '959 Patents, Sonos launched a series of associated products ("the Sonos Products") which

2

Sonos has since acknowledged embody the claimed technology. In particular, Sonos launched the CR 200 in July 2009 and the PLAY:5 (gen 1) in November 2009. Although Sonos recognizes that these products embody the '509 and '959 Patents, respectively, Sonos now suggests that the Sonos Products only embodied the '509 and '959 Patents when installed with certain software update versions such that the Sonos Products are not prior art to Sonos's patents.[3]

## IV.   Statement of Law

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). An issue of material fact is genuine if the evidence could lead a reasonable jury to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue for trial exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

---

[3]  *See, e.g.* D.I. 316, Vol. 8 at Ex. E-12, Almeroth reply report at ¶ 346 (" In this regard, Dr. Almeroth is asserting that the relevant claim limitations are subject to 35 U.S.C. 112(6), which would require corresponding algorithmic structure in the Asserted Patents that has not been identified by Dr. Almeroth or Sonos, such that these claims are indefinite under Dr. Almeroth's new proposed construction.

## V.      Argument

### A.      Rietschel Qualifies As Prior Art Under 35 U.S.C. § 102(g)(2)[4]

As a preliminary matter, Sonos cites to *Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*, 872 F.2d 978, 983-984 (Fed. Cir. 1989), for the suggestion that Rietschel cannot qualify as prior art under 35 U.S.C. § 102(g), but must instead be qualified as prior art under § 102(e).  In *Sun Studs*, the Federal Circuit recognized a distinction between "interference practice [analysis] under § 102(g) [and] prior art status under § 102(e)."  *Id.* at 983.  However, *Sun Studs* was decided before the implementation of the relevant version of § 102(g).  In fact, prior to the passage of the American Inventors Protection Act of 1999 ("AIPA"), § 102(g) did not distinguish interferences from prior invention generally, and provided that a person shall be entitled to a patent unless "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."  35 U.S.C. § 102(g) (1994).  Section 102(g) was originally intended to regulate the use of prior art during interferences.  *See, e.g.*, Giles S. Rich, Speech to the New York Patent Law Association (Nov. 6, 1951) ("The purpose of paragraph (g) is to codify the law on determining priority" and "preserve[] in the statutes a basis for interferences.").  Because the instant case does not involve interferences as implicated by the current version of § 102(g)(1), Sonos's reliance on *Sun Studs* – and other pre-AIPA case law – is misplaced and irrelevant to the instant analysis of § 102(g)(2).  Defendants have never suggested that Rietschel is prior art under 102(g)(1).  Instead, the analysis focuses on 102(g)(2) which is entirely separate.[5]

---

[4] Upon careful consideration, Defendants withdraw their allegations regarding the Rietschel Patent as prior art under 35 U.S.C. §§ 102(a), 102(b), and 102(e).

[5] Sonos appears to acknowledge that § 102(g)(1) does not apply to this case, but then cites to a number of cases applying the pre-AIPA equivalent of § 102(g)(1).  *See* D.I. 296, Opening Br. at 8, fn. 5.

According to 35 U.S.C. § 102(g)(2), a person shall be entitled to a patent unless "before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it."   As such, § 102(g)(2) has two main requirements.   First, the inventive activity must occur in the United States.   Secondly, the invention must be continuously used and not abandoned, suppressed, or concealed.   Thus, the § 102(g)(2) analysis is different from that of the other provisions of § 102.   Instead of first establishing that a reference is prior art and then determining if the reference contains each and every limitation of the claim, § 102(g)(2) requires a determination that an inventor has made "the invention."

### i.    Sonos's Mischaracterization of Relevant Facts

Sonos makes a number of mischaracterizations in its Opening Brief.   For example, Sonos suggests that Defendants' allegations regarding the Rietschel Patent as prior art under § 102(g)(2) was introduced "for the first time" in Dr. Jay Kesan's Reply Expert Report.   *See* D.I. 296, Opening Br. at 7.   This is plainly incorrect.   In fact, Defendants have consistently maintained that "U.S. Patent 7,710,941 to Rietschel, et al. ("Rietschel") qualifies as prior art to [the Asserted Patents] for purposes of [] 35 USC § 102(g)."   *See* Jackson Dec. at  Ex. 35 (Defendants' Final Invalidity Contentions, Ex. 7, p. 41).[6]   Furthermore, in his Opening Report on Invalidity, Dr. Kesan provided his analysis for the Asserted Patents "under 35 U.S.C. §§ 102(a), 102(b), 102(e), 102(g)(2) and 103(a)."   *See* D.I. 316, Vol. 1 (Kesan Opening Report at App'x J ('357 Patent) and App'x K ('258 Patent)).   While Dr. Kesan's Reply Report contained a more

---

[6] Sonos previously requested that the Court strike the Rietschel Patent as "untimely" despite the fact that it was disclosed in Defendants' Final Invalidity Contentions.  *See* D.I. 247.  Despite the Court's denial of this previous request, Sonos is once again attempting to characterize Defendants' disclosures as untimely.  These characterizations are no more accurate now than they were when the Court considered and denied Sonos's arguments during the March 27, 2017 discovery conference.  *See* D.I. 253.

complete response to the allegations raised in the Rebuttal Report of Sonos's expert Dr. Wolfe regarding the Rietschel Patent as prior art under §§ 102(a), 102(b) and 102(e), Dr. Wolfe failed to address any of the contentions under § 102(g)(2).  Sonos was fully aware of Defendants' allegations regarding this prior art reference at least as of January 2017, yet Dr. Wolfe failed to address those substantive allegations.

Furthermore, Sonos argues that "the Rietschel Patent does not qualify as prior art to Sonos's '357 and '258 Patents under § 102(g)(2), because the Rietschel Patent is a U.S. patent reference, which the Federal Circuit has confirmed cannot be prior art under § 102(g)."  *See* D.I. 296, Opening Br. at 8-9.  Once again, Sonos misstates the relevant facts and legal framework.  As mentioned above, the only case law Sonos cites for this proposition pre-dates the current version of § 102(g).  Even applying the pre-AIPA analysis, Sonos's statements are incorrect.  For example, in *Mortsell v. Laurila*, 49 CCPA 1028, 301 F.2d 947, 951 (1962), the Court found that evidence demonstrating conception in the United States could be used to establish priority for an invention disclosed in a German patent application.  Despite the fact that Sonos cites to cases which recognize the teachings of *Mortsell*, Sonos nevertheless fails to recognize this important point.  *See* D.I. 296, Opening Br. at 5, 9 (citing *Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250 (Fed. Cir. 2012) (citing *Mortsell* at 1256-57)).

Finally, Sonos suggests that Defendants are introducing a new prior art theory based on the Barix Instreamer and Exstreamer products as opposed to the Rietschel Patent.  *See* D.I. 296, Opening Br. at 9-10, fn. 6.  Defendants do no such thing.  Instead, Defendants are merely applying the proper framework of § 102(g)(2) to show that the explicit disclosures in the Rietschel Patents were "made in this country" – and therefore entitled to a priority date – no later than 2003.  This is precisely the purpose of § 102(g)(2) and Defendants have presented sufficient

evidence to establish this priority date. Defendants – and their expert Dr. Jay Kesan – have presented substantial evidence and analysis demonstrating that at least the Barix Exstreamer product embodied the Rietschel Patent. *See, e.g.*, D.I. 316, Vol. 1 (Kesan Opening Expert Report at ¶ 99 (citing D+M_0400169-72)); *id.* at Vol. 2 (Kesan Reply Expert Report at ¶¶ 618-19) (providing detailed chart showing that the Rietschel Patent claims encompass the Barix Exstreamer product disclosed at D+M_0400169-72). However, Sonos has presented *no evidence or argument whatsoever* to rebut this evidence or analysis. In fact, Sonos's only arguments related to the Rietschel Patent are directed to disqualifying the Rietschel Patent as prior art. *See* D.I. 316, Vol. 9 at Ex. E-15 (Wolfe Rebuttal Report at ¶¶ 993-1006). As such, Sonos concedes that at least the Barix Exstreamer product is in fact a prior art embodiment of the Rietschel Patent.

### ii. Rietschel Was Made in This Country By Another Inventor Before The Priority Dates of the '258 and '357 Patents

A party is a prior inventor if "(1) [she] reduced [her] invention to practice first ... or (2) [ ] was the first party to conceive of the invention and then exercised reasonable diligence in reducing that invention to practice." *Mycogen Plant Sci., Inc. v. Monsanto Co.*, 243 F.3d 1316, 1332 (Fed. Cir. 2001) (citation omitted). The first way to be a prior inventor—reduction to practice—requires that the prior inventor "(1) constructed an embodiment or performed a process that met all the claim limitations, and (2) determined that the invention would work for its intended purpose." *Teva Pharm. Indus. Ltd. v. AstraZeneca Pharms. LP*, 661 F.3d 1378, 1383 (Fed. Cir. 2011) (citation omitted). Reduction to practice also requires testing or demonstration of the device in operation. *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 659 F.3d 1186, 1195 (Fed. Cir. 2011). An inventor can also show prior invention in a second way: by conceiving of the invention, meaning that she "form[ed] in [her] mind ... a definite and permanent idea of the

7

complete and operative invention," *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986) (citation and quotations omitted), and then exercising reasonable diligence in reducing it to practice, *Mycogen*, 243 F.3d at 1332.

Defendants have provided sufficient evidence to show that applying any of the various tests above, the invention disclosed in the Rietschel Patent clearly qualifies as prior art to the '258 and '357 Patents.  The facts clearly show the following key deadlines related to the Rietschel Patent:

- Barix AG was founded by Mr. Johannes Rietschel in 2001;

- Mr. Rietschel filed the initial international patent application related to the Rietschel Patent in November 2002;

- Inventor Millington acquires an Exstreamer prior to Electronic Home Expo (EHX) in Orlando, Florida in 2003[7];

- Mr. Rietschel displays the Barix Instreamer and Exstreamer products at EHX in Orlando Florida in 2003;

- Mr. Rietschel continued to prosecute international patent applications without any delays;

- Mr. Rietschel entered national stage of PCT application for the Rietschel Patent on May 4, 2005; and

- The Rietschel Patent issued as U.S. Patent No. 7,710,941 on May 4, 2010.

---

[7] *See* Jackson Dec. at Ex. 34, SONDM000138982-83 ████████████████████

████████████████████████████████████████████████████████

████████████████████████████

Applying the "reduction to practice" test outlined above, Mr. Rietschel was clearly the first to invent the claimed invention. In particular, Mr. Rietschel not only constructed an embodiment of the Rietschel Patent – namely the Barix Exstreamer product – but also began to publicly demonstrate the functionality of these devices at technical exhibitions, including one where named inventor Nicholas Millington was present. *See* D.I. 316, Vol. 2 (Kesan Reply Expert Report at ¶ 618 (citing D+M_0400284-306; D+M_0400169-172; SONDM000134592-594; SONDM000138979; SONDM000138982-983)). These public demonstrations of products embodying the Rietschel Patent establish "reduction to practice" of the claimed invention at least as early as 2003 under Federal Circuit precedent. *See, e.g.*, *Streck*, 659 F.3d at 1195. Even before demonstrating these products, Rietschel had begun the process of seeking international patent protection for his invention. This is clear evidence that Rietschel had an appreciation that the invention would work for its intended purpose (i.e., the synchronization of data streams in a networked environment). *See, e.g.*, *Teva*, 661 F.3d at 1383. Rietschel clearly reduced the claimed invention to practice first. *Id.*

Rietschel's creation of the Barix Exstreamer product, in conjunction with the diligent international prosecution efforts, are further evidence that Rietschel was also the first to conceive of the claimed invention. *Teva*, 661 F.3d at 1383 (noting that conception occurs "when the inventor has a specific, settled idea, a particular solution to the problem at hand."). The Federal Circuit has held that "the date of conception of a prior inventor's invention is the date the inventor first appreciated the fact of what he made." *Id.* Under these circumstances, Sonos cannot credibly suggest that Rietschel did not appreciate the fact of what he made by at least the time he demonstrated his products in 2003 in Florida. Curiously, Sonos takes the position that "even if 'the Barix Instreamer and Extreamer products' were disclosed publicly in Florida in

9

2003, this fact is irrelevant to whether the Rietschel Patent itself is prior art under § 102(g)(2)."

*See* D.I. 296 (Opening Br. at 9).  This argument conflicts with Federal Circuit precedent stating

that for purposes of § 102(g)(2), a public demonstration of a product can prove conception of an

invention.  *See Amkor Tech., Inc. v. Int'l Trade Comm'n*, 692 F.3d 1250, 1255–56 (Fed. Cir.

2012) (noting that "communication" of an invention in the United States may occur orally or in

writing) (consolidating cases). By the time Mr. Rietschel began demonstrating his products in

2003, he had not only begun the process of seeking patent protection for his inventions, but

understood the value of his products enough to deem them worthy of public attention by his

peers.  Similarly, Sonos cannot credibly suggest that Mr. Rietschel was not diligent in reducing

his invention to practice.  Within months of filing the first international patent application related

to the Rietschel Patent, Mr. Rietschel was publicly demonstrating his associated products.

Thus, under either the "reduction to practice" or "conception" tests for § 102(g)(2), Mr.

Rietschel was clearly the first to invent the claimed invention disclosed in the Rietschel Patent.

At a bare minimum, Defendants have demonstrated that "[n]umerous factual disputes remain,

and these are best addressed by a jury."  *Intellectual Ventures I LLC v. Toshiba Corp.*, C.A. No.

13-453-SLR, 2016 WL 7341713 at *10 (D. Del. Dec. 19, 2016) (denying motion for summary

judgment of no invalidity under § 102(g)(2) because defendant had produced evidence

documenting conception and reduction to practice over the following year).

### iii.   Rietschel Was Continuously Used and Not Abandoned, Suppressed, or Concealed

There are two ways a patentee can show that a prior inventor has suppressed or concealed

an invention.  *Fox Grp., Inc. v. Cree, Inc.*, 700 F.3d 1300, 1305 (Fed. Cir. 2012).  The more

direct way is to show that the prior inventor actively and intentionally suppressed or concealed

the invention.  *Id.*  "Intentional suppression occurs when an inventor 'designedly, and with the

view of applying it indefinitely and exclusively for his own profit, withholds his invention from the public.'" *Flex–Rest, LLC v. Steelcase, Inc.*, 455 F.3d 1351, 1358 (Fed. Cir. 2006) (citation omitted); *Fujikawa v. Wattanasin*, 93 F.3d 1559, 1567 (Fed. Cir. 1996) ("Intentional suppression . . . requires more than the passage of time. It requires evidence that the inventor intentionally delayed filing [for a patent] in order to prolong the period during which the invention is maintained in secret."). The second way a patentee can show that a prior inventor suppressed or concealed the invention is to offer evidence of an unreasonable delay in making the invention publicly known, which can lead to an inference of suppression or concealment. *Fox*, 700 F.3d at 1305.

In light of the extraordinary efforts taken by Mr. Rietschel to publicly demonstrate and seek patent protection for his invention, as well as the fact that Inventor Nicholas Millington acquired one of the Extreamer products and was familiar with its design and operation as the alleged date of invention of the '357 and '258 Patents, it is not surprising that Sonos has failed to even address the second step of a proper analysis under § 102(g)(2). However, the evidence is clear that Mr. Rietschel did not – intentionally or otherwise – abandon, suppress, or conceal the claimed invention upon conception. In fact, Mr. Rietschel's actions of: (i) seeking patent protection; and (ii) developing publicly disclosed products are independently sufficient to dispel any allegations of "abandonment." *See Fox*, 700 F.3d at 1306 ("Filing a patent application and commercializing a product are only two convenient ways of proving an invention has been disclosed to the public.").

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████. *See, e.g.,*

Jackson Dec. at Ex. 36 (SONDM000147266 (internal notes from CEDIA tradeshow in September 2003 regarding Barix products)); Ex. 37 (SONDM000138980 ████████████████

████████████████████████████████████████████ . . █████

████████████████████████████████████████████████

████████████████████████████████████████).

There is significant evidence that Sonos was not only aware of the Barix Instreamer and Exstreamer products, but was conducting internal analyses of these products during its own developmental stages. *See id.* at Ex. 38 (SONDM000051091 (spreadsheet of competitor's products and specifications)); Ex. 39 (SONDM000133002 (spreadsheet of competitor's products and specifications)); Ex. 40 (SONDM000133027 (internal document from 2003 regarding "List of Relevant Industry Players/Competitors")); Ex. 34 (SONDM000138982 (internal notes from March 2003 regarding Barix Exstreamer development)); Ex. 41 (SONDM000138985 (spreadsheet from March 2003 of competitor's products and specifications)).

For at least these reasons, the Rietschel Patent is clearly prior art for purposes of at least 35 U.S.C. § 102(g)(2).

## B.     The Sonos Products Are Prior Art Under At Least 35 U.S.C. § 102(b)

Having effectively admitted that its own products are prior art to at least two of the Asserted Patents, Sonos now offers the strained argument that Defendants' allegations lack *any* evidentiary support.[8]   Notably, however, this argument is plainly incompatible with Sonos's

---

[8] D&M notes that it has also presented a separate invalidity analysis that is not based on any specific version of the software, but rather on publicly disclosed documents that describe the prior art functionality of the Sonos products. Sonos has not addressed or refuted that analysis.

publicly-available statements about the Asserted Patents, Sonos's responses to written discovery requests, and named inventor testimony.[9]

According to 35 U.S.C. § 102(b), a person shall be entitled to a patent unless "the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  Here, the Parties do not dispute whether Sonos's Products – namely the CR 200 and PLAY:5 (gen 1) products – were released and publicly available more than a year before the filing of the '509 and '959 Asserted Patents.  Instead, the *sole* dispute is whether Sonos's Products actually embodied the claims of the Asserted Patents prior to this one-year window.

Sonos maintains a publicly available website including a link to a "patent-to-product" comparison for many of its products.  *See* http://www.sonos.com/en-us/legal/patents.  This comparison includes a comprehensive list of its products in conjunction with the "Covered Patents" assigned to Sonos.  *See* Jackson Dec. at Ex. 42 (D+M_0307477- D+M_0307481).

The '509 Patent is identified as a Covered Patent for a number of Sonos's products including, without limitation, the CONTROL (CR 200).  *See id.* at D+M_0307477.  In Plaintiff Sonos Inc.'s Second Amended Responses and Objections to Defendants' First Set of

---

[9] Sonos once again suggests that Defendants' invalidity theories based on the "Sonos System" – including the Sonos Products – are somehow "untimely and in violation of the Court's Scheduling Order."  *See* D.I. 296, Opening Br. at 10, fn 7.  And once again, Sonos is incorrect. Sonos has been aware of Defendants' allegations regarding the Sonos System since at least August 4, 2016 when Defendants served their Amended Invalidity Contentions.  Furthermore, Defendants disclosed the Sonos System as a prior art reference to the '509 and '959 Patents for a second time as part of their Final Invalidity Contentions served on January 18, 2017.  *See, e.g.*, Jackson Dec. at Ex. 35, Defendants' Final Invalidity Contentions, Ex. 10, p. 33 ("The Sonos Digital Music System ('Sonos System') [] qualifies as prior art to U.S. Patent No. 9,219,959 ('the '959 Patent') for the purposes of [] 35 USC §102(b).").  Sonos's timeliness argument is without merit.

Interrogatories, Sonos conceded that the CONTROL (CR 200) was publicly released no later than July 2009.  *See id.* at Ex. 43, page 14.  This release date of the CONTROL (CR 200) is a full 18 months before the admitted – and USPTO-determined – priority date of the '509 Patent.

The '959 Patent is identified as a Covered Patent for a number of Sonos's products including, without limitation, the PLAY:5 (gen 1), (ZP S5).  *See id.* at Ex. 42 (D+M_0307478). In Plaintiff Sonos Inc.'s Second Amended Responses and Objections to Defendants' First Set of Interrogatories, Sonos conceded that the PLAY:5 (gen 1) was publicly released no later than November 3, 2009.  *See id.* at Ex. 43, page 14.  This release date of the PLAY:5 (gen 1) is a full 14 months before the admitted – and USPTO-determined – priority date of the '959 Patent.

Sonos does not meaningfully dispute these facts.  Instead, Sonos provides for the first time in this litigation certain conclusory statements that there are a number of different versions of software which can be used to update the various Sonos Products, and that the Sonos Products were not actually embodiments of the '509 and '959 Patents until Software Update Version 3.2 was released on May 18, 2010.  *See* D.I. 296, Opening Br. at 12-13.  In support of this position, Sonos cites to a number of Software Update "changelogs" which purportedly show that "stereo pairing" (i.e., the subject matter of part of the '509 and '959 Patents) was not implemented until May 2010 – or less than a year before the filing date of these Asserted Patents.  *See id,* at 12. However, Sonos provides no analysis to demonstrate that its conclusory statements are correct. In light of these documents, Sonos improperly suggests that the Court should discount the relevance of certain other evidence – namely Sonos's website analysis, discovery responses, and inventor testimony – which has been shown by analysis to invalidate the claims of the '509 and

'959 Patents.   However, Sonos has not – and cannot – reconcile this new "software-update" argument with the overwhelming amount of evidence in this case.[10]

In short, Sonos has presented some documents which seem to support its new "software-update" based argument, but no analysis demonstrating that there is no genuine issue as to any material fact.   In addition, those documents directly contradict Sonos's representations on its website about its Asserted Patents as well as sworn responses to discovery – both written responses and deposition testimony – in this litigation.   Plainly stated, the evidence in this case clearly raises a factual dispute best resolved by a jury.   *See, e.g.*, *AVM Technologies, LLC v. Intel Corporation*, C.A. No. 15-33-RGA, D.I. 666 at 6 (D. Del. Apr. 28, 2017) (denying plaintiffs' motion for summary judgment of no invalidity and stating that "Plaintiffs objections appear to be about the weight of the evidence, a topic appropriate for cross-examination rather than summary judgment.").

Starting with the "Covered Patent" analysis document, Sonos has failed to provide sufficient evidence as to why earlier versions of the Asserted Patents were not commercial embodiments of the Asserted Patents despite the unqualified statements on Sonos's website that they are in fact commercial embodiments thereof.   In fact, where the Covered Patents only apply to certain system software versions, Sonos has stated that specifically.   *See* Jackson Dec. at Ex. 42 (D+M_0307477 (noting that for Connect (ZP 90)) with system software versions: 2.1-3.5 the

---

[10] In addition to contradicting the evidence in this case, Sonos's allegations also contradict the statements of Sonos's expert Dr. Kevin Almeroth.   In his Opening Expert Report, Dr. Almeroth acknowledged the "Covered Patent" analysis document.   *See* D.I. 316, Vol. 5 at Ex. E-3 at ¶ 68. Dr. Almeroth further recognized that certain Sonos Products – including the PLAY:5 and CR200– "are covered by the" '959 and '509 Patents, respectively.   *See id.* at ¶¶ 215, 218.

*See* Jackson Dec. at Ex. 44 (K. Almeroth Tr. at 101:8-14).

same Covered Patents apply as well as newly-identified US 8,086,752).  In all, Sonos makes this distinction for 8 out of 15 (or more than half) of its total physical products.  Notably, however, Sonos has made no such distinction for Control (CR 200).  This is because even the earliest versions of the CR 200 performed all the recited functionality of the '509 Patent.

Worse yet, for the PLAY:5 (gen 1), Sonos has specifically stated that certain Covered Patents only apply to certain system software versions.  *See id.* at Ex. 42 (D+M_0307478 (noting that for PLAY:5 (gen 1)) with system software versions: 2.1-3.5 the same overlapping Covered Patents apply as well as newly-identified US 8,086,752).  More specifically, Sonos has explicitly identified one particular patent – US 8,086,752 – which is _only_ an embodiment of the PLAY:5 (gen 1) with system software versions: 2.1-3.5.  Thus, it is clear that Sonos performed an analysis of its patent portfolio in light of the various software updates and reflected this analysis on its website.  However, the identification of the PLAY:5 (gen 1) as a commercial embodiment of the '959 Patent is not based on any such qualification of system software version.  Instead the PLAY:5 (gen 1) **and** the PLAY:5 (gen 1) with system software versions: 2.1-3.5 are identified as embodiments of the '959 Patent.  Defendants recognize that this might include software update version 3.2 – which forms the sole basis of Sonos's argument – however it would also include all other software update versions associated with the PLAY:5 (gen 1).  ████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████.  *See* Jackson Dec. at Ex. 45 (SONDM000147948-59 at 53 ██████████████████████████████████████████████████████

████████████).  ████████████████████████████████████████████████████

████████████████████████████████████████████████████████████.

Furthermore, Defendants have previously served a number of written discovery requests related to the various commercial embodiments for the Asserted Patents. *See, e.g.*, D.I. 316, Vol 10 at Ex. E-16 (Defendants' First Set of Interrogatories, Interrogatory #2 ("Identify any embodiments of any of the Asserted Claims of the Patents-in-Suit, including all products or services, if any, that Plaintiff contends practice or embody (or has at any time practiced or embodied) any alleged invention described or claimed in the Patents-in-Suit[.]")).   Sonos responded to this Interrogatory by providing: (1) a link to the Product/Covered Patent comparison page on its website (Jackson Dec. at Ex. 42, D+M_0307477); (2) a table of the various Sonos product release dates; (3) a broad incorporation of thousands of pages of produced documents; and (4) an incorporation of the deposition testimony of named-inventor Nicholas Millington.

This response is telling for a number of reasons.   First, Sonos once again formally acknowledged that the Product/Covered Patent page on its website (*Id.*) is a reliable reference for determining which Sonos Products are commercial embodiments of certain Covered Patents (including the '509 and '959 Patents).  Further, during his deposition Mr. Millington was directly questioned about this same document.  *Id.*

*Id.* at Ex. 46 (N. Millington Tr. at 93:3-15).

*Id.* at Ex. 42 (D+M_0307477).

███████████████████████████████████████████████████████████

█████████████████████ *See id.* at Ex. 47 (J. Lang Tr. at 65:20-67: 19). ████████████

███████████████████████████████████████████████████████████

████████████████████████████████ *Id.* at 67:20-25.

At no point did Mr. Lang – or Sonos in any written discovery responses – state that the CR 200 and PLAY:5 (gen 1) products were only commercial embodiments of the '509 and '959 Patents under certain circumstances or when installed with certain software updates. Whether or not Sonos and Mr. Lang realized and intended to prove that the Sonos Products are invalidating prior art under § 102(b) for purposes of the '509 and '959 Patents is ultimately irrelevant. What is relevant, however, is Sonos's unqualified statement that the Sonos Products – which were unquestionably released more than a year before the filing dates of the '509 and '959 Patents – embody and practice the disclosures described and claimed in the later-filed Asserted Patents. As such, the CR 200 and PLAY:5 (gen 1) serve as prior art to the '509 and '959 Patents for at least purposes of 35 U.S.C. §102(b).[11]

## VI.    Conclusion

Accordingly, Defendants respectfully request that the Court deny Sonos's motion for partial summary judgment of no invalidity based on the Rietschel Patent and/or the Sonos products.

---

[11] Defendants note that Sonos cites to a single case – *Amkor* – for the proposition that the Sonos Products cannot constitute prior art to the Asserted Patents under § 102(b). *See* D.I. 296 (Opening Br. at 15). However, *Amkor* was directed to the proper evidentiary standard to uphold an International Trade Commission determination that a patent was invalid under 35 U.S.C. § 102(g)(2). *See* 692 F.3d at 1258. In fact, *Amkor* makes no mention whatsoever of summary judgment standards or § 102(b). As such, this case is entirely inapposite under these circumstances.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Michael J. Flynn*

_____

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for D&M Holdings Inc. d/b/a The D+M*
*Group,  D&M Holdings U.S. Inc. and Denon*
*Electronics (USA), LLC*

OF COUNSEL:

John M. Jackson
Kurt A. Schwarz
Nathaniel (Nate) St. Clair II
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX  75201
(214) 953-6000

David Folsom
JACKSON WALKER L.L.P.
6002 Summerfield, Suite B
Texarkana, TX  75503
(903) 255-3250

Wasif Qureshi
JACKSON WALKER L.L.P.
1401 McKinney, Suite 1900
Houston, TX  77010
(713) 752-4521

June 16, 2017