IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SONOS, INC., | ) |
|             Plaintiff, | ) ) ) ) Civil Action No. 14-1330-RGA |
| v. | ) ) **PUBLIC VERSION** |
| D&M HOLDINGS INC. d/b/a THE D+M GROUP, D&M HOLDINGS U.S. INC., and DENON ELECTRONICS (USA), LLC, | ) ) ) ) ) |
|             Defendants. | ) |

SONOS, INC.'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR PARTIAL SUMMARY JUDGMENT OF NO INVALIDITY

OF COUNSEL:
George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 N Desplaines St, Suite 250
Chicago, IL 60661
(312) 754-0002

Dated: June 23, 2017
Public Version dated: June 30, 2017

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
POTTER ANDERSON & CORROON LLP
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff
Sonos, Inc.*

# TABLE OF CONTENTS

I. D&M Cannot Show by Clear & Convincing Evidence that the Rietschel Patent Invalidates Sonos's '258 & '357 Patents ............................................. 1

   A. The Rietschel Patent Is Not Prior Art Under § 102(g) ..................................................... 1

   B. D&M Cannot Show by Clear & Convincing Evidence that the Barix Disclosure at EHX Amounts to an Invalidating § 102(g) Disclosure ........... 2

     1. D&M's Mischaracterizations Do Not Create a Genuine Factual Dispute ................... 2

       a. Dr. Kesan's Opening Report Provided No Explanation of How Rietschel Qualifies As § 102(g)(2) Prior Art .................................. 2

       b. D&M's Assertions Regarding Demonstration of Barix Products Are Unsupported ............................................................... 3

       c. D&M's Assertions Regarding Mr. Millington Are Unsupported ............................. 4

     2. D&M Cannot Show by Clear & Convincing Evidence a Prior Conception or Reduction to Practice in the United States ................................. 4

II. D&M Cannot Show by Clear & Convincing Evidence that Sonos's Products Invalidate the '509 & '959 Patents .................................................................. 9

III. Conclusion ....................................................................................................................... 10

# TABLE OF AUTHORITIES

*Accenture Glob. Servs. GmbH v. Guidewire Software Inc.*,
    691 F. Supp. 2d 577 (D. Del. 2010) .................................................................................. 10

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
    694 F.3d 1312 (Fed. Cir. 2012) ........................................................................................ 10

*Am. Standard Inc. v. Pfizer Inc.*,
    722 F. Supp. 86, 117-21 (D. Del. 1989) .......................................................................... 1, 6

*Amkor Tech., Inc. v. Int'l Trade Comm'n*,
    692 F.3d 1250 (Fed. Cir. 2012) .................................................................................. passim

*Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C.*,
    482 F.3d 1347 (Fed. Cir. 2007) .......................................................................................... 7

*Creative Compounds, LLC v. Starmark Labs.*,
    651 F.3d 1303 (Fed. Cir. 2011) .......................................................................................... 9

*Eaton v. Evans*,
    204 F.3d 1094 (Fed. Cir. 2000) .......................................................................................... 5

*GlaxoSmithKline LLC v. Banner Pharmacaps, Inc.*,
    No. 11-046-RGA, 2013 WL 4082232 (D. Del. Aug. 9, 2013) ........................................... 8

*In re Zletz*,
    893 F.2d 319 (Fed. Cir. 1989) ............................................................................................ 1

*Intellectual Ventures I LLC v. Toshiba Corp.*,
    221 F. Supp. 3d 534 (D. Del. 2016) ................................................................................... 9

*Int'l Glass Co. v. United States*,
    408 F.2d 395 (Ct. Cl. 1969) ............................................................................................... 1

*Kenexa Brassring, Inc. v. Taleo Corp.*,
    751 F. Supp. 2d 735 (D. Del. 2010) ................................................................................... 7

*L-3 Commc'ns Corp. v. Sony Corp.*,
    No. 10-734-RGA, 2013 WL 5942521 (D. Del. Oct. 16, 2013) .......................................... 7

*Mortsell v. Laurila*,
    301 F.2d 947 (C.C.P.A. 1962) ............................................................................................ 8

*Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*,
    984 F.2d 1182 (Fed. Cir. 1993) .................................................................................... 2, 10

*Solvay S.A. v. Honeywell Int'l Inc.*,
   742 F.3d 998 (Fed. Cir. 2014) .................................................................................................. 5, 8

*Solvay, S.A. v. Honeywell Specialty Materials LLC*,
   827 F. Supp. 2d 358 (D. Del. 2011) ............................................................................................ 1

*Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC*,
   No. 12-1013-RGA, 2015 WL 452289 (D. Del. Jan. 30, 2015) .................................................... 6

*Sun Studs, Inc. v. ATA Equipment Leasing, Inc.*,
   872 F.2d 978 (Fed. Cir. 1989) ..................................................................................................... 1

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*,
   No. 11-455, 2014 WL 3347531 (E.D. Tex. July 3, 2014) ........................................................... 7

I. **D&M Cannot Show by Clear & Convincing Evidence that the Rietschel Patent Invalidates Sonos's '258 & '357 Patents**

Sonos maintains that the Rietschel Patent does not qualify as prior art to Sonos's '258 and '357 Patents. Even assuming that the Court is willing to entertain D&M's new and untimely § 102(g)(2) invalidity theory based on an alleged disclosure of Barix products at EHX in 2003, D&M cannot offer evidence from which a reasonable jury could return a verdict in its favor.

A. **The Rietschel Patent Is Not Prior Art Under § 102(g)**

As set forth in Sonos's Opening Brief, the Federal Circuit has repeatedly explained that "a reference United States patent," such as the Rietschel patent, "is *not* prior art under § 102(g), but under 102(e) . . . ."[1] D&M attempts to downplay the applicability of this Federal Circuit precedent by alleging that it is "irrelevant to the instant analysis of § 102(g)(2)" because the Federal Circuit was addressing interferences in those cases. D.I. 358 at p. 4. However, the Federal Circuit and this Court have squarely rejected the argument that § 102(g)(2) should be interpreted differently from the pre-AIPA version of § 102(g).[2] Moreover, even the pre-AIPA version of § 102(g) was not limited to interference proceedings.[3]

Tellingly, D&M provides no explanation as to how the AIPA amendment to § 102(g) has any effect on Sonos's cited Federal Circuit precedent, nor could D&M, because the language of

---

[1] *Sun Studs*, 872 F.2d at 983-84 (emphasis added); *In re Zletz*, 893 F.2d at 323.
[2] *E.g., Amkor Tech.*, 692 F.3d 1255 ("Because nothing in the legislative history indicates that Congress attempted to abandon this court's interpretation of the 'made in this country' language of the pre-AIPA version of § 102(g) when it amended the statute and retained the language in § 102(g)(2), this court holds that the court's interpretation of this language in *Scott* governs this noninterference, prior invention case under § 102(g)(2)."); *Solvay, S.A. v. Honeywell Specialty Materials LLC*, 827 F. Supp. 2d 358, 364 (D. Del. 2011) ("[N]o authority indicat[es] that the language of § 102(g)(2) should be interpreted differently than the same language had been interpreted before the 1999 amendment.")
[3] *E.g., Int'l Glass Co. v. United States*, 408 F.2d 395, 403 (Ct. Cl. 1969) ("Section 102(g) . . . commonly applies to . . . interference proceedings. However, it may also be an appropriate defense to patent validity in infringement litigation . . . .").

pre-AIPA § 102(g) and post-AIPA § 102(g)(2) is nearly identical. Accordingly, Sonos maintains that the Rietschel patent is not prior art under § 102(g). On that basis alone, the Court should grant Sonos's motion with respect to the Rietschel patent.

### B. D&M Cannot Show by Clear & Convincing Evidence that the Barix Disclosure at EHX Amounts to an Invalidating § 102(g) Disclosure

Faced with the reality that the Rietschel patent is not prior art under § 102(g), D&M, for the first time through Dr. Kesan's Reply Expert Report, attempts to back its way in to a new[4] prior art reference by concocting a story about Barix products that allegedly embody the Rietschel patent. However, D&M took no discovery on these products and as a result, has not offered, and cannot offer, evidence of how they operate or to what extent they were ever demonstrated. Thus, D&M's evidence is insufficient to create a genuine factual dispute.

#### 1. *D&M's Mischaracterizations Do Not Create a Genuine Factual Dispute*[5]

As an initial matter, perhaps as an attempt to manufacture a genuine dispute of material fact, D&M's Opposition is riddled with numerous factual mischaracterizations. However, none of D&M's mischaracterizations, which are clearly and directly contradicted by the evidence, give rise to a ***genuine*** dispute of material fact.[6]

##### a. *Dr. Kesan's Opening Report Provided No Explanation of How Rietschel Qualifies As § 102(g)(2) Prior Art*

D&M alleges that "Sonos makes a number of mischaracterizations in its Opening" related to when Dr. Kesan first alleged that the Rietschel patent was § 102(g)(2) prior art. D.I. 358 at 5.

---

[4] D&M cannot credibly dispute that the true prior art reference here is the alleged disclosure of Barix products at EHX, as it is the 2003 date of this alleged disclosure that D&M seeks.

[5] Sonos has only endeavored to identify D&M's mischaracterizations that are most material to the present motion. Sonos's silence otherwise should not be construed as an acquiescence of D&M's mischaracterizations.

[6] *See, e.g., Paragon Podiatry Lab., Inc. v. KLM Labs., Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993) ("[M]erely conclusory statements or completely insupportable, specious, or conflicting explanations or excuses will not suffice to raise a *genuine* issue of fact.") (emphasis original).

2

To the contrary, prior to Dr. Kesan's Reply Report, neither D&M nor Dr. Kesan provided any *substantive explanation* as to how Rietschel –a United States patent reference filed after April 2004 – could possibly qualify as § 102(g)(2) to the '258 and '357 Patents.[7] Indeed, prior to Dr. Kesan's Reply Report, D&M provided little more than bald assertions that Rietschel qualifies as § 102(g) art.[8] Thus, D&M's criticism that Dr. Wolfe failed to address D&M's "substantive allegations" of Rietschel as § 102(g)(2) art is perplexing given that Dr. Wolfe's expert report was submitted *before* Dr. Kesan's Reply Report. See D.I. 358 at 5-6.

  b. *D&M's Assertions Regarding Demonstration of Barix Products Are Unsupported*

D&M alleges that (1) "Mr. Rietschel display[ed] the Barix Instreamer and Exstreamer products at EHX in Orlando Florida in 2003," (2) Mr. Rietschel "constructed" "the Barix Exstreamer product" which is "an embodiment of the Rietschel Patent," and (3) Mr. Rietschel "began to publicly demonstrate the functionality of [Exstreamers] at technical exhibitions," including EHX in 2003. See D.I. 358 at pp. 2, 8-9. However, D&M has cited *no* evidence (i) that Mr. Rietschel *himself* attended EHX in 2003, (ii) that the Barix *Instreamer* product even existed at the time of EHX in 2003, let alone was shown at EHX 2003, (iii) of when, if ever, the Exstreamer (or any other Barix product) *embodied* what was disclosed in the Rietschel patent, or

---

[7] *See, e.g.*, Sonos Ex. F at App'x C at p. 74; Sonos Exs. Y-Z. Sonos Exhibits A-X are attached to the Declaration of Philip A. Rovner in Support of Sonos, Inc.'s Motion for Partial Summary Judgment of No Invalidity, dated June 2, 2017 (D.I. 297). Sonos Exhibits Y to EE are attached to the Rovner Declaration filed with this Reply Brief.

[8] D&M suggests that Dr. Kesan provided an analysis of Rietschel under § 102(g)(2) vis-à-vis the '258 and '357 Patents in Appendices J-K of his Opening Report. *See* D.I. 358 at 5. However, other than setting forth ▮▮▮▮▮ Dr. Kesan neither mentioned § 102(g) again in those appendices nor provided any substantive explanation as to how the Rietschel patent could possibly qualify as § 102(g)(2) art. *See, e.g.*, Sonos Ex. Y. In fact, the appendix to that report that provided an overview of the prior art Dr. Kesan was relying on stated ▮▮▮▮▮ but made no allegation that Rietschel is § 102(g) prior art. *See* Sonos Ex. F at App'x C, p. 74.

(iv) that there was a ***demonstration*** of any functionality of any Barix product at EHX 2003.[9]

### c. D&M's Assertions Regarding Mr. Millington Are Unsupported

D&M incorrectly asserts that Nicholas Millington of Sonos acquired an Exstreamer prior to the 2003 EHX. D.I. 358 at pp. 8-9, 11. Remarkably, D&M cites to a single document (SONDM000138982-83) as evidence of this frivolous assertion, ███████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████ Notably, Mr. Millington began working at Sonos a month *after* ██ ███████████████[11] Millington Dec. at ¶ 3.

### 2. D&M Cannot Show by Clear & Convincing Evidence a Prior Conception or Reduction to Practice in the United States

To establish conception by Barix ***in the United States*** prior to April 2004, D&M must establish by clear and convincing evidence that there was a prior "domestic disclosure . . . *specific enough* to encompass the 'complete and operative' invention" of each of the '258 and '357 Patents.[12] Likewise, to establish a prior actual reduction to practice by Barix ***in the United States***, D&M must establish that, before April 2004, (i) either a constructed Barix product was in the United States or a Barix product performed a process in the United States and the constructed product or performed process included all of the "precise elements" of each of the claims of the

---

[9] *See* D.I. 347 Ex. 34 at SONDM000138982 ███████████████████████████████ ███████████████████████████████████████████████████████████████.
[10] Sonos Exs. AA; Jackson Dec. (D.I. 347), Ex. 37; Jackson Dec. (D.I. 347) Ex. 34
[11] D&M has deposed Mr. Millington twice but never asked him about Barix or its products.
[12] *Amkor*, 692 F.3d at 1257 (emphasis original).

4

'258 and '357 Patents, and (ii) the constructed product or performed process actually worked for its intended purpose.[13] Importantly, conception or reduction to practice that occurs *outside* the United States is "beyond the scope of § 102(g)(2) prior art."[14]

However, fact discovery closed on November 18, 2016, and yet, D&M failed to (i) subpoena Barix or any named inventor of the Rietschel patent for documents, (ii) depose any Barix employee or any named inventor, or (iii) elicit any testimony regarding Barix from any witness that might have personal knowledge of Barix's products before April 2004. Moreover, the documentary evidence that D&M and Dr. Kesan rely on is sparse to say the least, which is limited to two D&M-produced documents – a 4-page marketing brochure (D.I. 347, Ex. 32) and a user manual that is dated several months *after* April 2004[15] – and some Sonos-produced documents that do little more than merely mention Barix at a nonspecific level.[16]

Accordingly, D&M cannot show that Barix conceived of the inventions of the '258 and '357 Patents *in the United States* before April 2004. Indeed, as D&M acknowledged, Barix is a Swiss company, and the Barix marketing brochure appears to have been directed to customers outside of the United States.[17] D&M has provided no evidence that the Barix marketing brochure (or the Instreamer User Manual, which is dated *after* April 2004) was communicated to anyone in the United States before April 2004.

Moreover, the 4-page marketing brochure woefully fails to disclose the complete and operative invention of either of the '258 or '357 Patents. In fact, Dr. Kesan's "detailed chart"

---

[13] *See, e.g., Eaton v. Evans,* 204 F.3d 1094, 1097 (Fed. Cir. 2000).
[14] *See Solvay S.A. v. Honeywell Int'l Inc.,* 742 F.3d 998, 1000 (Fed. Cir. 2014); *see also Amkor*, 692 F.3d at 1255-57.
[15] Jackson Dec. (D.I. 347) Ex. 31 at D+M_0400284 ("Instreamer" manual "[f]or release 01.05 (3. Dec. 2004)").
[16] *See id,* ███████████████████████████████████████████.
[17] *See* Jackson Dec. (D.I. 347) Ex. 32 at D+M_0400172.

from his Reply Report merely recycles *two* marketing statements that generically describe the Exstreamer at a high-level.[18] *See* D.I. 358 at 7.

However, the claims of the '258 and '357 Patents recite terms such as "control information," "playback timing information," and "device clock" or "clock time" information, not to mention specific claim limitations involving these terms. D&M and Dr. Kesan have not identified, and cannot identify, any disclosure in the Barix marketing brochure that precisely teaches each of the claim terms and limitations of the '258 and '357 Patents. Consequently, D&M cannot prove by clear and convincing evidence that Barix conceived of the inventions of the '258 and '357 Patents in the United States before April 2004.[19]

Likewise, D&M provides no evidence that Barix actually[20] reduced the inventions of the '258 and '357 Patents to practice in the United States before April 2004, let alone that any such reduction to practice worked for its intended purpose. At best, D&M has pointed to (i) ████████ ████████████████████████████████████████████████████ ████████████████████ (ii) a Barix marketing brochure that appears to bear a September 2003 copyright date, and (iii) the Rietschel patent that was filed on May 4, 2005.

From D&M's meager evidence, it cannot establish that the version of the Exstreamer

---

[18] *See* Sonos Ex. BB at pp. 349-51. Sonos notes that Dr. Kesan compared the Barix brochure to the Rietschel patent instead of the claims of the '258 and '357 Patent. Sonos is unaware of any legal authority suggesting that such a comparison is proper under § 102(g).

[19] *See, e.g., Sprint Commc'ns Co. L.P. v. Comcast IP Holdings, LLC,* No. 12-1013-RGA, 2015 WL 452289, at *3 (D. Del. Jan. 30, 2015) (finding evidence insufficient to establish earlier conception, despite testimony of prior demonstrations, where there was "no evidence that the demonstrations incorporated all of the limitations of the claimed invention"); *Am. Standard Inc. v. Pfizer Inc.,* 722 F. Supp. 86, 117-19 (D. Del. 1989) (finding evidence insufficient to establish prior conception despite prior-inventors' deposition testimony and prior-inventors' "Application For Research Grant" and "Invention Disclosure" document).

[20] Because D&M cannot establish conception in the U.S. before April 2004, D&M's discussion of Mr. Rietschel's alleged diligence to reduce to practice is irrelevant. *See, e.g., Am Standard,* 722 F. Supp. at 119 ("Defendants must still prove . . . due diligence *from the point of conception to an actual reduction to practice or filing of a patent application . . . .*") (emphasis added).

6

product shown at EHX 2003 functioned in the manner described by the Barix marketing brochure (or that any version of the Exstreamer product ever functioned in the described manner) because the evidence[21] indicates that at least some Barix products could receive software updates when Barix released new product features or capabilities.[22] Likewise, D&M cannot establish that any version of the Exstreamer embodied the technology disclosed in the Rietschel patent (filed in May 2005), let alone the version shown at EHX in 2003.[23]

Most importantly, D&M cannot prove by clear and convincing evidence that a pre-April-2004 Barix product embodied every one of the precise elements of the '258 and '357 Patent claims, let alone operated for its intended purpose. D&M, therefore, cannot show an actual reduction to practice in the United States of the '258 and '357 inventions before April 2004.[24]

Indeed, as mentioned before, D&M has offered no testimony from any alleged Barix inventor or employee. This Court has explained that, "[a]lthough inventor testimony is not required as a matter of law to lay the foundation for an alleged [prior] invention," when it is

---

[21] Jackson Dec. (D.I. 347) at D+M_0400299 (instructions on how to download the latest product firmware).
[22] See, e.g., Kenexa Brassring, Inc. v. Taleo Corp., 751 F. Supp. 2d 735, 760-61 (D. Del. 2010) (finding evidence insufficient to demonstrate prior conception and reduction to practice, despite timestamped source code files and a trademark application for the alleged prior invention, and explaining, "[f]or all intents and purposes, a functional version of [the alleged prior invention] may have existed . . . , but failed to meet any of the claims of the patents in suit. Or, an equally likely scenario is that [the sought after trademark] was used in commerce at that time as an advertising tool to market a product that was still in development."); ThinkOptics, Inc. v. Nintendo of Am., Inc., No. 11-455, 2014 WL 3347531, at *3 (E.D. Tex. July 3, 2014) (granting summary judgment of no invalidity under § 102(g)(2) and finding evidence that two programs "evolved into" a program covering the challenged patent claims was unhelpful in establishing what features were present in those two programs before the invention date).
[23] See, e.g., ThinkOptics, 2014 WL 3347531, at *3 (granting summary judgment of no invalidity under § 102(g)(2) where defendant failed to "directly link" prior published documents to the alleged prior reduction to practice).
[24] See, e.g., L-3 Commc'ns Corp. v. Sony Corp., No. 10-734-RGA, 2013 WL 5942521, at *2 (D. Del. Oct. 16, 2013); see also, e.g., Cent. Admixture Pharmacy Servs., Inc. v. Advanced Cardiac Sols., P.C., 482 F.3d 1347, 1357 (Fed. Cir. 2007) (affirming summary judgment of no invalidity where there was a "very sketchy record" consisting of only a "nonspecific" article).

absent an "inference is raised that the testimony would be unfavorable or at least not support the case . . . ."[25] Similar to the defendant in *GlaxoSmithKline*, D&M has offered no evidence from a Barix inventor or any other witness with personal knowledge of Barix's pre-April-2004 products. Thus, a similar negative inference should be raised here against D&M.

Lastly, throughout its Opposition, D&M discusses foreign activities allegedly performed by Mr. Rietschel, but those have little to no relevance to whether Mr. Rietschel conceived of or reduced to practice the claimed inventions of the '258 and '357 Patents in the ***United States***.[26] Relatedly, D&M points to *Mortsell* as allegedly standing for the proposition "that evidence demonstrating conception in the United States could be used to establish priority for an invention disclosed in a German patent application." D.I. 358 at p. 6. While D&M's characterization of *Mortsell* is not entirely accurate, Sonos is not arguing that "evidence demonstrating conception in the United States" cannot be used in some circumstances to establish prior invention under § 102(g)(2) for an invention first disclosed in a foreign language. However, unlike the junior party (Laurila) in the interference at issue in *Mortsell*, D&M cannot point to any evidence demonstrating ***conception in the United States*** by Barix of the complete and operative inventions disclosed in the '258 and '357 Patents before April 2004.[27] For example, D&M can point to no evidence that a copy of any of Mr. Rietschel's foreign patent filings was distributed to and translated by anyone in the United States before April 2004.

For at least these reasons, there is no genuine dispute that D&M cannot establish that the

---

[25] *GlaxoSmithKline LLC v. Banner Pharmacaps, Inc.*, No. 11-046-RGA, 2013 WL 4082232, at *14-15 (D. Del. Aug. 9, 2013) (rejecting defendant's § 102(g)(2) defense).
[26] *See Solvay*, 742 F.3d at 1000; *Amkor*, 692 F.3d at 1255-57.
[27] *See Mortsell v. Laurila*, 301 F.2d 947, 951 (C.C.P.A. 1962) (confirming board's finding that an invention disclosed in a foreign language was considered conceived in the U.S. only after the foreign language was translated by a person in the U.S. and placed in form for filing a U.S. patent application).

8

alleged Barix disclosure at EHX in 2003 invalidates the '258 and '357 Patents under § 102(g).[28]

Indeed, the Federal Circuit has made clear that evidentiary shortcomings cannot be overcome, and genuine disputes cannot be raised, by bald assertions and mere attorney argument.[29]

## II. D&M Cannot Show by Clear & Convincing Evidence that Sonos's Products Invalidate the '509 & '959 Patents

As a preliminary matter,[30] D&M incorrectly alleges that Sonos's "'software-update' based argument" first appeared in Sonos's Opening Brief. D.I. 346 at pp. 14-15. To the contrary, even before D&M first articulated these invalidity theories, Dr. Almeroth explained that Sonos regularly develops and releases software containing new product features and ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[31] D&M's attorneys also unsuccessfully tried to confuse a Sonos witness into admitting that all CR 200s and gen 1 PLAY:5s practice the '509 and '959 patented technology.[32] Then, after Dr. Kesan's Opening Expert Report in which he first articulated these CR 200 and PLAY:5 (gen 1) invalidity theories, Drs. Almeroth and Wolfe explained why the theories lack merit.[33]

Nevertheless, D&M alleges that there is an "overwhelming amount of evidence," but only selectively points to "written responses and deposition testimony" from this litigation and "Sonos's representation on its website." D.I. 346 at p. 15. In reality, D&M ignores the

---

[28] *Intellectual Ventures* is easily distinguishable from the present facts because, there, the defendant presented evidence "from a ***variety*** of sources documenting conception . . . and reduction to practice over the following year." *Intellectual Ventures I LLC v. Toshiba Corp.*, 221 F. Supp. 3d 534, 550 (De. Del. 2016) (emphasis added).
[29] *E.g., Creative Compounds, LLC v. Starmark Labs.*, 651 F.3d 1303, 1312 (Fed. Cir. 2011) (affirming summary judgment of no invalidity under § 102(g)).
[30] D&M's invalidity theories based on the **CR 200** and **PLAY:5 *(gen 1)*** are indeed untimely. D&M cannot credibly argue that its omnibus allegation that the "Sonos System" is § 102(b) prior art met its obligations under the Court's Scheduling Order vis-à-vis these specific allegations.
[31] Sonos Ex. CC at pp. 28-29.
[32] *See* Ex. DD at 119:6-121:9, 162:8-167:22.
[33] Sonos Ex. Q at ¶ 46; Sonos Ex. EE at ¶¶ 912-13, 940-41.

9

overwhelming evidence directly refuting its position.[34]

As explained in Sonos's Opening Brief, neither Sonos's discovery response nor Mr. Lang's deposition testimony supports D&M's position. Likewise, D&M's litigation-inspired interpretation of the Sonos marking document is far short of clear and convincing evidence that all versions of the CR 200 and PLAY:5 (gen 1) practice the '509 and '959 Patents.[35] This is especially the case in view of the undisputed evidence that contradicts D&M's interpretation.[36] Moreover, D&M's attack on Sonos's witnesses is unfounded—had D&M asked Mr. Millington or Mr. Lang if all versions of the CR 200 and PLAY:5 practiced these patents, these witnesses would have clarified that they did not. *See, e.g.*, Millington Dec. (███████████████████████████████████████████████████).

Accordingly, there is no "genuine" dispute of material fact here because, when presented with the evidence in this case, no reasonable jury could find in D&M's favor (i.e., that all versions of the CR 200 and PLAY:5 (gen 1) practice the '509 and '959 Patents).[37]

## III. Conclusion

For at least the foregoing reasons, Sonos respectfully requests that the Court grant Sonos's Motion for Partial Judgment of No Invalidity in its entirety.

---

[34] *See, e.g., Accenture Glob. Servs. GmbH v. Guidewire Software Inc.* 691 F. Supp. 2d 577, 582 (D. Del. 2010) ("The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment[.]").
[35] *See, e.g., Paragon*, 984 F.2d at 1190 ("[M]erely . . . conflicting explanations . . . will not suffice to raise a *genuine* issue of fact.") (emphasis original).
[36] *E.g.*, Millington Dec.; Sonos Ex. DD, Ex. I at 953, Exs. K-O, R-U; *supra* fns. 31-33.
[37] *See, e.g., ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1327, 31 (Fed. Cir. 2012) (affirming JMOLs of no invalidity where the expert testimony was "conclusory," "factually unsupported," and lack[ed] sufficient technical detail"); *Accenture*, 691 F. Supp. at 590 (D. Del. 2010) (denying summary judgment of invalidity where there was no clear and convincing evidence of the sale (or offer for sale) of a . . . form of software embodying all limitations of the asserted claims prior to [the critical date].").

|  |  |
|---|---|
| OF COUNSEL: | POTTER ANDERSON & CORROON LLP |
| George I. Lee<br>Sean M. Sullivan<br>Rory P. Shea<br>J. Dan Smith<br>Michael P. Boyea<br>LEE SULLIVAN SHEA & SMITH LLP<br>224 North Desplaines St., Suite 250<br>Chicago, IL 60661<br>(312) 754-9602 | By: */s/ Philip A. Rovner*<br>    Philip A. Rovner (#3215)<br>    Jonathan A. Choa (#5319)<br>    Alan R. Silverstein (#5066)<br>    Hercules Plaza<br>    P.O. Box 951<br>    Wilmington, DE 19899<br>    (302) 984-6000<br>    provner@potteranderson.com<br>    jchoa@potteranderson.com<br>    asilverstein@potteranderson.com |
| Dated: June 23, 2017<br>Public Version dated: June 30, 2017<br>5256148 | *Attorneys for Plaintiff*<br>*Sonos, Inc.* |

11