IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SONOS, INC.,

    Plaintiff,

v.

D&M HOLDINGS, INC. d/b/a THE D+M
GROUP, D&M HOLDINGS U.S. INC., and
DENON ELECTRONICS (USA), LLC,

    Defendants.

Civil Action No. 1:14-cv-01330-RGA

## MEMORANDUM OPINION

Phillip A. Rovner, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, DE; Jonathan A. Choa, Esq., POTTER ANDERSON & CORROON LLP, Wilmington, DE; George I. Lee, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; Sean M. Sullivan, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; Rory P. Shea, Esq. (argued), LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; J. Dan Smith, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL; Michael P. Boyea, Esq., LEE SULLIVAN SHEA & SMITH, LLP, Chicago, IL.

    Attorneys for Plaintiff

Jack B. Blumenfeld, Esq., MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Michael J. Flynn, Esq., MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; John M. Jackson, Esq. (argued), JACKSON WALKER LLP, Dallas, TX; Matthew C. Acosta, Esq. (argued), JACKSON WALKER LLP, Dallas, TX; Blake T. Dietrich, Esq., JACKSON WALKER LLP, Dallas, TX; David Folsom, Esq., JACKSON WALKER LLP, Texarkana, TX.

    Attorneys for Defendants

August 10, 2017

*[signature]*
**ANDREWS, U.S. DISTRICT JUDGE:**

Presently before the Court is the issue of claim construction of multiple terms in U.S. Patent Nos. 8,938,637 ("the '637 Patent"), 9,195,258 ("the '258 Patent"), 9,202,509 ("the '509 Patent"), and 9,213,357 ("the '357 Patent). The Court has considered the Parties' Supplemental Claim Construction Briefs. (D.I. 240, 244, 252, 257).

## I. BACKGROUND

Plaintiff filed these actions on October 21, 2014, alleging infringement of four patents. (D.I. 1). Plaintiff subsequently amended its complaint (D.I. 6, 31, 102, 263) to assert a total of twelve patents. The parties stipulated to dismissal of one asserted patent with prejudice on August 25, 2016. (D.I. 150). Plaintiff subsequently dismissed two additional patents, leaving nine patents-in-suit. (D.I. 298 at 5; D.I. 350 at 4). The remaining patents-in-suit claim devices and methods for controlling audio devices. The parties submitted a Joint Claim Construction Brief (D.I. 210) and the Court heard oral argument on December 14, 2016. (D.I. 213). In a *Markman* opinion issued on January 12, 2017, I asked the parties for supplemental briefing on four terms. (D.I. 219 at 18-19). I received the briefing (D.I. 240, 244, 252, 257), and I now construe the four terms.

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*,

415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 135 S. Ct. 831, 841 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic

2

evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

## III. CONSTRUCTION OF DISPUTED TERMS

### A. The Patents-In-Suit

The '637 patent is directed to systems and methods for synchronizing operations among independently clocked devices. Claim 1 is representative and reads as follows:

> A digital data processing device comprising:
> an interface to receive *multimedia* information arranged as a plurality of frames, each frame to include one or more samples and an *indication of when to play* the one or more samples in a frame;
> an information buffer to store the plurality of frames for play back by the digital data processing device,
> wherein the digital data processing device is to receive *clock information* from a source device and determine a time differential value between the received *clock information* and *clock information* associated with the digital data processing device, the time differential value to be applied with the *indication of when to play* each of the plurality of frames to store an updated *indication of when to play* each of the plurality of frames in the information buffer; and
> an output to play back one or more samples in a frame from the information buffer according to the updated *indication of when to play* the frame,
> wherein the digital data processing device is to adjust, based on a comparison between the updated *indication of when to play* the frame and a predicted time value for play back of the frame, a number of samples per frame that are to be played.

('637 patent, claim 1) (disputed terms italicized).

The '258 patent is directed to a system and method for synchronizing operations of independently clocked devices. Claim 1 is representative and reads as follows:

3

> In a system comprising a plurality of controllers that are communicatively coupled via at least a local area network (LAN) with a plurality of zone players including a first zone player and a second zone player, a method comprising:
>     receiving, at the first zone player, control information from any one of the plurality of controllers via the LAN, wherein the received control information comprises a direction that instructs the first zone player to enter into a synchrony group with at least the second zone player;
>     in response to the direction, the first zone player entering into the synchrony group with the second zone player, wherein in the synchrony group, the first and second zone players are configured to play back audio in synchrony based at least in part on (i) audio content, (ii) *playback timing information* associated with the audio content that is generated by one of the first or second *zone players*, and (iii) *clock time information* for the one of the first or second zone players, and wherein the generated *playback timing information* and the *clock time information* are transmitted from the one of the first or second *zone players* to the other of the first or second zone players, wherein the first and second zone players remain *independently clocked* while playing back audio in synchrony; and
>     transmitting, by the first zone player to at least one of the plurality of controllers via the LAN, status information, wherein the status information comprises an indication of a status of the synchrony group.

('258 patent, claim 1) (disputed terms italicized).

The '357 patent is directed to a method for obtaining content from a remote source for playback. Claim 1 is representative and reads as follows:

> A method comprising:
>     receiving, by a first playback device from a network device configured to control the first playback device and communicatively coupled to the *first playback device* over a local area network (LAN), control information comprising an address identifying a location of audio information available at an audio information source, wherein the audio information source is outside of the LAN; and
>     after receiving the control information (i) obtaining, by the first playback device from the audio information source outside of the LAN, the audio information; (ii) transmitting, by the first playback device to a second playback device, the audio information, *playback timing information* associated with the audio information, and device *clock information* of the first playback device; and (iii) playing back, by the first playback device, the audio information in synchrony with the second playback device by using the *playback timing information* associated with the audio information and the device *clock information* of the first playback device to play back the audio information, wherein the first and second playback devices remain *independently clocked* during synchronous playback of the audio information.

('357 patent, claim 1) (disputed terms italicized).

4

## B. Disputed Terms

1. "clock time information"

   a. *Plaintiff's proposed construction*: "information representing a time value indicated by a device's clock"

   b. *Defendants' proposed construction*: "a time value indicating the time the information is sent or generated"[1]

   c. *Court's construction*: "information representing a time value indicated by a device's clock"

This term appears in asserted claims in the '258 patent. Plaintiff argues that Defendants' proposed construction reads the word "clock" out of the claim term and improperly imports limitations into the claims that are not supported by the intrinsic evidence. (D.I. 240 at 6). Defendants counter that the specification "decisively teaches" that the "clock time information" represents "time values associated with particular moments in time." (D.I. 244 at 4). Defendants argue that Plaintiff has not proposed an actual definition, but have "merely rearrange[d] the words in the term." (*Id.* at 5).

As an initial matter, I disagree with Defendants' contention that Plaintiff's proposal does nothing more than rearrange the words of the claim. Plaintiff's proposal requires that the information be obtained from a device clock, a component of the apparatus. Plaintiff's proposal further require that the information be a specific type of information, *i.e.* a "time value." These elements of the proposed construction add meaning and contribute to an understanding of the term.

I agree with Plaintiff that Defendants' proposed construction reads the word "clock" out of the claim term. This term refers only to a time value that is associated with a device's clock. (*See, e.g.*, '258 patent at 11:32-65). I also agree that Defendants are attempting to import limitations

---

[1] For each of these terms, Defendants initially proposed constructions using the phrase "time stamp." (D.I. 240 at 4, 7, 8 & 11). Defendants later modified their constructions to use the phrase "time value" instead. (D.I. 244 at 4, 6, 9 & 11).

5

into the claim term that are not supported by the intrinsic evidence. Defendants proposed limitation would limit "clock time information" to only those time values that are sent to other devices. This cannot be right. The "clock time information" exists whether it is sent to another device or not. The specification uses the phrase "current clock time information" when it refers to the specific time Defendants' proposal expressly incorporates, "the time the information is sent or generated." (*Id.* at 11:44-45). There is no reason to import the limitation "current" into the claim term itself.

Defendants further argue that dependent claims 9 and 10 distinguish between "clock time information" and other timing information and that Plaintiff's proposed construction improperly imports a "device clock" limitation into this term. (D.I. 244 at 5-6). I disagree. I fail to see how Plaintiff's construction blurs any distinctions between timing references, all of which are clearly described in the claims themselves. Rather than supporting their position, Defendants' only example of multiple timing references from claim 10 illustrates the clear distinction the claims make between the types of timing references. (*Id.*). I also disagree with Defendants' claim differentiation argument. Claim 9 recites "a device clock configured to generate clock time information." Claim 10 simply requires the zone player to have a "device clock." It is not clear to me why Defendants think the inclusion of "clock" in the construction of "clock time information" involves importing an unnecessary limitation into the independent claim, as it seems to me that the need for a clock is implicit in the term itself. Even if it were not implicit, the specification makes clear that the "clock time information" originates with the device's clock. ('258 patent at 11:32-65). Therefore, I will adopt Plaintiff's proposed construction.

2. "clock information"

    a. *Plaintiff's proposed construction*: "information representing one or more values indicated by a device's clock, including but not limited to a clock time value and/or a clock rate value"

6

b. *Defendants' proposed construction*: "a time value indicating the time the information is sent"

c. *Court's construction*: "information representing a time value indicated by a device's clock"

Plaintiff first objects to Defendants' proposal that this term should be given essentially the same construction as "clock time information." I begin with the inference that these two different terms, used in different claims in the same patent, should have different meanings. *Comaper Corp. v. Antec, Inc.*, 596 F.3d 1343, 1348 (Fed. Cir. 2010). This inference is not conclusive and may be overcome if the intrinsic evidence indicates that the inventor intended for the terms to have the same meaning. *Id.* The term "clock time information" is used in claim 8 of the '357 patent and is not used at all in the '637 patent. The term "clock information" is used in claims 1, 2, 9, 10, and 17 of the '357 patent and claims 1, 9, and 18 of the '637 patent. A thorough examination of the claims of the '357 patent indicates that these terms should be construed to have the same meaning. For example, claim 1 of the '357 patent is a method claim that uses the term "clock information" and claim 8 of the same patent is a device claim that uses the term "clock time information." Both of these claims are directed to the same functionality, however, and the claims are virtually identical except for these two terms. For example, claim 1 calls for "transmitting . . . playback timing information associated with the audio information, and device clock information of the first playback device." Similarly, claim 8 calls for the claimed device to "cause a first playback device to . . . transmit, to a second playback device, the audio information, playback timing information associated with the audio information, and clock time information for the first playback device." There is nothing in the specification to indicate that these two terms have different meanings and it seems clear to me that they are used to mean the same thing in these two claims. Therefore, I

7

will construe "clock information" to mean "information representing a time value indicated by a device's clock."

3. "playback timing information"

   a. *Plaintiff's proposed construction*: "information indicating when the audio information [content] is to be played back"

   b. *Defendants' proposed construction*: "a series of time values, associated with an audio work divided into blocks of information, each indicating when one of blocks of audio information should be played by the device"

   c. *Court's construction*: "information indicating when the audio information [content] is to be played back"

The parties' dispute centers on whether the "playback timing information" must take the form of time values associated with blocks of information or whether the term is broad enough to encompass other forms of information. Defendants argue that their construction is precisely what the patent discloses. (D.I. 244 at 9). Plaintiff counters that Defendants' proposal improperly limits the claim to a single preferred embodiment. (D.I. 252 at 9).

In my earlier *Markman* opinion, I rejected Defendants' attempt to import a limitation requiring that the information be associated with a "frame of audio data" into this term. (D.I. 219 at 19). Dependent claim 10 of the '258 patent includes the limitation "wherein the playback timing information associated with the audio content comprises a playback time for each frame of the audio content." (*Id.*). Other claims in the same patent do not include this limitation. My opinion on this issue has not changed. It seems to me that Defendants' new proposal of "blocks" is not meaningfully different from their initial proposal of "frames." I will reject Defendants' proposal for this reason.

It is clear from the claims that "playback timing information" is distinct from "audio information" and "device clock information," all of which are transmitted from one device to

8

another. (*See, e.g.*, '357 patent, claim 1). The specification states that "the audio and playback timing information is in the form of a series of frames, with each frame having a time stamp." (*Id.* at 11:15-17). As discussed above, this appears to be a description of one preferred embodiment. It certainly does not rise to the level of lexicography. What does seem clear, and what the parties appear to agree on, is that the "playback timing information" indicates when the audio information is to be played back. It seems to me that when the information is required to be in a specific form, such as time stamps associated with frames of data, the claims specify that. I see no reason to limit the term as Defendants propose. Therefore, I will adopt Plaintiff's construction.

4. "indication of when to play"

   a. *Plaintiff's proposed construction*: "indication of when audio in a frame is to be played back"

   b. *Defendants' proposed construction*: "a series of time values, associated with a sample/frame of audio information, each indicating when one sample/frame should be played by the device"

   c. *Court's construction*: "indication of when audio in a frame is to be played back"

The parties' dispute as to this term is essentially the same as the dispute as to the previous term. I reject Defendants' proposed construction for the same reasons I gave above. Defendants' modified proposal of "time value, associated with a sample/frame of audio information" is not materially different from its original proposal of "time stamp." What Defendants propose is essentially the definition of a time stamp and, as I explained in my previous *Markman* opinion, I decline to import a limitation that appears in some dependent claims into the independent claims absent a disclaimer or lexicography indicating the inventor's intent to so limit the meaning of this term. Since the parties agree on the essential elements of the meaning of this term and the dispute is only about Defendants' proposed limitation as to "time values" and the association with "a sample/frame" of information, I will adopt Plaintiff's proposed construction.

9

## IV. CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.