**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No.  14-1330-WCB |
| v. | ) | |
| | ) | |
| D&M HOLDINGS INC. d/b/a THE | ) | JURY TRIAL DEMANDED |
| D+M GROUP, D&M HOLDINGS U.S. | ) | |
| INC., and DENON ELECTRONICS | ) | |
| (USA), LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**SECOND SUPPLEMENT TO THIRD AMENDED COMPLAINT**

**FOR PATENT INFRINGEMENT**

Plaintiff Sonos, Inc. ("Sonos"), by its undersigned attorneys, for its Second Supplement

to Third Amended Complaint ("Complaint") for Patent Infringement and Jury Demand against

Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon

Electronics (USA), LLC (collectively, "Defendants"), states as follows:

**THE PARTIES**

1.      Plaintiff Sonos, Inc. is a Delaware corporation with its principal place of business

at 223 E. De La Guerra Street, Santa Barbara, California 93101.

2.      On information and belief, Defendant D&M Holdings Inc. d/b/a The D+M Group

is a Japanese corporation with its principal place of business at 2-1 Nisshin-cho, Kawasaki-ku,

Kawasaki-shi, Kanagawa 210-8569, Japan.  D&M Holdings Inc. d/b/a The D+M Group is a Bain

Capital portfolio company.

3.     On information and belief, Defendant D&M Holdings U.S. Inc. is a Delaware corporation with its principal place of business at 100 Corporate Drive, Mahwah, NJ 07430. D&M Holdings U.S. Inc. is a wholly-owned subsidiary of D&M Holdings Inc.

4.     On information and belief, Defendant Denon Electronics (USA), LLC is a Delaware limited liability company with its principal place of business at 100 Corporate Drive, Mahwah, NJ 07430.  Denon Electronics (USA), LLC is a wholly-owned subsidiary of D&M Holdings U.S. Inc.

## JURISDICTION AND VENUE

5.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code.  This Court has jurisdiction under 35 U.S.C. §§ 271, *et seq*., and 28 U.S.C. §§ 1331 and 1338.

6.     This Court has personal jurisdiction over Defendants.

7.     D&M Holdings U.S. Inc. is incorporated in Delaware and is therefore subject to the jurisdiction of this Court.  As a domestic corporation, D&M Holdings U.S. Inc. is registered to do business with the State of Delaware Division of Corporations.

8.     Denon Electronics (USA), LLC is incorporated in Delaware and is therefore subject to the jurisdiction of this Court.  As a domestic corporation, Denon Electronics (USA), LLC is registered to do business with the State of Delaware Division of Corporations.

9.     To the extent that Defendants are not subject to the jurisdiction of this Court as residents of Delaware, Defendants are subject to the jurisdiction of the Court pursuant to 10 *Del. C.* § 3104.  Specifically, on information and belief, Defendants cause tortious injury in Delaware, namely from the tort of patent infringement.  Defendants also conduct or solicit business and

engage in a persistent course of conduct in Delaware, and Defendants derive substantial revenue from things used and/or sold in Delaware.

10.      On information and belief, Defendants have (1) transacted business in this district (directly and/or through intermediaries) by engaging in activities such as shipping, distributing, offering for sale, selling, and/or advertising their products in the State of Delaware, and (2) delivered their products into the stream of commerce with the expectation that they will be purchased by consumers in Delaware.  Thus, on information and belief, Defendants are doing business in this District, and have committed acts of patent infringement in this District.

11.      Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## FACTUAL BACKGROUND

12.      Sonos is an innovator and industry leader in the field of wireless audio technology.  As acknowledged by the media, Sonos reinvented home audio for the digital age. *See, e.g.*, Ex. A (from www.nbcnews.com) ("If you're not familiar with Sonos, this company revolutionized the home audio world a decade ago. . . ."); Ex. B (from www.consumerreports.org) ("Sonos not only helped to invent the wireless speaker category, the company also set the bar for performance, ease of use, and flexibility."); Ex. C (from www.mensjournal.com) ("Sonos almost singlehandedly established the stand-alone wireless home speaker system category . . . .").

13.      Sonos has been making, distributing, and selling a line of wireless home audio products for nearly 10 years.  Sonos's current line of products includes the "PLAY:5" speaker, the "PLAY:3" speaker, the "PLAY:1" speaker, the "CONNECT" pre-amplifier, and the "CONNECT:AMP" amplifier, all of which are controlled by the Sonos app (for iOS, Android,

3

PC, or Mac).  *See*, *e.g.*, Ex. D (from www.sonos.com).  Sonos also offers a "PLAYBAR" speaker and a "SUB" speaker for wireless home theater.  *Id.*

14.     Sonos is the owner of more than 100 U.S. Patents related to modern audio technology, and also over 300 pending U.S. patent applications.  Sonos provides a link to its U.S. Patents and published U.S. Patent Applications, as well as a table that correlates Sonos's patents to its products, on Sonos's website at www.sonos.com/legal/terms#patents.  *See* Ex. E.   In addition, Sonos encloses notices of its patents with its product inserts and manuals for its products, which provide that "[o]ur patent-to-product information can be found here: **sonos.com/legal/patents**."  *See*, *e.g.*, Ex. F.

15.     In June 2014, Defendants launched their own wireless audio system, which is called "HEOS by Denon" (or "the HEOS system").  This HEOS system is made up of a line of HEOS wireless audio products, including the "HEOS 7" speaker, the "HEOS 5" speaker, the "HEOS 3" speaker, "HEOS 1" speaker, the "HEOS LINK" pre-amplifier, the "HEOS AMP" amplifier, the "HEOS Drive" multi-room amplifier, and the "HEOS HomeCinema" TV sound system (collectively, "HEOS players"), all of which are controlled by the HEOS app (for iOS, Android, or Kindle).  *See, e.g.,* Exs. G-H (from usa.denon.com and heosbydenon.denon.com).

16.     Defendants are trying to market the HEOS system as a direct competitor to Sonos's wireless audio system.  *See*, *e.g.*, Ex. G (Denon is "[o]ne of the most well-equipped contenders to take on Sonos at the game it knows so well.").  However, on information and belief, instead of innovating, Defendants are merely copying Sonos's system.  As Digital Trends noted:

> For those unfamiliar, about 10 years ago Sonos created a line of extremely
> succinct wireless speakers that operate in tandem, allowing users to stream music
> over Wi-Fi from a single source to multiple rooms without latency, or send a
> different source to each speaker, all from an extremely intuitive and powerful app

on a computer or mobile device. Since then, the genre has exploded, spawning copycats from the likes of Samsung, Bose, and others.  With HEOS, Denon appears to be making little effort to hide its mimicry of the popular system.  Like Sonos, Denon's gorgeous new speakers come in three sizes and price points, and offer minimalist designs.

Ex. I (from www.digitaltrends.com).

17.     On information and belief, Defendants have even copied various aspects of Sonos's marketing and branding for its wireless audio system.  For example, Defendants' use of the "HEOS" name for its wireless audio system is similar enough to "Sonos" that it led one industry publication to remark that "we can't help but feel the similarity was deliberate."  *See* Ex. J (from www.avhub.com.au).

18.      As another example, Defendants' naming convention for their line of HEOS speakers closely resembles Sonos's naming convention for its line of wireless speakers (*e.g.*, Denon's HEOS 1, HEOS 3, HEOS 5, HEOS 7 vs. Sonos's PLAY:1, PLAY:3, PLAY:5).  *Compare* Ex. D *with* Ex. G.

19.     Defendants' website for the HEOS products also has a layout that is similar to Sonos's website, as shown below.

**SONOS**



www.sonos.com/shop/products/play5

**DENON**



usa.denon.com/us/heos-5-medium-sized-speakers

20.     Further, Defendants' marketing materials for the HEOS system use graphics that closely resemble graphics used in Sonos's marketing materials, as shown below.





21. Further yet, Defendants are using taglines in connection with the HEOS system that closely resemble taglines used by Sonos. For instance, Defendants' tagline of "Fill every room with music" (*see* Ex. G) closely resembles Sonos's tagline of "Fill your home with music."

22. On information and belief, Defendants have also incorporated Sonos's patented innovations into the HEOS system, as explained below.

23. In view of at least the facts set forth above in paragraphs 12-22, on information and belief, Defendants had actual knowledge of Sonos's patents prior to the filing of this action. For instance, at a minimum, Defendants have been aware (or should have been aware) of Sonos's patents in view of Sonos's position in the industry (including its direct competition with Defendants), Sonos's prominent display of its patents on Sonos's website, and Sonos's inclusion of a notice of its patents in Sonos's product inserts and manuals. In fact, prior to Sonos's filing

of this action, Defendants' website was promoting the HEOS system by expressly contrasting it with Sonos's wireless audio system—which definitively establishes that Defendants were aware of Sonos's products prior to this suit—and this awareness must have come from (i) reviewing Sonos's website, which prominently displays Sonos's patents, and/or (ii) obtaining Sonos's actual products, which come with product inserts and manuals that include a notice of Sonos's patents. Defendants' copying of Sonos's products, its marketing, and its branding likewise establishes that Defendants were aware of Sonos's products—and thus had notice of Sonos's patents—prior to this suit. Finally, Defendants' had knowledge of Sonos's patents and pending applications as a result of Sonos's filing of this action.

24.     To the extent Defendants did not have actual knowledge of Sonos's patents prior to the filing of this action, then Defendants were at least willfully blind to the existence of Sonos's patents. Indeed, as set forth above, Defendants were undeniably aware of Sonos's products prior to this suit, and this awareness must have come from (i) reviewing Sonos's website, which prominently displays Sonos's patents, and/or (ii) obtaining Sonos's actual products, which come with product inserts and manuals that include a notice of Sonos's patents. Defendants cannot undertake efforts to learn about Sonos's products but then turn a blind eye to Sonos's patents.

**COUNT I:**
**INFRINGEMENT OF U.S. PATENT NO. 9,219,959**

25.     Sonos incorporates paragraphs 1-24 above as if fully set forth herein.

26.     Sonos is the owner U.S. Patent No. 9,219,959 ("the '959 patent"), entitled "Multi-Channel Pairing in a Media System," which was duly and legally issued by the United States Patent and Trademark Office ("the USPTO") on December 22, 2015, and a reexamination

certificate was issued on April 5, 2017.  A copy of the '959 Patent (including the reexamination certificate) is attached hereto as Exhibit K.

27.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '959 Patent.

28.     On information and belief, Defendants had actual knowledge of the '959 patent and/or the application that led to the issuance of the '959 patent prior to the filing of this Complaint.  *See* ¶¶ 12-24 above.

29.     Defendants have had actual knowledge of the '959 patent since the filing of this Complaint.

30.     The '959 patent is directed to devices and methods for providing audio in a multi-channel listening environment.

31.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more of the claims of the '959 patent.  For example, at a minimum, Defendants' HEOS 1, HEOS 3, HEOS 5, and HEOS 7 players—which are configured to operate either in a "no pairing" mode or in a "stereo pairing" mode—each embody one or more of the devices and/or methods claimed in the '959 patent.  *See, e.g.*, Ex. K-1 ('959 Patent Initial Claim Chart); Ex. L (from usa.denon.com); Ex. M (from denon.custhelp.com).

32.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '959 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

33.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '959 patent, in violation of 35

U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '959 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '959 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '959 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses (*see* '959 Patent Initial Claim Chart, Exs. L-M, touting the configuration and use of two HEOS speakers as a stereo pair), (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '959 patent, and (d) users of the HEOS system directly infringe one or more claims of the '959 patent.  For instance, at a minimum, Defendants have supplied and continue to supply HEOS products (*e.g.*, HEOS 1, HEOS 3, HEOS 5, and HEOS 7 speakers) to customers while knowing that use of these products will infringe one or more claims of the '959 patent, and that Defendants' customers then directly infringe one or more claims of the '959 patent by using these HEOS products in accordance with Defendants' product literature.

34.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '959 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '959 patent by users of the HEOS system.  In particular, on information and belief, (a) Defendants had actual knowledge of the '959 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more

material components of the invention of the '959 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) are especially made or especially adapted for use in an infringement of the '959 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '959 patent.  For instance, at a minimum, Defendants offer for sale, sell, and/or import software updates for HEOS products (*e.g.*, HEOS 1, HEOS 3, HEOS 5, and HEOS 7 speakers) that meet one or more claims of the '959 patent.  *See, e.g.*, Ex. N, at p. 41. These software updates are material components of the HEOS products that meet the one or more claims of the '959 patent.  Further, Defendants especially made and/or adapted these software updates for use in the HEOS products that meet the one or more claims of the '959 patent, and these software updates are not staple articles of commerce suitable for substantial noninfringing use.  Defendants' customers then directly infringe the one or more claims of the '959 patent by installing and using the software updates on the HEOS products.

35.     Defendants' infringement of the '959 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '959 patent or were willfully blind to its existence prior to the filing of this Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '959 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

36.     Defendants' infringement of the '959 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT II:
## INFRINGEMENT OF U.S. PATENT NO. 7,571,014

37.     Sonos incorporates paragraphs 1-36 above as if fully set forth herein.

38.     Sonos is the owner U.S. Patent No. 7,571,014 ("the '014 patent"), entitled "Method and Apparatus for Controlling Multimedia Players in a Multi-Zone system," which was duly and legally issued by the USPTO on August 4, 2009, and a reexamination certificate was issued on September 1, 2017.  A copy of the '014 Patent (including the reexamination certificate) is attached hereto as Exhibit O.

39.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '014 Patent.

40.     On information and belief, Defendants had actual knowledge of the '014 patent prior to the filing of this action.  *See* ¶¶ 12-24 above.

41.     Defendants have had actual knowledge of the '014 patent since the filing of this action.

42.     The '014 patent is directed to methods and devices for "controlling a plurality of players."

43.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more of the claims of the '014 patent.  For instance, at a minimum, Defendants' HEOS controller app—which is configured to group HEOS speakers, synchronize grouped HEOS speakers, and adjust a "Master" volume for grouped HEOS speakers—embodies one or more of the methods and/or devices claimed in the '014 patent.  *See*, *e.g.*, Exs. O-1 ('014 Patent Initial Claim Chart), N, P (from usa.denon.com).  An example of this "Master" volume adjustment in the HEOS system is shown below:



44.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '014 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

45.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '014 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '014 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '014 Patent or were willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '014 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses (*see* '014 Patent Initial Claim Chart, Exs. N, P-R), (c) Defendants know (or should know) that their actions will induce users of the

HEOS system to directly infringe one or more claims the '014 patent, and (d) users of the HEOS system directly infringe one or more claims of the '014 patent.  For instance, at a minimum, Defendants have supplied and continue to supply the HEOS controller app to customers while knowing that installation and use of the HEOS controller app will infringe one or more claims of the '014 patent, and that Defendants' customers then directly infringe one or more claims of the '014 patent by installing and using the HEOS controller app in accordance with Defendants' product literature.

46.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '014 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '014 patent by users of the HEOS system.  In particular, on information and belief, (a) Defendants had actual knowledge of the '014 patent or were willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '014 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) are especially made or especially adapted for use in an infringement of the '014 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more of the claims of the '014 patent.  For instance, at a minimum, Defendants offer for sale, sell, and/or import HEOS controller software for installation on user devices that meet one or more claims of the '014 patent.  This HEOS controller software is a material component of the user devices that meet the one or more claims of the '014 patent.  Further, Defendants especially

made and/or adapted the HEOS controller software for use in the user devices that meet the one or more claims of the '014 patent, and the HEOS controller software is not a staple article of commerce suitable for substantial noninfringing use.  Defendants' customers then directly infringe the one or more claims of the '014 patent by installing and using the HEOS controller software on the customers' user devices.

47.     Defendants' infringement of the '014 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '014 patent or were willfully blind to its existence prior to the filing of this action (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '014 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

48.     Defendants' infringement of the '014 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

### COUNT III:
### INFRINGEMENT OF U.S. PATENT NO. 8,588,949

49.     Sonos incorporates paragraphs 1-48 above as if fully set forth herein.

50.     Sonos is the owner U.S. Patent No. 8,588,949 ("the '949 patent"), entitled "Method and Apparatus for Adjusting Volume Levels in a Multi-Zone System," which was duly and legally issued by the USPTO on November 19, 2013, and a reexamination certificate was issued on November 5, 2015.  A copy of the '949 Patent is attached hereto as Exhibit S.

51.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '949 Patent.

52.     On information and belief, Defendants had actual knowledge of the '949 patent prior to the filing of this action.  *See* ¶¶ 12-24 above.

53.     Defendants have had actual knowledge of the '949 patent since the filing of this action.

54.     The '949 patent is directed to devices and methods for controlling a plurality of players in a local area network.

55.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more of the claims of the '949 patent.  For instance, at a minimum, Defendants' HEOS controller app—which is configured to group HEOS speakers and adjust both individual volumes and a "Master" volume for grouped HEOS speakers—embodies one or more of the devices, methods, and/or computer-readable media claimed in the '949 patent.  *See*, *e.g.*, Exs. N, P, S-1 ('949 Patent Initial Claim Chart).  An example of this individual and "Master" volume adjustment in the HEOS system is shown below:



56.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '949 patent, in violation of 35

U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

57.    Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '949 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '949 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '949 Patent or were willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '949 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* '949 Patent Initial Claim Chart, Exs. N, P-R) and (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '949 patent, and (d) users of the HEOS system directly infringe one or more claims of the '949 patent.  For instance, at a minimum, Defendants have supplied and continue to supply the HEOS controller app to customers while knowing that installation and use of the HEOS controller app will infringe one or more claims of the '949 patent, and that Defendants' customers then directly infringe one or more claims of the '949 patent by installing and using the HEOS controller app in accordance with Defendants' product literature.

58.    Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '949 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct

infringement of the '949 patent by users of the HEOS system.  In particular, on information and belief, (a) Defendants had actual knowledge of the '949 patent or were willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '949 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '949 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '949 patent.  For instance, at a minimum, Defendants offer for sale, sell, and/or import HEOS controller software for installation on user devices that meet one or more claims of the '949 patent.  This HEOS controller software is a material component of the user devices that meet the one or more claims of the '949 patent.  Further, Defendants especially made and/or adapted the HEOS controller software for use in the user devices that meet the one or more claims of the '949 patent, and the HEOS controller software is not a staple article of commerce suitable for substantial noninfringing use.  Defendants' customers then directly infringe the one or more claims of the '949 patent by installing and using the HEOS controller software on the customers' user devices.

59.    Defendants' infringement of the '949 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '949 patent or were willfully blind to its existence prior to the filing of this action (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '949 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

60.      Defendants' infringement of the '949 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT IV:
## INFRINGEMENT OF U.S. PATENT NO. D559,197

61.      Sonos incorporates paragraphs 1-60 above as if fully set forth herein.

62.      Sonos is the owner U.S. Patent No. D559,197 ("the '197 design patent"), entitled "Control Strip for Electronic Appliances," which was duly and legally issued by the USPTO on January 8, 2008.  A copy of the '197 design patent is attached hereto as Exhibit T.

63.      Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '197 design patent.

64.      On information and belief, Defendants had actual knowledge of the '197 design patent prior to the filing of this action.  *See* ¶¶ 12-24 above.

65.      Defendants have had actual knowledge of the '197 design patent since the filing of this action.

66.      The '197 design patent is directed to an "ornamental design for a control strip for electronic appliances."



# Fig. 1

67.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by the '197 design patent.  For instance, at a minimum, Defendants' HEOS 1, HEOS 3, HEOS AMP, HEOS LINK, and HEOS HomeCinema products all include a "control strip" as shown and described in the '197 design patent.  *See* Ex. T-1 ('197 Patent Initial Claim Chart).  As one representative example, the picture below illustrates the "control strip" on the HEOS 3 product (from usa.denon.com):



68.     Thus, Defendants have directly infringed and continue to directly infringe the '197 design patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling HEOS 1, HEOS 3, HEOS AMP, HEOS LINK, and HEOS HomeCinema products within the United States and/or importing such HEOS products into the United States.

69.     On information and belief, Defendants had actual knowledge of the '197 design patent or were willfully blind to its existence prior to, and no later than, the filing of this action (*see* ¶¶ 12-24 above).  Nonetheless, on information and belief, Defendants have supplied and continue to supply HEOS 1, HEOS 3, HEOS AMP, HEOS LINK, and HEOS HomeCinema products to customers while knowing that use of these products will infringe the '197 design patent.

70.     Defendants' infringement of the '197 design patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '197 design patent or were willfully blind to its existence prior to the filing of this action (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions

constituted infringement of the '197 design patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

71.     Defendants' infringement of the '197 design patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court

**COUNT V:**
**INFRINGEMENT OF U.S. PATENT NO. 9,042,556**

72.     Sonos incorporates paragraphs 1-71 above as if fully set forth herein.

73.     Sonos is the owner U.S. Patent No. 9,042,556 ("the '556 patent"), entitled "Shaping Sound Responsive to Speaker Orientation," which was duly and legally issued by the USPTO on May 26, 2015.  A copy of the '556 patent is attached hereto as Exhibit U.

74.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '556 patent.

75.     On information and belief, Defendants had actual knowledge of the '556 patent and/or the application that led to the issuance of the '556 patent prior to the filing of this Complaint.  *See* ¶¶ 12-24 above.

76.     Defendants have had actual knowledge of the '556 patent since the filing of this Complaint.

77.     The '556 patent is directed to devices, methods, and computer-readable media for shaping sound in accordance with speaker orientation.

78.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more claims of the '556 patent.  For instance, at a minimum, Defendants' HEOS 3 player—which is configured to shape sound based on an orientation and a configuration state—embodies one or more of the devices, methods, and/or computer-readable media claimed

in the '556 patent.  *See, e.g.*, Ex. U-1 ('556 Patent Initial Claim Chart), Ex. G (from usa.denon.com), Ex. L (from usa.denon.com).

79.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '556 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

80.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '556 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '556 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '556 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '556 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* '556 Patent Initial Claim Chart, Exs. G, L, N) and (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '556 patent, and (d) users of the HEOS system directly infringe one or more claims of the '556 patent.  For instance, at a minimum, Defendants have supplied and continue to supply the HEOS 3 players to customers while knowing that use of these products will infringe one or more claims of the '556 patent, and that Defendants' customers then directly infringe one or more claims of the '556 patent by using these HEOS 3 players in accordance with Defendants' product literature.

81.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '556 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '556 patent by users of the HEOS system.  In particular, on information and belief, (a) Defendants had actual knowledge of the '556 patent or were willfully blind to its existence prior to, and no later than, this Complaint (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '556 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '556 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '556 patent.  For instance, at a minimum, Defendants offer for sale, sell, and/or import software updates for HEOS 3 players that meet one or more claims of the '556 patent. *See, e.g.*, Ex. N, at p. 41. These software updates are material components of the HEOS 3 players that meet the one or more claims of the '556 patent.  Further, Defendants especially made and/or adapted these software updates for use in the HEOS 3 players that meet the one or more claims of the '556 patent, and these software updates are not staple articles of commerce suitable for substantial noninfringing use.  Defendants' customers then directly infringe the one or more claims of the '556 patent by installing and using the software updates on the HEOS 3 players.

82.     Defendants' infringement of the '556 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '556 patent or were willfully blind to its existence prior to the filing of this Complaint (*see* ¶¶ 12-24 above), (b) engaged in the

aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '556 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

83.     Defendants' infringement of the '556 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT VI:
## INFRINGEMENT OF U.S. PATENT NO. 9,202,509

84.     Sonos incorporates paragraphs 1-83 above as if fully set forth herein.

85.     Sonos is the owner U.S. Patent No. 9,202,509 ("the '509 patent"), entitled "Controlling and Grouping in a Multi-Zone Media System," which was duly and legally issued by the USPTO on December 1, 2015, and a reexamination certificate was issued on May 30, 2017 .  A copy of the '509 patent (including the reexamination certificate) is attached hereto as Exhibit V.

86.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '509 patent.

87.     On information and belief, Defendants had actual knowledge of the '509 patent and/or the application that led to the issuance of the '509 patent prior to the filing of this Complaint.  *See* ¶¶ 12-24 above.

88.     Defendants have had actual knowledge of the '509 patent since the filing of this Complaint.

89.     The '509 patent is directed to methods, systems, and computer-readable media for controlling a plurality of multimedia players in groups.

90.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by the '509 patent.  For instance, at a minimum, Defendants' HEOS controller

app—which is configured to instruct HEOS players to form a stereo pair and then display an indication of this stereo pair—embodies one or more of the methods, systems, and/or computer-readable media claimed in the '509 patent. *See, e.g.*, Exs. V-1 ('509 Patent Initial Claim Chart), L-N.

91.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '509 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

92.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '509 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '509 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '509 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '509 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* '509 Patent Initial Claim Chart, Exs. L-N) and (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '509 patent, and (d) users of the HEOS system directly infringe one or more claims of the '509 patent.  For instance, at a minimum, Defendants have supplied and continue to supply the HEOS controller app to customers while knowing that installation and use of the HEOS controller app will infringe one or more claims of the '509 patent, and that Defendants' customers then directly infringe one or more claims of the

'509 patent by installing and using the HEOS controller app in accordance with Defendants' product literature.

93.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '509 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '509 patent by users of the HEOS system.  In particular, on information and belief, (a) Defendants had actual knowledge of the '509 patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '509 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '509 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '509 patent.  For instance, at a minimum, Defendants offer for sale, sell, and/or import HEOS controller software for installation on user devices that meet one or more claims of the '509 patent.  This HEOS controller software is a material component of the user devices that meet the one or more claims of the '509 patent.  Further, Defendants especially made and/or adapted the HEOS controller software for use in the user devices that meet the one or more claims of the '509 patent, and the HEOS controller software is not a staple article of commerce suitable for substantial noninfringing use.  Defendants' customers then directly infringe the one or more claims of the '509 patent by installing and using the HEOS controller software on the customers' user devices.

94.     Defendants' infringement of the '509 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '509 patent or were willfully blind to its existence prior to the filing of this Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '509 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

95.     Defendants' infringement of the '509 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT VII:
## INFRINGEMENT OF U.S. PATENT NO. 8,938,312

96.     Sonos incorporates paragraphs 1-95 above as if fully set forth herein.

97.     Sonos is the owner U.S. Patent No. 8,938,312 ("the '312 patent"), entitled "Smart In-Line Processing," which was duly and legally issued by the USPTO on January 20, 2015.  A copy of the '312 patent is attached hereto as Exhibit W.

98.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '312 patent.

99.     On information and belief, Defendants had actual knowledge of the '312 patent and/or the application that led to the issuance of the '312 patent prior to the filing of this Complaint.  *See* ¶¶ 12-24 above.

100.    Defendants have had actual knowledge of the '312 patent since the filing of this Complaint.

101.    The '312 patent is directed to devices, methods, and computer-readable media for smart line-in processing.

102.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more claims of the '312 patent.  For instance, at least Defendants' HEOS HomeCinema product—which includes a HEOS Soundbar equipped with an "Auto-Play" feature—embodies one or more of the devices, methods, and/or computer-readable media claimed in the '312 patent.  *See*, *e.g.*, Exs. W-1 ('312 Patent Initial Claim Chart), X.

103.     Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '312 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

104.     Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '312 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '312 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '312 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '312 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* '312 Patent Initial Claim Chart, Ex. X), (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '312 patent, and (d) users of the HEOS system directly infringe one or more claims of the '312 patent.  For instance, at a minimum, Defendants have supplied and continue to supply HEOS HomeCinema products to customers while knowing that use of these products will infringe one or more claims of the '312 patent, and that

29

Defendants' customers then directly infringe one or more claims of the '312 patent by using these HEOS HomeCinema products in accordance with Defendants' product literature.

105. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '312 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '312 patent by users of the HEOS system. In particular, on information and belief, (a) Defendants had actual knowledge of the '312 patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '312 patent that are not staple articles of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '312 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '312 patent. For instance, at a minimum, Defendants offer for sale, sell, and/or import software updates for HEOS HomeCinema products that meet one or more claims of the '312 patent. *See, e.g.*, Ex. X, at p. 51. These software updates are material components of the HEOS HomeCinema products that meet the one or more claims of the '312 patent. Further, Defendants especially made and/or adapted these software updates for use in the HEOS HomeCinema products that meet the one or more claims of the '312 patent, and these software updates are not staple articles of commerce suitable for substantial noninfringing use. Defendants' customers then directly infringe the one or more claims of the '312 patent by installing and using the software updates on the HEOS HomeCinema products.

106.     Defendants' infringement of the '312 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '312 patent or were willfully blind to its existence prior to the filing of this Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '312 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

107.     Defendants' infringement of the '312 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT VIII:
## INFRINGEMENT OF U.S. PATENT NO. 8,843,224

108.     Sonos incorporates paragraphs 1-107 above as if fully set forth herein.

109.     Sonos is the owner U.S. Patent No. 8,843,224 ("the '224 patent"), entitled "Method and System for Controlling Amplifiers," which was duly and legally issued by the USPTO on September 23, 2014.  A copy of the '224 patent is attached hereto as Exhibit Y.

110.     Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '224 patent.

111.     On information and belief, Defendants had actual knowledge of the '224 patent prior to the filing of this action.  *See* ¶¶ 12-24 above.

112.     Defendants have had actual knowledge of the '224 patent since the filing of the Second Amended Complaint.

113.     The '224 patent is directed to devices, methods, and computer-readable media for controlling an audio amplifier.

114.     Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by one or more claims of the '224 patent.  For instance, at least Defendants' HEOS

31

players (other than the HEOS LINK) include an amplifier that is controlled based on whether or not received data packets include audio data. *See*, *e.g.*, Exs. Y-1 ('224 Patent Initial Claim Chart), L. Indeed, these HEOS players are configured to (a) activate a "Network Standby" mode (during which the amplifier is powered down) when no audio data from a source device (e.g., another HEOS product) has been received for the past 20 minutes and then (b) deactivate the "Network Standby" mode once audio data is received from the source device. *See*, *e.g.*, '224 Patent Initial Claim Chart, Ex. N at p. 43. Based at least on this functionality, Defendants' HEOS speaker and HEOS amplifier products embody one or more of the devices, methods, and/or computer-readable media claimed in the '224 patent.

115. Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '224 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

116. Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '224 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '224 patent. In particular, on information and belief, (a) Defendants had actual knowledge of the '224 Patent or were willfully blind to its existence prior to, and no later than, the filing of the Second Amended Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '224 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* '224 Patent Initial Claim Chart, Ex. N at p. 43) and (c) Defendants know (or should know)

that their actions will induce users of the HEOS system to directly infringe one or more claims

the '224 patent, and (d) users of the HEOS system directly infringe one or more claims of the

'224 patent.  For instance, at a minimum, Defendants have supplied and continue to supply

HEOS players to customers while knowing that use of these players (other than the HEOS

LINK) will infringe one or more claims of the '224 patent, and that Defendants' customers then

directly infringe one or more claims of the '224 patent by using these HEOS players in

accordance with Defendants' product literature.

117.    Additionally and/or alternatively, Defendants have indirectly infringed and

continue to indirectly infringe one or more of the claims of the '224 patent, in violation of 35

U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the

United States, components in connection with the HEOS system that contribute to the direct

infringement of the '224 patent by users of the HEOS system.  In particular, on information and

belief, (a) Defendants had actual knowledge of the '224 patent or were willfully blind to its

existence prior to, and no later than, the filing of the Second Amended Complaint (*see* ¶¶ 12-24

above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system,

one or more material components of the invention of the '224 patent that are not staple articles of

commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that

such component(s) were especially made or especially adapted for use in an infringement of the

'224 patent, and (d) users of the HEOS products that comprise such material component(s)

directly infringe one or more claims of the '224 patent.  For instance, at a minimum, Defendants

offer for sale, sell, and/or import software updates for HEOS players that meet one or more

claims of the '224 patent.  *See, e.g.*, Ex. N, at p. 41. These software updates are material

components of the HEOS players that meet the one or more claims of the '224 patent.  Further,

Defendants especially made and/or adapted these software updates for use in the HEOS players that meet the one or more claims of the '224 patent, and these software updates are not staple articles of commerce suitable for substantial noninfringing use. Defendants' customers then directly infringe the one or more claims of the '224 patent by installing and using the software updates on the HEOS players (other than the HEOS LINK).

118.   Defendants' infringement of the '224 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '224 patent or were willfully blind to its existence prior to the filing of the Second Amended Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '224 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

119.   Defendants' infringement of the '224 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT IX:
## INFRINGEMENT OF U.S. PATENT NO. 9,213,357

120.   Sonos incorporates paragraphs 1-119 above as if fully set forth herein.

121.   Sonos is the owner U.S. Patent No. 9,213,357 ("the '357 patent"), entitled "Obtaining Content From Remote Source," which was duly and legally issued by the USPTO on February 5, 2013. A copy of the '357 patent is attached hereto as Exhibit Z.

122.   Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '357 patent.

123.   On information and belief, Defendants had actual knowledge of the '357 patent and/or the application that led to the issuance of the '357 patent prior to the filing of this Complaint. *See* ¶¶ 12-24 above.

124.    Defendants have had actual knowledge of the '357 patent since the filing of this Complaint.

125.    The '357 patent is directed to devices, methods, and computer-readable media for synchronizing audio playback.

126.    Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by the '357 patent.  Indeed, Defendants tout that their HEOS system provides "[i]ndustry leading microsecond audio synchronization between speakers" and that their HEOS players are configured with functionality that enable them to be grouped together to "play[] the same music in perfect sync." *See, e.g.,* Ex. N, at p. 6, 26.  To achieve this synchronization, Defendants' HEOS players include functionality that causes such players to embody one or more of the devices, methods, and/or computer-readable media claimed in the '357 patent.  *See, e.g.*, Ex. Z-1 ('357 Patent Initial Claim Chart).

127.    Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '357 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

128.    Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '357 patent, in violation of 35 U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '357 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '357 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '357 patent

by promoting, advertising, and instructing customers and potential customers about the HEOS

system and uses of the system, including infringing uses, (*see* '357 Patent Initial Claim Chart,

Ex. N) and (c) Defendants know (or should know) that their actions will induce users of the

HEOS system to directly infringe one or more claims the '357 patent, and (d) users of the HEOS

system directly infringe one or more claims of the '357 patent.  For instance, at a minimum,

Defendants have supplied and continue to supply HEOS players to customers while knowing that

use of these products will infringe one or more claims of the '357 patent, and that Defendants'

customers then directly infringe one or more claims of the '357 patent by using these HEOS

players in accordance with Defendants' product literature.

   129.  Additionally and/or alternatively, Defendants have indirectly infringed and

continue to indirectly infringe one or more of the claims of the '357 patent, in violation of 35

U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the

United States, components in connection with the HEOS system that contribute to the direct

infringement of the '357 patent by users of the HEOS system.  In particular, on information and

belief, (a) Defendants had actual knowledge of the '357 patent or were willfully blind to its

existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b)

Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more

material components of the invention of the '357 patent that are not staple articles of commerce

suitable for substantial noninfringing use, (c) Defendants know (or should know) that such

component(s) were especially made or especially adapted for use in an infringement of the '357

patent, and (d) users of the HEOS products that comprise such material component(s) directly

infringe one or more claims of the '357 patent.  For instance, at a minimum, Defendants offer for

sale, sell, and/or import software updates for HEOS players that meet one or more claims of the

'357 patent. *See, e.g.*, Ex. N, at p. 41. These software updates are material components of the HEOS products that meet the one or more claims of the '357 patent. Further, Defendants especially made and/or adapted these software updates for use in the HEOS players that meet the one or more claims of the '357 patent, and these software updates are not staple articles of commerce suitable for substantial noninfringing use. Defendants' customers then directly infringe the one or more claims of the '357 patent by installing and using the software updates on the HEOS players.

130.    Defendants' infringement of the '357 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '357 patent or were willfully blind to its existence prior to the filing of this Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '357 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

131.    Defendants' infringement of the '357 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## COUNT X:
## INFRINGEMENT OF U.S. PATENT NO. 9,195,258

132.    Sonos incorporates paragraphs 1-131 above as if fully set forth herein.

133.    Sonos is the owner U.S. Patent No. 9,195,258 ("the '258 patent"), entitled "System and Method for Synchronizing Operations Among a Plurality of Independently Clocked Digital Data Processing Devices," which was duly and legally issued by the USPTO on November 24, 2015. A copy of the '258 patent is attached hereto as Exhibit AA.

134.    Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '258 patent.

135.    On information and belief, Defendants had actual knowledge of the '258 patent and/or the application that led to the issuance of the '258 patent prior to the filing of this Complaint. *See* ¶¶ 12-24 above.

136.    Defendants have had actual knowledge of the '258 patent since the filing of this Complaint.

137.    The '258 patent is directed to devices, systems, methods for synchronizing audio playback.

138.    Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by the '258 patent.  Indeed, Defendants tout that their HEOS system provides "[i]ndustry leading microsecond audio synchronization between speakers" and that their HEOS players are configured with functionality that enable them to be grouped together to "play[] the same music in perfect sync." *See, e.g.,* Ex. P, at p. 6, 26.  To achieve this synchronization, Defendants' HEOS players include functionality that cause such players to embody one or more of the devices, methods, and/or computer-readable media claimed in the '258 patent. *See, e.g.*, Ex. AA-1 ('258 Patent Initial Claim Chart).

139.    Thus, Defendants and/or users of the HEOS system have directly infringed and continue to directly infringe one or more of the claims of the '258 patent, in violation of 35 U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the United States and/or importing the HEOS system into the United States.

140.    Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '258 patent, in violation of 35

U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or more claims of the '258 patent.  In particular, on information and belief, (a) Defendants had actual knowledge of the '258 Patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or more claims of the '258 patent by promoting, advertising, and instructing customers and potential customers about the HEOS system and uses of the system, including infringing uses, (*see* '258 Patent Initial Claim Chart, Ex. N) and (c) Defendants know (or should know) that their actions will induce users of the HEOS system to directly infringe one or more claims the '258 patent, and (d) users of the HEOS system directly infringe one or more claims of the '258 patent.  For instance, at a minimum, Defendants have supplied and continue to supply HEOS players to customers while knowing that use of these products will infringe one or more claims of the '258 patent, and that Defendants' customers then directly infringe one or more claims of the '258 patent by using these HEOS players in accordance with Defendants' product literature.

141.    Additionally and/or alternatively, Defendants have indirectly infringed and continue to indirectly infringe one or more of the claims of the '258 patent, in violation of 35 U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the United States, components in connection with the HEOS system that contribute to the direct infringement of the '258 patent by users of the HEOS system.  In particular, on information and belief, (a) Defendants had actual knowledge of the '258 patent or were willfully blind to its existence prior to, and no later than, the filing of this Complaint (*see* ¶¶ 12-24 above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system, one or more material components of the invention of the '258 patent that are not staple articles of commerce

suitable for substantial noninfringing use, (c) Defendants know (or should know) that such component(s) were especially made or especially adapted for use in an infringement of the '258 patent, and (d) users of the HEOS products that comprise such material component(s) directly infringe one or more claims of the '258 patent.  For instance, at a minimum, Defendants offer for sale, sell, and/or import software updates for HEOS players that meet one or more claims of the '258 patent. *See, e.g.*, Ex. N, at p. 41. These software updates are material components of the HEOS players that meet the one or more claims of the '258 patent.  Further, Defendants especially made and/or adapted these software updates for use in the HEOS players that meet the one or more claims of the '258 patent, and these software updates are not staple articles of commerce suitable for substantial noninfringing use.  Defendants' customers then directly infringe the one or more claims of the '258 patent by installing and using the software updates on the HEOS players.

142.   Defendants' infringement of the '258 patent is also willful because, on information and belief, Defendants (a) had actual knowledge of the '258 patent or were willfully blind to its existence prior to the filing of this Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '258 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

143.   Defendants' infringement of the '258 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

**COUNT XI:**
**INFRINGEMENT OF U.S. PATENT NO. 8,938,637**

144.   Sonos incorporates paragraphs 1-143 above as if fully set forth herein.

40

145.    Sonos is the owner U.S. Patent No. 8,938,637 ("the '637 patent"), entitled "Systems and Methods for Synchronizing Operations Among a Plurality of Independently Clocked Digital Data Processing Devices Without a Voltage Controlled Crystal Oscillator," which was duly and legally issued by the USPTO on January 20, 2015.  A copy of the '637 patent is attached hereto as Exhibit BB.

146.    Sonos is in compliance with any applicable marking and notice provisions of 35 U.S.C. § 287 with respect to the '637 patent.

147.    On information and belief, Defendants had actual knowledge of the '637 patent and/or the application that led to the '637 patent prior to the filing of the Second Amended Complaint.  *See* ¶¶ 12-24 above.

148.    Defendants have had actual knowledge of the '959 patent since the filing of the Second Amended Complaint.

149.    The '637 patent is directed to devices, methods, and computer-readable media for synchronizing audio playback.

150.    Defendants' HEOS system is covered (either literally or under the Doctrine of Equivalents) by the '637 patent.  Indeed, Defendants tout that their HEOS system provides "[i]ndustry leading microsecond audio synchronization between speakers" and that their HEOS players can be grouped together to "play[] the same music in perfect sync."  *See, e.g.,* Ex. N, at p. 6, 26.  To enable synchronization, Defendants' HEOS players are configured to receive audio samples from a source device (e.g., another HEOS player) and then adjust how many audio samples to play back based on timing information associated with the audio samples, clock information associated with the source device, and the HEOS product's own clock information. Based at least on this functionality, Defendants' HEOS players embody one or more of the

devices, methods, and/or computer-readable media claimed in the '637 patent.  *See* Ex. BB-1

('637 Patent Initial Claim Chart).

151.    Thus, Defendants and/or users of the HEOS system have directly infringed and

continue to directly infringe one or more of the claims of the '637 patent, in violation of 35

U.S.C. § 271(a), by making, using, offering for sale, and/or selling the HEOS system within the

United States and/or importing the HEOS system into the United States.

152.    Additionally and/or alternatively, Defendants have indirectly infringed and

continue to indirectly infringe one or more of the claims of the '637 patent, in violation of 35

U.S.C. § 271(b), by actively inducing users of the HEOS system to directly infringe the one or

more claims of the '637 patent.  In particular, on information and belief, (a) Defendants had

actual knowledge of the '637 Patent or were willfully blind to its existence prior to, and no later

than, the filing of the Second Amended Complaint (*see* ¶¶ 12-24 above), (b) Defendants

intentionally cause, urge, or encourage users of the HEOS system to directly infringe one or

more claims of the '637 patent by promoting, advertising, and instructing customers and

potential customers about the HEOS system and uses of the system, including infringing uses,

(*see* '637 Patent Initial Claim Chart, Ex. N) and (c) Defendants know (or should know) that their

actions will induce users of the HEOS system to directly infringe one or more claims the '637

patent, and (d) users of the HEOS system directly infringe one or more claims of the '637 patent.

For instance, at a minimum, Defendants have supplied and continue to supply HEOS players to

customers while knowing that use of these products will infringe one or more claims of the '637

patent, and that Defendants' customers then directly infringe one or more claims of the '637

patent by using these HEOS players in accordance with Defendants' product literature.

153.    Additionally and/or alternatively, Defendants have indirectly infringed and

continue to indirectly infringe one or more of the claims of the '637 patent, in violation of 35

U.S.C. § 271(c), by offering to sell or selling within the United States, and/or importing into the

United States, components in connection with the HEOS system that contribute to the direct

infringement of the '637 patent by users of the HEOS system.  In particular, on information and

belief, (a) Defendants had actual knowledge of the '637 patent or were willfully blind to its

existence prior to, and no later than, the filing of the Second Amended Complaint (*see* ¶¶ 12-24

above), (b) Defendants offer for sale, sell, and/or import, in connection with the HEOS system,

one or more material components of the invention of the '637 patent that are not staple articles

of commerce suitable for substantial noninfringing use, (c) Defendants know (or should know) that

such component(s) were especially made or especially adapted for use in an infringement of the

'637 patent, and (d) users of the HEOS products that comprise such material component(s)

directly infringe one or more claims of the '637 patent.  For instance, at a minimum, Defendants

offer for sale, sell, and/or import software updates for HEOS players that meet one or more

claims of the '637 patent.  *See, e.g.*, Ex. N, at p. 41. These software updates are material

components of the HEOS players that meet the one or more claims of the '637 patent.  Further,

Defendants especially made and/or adapted these software updates for use in the HEOS players

that meet the one or more claims of the '637 patent, and these software updates are not staple

articles of commerce suitable for substantial noninfringing use.  Defendants' customers then

directly infringe the one or more claims of the '637 patent by installing and using the software

updates on the HEOS players.

154.    Defendants' infringement of the '637 patent is also willful because, on

information and belief, Defendants (a) had actual knowledge of the '637 patent or were willfully

blind to its existence prior to the filing of the Second Amended Complaint (*see* ¶¶ 12-24 above), (b) engaged in the aforementioned activity despite an objectively high likelihood that Defendants' actions constituted infringement of the '637 patent, and (c) this objectively-defined risk was either known or so obvious that it should have been known to Defendants.

155.    Defendants' infringement of the '637 patent has caused irreparable harm to Sonos and will continue to do so unless enjoined by this Court.

## REQUEST FOR JURY TRIAL

Pursuant to FED. R. CIV. P. 38, Sonos demands a trial by jury of any issue triable of right by a jury.

## PRAYER FOR RELIEF

THEREFORE, Sonos prays for relief against Defendants as follows:

A.    A judgment that Defendants have infringed and continue to infringe one or more claims of the asserted patents in violation of 35 U.S.C. § 271(a), (b), and (c), and that such infringement is willful;

B.    A preliminary and permanent injunction enjoining Defendants, their officers, agents, servants, employees and attorneys, and other persons in active concert or participation with Defendants, and their parents, subsidiaries, divisions, successors and assigns, from further infringement of the asserted patents;

C.    A judgment awarding Sonos all damages adequate to compensate for Defendants' infringement of Sonos's asserted patents, and in no event less than a reasonable royalty for Defendants' acts of infringement, including damages for provisional rights (where applicable) and all pre-judgment and post-judgment interest at the maximum rate permitted by law;

D.      A judgment awarding Sonos all damages, including treble damages based on any

infringement found to be willful, pursuant to 35 U.S.C. §§ 284 and/or 289, together with

prejudgment interest;

E.      An assessment of costs, including reasonable attorney fees pursuant to 35 U.S.C.

§ 285, and prejudgment interest against Defendants; and

F.      Such other and further relief as this Court may deem just and proper.


Dated: September 26, 2017                    POTTER ANDERSON & CORROON LLP


                                             By:   */s/ Philip A. Rovner*
                                                   Philip A. Rovner (#3215)
                                                   Jonathan A. Choa (#5319)
                                                   Hercules Plaza
                                                   P.O. Box 951
                                                   Wilmington, DE 19899
                                                   (302) 984-6000
                                                   provner@potteranderson.com
                                                   jchoa@potteranderson.com

                                             *Attorneys for Plaintiff Sonos, Inc.*