## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SONOS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 14-1330-RGA |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| D&M HOLDINGS INC. d/b/a THE | ) | **PUBLIC VERSION** |
| D+M GROUP, D&M HOLDINGS U.S. | ) | |
| INC., and DENON ELECTRONICS | ) | |
| (USA), LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT PROPOSED PRETRIAL ORDER

POTTER ANDERSON & CORROON LLP

Philip A. Rovner (#3215)
Jonathan A. Choa (#5319)
Hercules Plaza
P.O. Box 951
Wilmington, DE 19899
(302) 984-6000
provner@potteranderson.com
jchoa@potteranderson.com

*Attorneys for Plaintiff Sonos, Inc.*

OF COUNSEL:
George I. Lee
Sean M. Sullivan
Rory P. Shea
J. Dan Smith
Michael P. Boyea
LEE SULLIVAN SHEA & SMITH LLP
224 N Desplaines St, Suite 250
Chicago, IL 60661
(312) 754-0002

Dated: November 14, 2017
Public version dated: November 16, 2017

MORRIS NICHOLS ARSHT & TUNNELL LLP

Jack B. Blumenfeld (#1014)
Michael J. Flynn (#5333)
1201 N. Market Street
P,.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@mnat.com
mflynn@mnat.com

*Attorneys for Defendants*

OF COUNSEL:
John M. Jackson
Matthew C. Acosta
Blake T. Dietrich
Christopher J. Rourk
Wasif Qureshi
JACKSON WALKER L.L.P.
2323 Ross Avenue, Suite 600
Dallas, TX  75201
(214) 953-6000

On November 17, 2017 at 10:00 a.m., counsel for Plaintiff Sonos, Inc. ("Sonos") and Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC (collectively, "D&M") will participate in a pretrial conference before this Court pursuant to Rule 16 of the Federal Rules of Civil Procedure and Local Rule 16.3.

Pursuant to this Court's Amended Scheduling Order (D.I. 412) and its Order during the October 5, 2017 telephonic hearing, a "bellwether" jury trial will take place beginning on December 11, 2017.  This bellwether trial will address Sonos's claims accusing D&M of infringing certain asserted claims of U.S. Patent Nos. 7,571,014 ("'014 Patent"), 8,588,949 ("'949 Patent"), and 9,195,258 ("'258 Patent") (collectively, the "Asserted Sonos Patents"), Sonos's claim that D&M's infringement was willful,[1] Sonos's claim that it is entitled to injunctive relief and damages for D&M's infringement, and D&M's defenses to these claims, to the extent they are to be tried to a jury.  There are no counterclaims to be addressed at trial.

Sonos has also accused D&M of infringing claims of other patents, including U.S. Patent Nos. 8,938,312 ("'312 Patent"), 9,042,556 ("'556 Patent"), 9,202,509 ("'509 Patent"), 9,213,357 ("'357 Patent"), and 9,219,959 ("'959 Patent") (collectively, the "Remaining Sonos Patents"). Pursuant to the Court's Order during the October 5, 2017 telephonic hearing, Sonos's infringement claims for the Remaining Sonos Patents (as well as Sonos's other related claims and D&M's defenses) are to be tried in a subsequent trial that is to take place after the bellwether trial.  Sonos's claims and D&M's defenses concerning the Remaining Sonos Patents are not addressed in this Pretrial Order for the bellwether trial.

---

[1] It is D&M's position that Sonos's willfulness claims apply only to the '014 Patent, as explained in D&M's motions *in limine*, its proposed verdict form, and the proposed jury instructions.

The following matters as to the conduct of the bellwether trial have been stipulated by the parties and are hereby ordered by the Court:

## I.      NATURE OF ACTION & PLEADINGS

### A.      Pleadings, Motions, & Orders Related to Sonos's Claims

1.      On October 21, 2014, Sonos filed a Complaint for Patent Infringement against D&M.  D.I. 1.  In that Complaint, Sonos accused D&M of both directly and indirectly infringing four Sonos Patents, including the Asserted '014 and '949 Patents.  *Id*.  Sonos sought a judgment of infringement, a judgment of willful infringement, injunctive relief, damages, and costs (including reasonable attorney fees).  *Id*.  Sonos also demanded a jury trial.  *Id*.

2.      On December 17, 2014, Sonos filed a First Amended Complaint for Patent Infringement against D&M.  D.I. 6.  In that First Amended Complaint, Sonos accused D&M of both directly and indirectly infringing two additional Sonos patents, neither of which is included in the list of Sonos patents that are currently asserted against D&M.  *Id*.  As in its original Complaint, Sonos sought a judgment of infringement, a judgment of willful infringement, injunctive relief, damages, and costs (including reasonable attorney fees).  *Id*.  Sonos also demanded a jury trial.  *Id*.

3.      On February 27, 2015, Sonos filed a motion for leave to file a Second Amended Complaint for Patent Infringement against D&M, and on March 9, 2015, Sonos's Second Amended Complaint was entered.  D.I. 29, 31.  In that Second Amended Complaint, Sonos accused D&M of both directly and indirectly infringing six additional Sonos patents, including the '637 Patent, which increased the total number of asserted patents at the time to twelve.  D.I. 31.  Sonos again sought a judgment of infringement, a judgment of willful infringement,

injunctive relief, damages, and costs (including reasonable attorney fees).  *Id*.  Sonos also

demanded a jury trial.  *Id*.

4.      On August 18, 2015, the Court held a scheduling conference.  D.I. 62.  During

that scheduling conference, the Court set a deadline of January 29, 2016 for amendment of

pleadings, including amendments to add new patents to the case.  D.I. 65.  However, the Court

indicated that to the extent Sonos intended to accuse D&M of infringing any new Sonos patents,

Sonos should correspondingly remove patents from the case such that the total number of

asserted patents remained around twelve.  D.I. 62 at 9:4-13.

5.      On January 29, 2016, Sonos filed a motion for leave to file a Third Amended

Complaint for Patent Infringement against D&M, and on March 7, 2016, Sonos's Third

Amended Complaint was entered.  D.I. 93-94, 100, 102.  In that Third Amended Complaint,

Sonos added claims accusing D&M of directly and indirectly infringing seven new patents,

including the '258 Patent that will be tried as part of the bellwether trial as well as the '312, '556,

'357, '959, and '509 Patents that are included in the Remaining Sonos Patents.  D.I. 102.  In line

with the Court's guidance during the August 18, 2015 scheduling conference, Sonos also

correspondingly removed infringement claims that were based on seven previously-asserted

patents.  *Id*.  As with all prior versions of its Complaint, Sonos sought a judgment of

infringement, a judgement of willful infringement, injunctive relief, damages, and costs

(including reasonable attorney fees).  *Id*.  Sonos also demanded a jury trial.  *Id*.

6.      On May 6, 2016, D&M filed a Partial Motion for Judgement on the Pleadings for

Lack of Patent-Eligible Subject Matter.  D.I. 116-118.  In that motion, D&M alleged that certain

claims of the '014 and '949 Patents that will be tried as part of the bellwether trial (as well as the

'959 and '509 Patents) were invalid under 35 U.S.C. § 101 for failing to claim patent-eligible

subject matter.  *Id.*  After considering the parties' briefing and hearing oral argument, the Court

denied D&M's motion in its entirety on March 13, 2017.  D.I. 242-243.

7.     On August 25, 2016, the Court granted a joint stipulation filed by the parties

requesting dismissal with prejudice of all claims and defenses concerning U.S. Patent No.

9,130,771, which was one of the Sonos patents asserted at the time.  D.I. 151.

8.     On February 27, 2017, the Court granted a joint stipulation filed by the parties

requesting a stay of all claims and defenses concerning U.S. Patent No. D559,197, which was

one of the Sonos patents asserted at the time.  D.I. 229.

9.     On April 20, 2017, Sonos filed an unopposed motion for leave to file a First

Supplement to its Third Amended Complaint to include a reference to the reexamination

certificate for the '959 Patent.  D.I. 261.  On April 21, 2017, the Court then granted Sonos's

motion and entered Sonos's Supplemental Third Amended Complaint.  D.I. 262-263.

10.     On September 26, 2017, Sonos filed an unopposed motion for leave to file a

Second Supplement to its Third Amended Complaint to include a reference to the reexamination

certificates for the '014 and '509 Patents.  D.I. 415.  The Court granted Sonos's motion the next

day (D.I. 416), and Sonos's Second Supplement to Third Amended Complaint was entered on

September 28, 2017 (D.I. 417).  This is the operative complaint for this matter.

11.     The instrumentalities that Sonos has accused of infringing the Asserted Sonos

Patents are (1) D&M's line of "HEOS" audio players, which includes the "HEOS 1," "HEOS 3,"

"HEOS 5," and "HEOS 7" speaker products, the HEOS HomeCinema TV sound system product,

the "HEOS Link" pre-amplifier product, the 'HEOS Amp" amplifier product, and the "HEOS

Drive" multi-room amplifier product, and (2) devices installed with the HEOS controller app

available for iOS, Android, or Kindle (collectively, the "Accused HEOS Instrumentalities").

12.     The following table shows the current list of claims that are being asserted from each Asserted Patent (the "Asserted Claims") as well as the current list of Accused HEOS Instrumentalities[2] for each Asserted Patent:

| Patent | Asserted Claims | Accused HEOS Instrumentalities |
|---|---|---|
| 9,195,258 | 11, 17, 18, 21, 24 | HEOS 1, HEOS 3, HEOS 5, HEOS 7, HEOS HomeCinema, HEOS Link, HEOS Amp, and HEOS Drive players installed with any version of the HEOS firmware |
| 7,571,014 | 21, 25, 38 | Devices installed with any version of the HEOS controller app prior to Version "U2" |
| 8,588,949 | 1, 16 | Devices installed with any version of the HEOS controller app |

### B.     Pleadings, Motions, & Orders Related to D&M's Defenses

13.     On April 30, 2015, D&M filed its Answer to Sonos's Second Amended Complaint.  D.I. 48.  In that Answer, D&M alleged defenses of (1) failure to state a claim, (2) non-infringement, (3) invalidity under 35 U.S.C. §§ 101, 102, 103, and 112, (4) limitation on damages and costs under 35 U.S.C. §§ 286-288, (5) estoppel, acquiescence, unclean hands, and waiver, (6) patent exhaustion, patent misuse, and the first sale doctrine, (7) adequate remedy other than injunctive relief, (8) intervening rights, and (9) lack of personal jurisdiction.  *Id.*  D&M's Answer to Sonos's Second Amended Complaint did not include any counterclaims.  *Id.*

14.     On November 30, 2015, D&M filed a motion for leave to amend its Answer to add counterclaims accusing Sonos of infringing nine patents.  D.I. 81.  On March 7, 2016, the

---

[2] Sonos's infringement theories set forth herein apply equally to both the first generation of HEOS players (i.e., the "HS1" version of HEOS players) and the second generation of HEOS players (i.e., the "HS2" version of HEOS players).  Thus, any reference to a given model of HEOS player herein is intended to cover both generations of that HEOS player model (e.g., a reference to the HEOS 1 player model covers both the HS1 and HS2 versions of the HEOS 1 player model).  Likewise, Sonos's infringement theories set forth herein apply equally to the HEOS controller app for iOS, Android, and Kindle.  Thus, any reference to the HEOS controller app is intended to cover the HEOS iOS app, the HEOS Android app, and the HEOS Kindle app.

Court granted D&M's motion for leave to amend its Answer and entered D&M's Amended Answer to Sonos's Second Amended Complaint. D.I. 100-101. However, on the same date, the Court severed D&M's infringement counterclaims into a separate action bearing Civil Action No. 16-141-RGA. D.I. 100.

15.     On March 28, 2016, D&M filed its Answer to Sonos's Third Amended Complaint. D.I. 106. In that Answer, D&M alleged defenses of (1) failure to state a claim, (2) non-infringement, (3) invalidity under 35 U.S.C. §§ 101, 102, 103, and 112, (4) limitation on damages and costs under 35 U.S.C. §§ 286-288, (5) estoppel, acquiescence, unclean hands, and waiver, (6) patent exhaustion, patent misuse, and the first sale doctrine, (7) adequate remedy other than injunctive relief, (8) intervening rights, (9) lack of personal jurisdiction, (10) prosecution laches, and (11) prosecution history estoppel. *Id.* D&M's Answer to Sonos's Third Amended Complaint did not include any counterclaims. *Id.*

16.     On April 21, 2016, Sonos filed a motion to strike D&M's defenses of estoppel, acquiescence, unclean hands, waiver, patent exhaustion, patent misuse, the first sale doctrine, prosecution laches, failure to state a claim, limitation of costs under 35 U.S.C. § 288, and lack of personal jurisdiction. D.I. 111-112. In its opposition to Sonos's motion to strike, D&M withdrew its defense of lack of personal jurisdiction. D.I. 119. Then, on August 10, 2016, the Court issued a Report and Recommendation in which Magistrate Judge Thynge recommended that (a) Sonos's motion to strike be granted as to D&M's defenses of limitation of costs under 35 U.S.C. § 288, estoppel, acquiescence, unclean hands, waiver, patent misuse, and prosecution laches and (b) D&M be granted leave to file an Amended Answer. D.I. 143. The Court adopted this Report and Recommendation on September 1, 2016. D.I. 157. In turn, D&M filed its First Amended Answer to Sonos's Third Amended Complaint on September 7, 2016. D.I. 158. In

that Amended Answer, D&M alleged defenses of (1) failure to state a claim, (2) non-infringement, (3) invalidity under 35 U.S.C. §§ 101, 102, 103, and 112, (4) limitation on damages and costs under 35 U.S.C. §§ 286-287, (5) unenforceability based on claim scope acquiescence, (6) patent exhaustion and the first sale doctrine, (7) patent misuse, (8) adequate remedy other than injunctive relief, (9) intervening rights, (10) prosecution laches, and (11) prosecution history estoppel.  *Id.*

17. On August 1, 2016, while Sonos's motion to strike certain of D&M's defenses was pending, D&M also filed a motion for leave to file an Amended Answer that included a defense of inequitable conduct.  D.I. 141-142.  After Sonos opposed D&M's motion (D.I. 152), D&M filed a reply brief along with a new version of its proposed Amended Answer (D.I. 160), which Sonos subsequently moved to strike (D.I. 161).  The Court then issued an order on October 7, 2016 advising D&M that if it intended to rely on the new version of its proposed Amended Answer, then D&M was required to file a new motion for leave to amend its Answer. D.I. 172.  D&M responded by filing a new motion for leave to file an Amended Answer that included a defense of inequitable conduct on October 12, 2016.  D.I. 176-177.  On February 6, 2017, the Court denied D&M's motion for leave to add a defense of inequitable conduct.  D.I. 226-227.

18. On May 5, 2017, D&M filed its Answer to Sonos's Supplemental Third Amended Complaint, which included all of the same defenses that were previously included in D&M's Amended Answer to Sonos's Third Amended Complaint filed on September 7, 2016.  D.I. 266.

19. On October 6, 2017, D&M filed its Answer to Sonos's Second Supplement to its Third Amended Complaint, which included all of the same defenses that were previously

included in D&M's Amended Answer to Sonos's Third Amended Complaint filed on September 7, 2016.  D.I. 420.

### C.     Claim Construction

20.     On November 23, 2016, the parties submitted their Joint Claim Construction brief (D.I. 201-205), and on December 14, 2016, the Court heard oral argument regarding claim construction (D.I. 213).

21.     On January 12, 2017, the Court then issued its first Memorandum Opinion on Claim Construction (D.I. 219), which was followed on January 18, 2017 by the Court's first Claim Construction Order (D.I. 221).

22.     At the Court's request, the parties also filed supplemental briefing regarding claim construction of four of the terms that had been presented during the initial claim construction proceedings.  D.I. 240, 244, 252, 257.

23.     On August 10, 2017, the Court then issued its second Memorandum Opinion on Claim Construction (D.I. 399), which was followed on August 21, 2017 by the Court's second Claim Construction Order (D.I. 403).

24.     The Court's constructions that are relevant to the Asserted Sonos Patents are as follows:

| Claim Term | Patent(s) | Construction |
| --- | --- | --- |
| "zone player" / "playback device" / "player" | 7,571,014 8,588,949 9,195,258 | "data network device configured to process and output audio" |
| "network interface" | 7,571,014 9,195,258 | "physical component of a device that provides an interconnection with a data network" |
| "multimedia" | 8,588,949 | "any type of media that comprises audio (including audio alone)" |
| "audio content" | 9,195,258 | No construction necessary |

| "independently clocked" | 9,195,258 | "operating in accordance with their own respective clocks during synchronous playback" |
| "clock time information" | 9,195,258 | "information representing a time value indicated by a device's clock" |
| "playback timing information" | 9,195,258 | "information indicating when the audio content is to be played back" |

### D.    *Daubert* Motions

25.     On June 2, 2017, the parties filed several *Daubert* motions seeking to exclude expert testimony.

26.     In particular, on June 2, 2017, Sonos filed a *Daubert* motion seeking to exclude the expert opinions of D&M's expert, attorney Dr. Jay P. Kesan.  D.I. 292-294.  D&M opposed this motion on June 16, 2017 (D.I. 344-345), and Sonos filed its reply on June 23, 2017 (D.I. 370-371).

27.     Further, on June 2, 2017, D&M filed (1) a first *Daubert* motion seeking to strike the expert opinions of Sonos's expert, Mr. Michael Tate (D.I. 299) and (2) second *Daubert* motion seeking to partially strike certain portions of the opinions of Sonos's experts on four grounds (D.I. 300).[3]  Sonos opposed these motions on June 16, 2017 (D.I. 341-342, 348-349), and D&M filed its replies on June 23, 2017 (D.I. 366, 373).

28.     On October 30, 2017, the Court conducted a hearing concerning the parties' *Daubert* motions.  On November 1, 2017, the Court issued its Memorandum Opinion (D.I. 427) granting and denying, in part, Sonos's *Daubert* motions and granting and denying, in part, D&M's *Daubert* motions.  The Court's rulings are hereby incorporated by reference into this pretrial order.

---

[3] One ground of D&M's second *Daubert* motion has since been denied as moot in view of the parties' stipulation entered June 23, 2017.  D.I. 361.

**E.     Dispositive Motions**

29.     On June 2, 2017, the parties also filed several dispositive motions.

30.     In particular, on June 2, 2017, Sonos filed (1) a first motion for summary judgment on D&M's defenses of patent misuse, prosecution laches, intervening rights, and patent exhaustion/first sale doctrine (D.I. 289-291) and (2) a second motion for partial summary judgment on D&M's defense of invalidity (D.I. 295-297).   D&M opposed these motions on June 16, 2017[4] (D.I. 343, 346), and Sonos filed its replies on June 23, 2017 (D.I. 362-364, 367, 369).

31.     Further, on June 2, 2017, D&M filed (1) a first motion for partial summary judgment of no direct infringement (D.I. 298) and (2) a second motion for summary judgment of no indirect infringement (D.I. 301).  Sonos opposed these motions on June 16, 2017 (D.I. 350-353), and D&M filed its replies on June 23, 2017 (D.I.  365, 368).

32.     On August 24, 2017, the Court denied both of D&M's motions for summary judgment of no infringement.  D.I. 406.

33.     On October 30, 2017, the Court conducted a hearing concerning Sonos's dispositive motions.  On November 1, 2017, the Court issued its Memorandum Opinion (D.I. 427) granting and denying, in part, Sonos's motions for summary judgment.  The Court's rulings are hereby incorporated by reference into this pretrial order.

**F.     Other Relevant Orders**

34.     A Stipulated Protective Order was entered on September 8, 2015.  D.I. 69.

---

[4] In its opposition brief, D&M informed Sonos that it was no longer proceeding with a defense of patent exhaustion.  D.I. 356 at 5.

35.     A Stipulated Order regarding the use of documents, depositions, and discovery responses that are produced after the November 18, 2016 close of fact discovery was entered on November 10, 2016.  D.I. 195.

36.     On March 23, 2017, Sonos moved to strike as untimely D&M's prior art allegations based on Universal Plug and Play ("UPnP") materials, which were relied upon and disclosed in D&M's Final Invalidity Contentions.  D.I. 247.  D&M response was filed on March 24, 2017 (D.I. 248), and the Court held a hearing on the issue on March 27, 2017.  *See* D.I. 253. During that hearing, the Court declined to strike D&M's UPnP-based prior art allegations.  *Id*.

## II.     FEDERAL JURISDICTION

37.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, and this Court has subject matter jurisdiction over this action pursuant to 35 U.S.C. §§ 271, *et seq*., and 28 U.S.C. §§ 1331 and 1338.

38.     Defendants D&M Holdings Inc. d/b/a The D+M Group, D&M Holdings U.S. Inc., and Denon Electronics (USA), LLC are each subject to personal jurisdiction in this Court.

39.     Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and (c) and 28 U.S.C. § 1400(b).

## III.    STATEMENT OF ADMITTED FACTS

40.     The parties' Joint Statement of Undisputed Facts is attached as **Schedule A**.

## IV.    STATEMENT OF ISSUES OF FACT THAT REMAIN TO BE LITIGATED

41.     Sonos's Statement of Issues of Fact that Remain to be Litigated is attached as **Schedule B1**.

42.     D&M's Statement of Issues of Fact that Remain to be Litigated is attached as **Schedule B2**.

43.     If the Court determines that any issue identified in a party's statement of issues of fact that remain to be litigated is more properly considered an issue of law, it should be so considered.

44.     D&M will not introduce into evidence and is not relying upon an opinion of counsel for any purpose in this case.

## V.     STATEMENT OF ISSUES OF LAW THAT REMAIN TO BE LITIGATED

45.     Sonos's Statement of Issues of Law that Remain to be Litigated is attached as **Schedule C1**.

46.     D&M's Statement of Issues of Law that Remain to be Litigated is attached as **Schedule C2**.

47.     If the Court determines that any issue identified in a party's statement of issues of law that remain to be litigated is more properly considered an issue of fact, it should be so considered.

## VI.     LIST OF WITNESSES

48.     Sonos's list of witnesses that it may call to testify at trial either in person or by deposition is attached as **Schedule D1**, and Sonos's list of deposition designations is attached as **Schedule E1**.  Also included in **Schedule E1** are D&M's objections and counter-designations to the offered testimony and Sonos's objections to D&M's counter-designations.

49.     D&M's list of witnesses that it may call at trial to testify either in person or by deposition is attached as **Schedule D2**, and D&M's list of deposition designations is attached as **Schedule E2**.  Also included in **Schedule E2** are Sonos's objections and counter-designations to the offered testimony and D&M's objections to D&M's counter-designations.

50.     Any witness not listed in **Schedules D1 or D2** will be precluded from testifying, absent good cause shown.

51.     The listing of a witness on a party's witness list does not require that party to call that witness to testify, either in person or by deposition.

52.     The parties hereby request that Fed. R. Evid. 615 be invoked for all eligible fact witnesses.

53.     With respect to those witnesses who are expected to testify by deposition rather than in person, each party has designated the specific pages and lines of deposition testimony that it may read or play during trial.  No deposition testimony not previously designated pursuant to this Order, whether designated as affirmative or defensive designations, may be later added for these witnesses, absent good cause shown.

54.     If a party designates deposition testimony, and the other party counter-designates, then the designations and counter-designations will be read or played by video in chronological order.  Regardless of whether deposition testimony is read or played by video, the time available for each party's trial presentation shall be reduced by the length of its designations and counter-designations.

55.     All irrelevant and redundant material such as objections and colloquy between counsel will be eliminated when the deposition is read or viewed at trial.

56.     Any party may use testimony that is designated by another party, to the same effect as if it had initially designated the testimony as its own, subject to all objections.

57.     The parties may offer some or all of the deposition testimony set forth herein at trial.  A party's decision not to introduce some or all of the testimony of a witness designated herein shall not be commented upon at trial.

58.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose.

59.     During its case-in-chief, a party shall identify the witnesses it intends to call to testify at trial either in person or by deposition by 8:00 p.m.[5] two days before the trial day during which those witnesses are expected to testify (e.g., if a party intends to call a witness to testify on Wednesday, the party must identify the witness by 8:00 p.m. on the previous Monday).  A party shall then identify the order in which it intends to call such witnesses by 8:00 p.m. the day before the trial day during which those witnesses are expected to testify.

60.     If a party identifies a witness that it intends to call to testify at trial by deposition, then the party shall identify the specific pages and lines of the witness's deposition testimony that the party expects to read or play by 8:00 p.m. on Tuesday, December 5, 2017.  For each such witness, the other party shall then identify its objections to the identified deposition testimony and its counter-designations to the identified testimony by 8:00 p.m. on Thursday, December 7, 2017.  By 8:00 p.m. on Saturday, December 9, 2017, the first party shall identify its objections to the counter-designated testimony.   Thereafter, the parties shall promptly meet and confer in an attempt to resolve any objections to the identified deposition testimony.  If good faith efforts to resolve the objections fail, the objecting party will raise the objections with the Court no later than the morning of the day the deposition testimony will be offered, before trial begins or resumes.  The Party originally offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness.  A copy of the video deposition clips shall be provided to the opposing party no later than 8:00 pm, two days before the

---

[5] All times set forth herein are reflected in Eastern Standard Time.

testimony is expected to be read or played (e.g., if a party intends to read or play a witness's deposition testimony on Wednesday, the party must provide a copy of the video deposition clips by 8:00 p.m. on the previous Monday).

61.     By 8:00 p.m. the day before each day that a party is presenting its case-in-chief, its counsel shall provide to counsel for the other party an estimate of when it expects to rest.

## VII.   LIST OF EXHIBITS

62.     Pursuant to the Court's order of November 3, 2017, each party will file its initial list of exhibits and the opposing party's objections on November 16, 2017.  D.I. 430.  Thereafter, the parties will meet and confer to resolve the objections, and then each party will file its revised list of exhibits and the opposing party's objections by November 28, 2017.  *Id*.

63.     Sonos's trial exhibits will be identified with PTX numbers, starting with PTX1. Sonos's demonstrative exhibits will be identified with PDX numbers, starting at PDX1. Sonos's physical trial exhibits will be identified with PPX numbers, starting with PPX1.

64.     D&M's trial exhibits will be identified with DTX numbers, starting with DTX1. D&M's demonstrative exhibits will be identified with DDX numbers, starting with DDX1. D&M's physical trial exhibits will be identified with DPX numbers, starting with DPX1.

65.     Joint trial exhibits will be identified with JTX numbers, starting with JTX1. Joint physical trial exhibits will be identified with JPX numbers, starting with JPX1.

66.     A party's failure to introduce any exhibit appearing on its list shall not be commented on during trial.

67.     Each party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were listed on its own exhibit list, subject to evidentiary objections.  Any exhibit, once admitted, may be used equally by each party.  The listing of an exhibit by a party

on its exhibit list does not waive any evidentiary or other objections to that exhibit by the listing party should the opposing party attempt to offer it into evidence.

68.     The parties agree that any date listed on an exhibit list is neither evidence nor an admission of the date of the document, and that failing to list a date on an exhibit list is neither evidence nor an admission of whether the document is dated.

69.     The parties agree that any description of a document listed on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding that document.

70.     Legible photocopies of United States patents and the contents of their Patent Office file histories may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies. Likewise, legible photocopies of United States patent applications and the contents of their associated file histories may be offered and received into evidence in lieu of certified copies thereof, subject to all other objections which might be made to the admissibility of certified copies.

71.     Legible photocopies of documents may be offered and received in evidence in lieu of originals thereof, subject to all foundational requirements and other objections that might be made to the admissibility of originals, subject to the right of the party against whom it is offered to inspect an original upon request reasonably in advance of any proposed use of the photocopy.

72.     The parties have agreed that the demonstrative exhibits the parties intend to use at trial need not be included on their respective lists of trial exhibits to be filed with the Court.

73.     The parties shall make available for inspection physical exhibits to be used at trial, labeled with an exhibit number.

74.     Exhibits to be used or offered into evidence solely for impeachment need not be included on the respective lists of trial exhibits to be filed with the Court.

75.     Subject to other provisions of this Order, once the pretrial conference has been held, no party shall be permitted to offer as evidence any exhibit not present on its exhibit list absent good cause shown or by agreement of the parties.

76.     The parties shall identify trial exhibits and exchange demonstrative exhibits that will be used in opening statements by 6:00 p.m. on Saturday, December 9, 2017, shall exchange their objections to these trial exhibits and demonstrative exhibits by 3:00 p.m. on Sunday, December 10, 2017, and thereafter shall promptly meet and confer on any objections (preferably by no later than 5:00 p.m.).

77.     For each witness identified in accordance with Paragraph 59 that is to testify in person or by deposition, the party who will be calling the witness shall identify trial exhibits and exchange any demonstrative exhibits that it expects to use with that witness by 6:00 p.m. the day before the trial day during which that witness is expected to testify.  The other party shall then provide its objections to the trial exhibits and demonstrative exhibits by 8:00 p.m. on the evening before that trial day, and thereafter the parties shall meet and confer in an attempt to resolve any such objections promptly.  If good faith efforts to resolve the objections fail, the objecting party will raise the objections with the Court no later than the morning of the trial day that the witness will be called, before trial begins or resumes.

78.     The parties shall identify trial exhibits and exchange demonstrative exhibits that will be used in closing statement by 7:00 p.m. the day before closing statements are to be

presented, shall exchange their objections to these trial exhibits and demonstrative exhibits by 9:00 p.m. the day before closing statements are to be presented, and shall meet and confer on any such objections promptly thereafter (preferably by no later than 10:00 p.m.).

79.     When exchanging demonstrative exhibits, the party seeking to use a demonstrative exhibit will provide a color representation of the demonstrative exhibit to the other side in PDF form. However, for demonstrative exhibits that cannot be placed in PDF form such as video or animations, the party seeking to use the demonstrative exhibit will provide it to the other side in its native form via a downloadable link.  For irregularly sized physical exhibits, the party seeking to use the demonstrative exhibit will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

80.     If a party's demonstrative exhibit changes after being provided to the opposing party, the party intending to use the demonstrative exhibit must promptly notify the opposing party of the change(s).

81.     The above provisions regarding the exchange of demonstrative exhibits does not apply to demonstrative exhibits created during testimony or demonstrative exhibits to be used for cross examination, neither of which need to be provided to the other side in advance of their use.

82.     The parties agree that notice of a party's intended use of blow-ups (enlargements) of trial exhibits and/or deposition testimony and of ballooning, excerption, highlighting, etc. of such exhibits and/or deposition testimony need not be given (and need not be exchanged as a demonstrative exhibit), as long as the party has complied with the provisions of this Order governing the use of trial exhibits and/or deposition testimony.

83.     The parties agree to follow the provisions in the Stipulated Protective Order entered in this case regarding the confidentiality of exhibits used at trial.  Exhibits marked

"Confidential," "Outside Counsel's Eyes Only" or "Outside Counsel's Eyes Only – Computer Source Code" may be displayed on monitors visible to the Court, the jury, and the parties, but will not otherwise be displayed in the courtroom during trial and will not be filed publicly.  The parties further agree that in-house legal counsel from each party may view exhibits containing the opposing party's confidential information that are subject to the protective order when shown in the courtroom during trial.

84.     The parties shall confer following trial, and by no later than December 20, 2017 shall submit a report to the Court designating the testimony given live or through deposition that should be redacted from the public transcript filed in this case.  Except for these designated redactions, the courtroom shall otherwise remain open through the duration of the trial.

## VIII.   BRIEF STATEMENT OF INTENDED PROOFS

85.     Sonos's Brief Statement of Intended Proofs is attached as **Schedule G1**.

86.     D&M's Brief Statement of Intended Proofs is attached as **Schedule G2**.

## IX.     MOTIONS *IN LIMINE*

87.     Sonos's Motions *in Limine*, as well as D&M's oppositions and Sonos's replies, are attached as **Schedule H1**.

88.     D&M's Motions *in Limine*, as well as Sonos's oppositions and D&M's replies, are attached as **Schedule H2**.

## X.      AMENDMENTS OF PLEADINGS

89.     Neither party presently requests any amendment to the pleadings, except to conform to the evidence ultimately elicited at trial.

## XI.   CERTIFICATION OF SETTLEMENT EFFORTS

90.    The parties hereby certify that they have engaged in a good faith effort to explore resolution of the controversy by settlement, including by mediation. The parties, through their respective counsel, have considered the possibility of settlement. It was determined that the matter could not be resolved at this juncture by settlement.

## XII.   TRIAL PARAMETERS

91.    This matter is scheduled for a 5-day jury trial beginning at 9:00 a.m. on December 11, 2017, with subsequent trial days beginning at 9:00 a.m.  The Court will determine, with the advice of the parties, when the jury shall be excused each day.  The trial will be timed, as counsel will be allocated a total number of hours in which to present their respective cases.

## XIII. ORDER TO CONTROL COURSE OF ACTION

92.    This Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

93.    The parties reserve the right to seek leave to supplement or amend this final pre-trial order based on subsequent events or by agreement.

Potter Anderson & Corroon LLP

By: */s/  Philip A. Rovner*
    Philip A. Rovner (#3215)
    Jonathan A. Choa (#5319)
    Hercules Plaza
    P.O. Box 951
    Wilmington, DE 19899
    (302) 984-6000
    provner@potteranderson.com
    jchoa@potteranderson.com

*Attorneys for Plaintiff*

Public version dated: November 16, 2017

Morris Nichols Arsht & Tunnell LLP

By: */s/ Michael J. Flynn*
    Jack B. Blumenfeld (#1014)
    Michael J. Flynn (#5333)
    1201 N. Market Street
    P,.O. Box 1347
    Wilmington, DE  19899
    (302) 658-9200
    jblumenfeld@mnat.com
    mflynn@mnat.com

*Attorneys for Defendants*