**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| SONOS, INC., | § § § | |
| *Plaintiff*, | § § | |
| v. | § § | Civil Action No. 14-1330-WCB |
| D&M HOLDINGS INC. d/b/a THE D+M GROUP, D&M HOLDINGS U.S. INC., and DENON ELECTRONICS (USA), LLC, | § § § § § | |
| *Defendants*. | § § | |

## MEMORANDUM OPINION AND ORDER

On November 17, 2017, the Court held a telephonic pretrial conference to discuss the proposed joint pretrial order, the parties' motions in limine, a dispute regarding the election of prior art, and the Court's proposed trial procedures for the bellwether trial scheduled to begin on December 11, 2017. This order summarizes the Court's rulings made during that conference, and addresses the issues the Court took under submission.

**1.** Regarding the parties' disputes concerning the number of prior art references that D&M is permitted to raise at trial, see Dkt. Nos. 437, 439, the Court ruled that the UPnP protocol and the "D&M System" may each be considered a single reference for purposes of the Court's limitation of three prior art references per patent. The Court made no ruling as to whether either system may be considered a single reference for purposes of invalidity under 35 U.S.C. §§ 102 or 103.

**2.** Sonos will not be permitted to present a doctrine of equivalents theory of infringement at trial, as it did not include such allegations in its final infringement contentions, except in the

1

form of a boilerplate reservation of right to assert the doctrine of equivalents at some later point. See Sycamore IP Holdings LLC v. AT&T Corp., No. 2:16-cv-588, 2017 WL 4517953, at *3 (E.D. Tex. Oct. 10, 2017) (boilerplate allegations of infringement under the doctrine of equivalents are insufficient); Comcast Cable Commc'ns, LLC v. OpenTV, Inc., No. C 16-6180, 2017 WL 2630088, at *5 (N.D. Cal. June 19, 2017) (same); Baltimore Aircoil Co. v. SPX Cooling Techs. Inc., No. CCB-13-2053, 2016 WL 4426681, at *15 (D. Md. Aug. 22, 2016) ("[P]lace-holder boilerplate language will not suffice" to preserve a doctrine of equivalents theory of infringement.); Best Med. Int'l, Inc. v. Accuray, Inc., No. 2:10-cv-1043, 2013 WL 3305478, at *2-3 (W.D. Pa. July 1, 2013) (contentions regarding the doctrine of equivalents cannot be "reserved" until the close of discovery).

 **3.** The Court granted in part and denied in part Sonos's motions in limine.

 **a.** First, Sonos argued that D&M should not be allowed to refer to its own patents and its countersuit against Sonos. The Court ruled that D&M will not be permitted to refer to its countersuit against Sonos or to any of its own patents that were not elected as prior art references unless Sonos first opens the door to any such evidence, such as by stating that D&M lacks its own technology and therefore must rely on stealing technology from Sonos. The countersuit by D&M is irrelevant to the issue of infringement of Sonos's patents, and the non-elected patents are irrelevant to the issue of infringement and are potentially confusing to the jury. The fact that D&M has patents in the same technological field is not a defense to infringement, but could mislead the jury into believing that D&M's patents give it the right to practice technology that is covered by those patents even though it is also covered by Sonos's patents.

 **b.** Second, Sonos argued that D&M should not be allowed to introduced arguments, testimony, or evidence relating to a prior lawsuit in which Sonos was a party, Black Hills Media,

LLC v. Sonos, Inc., No. 2:14-cv-486 (C.D. Cal.). The Court ruled that evidence relating to that proceeding may be used only for impeachment of Sonos's witnesses who testified in that proceeding, under Fed. R. Evid. 613, or as substantive evidence of a testifying witness's prior sworn testimony under Fed. R. Evid. 801(d)(1).

**c.** Third, Sonos argued that D&M should be precluded from introducing several categories of "evidence or suggestions of impropriety" by Sonos. Sonos first argued that D&M should not be allowed to introduce evidence of alleged improper conduct by Sonos before the Patent and Trademark Office, and that D&M should not be allowed to present evidence that Sonos had drafted its patent claims to cover D&M's existing products. D&M indicated that it did not intend to present evidence as to the first issue, so it was unnecessary for the Court to enter an order regarding that issue. As to the introduction of evidence that in some cases Sonos's patents covered D&M's existing products, the Court directed that D&M may not impute bad intent to Sonos based on those actions.

Sonos next argued that D&M should not be allowed to present evidence that Sonos had engaged in "competitive activities" such as reverse engineering competitors' products. The Court ruled that evidence of "competitive activities" would be permitted only to the extent that Sonos opens the door by offering evidence that D&M had engaged in such activities.

Finally, in response to Sonos's argument that evidence of any settlement negotiations or agreements between the parties be excluded under Fed. R. Evid. 408, the Court ruled that D&M could present such evidence only to the extent it became necessary to cure potentially misleading or prejudicial material introduced by Sonos.

**4.** With respect to D&M's motions in limine, the Court denied one of the motions and took the other two under submission, stating that it would issue an order promptly. This is that order.

**a.** During the hearing on the motions in limine, the Court denied D&M's third motion in limine, in which D&M sought to exclude evidence or argument relating to damages for infringement of U.S. Patent No. 8,588,149 during the period prior to the date of the reexamination certificate for that patent. D&M argued that damages for that period are not available based on its defense of absolute intervening rights under 35 U.S.C. § 252. The applicability of the defense of intervening rights was previously addressed in response to Sonos's motion for summary judgment on that issue. Dkt. No. 428, at 3-10. D&M did not file a cross-motion for summary judgment on that issue at that time.

During the hearing, the Court ruled that D&M's motion was not properly cast as a motion in limine, but instead was seeking a dispositive ruling on a substantive issue in the case. The Court will not address D&M's argument as a motion in limine, but will rule on the issue when the matter is ripe for decision.

**b.** D&M next seeks to limit Sonos's presentation of evidence regarding similarities between the non-patented features of the parties' products and similarities in other materials, such as marketing, branding, logos, and websites. To the extent Sonos seeks to introduce evidence that D&M copied Sonos's products because Sonos's products are commercial embodiments of the patents-in-suit, such evidence is admissible. Evidence of an alleged infringer's copying or reverse engineering a competitor's patented product is generally admissible on the ground that it is relevant to issues of inducement of infringement, willful infringement, or secondary considerations of obviousness. See, e.g., Power Integrations, Inc. v.

4

Fairchild Semiconductor Int'l, Inc., 843 F.3d 1315, 1333 (Fed. Cir. 2016) (reverse engineering of patentee's product and corporate culture of copying is relevant evidence of inducement); K-TEC, Inc. v. Vita-Mix Corp., 696 F.3d 1364, 1378 (Fed. Cir. 2012) (copying of patentee's product, including identical product numbers, is probative of willfulness); Wyers v. Master Lock Co., 616 F.3d 1231, 1246 (Fed. Cir. 2010) (evidence of direct copying to replicate a specific product is probative as to the secondary consideration of obviousness); Stryker Corp. v. Intermedics Orthopedics, Inc., 96 F.3d 1409, 1414 (Fed. Cir. 1996) (one factor in determining willfulness is "whether the infringer deliberately copied the ideas or design of another"); Digital Reg of Texas, LLC v. Adobe Sys., Inc., No. 12-cv-1971, 2014 WL 4090550, at *8 (N.D. Cal. Aug. 19, 2014) (evidence supporting an inference of copying patented features may be relevant to willfulness, induced infringement, enhanced damages, and nonobviousness). Indeed, D&M does not appear to contest the introduction of the products from which the jury may draw inferences as to their similarities. See D&M Reply, Dkt. No. 438-1 at 552 ("To be sure, the HEOS and SONOS brands and products will be present at trial and the jury may draw its own conclusions from that evidence.").

However, the Court agrees with D&M that evidence of copying that is unconnected to the commercial embodiments of the patent—such as marketing, branding, and websites—has little probative value and carries a significant risk of distracting the jury from the issue of patent infringement. "[T]here is significant prejudice associated with [copying] evidence, as a jury may use evidence of copying to unfairly conclude that Defendant's products infringe the patents-in-suit." Finjan, Inc. v. Blue Coat Sys., Inc., No. 13-cv-03999, 2015 WL 4129193, at *6 (N.D. Cal. July 8, 2015); see generally Amazon.com, Inc. v. Barnesandnoble.com, Inc., 239 F.3d 1343, 1366 (Fed. Cir. 2001) ("[E]vidence of copying [the patentee's product] is legally irrelevant

5

unless the [product] is shown to be an embodiment of the claims."). Accordingly, Sonos may present evidence that D&M copied Sonos's patents or patented features in commercial embodiments of the patents-in-suit, but may not present evidence that D&M copied material unrelated to the patented inventions.

**c.** D&M next seeks to preclude evidence of D&M's conduct prior to the issuance of the patent that is intended to support Sonos's allegation of willful infringement during the post-issuance period. Without knowing the specific evidence Sonos seeks to admit—a critical piece of information that neither side has provided to the Court—it is impossible for the Court to provide detailed guidance on this issue. D&M is, of course, correct that there can be no willful infringement before a patent is issued. Gustafson, Inc. v. Intersystems Indus. Prod., Inc., 897 F.2d 508, 510 (Fed. Cir. 1990) ("It is obvious that a party cannot be held liable for 'infringement,' and thus not for 'willful' infringement, of a nonexistent patent, i.e., no damages are payable on products manufactured and sold before the patent issued."); State Indus., Inc. v. A.O. Smith Corp., 751 F.2d 1226, 1237 (Fed. Cir. 1985). That principle, however, does not answer the question whether evidence of pre-issuance conduct, such as copying of the plaintiff's products, is admissible to show post-issuance willfulness.

It is well established that the question whether an act is willful "is by definition a question of the actor's intent, the answer to which must be inferred from all the circumstances." Gustafson, 897 F.2d at 510-11. As noted above, evidence of copying has long been held relevant to willfulness. See Read Corp. v. Portec, Inc., 970 F.2d 816, 827 & n.1 (Fed. Cir. 1992) (noting that copying encompasses "copying the commercial embodiment, not merely the elements of a patent claim"). In applying that general proposition, however, courts are divided on whether

evidence that a defendant copied the plaintiff's products prior to the issuance of the plaintiff's patent is admissible to support the plaintiff's claim of willfulness.

Some courts have held that evidence that the defendant copied the plaintiff's products prior to the issuance of the plaintiff's patent is inadmissible, either because pre-issuance conduct is not relevant to willfulness or because of the risk that the jury will improperly use the evidence of pre-issuance copying to conclude that the defendant's product infringes the plaintiff's patent. See MasterObjects, Inc. v. Google, Inc., No. C 11-1054, 2013 WL 12177460, at *1 (N.D. Cal. May 2, 2013) (pre-issuance conduct not relevant to willfulness); Interlace Med., Inc. v. Hologic, Inc., No. 10-10951, 2012 WL 3560811, at *2 (D. Mass. Aug. 17, 2012) ("Conduct before the patent issues is not willfulness . . . .").

Other courts, including the Federal Circuit, have held that evidence that the defendant copied the plaintiff's products prior to the issuance of the plaintiff's patent is relevant to willfulness, at least in some circumstances. See Minn. Mining & Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc., 976 F.2d 1559, 1581 (Fed. Cir. 1992); ("[A]lthough willfulness is generally based on conduct that occurred after a patent issued, pre-patent conduct may also be used to support a finding of willfulness."); Kaufman Co. v. Lantech, Inc., 807 F.2d 970, 978-79 (Fed. Cir. 1986) (noting that willfulness is determined based on the totality of the circumstances, and rejecting the defendant's argument that evidence of copying could not be considered because the copying took place before the patent issued); Milgo Elec. Corp. v. United Bus. Commc'ns, Inc., 623 F.2d 645, 665-66 (10th Cir. 1980) (pre-patent copying "evidenced that [the defendant's] conduct in manufacturing and selling infringing modems after 1970 was intentional and deliberate, in willful disregard of Milgo's rights, rather than merely accidental or negligent"); Polaris Indus. Inc. v. Arctic Cat Inc., No. 15-4475, 2017 WL 2929520, at *2 n.2 (D.

7

Minn. July 10, 2007); Apple, Inc. v. Samsung Elecs. Co., No. 12-cv-630, 2017 WL 2720220, at *12 (N.D. Cal. June 23, 2007) (pre-issuance copying, followed by continued sale of the same copied design after patent issuance is evidence of willfulness); see also Philippi-Hagenbuch, Inc. v. W. Tech. Servs. Int'l, Inc., No. 12-cv-1099, 2013 WL 2419934, at *3 (C.D. Ill. June 3, 2013) (evidence of copying when patent was pending admitted); X-Tra Light Mfg. Inc. v. Acuity Brands, Inc., No. H-04-1413, 2007 WL 7117888, at *3 (S.D. Tex. Feb. 13, 2007) (same); Indecor Inc. v. Fox-Wells & Co., 642 F. Supp. 1473, 1491-92 (S.D.N.Y. 1986) (same).

Two cases from this district are persuasive in striking the balance between relevance and potential prejudice with regard to this issue. In Idenix Pharmaceuticals LLC v. Gilead Sciences, Inc., No. 13-1987, 2016 WL 7380530 (D. Del. Dec. 4, 2016), Chief Judge Stark stated that he was not persuaded that "the law absolutely precludes pre-patent conduct from being probative of willfulness." Id. at *1. Similarly, in Chimie v. PPG Industries, Inc., 218 F.R.D. 416 (D. Del. 2003), Judge Jordan declined to hold that there is an absolute prohibition against the use of pre-issuance copying to show willfulness, stating: "Where there is particularly egregious behavior showing a party intent on misappropriating a competitor's proprietary technology, courts have been willing to consider that behavior as evidence of willfulness, even if some of the offending acts occurred before a patent issued." Id. at 422; see also State Indus., Inc., 751 F.2d at 1238 (distinguishing Milgo Elec. Co., in which evidence of pre-issuance copying was admitted, on the ground based on the egregious circumstances that the Federal Circuit described as "a most elaborate and detailed copying ('slavish copying' according to the trial judge) . . . by a corps of engineers working in secrecy over a period of a couple of years to pry loose the secret of Milgo's inventions."); Trading Techs. Int'l, Inc. v. eSpeed, Inc., No. 04 C 5312, 2008 WL 63233, at *2 (N.D. Ill. Jan 3, 2008) ("[I]n some circumstances pre-patent conduct is relevant to a

determination of willfulness, significantly when that pre-patent conduct consists of egregious copying." (citation omitted)); Stryker Corp. v. Davol, Inc., 75 F. Supp. 2d 748, 750 (W.D. Mich. 1999) ("Davol's undisputed pre-patent copying is probative of willfulness, but should not be given undue weight."), aff'd, 234 F.3d 1252 (Fed. Cir. 2000).

Based on that reasoning, the Court denies D&M's request for the Court to issue an absolute prohibition on the admission of any evidence of pre-issuance copying. In particular, the Court cannot, at this juncture, conclude whether Sonos's evidence demonstrates the kind of "particularly egregious behavior" that might be probative of willfulness despite occurring before the issuance of the patent. D&M's motion in limine on that issue is therefore denied. Sonos is cautioned, however, that purported evidence of willfulness during the period before the issuance of the patent or patents at issue must demonstrate "particularly egregious behavior." Before offering any such evidence or argument, including in its opening statement, Sonos should advise the Court of its intention to do so and provide the Court with a detailed account of the evidence that it intends to offer.

**5.** As discussed on the record, the Court expects counsel to significantly narrow the number of deposition designations and exhibits, as well as the number of objections thereto, before submitting the parties' revised lists to the Court. The Court intends to resolve all admissibility issues prior to trial and urges counsel to be realistic as to how many exhibits and how much deposition testimony can be presented in a five-day jury trial. The parties have been directed to meet and confer, and to file with the Court a revised list of deposition designations and exhibits, and objections thereto, by 2:00 p.m. on November 28, 2017. The parties are required to provide the Court with electronic copies of all of the exhibits and deposition designations that remain in dispute at that time. If the parties have not substantially reduced the

number of exhibits and objections by that time, the Court will consider other measures, including setting a limit on the number of exhibits that each party may introduce.

The Court will hold a conference with lead trial counsel for each party on December 5, 2017, beginning at 8:00 a.m. in Washington, D.C., to resolve each remaining objection.

IT IS SO ORDERED.

SIGNED this 21st day of November, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE