# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SONOS, INC., § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | Civil Action No. 14-1330-WCB |
| D&M HOLDINGS INC. d/b/a THE D+M § | |
| GROUP, D&M HOLDINGS U.S. INC., and § | |
| DENON ELECTRONICS (USA), LLC, § | |
| § | |
| *Defendants*. § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is <u>Plaintiff Sonos, Inc.'s Motion for Leave to Submit the Second Supplemental Expert Report of Michael E. Tate</u>, Dkt. No. 457. The Court previously struck Mr. Tate's reasonable royalty analysis. Dkt. No. 427. Because Mr. Tate's supplemental report again fails to properly apportion reasonable royalty damages, Sonos's motion is denied.

In Mr. Tate's original expert report, he calculated royalty rates for the patented features based on a report by KPMG and multiplied those rates by the total revenue derived by D&M from the sale of all of its HEOS products, except for those products on which Sonos was seeking damages under a lost profits theory.

The Court held that Mr. Tate's royalty base failed to properly apportion damages to only the accused features, and therefore violated the entire market value rule. That rule allows a patentee to assess damages based on the entire market value of a product only where the patented feature creates the basis for customer demand. <u>Lucent Techs., Inc. v. Gateway, Inc.</u>, 580 F.3d 1301, 1336 (Fed. Cir. 2009). If the patentee cannot "demonstrate that 'the entire value of the whole machine, as a marketable article, is properly and legally attributable to the patented

feature,'" the patentee must provide "evidence tending to separate or apportion the defendant's profits and the patentee's damages between the patented feature and the unpatented features." Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1318 (Fed. Cir. 2011) (quoting Garretson v. Clark, 111 U.S. 120, 121 (1884)).

Mr. Tate's second supplemental report fails either to provide evidence that apportions the profits between patented and unpatented features or to demonstrate that the entire value of the products in question is attributable to the patented feature. Although Mr. Tate acknowledged the Court's ruling that his royalty base must reflect "the value of the allegedly infringing features in relation to the product as a whole," Second Supplemental Expert Report of Michael E. Tate ("Suppl. Tate Report"), Dkt. No. 457-1, Ex. A at 2, Mr. Tate's attempt to comply does not satisfy the requirements of apportionment.

As Sonos summarizes in its motion papers, "the Second Supplemental Expert Report of Michael E. Tate simply takes Mr. Tate's earlier reasonable royalty analysis and reduces the royalty base to the revenue from D&M's least expensive accused product, the HEOS 1." Dkt. No. 457. In his "First Apportionment Factor," Mr. Tate attempts to "account[] for additional, non-patented features and componentry associated with higher priced products." Suppl. Tate Report at 12. He continues: "From March 2014 to December 2016, the average revenue per unit earned by D&M from the sale of the accused HEOS 1 product (D&M's least expensive accused product) was $121.82. Based on the HEOS 1 revenue, I have apportioned (reduced) D&M's accused revenue of $12.7 million (which is subject to a reasonable royalty) to $5.8 million." Id. (footnote omitted).

Mr. Tate's analysis misses the point regarding the apportionment requirement and the basis for the Court's previous ruling. Calculating a reasonable royalty based on the least

2

expensive accused product still predicates damages on the entire market value of the product. Because the stringent requirements for calculating damages based on a product's entire market value were not met in this case, Mr. Tate's use of that metric is improper.

The HEOS 1 product contains numerous features not covered by the patents-in-suit. Mr. Tate makes no attempt to separate the value of the patented features from the value of the unpatented features in the HEOS 1 device. Nor has Mr. Tate made any attempt to show that the entire value of the HEOS 1 device is driven exclusively by the patented features. As the Court wrote in its previous memorandum opinion and order on this issue, Federal Circuit case law makes clear that "damages awarded for patent infringement 'must reflect the value attributable to the infringing features of the product, and no more.'" Commonwealth Sci. & Indus. Research Organisation v. Cisco Sys., Inc., 809 F.3d 1295, 1301 (Fed. Cir. 2015) (quoting Ericsson, Inc. v. D-Link Sys., Inc., 773 F.3d 1201, 1226 (Fed. Cir. 2014)). And, in the absence of proper apportionment, a patentee may use the entire market value of an accused product as the royalty base only when the patentee has proved that "the presence of that [patented] functionality is what motivates consumers to buy [the multi-component product] in the first place." LaserDynamics, Inc. v. Quanta Computer, Inc., 694 F.3d 51, 68 (Fed. Cir. 2012). It is insufficient to show that a feature is "valuable, important, or even essential" to the multi-component accused device; a patentee must show that the patented feature "alone drives the market for" the product. Id. Without any analysis of the value of the patented features as a subset of the multitude of features present in the HEOS 1, and without any analysis justifying the use of the entire market value of the accused product, Mr. Tate's analysis is inadmissible.

While the rationale underlying Mr. Tate's proposed reliance on D&M's revenue per unit on its least expensive accused product is not explained in his report, it appears that he has

regarded the effective reduction in the accused revenue resulting from that calculation as constituting apportionment because it reflects a reduction in the amount that he previously cited. While an apportionment would certainly produce a reduction, that does not mean that a reduction necessarily constitutes apportionment. Nothing in Mr. Tate's report reflects an apportionment directed to the role of the patented features in driving demand for the product.

At the hearing on the parties' summary judgment and <u>Daubert</u> motions, Sonos's counsel stated that "I don't think that's a large difference in money between what [D&M has] proposed as the royalty rate and what we had. I think for that we would be okay accepting their royalty rate." Dkt. No. 457-1, Ex. B at 136:19-23. As suggested at the hearing, Sonos may rely on D&M's proposal for the reasonable royalty. Sonos may not, however, present evidence or argument regarding a royalty rate that is premised on the entire market value of the defendants' allegedly infringing product.

IT IS SO ORDERED.

SIGNED this 7th day of December, 2017.

_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE